*Mikohn Gaming Corp. v Acres Gaming Inc.*
50 USPQ2d 1783
U.S. District Court District of Nevada
No. CV-S-97-1383-HDM(LRL)
Decided April 15, 1998

**Headnotes**

JUDICIAL PRACTICE AND PROCEDURE

[1] Procedure -- Discovery -- Matters discoverable -- In general (► 410.4002.01)

Defendant's law firm will be denied access to confidential technical information during course of patent infringement action, since firm functions as both outside litigation counsel and patent prosecution counsel, and is prosecuting applications that are part of very core of instant suit, since advice rendered by firm is intensely competitive, in view of defendant's claims that these pending patents will be infringed by plaintiff's product as soon as they are issued, since legal and factual components of firm's advice to defendant regarding complex technology are so intertwined as to be inseparable, and since defendant's firm, if given access to plaintiff's technology, would be placed in untenable position of having to either refuse to give client legal advice on competitive design matters, or violate protective order's prohibition against revealing plaintiff's technical information.

**Case History and Disposition**

Action by Mikohn Gaming Corp. against Acres Gaming Inc. for declaratory judgment of patent invalidity and non-infringement, in which defendant counterclaims for patent infringement. On defendant's motion to compel discovery and for protective order. Motion for protective order granted, to extent that plaintiff's proposed protective order shall govern discovery; motion to compel granted in part.

**Attorneys**

Steven E. Shapiro and D. James Chung, of Mitchell, Silberberg & Knupp, Los Angeles, Calif.; Steve Morris and Adam P. Segal, of Schreck Morris, Las Vegas, Nev., for plaintiff.

Jerry A. Riedinger and Michael D. Broaddus, of Perkins Coie, Seattle, Wash.; Alan T. McCollom and Stephen S. Ford, of Marger, Johnson, McCollom & Stolowitz, Portland, Ore.; John E. Leach and Keith E. Gregor, of Woodburn & Wedge, Las Vegas, for defendant.

**Opinion Text**

**Opinion By:** Leavitt, U.S. magistrate judge.

EXHIBIT 3

This case comes before the Court on defendant Acres' Motion to Compel Discovery and for a Protective Order (#36, filed December 23, 1997). The court has considered the motion, plaintiff Mikohn's Opposition (#39, filed January 7, 1998), Acres' Reply (#46, filed January 20, 1998), Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (#47, filed January 23, 1998), Acres' Response to Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel and for Sanctions (#49, filed January 28, 1998), Acres' Submission of New Precedent in Support of Acres' Motion to Compel Discovery and for a Protective Order (#51, filed February 2, 1998), Mikohn's Response to Submission of "New Precedent" by Acres Gaming Corporation in Support of Its Motion to Compel Discovery (#55, filed February 4, 1998), Mikohn's Reply in Support of Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel Discovery, and for Sanctions (#56, filed February 9, 1998), the arguments presented by counsel during the telephone hearing on February 23, 1998, and Mikohn's Supplement in Support of Mikohn's Request for Entry of its Proposed Protective Order (#62, filed February 24, 1998).

Also before the court is Mikohn's Ex Parte Discovery Plan and Scheduling Order (received January 12, 1998). The court has considered Mikohn's proposed discovery plan, Acres' Response (#42, filed January 15, 1998), and the representations of counsel during the hearing on February 23, 1998.

**Motion to Compel Discovery and for a Protective Order (#36)**

The central issue underlying this dispute is whether one of Acres' law firms, Marger, Johnson, McCollom & Stolwitz ("the Marger firm"), should be denied access to Mikohn's confidential technical information during the course of this patent infringement action. The parties have agreed upon the basic contours of the protective order that will govern discovery in this case, with one

**Page 1784**

major exception: Mikohn would deny the Marger firm access to the sensitive technical information that Mikohn deems highly confidential, such as software codes and hardware electrical designs, and would further deny the Marger firm the right to attend any depositions. Mikohn's proposal for a significantly more restrictive protective order is based on the Marger firm's dual role as Acres' outside litigation counsel and its patent prosecution counsel. Indeed, in its latter capacity the Marger firm is currently prosecuting certain patent applications for Acres that are the very subject matter of this litigation. Mikohn fears that if access to Mikohn's confidential technical information is given to the Marger firm in its role as litigation counsel, there would be a substantial risk that in its role as patent prosecution counsel the Marger firm would misuse the information to Mikohn's detriment. Whether the misuse were deliberate or inadvertent, the result, according to Mikohn, would be the same: Mikohn would be placed at a distinct and unfair competitive disadvantage.

