**EXHIBIT "C"**



132 F.3d 50
132 F.3d 50, 1997 WL 688174 (C.A.Fed.)
**(Cite as: 132 F.3d 50, 132 F.3d 50 (Table))**

Page 1

▶ In re **Sibia Neurosciences**, Inc.
C.A.Fed.,1997.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Federal Circuit.
IN RE **SIBIA NEUROSCIENCES**, INC., Petitioner.
No. 525.

Oct. 22, 1997.

Before ARCHER, Chief Judge, MAYER and PLAGER, Circuit Judges.

*ORDER*

PLAGER, Circuit Judge.
**\*1** Sibia Neurosciences, Inc. petitions for a writ of mandamus to direct the United States District Court for the Southern District of California to vacate its order relating to a protective order. Cadus Pharmaceutical Corporation opposes. Sibia moves for leave to reply to Cadus's opposition. Cadus opposes.

*BACKGROUND*

This action involves Sibia's claim that Cadus infringes one of Sibia's patents and Cadus's counterclaim for a declaratory judgment of noninfringement, invalidity, and unenforceability of that patent and another Sibia patent. Both patents involve a technology described as "transcription-based assays."

During the course of discovery, Sibia sought to prohibit certain confidential information regarding its pending patent applications and research from being disclosed to Cadus's outside counsel who were also active in prosecuting patents on behalf of Cadus.

At a hearing held before the magistrate judge, one of Cadus's outside attorneys, Giulio A. DeConti, indicated that he was actively involved both in the patent litigation then before the district court and in prosecution of patents on behalf of Cadus. Mr. DeConti stated that the particular research area involved in the present matter-cell surface receptors and protein and assay methods-was one of wide-ranging applicability and that his law firm represented more than 50 different clients in patent prosecution matters in the biotechnology area, a good portion of which were involved with cell surface receptors. Mr. DeConti also stated that, in his patent prosecution work for Cadus, he generally would file the patent applications after market decisions had already been made by Cadus.

Following the hearing, the magistrate judge approved a protective order governing the discovery proceedings. That protective order included the following provision, which had been sought by Sibia: Information designated as CONFIDENTIAL-LITIGATION ATTORNEYS ONLY shall not be given, shown, made available or communicated in any way to any person or entity other than those persons described in [the order]. *In addition, however, with respect to [lawyers for the parties, member or employees of their firms, and independent contractors retained by the firms], such information shall not be provided to any persons who prosecute patent applications relating to cell surface receptors or proteins and assay methods relating to the same. Furthermore, all persons who receive information designated as CONFIDENTIAL-LITIGATION ATTORNEYS ONLY shall refrain from prosecuting patents in the area of cell surface receptors and assay methods relating to the same during the pendency of this litigation and until one year after the conclusion of this litigation, including appeals.* [Emphasis added.]

In approving the protective order, the magistrate judge relied on three cases, namely, U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984), Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir.1992), and a federal district court case,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

132 F.3d 50                                                                                          Page 2
132 F.3d 50, 1997 WL 688174 (C.A.Fed.)
**(Cite as: 132 F.3d 50, 132 F.3d 50 (Table))**

*Motorola, Inc. v. Interdigital Tech. Corp.,* 1994 U.S. Dist. Lexis 20714 (D.Del.1994). Specifically, the magistrate judge reasoned that, despite the assumption that Cadus's attorneys would not intentionally misuse confidential information, there was a high risk of inadvertent or unintentional disclosure of confidential information by Cadus's outside counsel who were also involved in patent prosecution for Cadus. The magistrate judge noted that DeConti could not guarantee nondisclosure.

***2** On review, the district court held that the magistrate judge's protective order was clearly erroneous and contrary to law. The district court modified the protective order by striking out the second and third sentences of the above-quoted paragraph from the protective order. In essence, the district court's order allowed access to confidential information for all of Cadus's outside counsel involved in this matter.

This petition followed.

*DISCUSSION*

The remedy of mandamus in available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *See In re Regents of the Univ. of Cal.* 101 F.3d 1386, 1387 (Fed.Cir.1996). A party seeking such a writ bears the burden of proving that it has no means of attaining the relief desired, *see Mallard v. United States Dist. Court of the S. Dist. Of Iowa,* 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable." *Allied Chem. Corp. v. Daiflon Inc.,* 449 U.S. 33, 35 (1980).