Acres denies that the Marger firm's possession of Mikohn's confidential technical information would or could harm Mikohn's position in the marketplace. Acres also argues that denial of access to such information would undermine the Marger firm's ability to represent its client

effectively, and would essentially "disqualify" it from the case. Acres' Reply (#46) at 12.[1] Notwithstanding that it has retained a second firm, Perkins Cole, as additional patent litigation counsel, Acres asserts that to be denied the litigation services of the Marger firm, and particularly of Alan McCollom, whose technical expertise in electrical engineering uniquely qualifies him as litigation counsel in this case, would deprive Acres of the benefit of the trust and confidence it has come to place in the Marger firm over the course of a long standing attorney-client relationship.

Fed.R.Civ.P. 26(c) authorizes the court to protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." The party seeking the protective order carries the burden of showing good cause for its issuance. *Jepson, Inc. v Makita Elec. Works, Ltd*, 30 F.3d. 854, 858 (7th Cir. 1994). Discovery orders are reviewed for abuse of discretion. *Ah Moo v A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988).

Where parties to a lawsuit are commercial competitors, and one of them moves for protection against misuse of its confidential technical information, the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims. *Brown Bag Software v Symantec Corp.*, 960 F.2d 1465, 1470 [ 22 USPQ2d 1429 ] (9th Cir. 1992). Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp. v United States*, 730 F.2d 1465, 1468 (Fed. Cir, 1984). In resolving this question, the key consideration is not whether the attorney is in-house or outside counsel, but whether the attorney is involved in "competitive decisionmaking," *i.e.*, whether "a counsel's activities, association, and relationship with a client [ ] are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id*. at n. 3.

In support of its position that the Marger firm does not engage in competitive decisionmaking as defined in *U.S. Steel*, Acres offers the affidavit of its longtime patent lawyer, Alan McCollom. McCollom asserts that his only association with Acres is as its outside patent counsel; he is neither a board member, officer nor employee of the company. He denies that he "participate [s] in Acres' marketing meetings or in Acres' product development or engineering meetings," or that he "advise [s] Acres regarding general nonlegal business strategies such as developing or marketing products." In short, he denies that he's "been involved in decisionmaking activities regarding product pricing, new product design or new product development." He states that his "involvement with Acres is limited solely to providing legal advice and counseling in the field of

---

[1]  In other papers and at the hearing on this motion Mikohn has suggested that the Marger firm should be disqualified as litigation counsel in this case. No grounds for disqualification have been formally presented to the court, and none will be considered in this decision. The court here addresses only the scope of an appropriate protective order, irrespective of any conceivable grounds for the disqualification of the Marger firm.

intellectual property." McCollom's representations are corroborated by the affidavit of Acres' board chairman and chief executive officer, John F. Acres.

**Page 1785**

At the hearing on this matter Acres argued additionally that Mikohn's unfounded fear of improper disclosure stems from a misapprehension of the type of use which the Marger firm could make of Mikohn's confidential information. Acres contends that Patent Office procedures governing the processing of patent applications make it impossible for the Marger firm to abuse the confidential information it receives from Mikohn. According to Acres, if it were to refine claims in its pending patent applications, or write new claims in re-issue proceedings, it would necessarily be limited to the specifications contained in its original applications. Because it would not be allowed to amend claims or add new claims regarding matters that were not already disclosed in its original patent application, Acres argues that it would be theoretically impossible for the Marger firm to exploit for its own competitive advantage the confidential information it would receive from Mikohn, even if it wanted to. In short, Acres argues that any confidential information it might receive from Mikohn would, in effect, be irrelevant to the application process.

Mikohn, however, points to *Motorola, Inc. v Interdigital Technology Corp.*, 1994 U.S. Dist. LEXIS 20714 (D.Del. 1994), in which the proper scope of a discovery-related protective order was considered in the context of a patent infringement action.[2] There, as here, the law firm representing one of the parties, Interdigital Technology Corp. ("ITC"), functioned as both lead trial counsel and patent prosecution counsel. At the time the case was pending, the firm was prosecuting several patent applications, four of which were related to the patents in suit. The issue presented to the court was whether ITC's counsel should have access to Motorola's confidential information. Motorola argued, as Mikohn does here, that it would be "impossible for [ITC's] attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications." Id. at *6. As in U.S. Steel, the critical inquiry was "whether the attorney in question is in a position that creates a high risk of inadvertent disclosure." The answer to that question turns on whether the attorney is involved in competitive decisionmaking such that he "would have a difficult time compartmentalizing his knowledge." Id. at *10-11. Importantly, the court observed that " [t]here can be no question that attorneys [for ITC] who receive confidential information and then later prosecute patents will have to distill and compartmentalize the confidential information they have gained." *Id.* at *13.

The court concluded that the potential harm to Motorola from inadvertent disclosure of its confidential information outweighed the hardship that would befall ITC if its counsel were disqualified or restricted in some fashion. To eliminate the risk of inadvertent disclosure and at the same time minimize the hardship to ITC, the court precluded ITC's trial attorneys from prosecuting its patent applications. Because ITC's trial attorneys had only recently begun to prosecute their client's patent applications, the court found that the resultant hardship on ITC would be minimal. *Id*. at *16-18.