Sibia argues that the district court erred in modifying the magistrate judge's protective order. Sibia's argument is that Cadus's outside counsel, contemplated by the original protective order, occupy a unique role in connection with their client and that this unique role poses a high risk of inadvertent disclosure or misuse of confidential information. In response, Cadus argues that Sibia has not shown that Cadus's outside counsel are in fact engaged in "competitive decisionmaking" for Cadus.

The discovery process in federal district courts is governed by Fed.R.Civ.P. 26. A party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Protective orders guarding against discovery of certain information are available to protect against "annoyance, embarrassment, oppression or undue burden," including discovery of "a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 26(c).

Essentially, the magistrate judge's decision hinged on the risk of inadvertent disclosure. *See Brown Bag Software,* 960 F.2d at 1471 (consideration must be given to "not only whether the documents could be locked up in cabinets, but also whether ... counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents.")

In *U.S. Steel,* 730 F.2d at 1468, we stated that "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." Involvement in "competitive decisionmaking" serves as the basis for denial of access. *Id.* We also stated that such involvement in competitive decisionmaking is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* However, we also specifically held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *Id.* (emphasis added).

***3** In a similar vein, we also stated in *U.S. Steel* that "[d]enial or grant of access, however, cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id.* Therefore, denying access to Cadus's outside counsel on the ground that they also prosecute patents for Cadus is the type of generalization counseled against in *U.S. Steel.* The facts, not the category, must inform the result. Our holding in *U.S. Steel* dictates that each case must be decided based on the specific facts involved therein.

At the evidentiary hearing before the magistrate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

132 F.3d 50   Page 3
132 F.3d 50, 1997 WL 688174 (C.A.Fed.)
**(Cite as: 132 F.3d 50, 132 F.3d 50 (Table))**

judge, it became apparent that only one of Cadus's outside counsel would be directly affected by the specific provision of the protective order in question. That attorney, Mr. DeConti, stated that he had represented Cadus for several years in patent prosecution work. He also stated that he represented more than 50 clients on biotechnology matters, including the area involved in the underlying district court action. Significantly, he stated that he was not involved in "competitive decisionmaking." The magistrate judge found that Mr. DeConti was very involved in the prosecution of patents for Cadus, but did not make any findings regarding outside counsel's involvement in "competitive decisionmaking," such as involvement in pricing or product design. However, in reviewing the magistrate judge's order, the district court held that none of the indicia of "competitive decisionmaking" was present here. See Amgen, Inc. v. Elanex Pharm., Inc., 160 F.R.D. 134, 139 (W.D.Wash.1994) (motion for protective order was denied where in-house counsel was not involved in competitive decisionmaking); Fluke Corp. v. Fine Instruments Corp., 32 USPQ2d 1789, 1793 (W.D.Wash.1994) (motion for protective order denied where in-house counsel had no involvement in sales, competitive decisionmaking, or design and development of products decisions and where in-house counsel would not disclose confidential information to any non-legal employee of the client corporation).

Indeed, as we noted in an analogous case addressing the meaning of the term "competitive decisionmaking," "the standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'" Matsushita Elec. Indus. Co., Ltd. v. United States, 929 F.2d 1577, 1580 (Fed.Cir.1991).

The district court's order was well reasoned and discussed the relevant facts, rules, and cases in holding that the magistrate judge's protective order was clearly erroneous and contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Specifically, the district court found that there was no evidence that Cadus's outside counsel, particularly Mr. DeConti, was involved in competitive decisionmaking. The district court also noted that the magistrate judge's reliance on Mr. DeConti's inability to guarantee absolute assurance of nondisclosure by Cadus's outside counsel was in error. Moreover, the district court held that denying access to Cadus's outside counsel would pose a serious and unnecessary hardship, especially because Mr. DeConti had been Cadus's patent counsel for more than one year prior to the commencement of the patent action and because the testimony at the hearing before the magistrate judge reflected Mr. DeConti's crucial role in the patent litigation.

**\*4** Under these circumstances, Sibia has not demonstrated that its right to the issuance of a writ of mandamus is clear and indisputable and has thus not met the high burden for obtaining mandamus relief.

Accordingly,

IT IS ORDERED THAT:

(1) Sibia's petition for a writ of mandamus is denied.

(2) Sibia's motion for leave to reply to Cadus's opposition is granted.

C.A.Fed.,1997.
In re Sibia Neurosciences, Inc.
132 F.3d 50, 1997 WL 688174 (C.A.Fed.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.