---

[2]   Neither *Brown Bag* nor *U.S. Steel* involved a patent infringement claim.

[ 1 ] As applied to the present case, the court finds *Motorola* persuasive.[3] The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. Indeed, the Marger lawyers allege that these pending patents will be infringed by Mikohn's MoneyTime system as soon as they are issued. Hence, in light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive. In an effort to distance himself from the type of competitive decisionmaking discussed in U.S. Steel, Mr. McCollom characterizes his patent prosecution work for Acres as merely "providing legal advice and counseling in the

**Page 1786**

field of intellectual property." This description is so general as to be virtually meaningless. By Acres' own admission, it has made a considerable investment in Mr. McCollom's technical training. It therefore cannot be doubted that as patent prosecution counsel Mr. McCollom works very closely with and advises Acres on matters relating to product design. The legal and factual components of Mr. McCollom's advice regarding complex technology are so intertwined as to be inseparable. A bright line cannot be drawn between them. Were he given access to Mikohn's technology, Mr. McCollom would be in the "untenable position" of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing Mikohn's technical information. *Brown Bag Software*, 960 F.2d at 1471. No matter how much good faith Mr. McCollom might exercise, it is unrealistic to expect that his knowledge of Mikohn's secret technology would not or could not influence the nature of his advice to Acres. This is so whether the advice relates to a pending application or a future application. Under such circumstances, he and the Marger firm would be in precisely the same position in which ITC's patent lawyers found themselves in Motorola :

> [ITC's attorneys are] currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection

---

[3] Acres urges the court to follow *In re Sibia Neurosciences, Inc*., 1997 WL 688174 (Fed.Cir. 1997), which is also a patent infringement case, but one in which the Federal Circuit let stand a district court order permitting trial/patent prosecution counsel for Cadus Pharmaceutical Corporation to have access to Sibia's confidential information. Mikohn objects to Acres' reliance on *Sibia* on the ground that the Federal Circuit deemed its opinion unsuitable for publication. The court agrees. For this reason alone *Sibia* should not be considered. Even if the court in *Sibia* had deemed its opinion suitable for publication, there is another reason why this court would be disinclined to follow it. The case was before the circuit court on a petition for a writ of mandamus, in support of which Sibia had the difficult burden of making a "clear and indisputable" showing that the district court had engaged in "a clear abuse of discretion or usurpation of judicial power." Mikohn's burden here is not so onerous; it need only demonstrate "good cause" for its proposed protective order.

> that would be required is simply too much to expect, no matter how
> intelligent, dedicated, or ethical the [ ] attorneys may be.

*Motorola, Inc. v Interdigital Technology Corp.*, at *14-15. For these reasons the court concludes that if the Marger firm were given access to Mikohn's confidential information, the risk is great that Acres would gain an unauthorized and unfair competitive advantage.

Acres argues that by denying the Marger firm access to Mikohn's confidential information the court would undermine the firm's ability to provide effective representation. Whether that is so remains to be seen. Even if it were, the court finds that the potential harm to Mikohn from unauthorized disclosure of its confidential information would clearly outweigh the burden Acres will experience without the assistance of the Marger firm as litigation counsel. As previously noted, Acres has also retained the experienced patent law firm of Perkins Coie, which has been involved in this litigation from its inception. The court is satisfied that Perkins Coie is quite capable of effectively representing Acres in this case. Hence, it can scarcely be said that the court's decision deprives Acres of the ability to defend itself or to press its claims. Equally importantly, Acres will continue to have the valuable services of the Marger firm as patent prosecution counsel.

ORDER

IT IS ORDERED that Acres' motion to compel (#36) is granted to this extent: Mikohn shall respond to Acres' discovery requests not later than May 8, 1998. In all other respects the motion is denied.

IT IS FURTHER ORDERED that Mikohn's proposed protective order shall be the protective order that governs discovery in this case.

IT IS FURTHER ORDERED that Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (#47) is granted to the extent that the court has placed no reliance on In re Sibia Neurosciences, Inc., 1997 WL 688174 (Fed.Cir. 1997). In all other respects the motion is denied.

IT IS FURTHER ORDERED that the following Discovery Plan and Scheduling Order shall govern these proceedings:

1. In addition to the discovery subjects listed in Mikohn's proposed discovery plan, discovery may also be conducted on all patent issues in this case.

2. The last day of discovery shall be February 15, 1999.

3. Experts and their reports shall be disclosed not later than November 13, 1998.

4. Rebuttal experts and their reports shall be disclosed not later than December 31, 1998.

5. Pleadings may be amended and parties added until November 13, 1998.

6. The interim status report shall be filed on December 11, 1998.

7. Dispositive motions shall be filed by April 30, 1999.

- End of Case -