1  Virginia A. Crisp (State Bar No. 121387)
   ef-vac@cpdb.com
2  COBLENTZ, PATCH, DUFFY & BASS LLP
   One Ferry Building, Suite 200
3  San Francisco, California  94111-4213
   Telephone:  415-391-4800
4  Facsimile:  415-989-1663
5
6  Joseph S. Presta (*Pro hac vice*)
   jsp@nixonvan.com
7  Michael E. Crawford (*Pro hac vice*)
   mec@nixonvan.com
8  NIXON & VANDERHYE P.C.
   901 North Glebe Road
9  Arlington, Virginia  22203
   Telephone:  703-816-4000
10 Facsimile:  703-816-4100
11
   Attorneys for Defendant and Counterclaimant
12 MANN PACKING COMPANY, INC.,
   a California corporation
13

14                UNITED STATES DISTRICT COURT

15        NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

16

17 APIO, INC., a Delaware corporation,          Case Number:  5:07-CV-5628-JF/PVT

18              Plaintiff,

19       v.                                      **MANN'S REPLY TO APIO'S**
                                                 **OPPOSITION TO MOTION FOR**
                                                 **PROTECTIVE ORDER**
20 MANN PACKING COMPANY, INC., a
   California corporation,                       Date:  June 24, 2008
21                                               Time:  10:00
              Defendant.                         Before:  Magistrate Judge Patricia V. Trumbull
22
                                                 Trial Date:   August 10, 2009
23
   AND RELATED COUNTERCLAIMS
24

25

26

27

28
                                                 Case No. 5:07-CV-5628-JF/PVT

1    I.    **A prosecution bar is appropriate under applicable case law**

2        The most relevant case law from the Northern District of California, the Ninth Circuit, and

3    the Federal Circuit all strongly favor a prosecution bar under the facts that pertain here.

4    **A.    *Brown Bag v Symantec***

5        In *Brown Bag*, the Ninth Circuit upheld a protective order barring counsel involved in

6    "competitive decisionmaking" from viewing the opposing party's highly confidential documents

7    because of "the risk to [the disclosing party] of inadvertent disclosure of trade secrets to

8    competitors [when weighed] against the risk to [the party seeking access] that protection of [the

9    disclosing party's] trade secrets impaired prosecution of [the seeking party's] claims."[1]  Citing the

10   Federal Circuit's *U.S. Steel* decision, the Ninth Circuit panel found it reasonable to conclude:

11
12
13
14
> . . . Brown Bag's counsel's employment would necessarily entail advising his
> employer in areas relating to Symantec's trade secrets.  Knowledge of
> Symantec's trade secrets would place in-house counsel in the "untenable
> position" of having to refuse his employer legal advice on a host of contract,
> employment, and competitive marketing decisions lest he improperly or
> indirectly reveal Symantec's trade secrets . . . the kind of "competitive
> decisionmaking" that counsels against disclosure under the *U.S. Steel* analysis.[2]

15

16   **B.    *U.S. Steel v United States***

17       The "*U.S. Steel* analysis" the Ninth Circuit referred to above is that "access should be

18   denied or granted *on the basis of each individual counsel's actual activity and relationship with*

19   *the party represented*, without regard to whether a particular counsel is in-house or retained."[3]

20   Here, it isn't Mr. Sheldon's "classification" that Mann objects to:  it's his very specific role as

21   prosecutor of the very patent-in-suit, *as well as prosecuting its three currently pending progeny*

22   *applications directed at the same technology at issue* – which Apio now is asserting are also

23   infringed by Mann[4] – in other words, Mann properly objects to Mr. Sheldon's *actual activity and*

24   [1]    *Brown Bag Software v Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992).

25   [2]    *Brown Bag*, 960 F.2d at 1471, citing *U.S. Steel Corp. v United States*, 730 F.2d 1465 (Fed.Cir. 1984).

26   [3]    *U.S. Steel,* 730 F.2d at 1469 (emphasis added).

27   [4]    May 27, 2008 notice letter from Marc Karish to Michael Crawford [Exhibit 10].

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

1    *relationship with the party represented.*

2          Apio has seized upon exemplary language in a footnote to misrepresent the holding of the

3    *U.S. Steel* decision.  Here is the actual passage and its footnote reference:

4            Whether an unacceptable opportunity for inadvertent disclosure exists,

5            however, must be determined, as above indicated, by the facts on a counsel-
        by-counsel basis, and cannot be determined solely by giving controlling

6            weight to the classification of counsel as in-house rather than retained.

                                  \* \* \* \*

7            The parties have referred to involvement in "competitive decisionmaking" as a

8            basis for denial of access. The phrase would appear serviceable as shorthand
        for a counsel's activities, association, and relationship with a client that are

9            such as to involve counsel's advice and participation in any or all of the
        client's decisions (pricing, product design, *etc.*) made in light of similar or

10           corresponding information about a competitor.[5]

11         The addition of the term "*etc.*" above indicates that "pricing" and "product design" are not

12   the only activities that qualify as "competitive decision-making."  Of special interest here is the

13   key phrase "*any or* all of the client's decisions . . . made in light of *similar or corresponding*

14   *information* about a competitor."  The panel in *U.S. Steel* didn't include "related patent

15   prosecution" in its list of activities that could comprise "competitive decision-making" because

16   *U.S. Steel* was *not* a patent case – it was an action under the Tariff Act of 1930 re duties on carbon

17   steel plate imported from Brazil,[6] and the attorney being denied access held a "general position in

18   the corporate environment."[7]  Mr. Sheldon's "classification" is of little concern to Mann.  Mr.

19   Sheldon's actual relationship to Apio and activities in prosecuting its patent claims and influencing

20   claim scope on technology directly competing with Mann is of great concern to Mann.

21         The "similar or corresponding information" referred to in the *U.S. Steel* quote above is

22   Mann's highly confidential business and technical information about its planned competitive

23   products such as those that are the subject of Mann's three currently pending U.S. patent

24

25   [5]    *U.S. Steel,* 730 F.2d at 1468 and n.3.

26   [6]    *U.S. Steel v United States*, 557 F.Supp. 590, 591(Int'l Trade 1982).

27   [7]    *U.S. Steel v United States*, 569 F.Supp. 870, 872 (Int'l Trade 1982).

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1  applications for party trays,[8] as well as Mann's strategies to "design-around" legitimate patents and

2  insights regarding the scope of prior art.

3  **C.    *Chan v Intuit***

4          In the Northern District of California, patent prosecution is "competitive decisionmaking"

5  as that term is used in the *Brown Bag* and *U.S. Steel* decisions discussed above.  *Chan* explicitly

6  holds that "[a]dvice regarding the scope of the claims in a patent is sufficiently related to patent

7  prosecution to be defined as competitive decision-making."[9]  When a litigator intends to prosecute

8  patents in the future in a related area of technology, a prosecution bar is the prudent course:

9  "[t]his Court finds that patent prosecution includes advice regarding the scope of claims of a

10  patent.  [Preparing and prosecuting patent applications and claims, or providing advice influencing

11  claim scope and/or language] are sufficiently related to competitive decision-making to justify the

12  restriction imposed on counsels' future services to their clients."[10]  In barring counsel who view

13  confidential information from patent prosecution work in a related field for two years after the

14  conclusion of litigation, the court noted (consistent with the reasoning of *U.S. Steel*), that the

15  better-reasoned court decisions "allow restrictions on the disclosure of confidential information if

16  the recipient is involved in providing advice about patent prosecutions."[11]

17  **II.    Apio's analysis of the case law is fatally flawed and easily distinguishable**

18          Apio incorrectly states that "Mann relies solely on two cases."  Oppn., p.9.  In addition to

19  the *Motorola* and *Mikohn* district court cases listed by Apio, Mann's Motion contains word-for-

20

---

21  [8]    See filing receipts for U.S. Patent Application Nos. 29/274,889 for "Large inverted tray,"
22         29/274,890 for "Small inverted tray," and 12/000,391 for "Flip tray," all attached as Exhibit 19.
23  [9]    *Chan v Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003);  *U.S. Steel,* 730 F.2d at 1468
23  [10]   *Chan* 218 F.R.D. at 662, citing *Vitronics Corp. v Conceptronic, Inc.*, 90 F.3d 1576, 1582
24         (Fed.Cir. 1996).
25  [11]   *Chan*, 218 F.R.D.  at 662;  *In re Papst Licensing*, 2000 U.S. Dist. LEXIS 6347 (E.D. La. May
        4, 2000) ("advice and participation of the [party seeking confidential disclosure]'s counsel in
26         preparation and prosecution of patent applications related to the patents in suit is an intensely
        competitive decision making activity and would be informed by access to the [disclosing]
27         parties' confidential information.").  A copy of the *Papst* decision is attached as Exhibit 15.

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

word quotations from two other reported cases:  the same leading Federal Circuit *U.S. Steel* decision discussed above, and the *Safe Flight* decision from the District of Delaware.[12]  The cases cited in Apio's Opposition have crucially different fact patterns than those that exist here, which involve:

- allegations of inequitable conduct during the prosecution of the patent-in-suit;

- patent litigation between direct competitors involving a simple technology (here, plastic vegetable trays) easily understood by any patent attorney;

- three pending Apio progeny applications relating to the same subject matter coupled with a notice letter under 35 USC 154(d)(1) sent by patentee's counsel claiming that the accused products in the current litigation infringe the claims in those pending progeny applications concurrently being prosecuted by the attorney seeking to avoid the prosecution bar;

- a history of patentee's counsel improperly attempting to broaden claims beyond the actual disclosure of the application during patent prosecution based on competitors designs;

- the attorney seeking to avoid the prosecution bar being the same attorney who prosecuted the patent-in-suit as well as still-pending progeny applications for the same technology;

- ten other patent prosecutors at the same law firm as the attorneys prospectively barred;

- another (eleventh) patent prosecutor and litigator already handling the bulk of the litigation duties for  the party seeking to avoid the prosecution bar;

- the party requesting the prosecution bar (here, Mann) also having three pending patent applications regarding the same technology (*i.e.*, "similar or corresponding information") and products in contention between the parties.

The unreported *Sibia* decision [Oppn. p.5] is inapt because the attorney to be barred did not prosecute the patent-in-suit – he was actually an attorney for the accused infringer – and so could not have been involved in the inequitable conduct alleged.  For the same reason, he could not have been prosecuting progeny patents descending from the patent-in-suit.  Most  critically, Apio ignores the procedural posture of *Sibia*:  this appeal came to the Federal Circuit on a writ of mandamus so relief was "available only in extraordinary circumstances to correct a clear abuse of discretion or usurpation of judicial power" and the right to issuance of the writ had to be "clear and indisputable."[13]  This standard of review renders *Sibia*'s result inapplicable here.

---

[12]    *Safe Flight Instrument Corp. v Sundstrand Data Control, Inc.*, 682 F.Supp. 20 (D.Del. 1988) [See Mann's Mot., p.3, n.3].  *U.S. Steel* is quoted in Mann's Motion at page 4.

[13]    *In re Sibia Neurosciences, Inc.,* 1997 WL 688174 at *2 (Fed.Cir. 1997).

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1        Apio cites [Oppn., p.6] *Avocent* for the proposition "that status as a patent litigator alone is

2   not enough to show advice and participation in competitive decision-making"[14] – which Mann

3   doesn't dispute.  The litigating attorney in *Avocent*, however, was not the same attorney who

4   prosecuted the patent-in-suit, nor had the patent prosecutor appeared in that case in any capacity.[15]

5   Moreover, the attorney in *Avocent* demanding access to confidential documents was not at the

6   epicenter of the inequitable conduct allegations, and was not currently prosecuting related progeny

7   patent applications asserted against the opposing party.

8        The unreported *Trading Technologies* decision from Illinois cited by Apio rests on a

9   factual finding that the attorney sought to be barred was "primarily a litigator" who had only "in

10  the past, become incidentally involved in patent applications by, for example, participating in

11  interviews at the PTO, where . . . he acts as an advocate, not as a drafter of specifications and

12  claims, and certainly not as one involved in his client's decisions regarding pricing, marketing,

13  product design or the like."[16]  Mr. Sheldon's involvement has been far more than "incidental."

14  **III.  A narrowly-tailored prosecution bar is proper  under FED.R.CIV.P. 26(c)**

15       Apio's Opposition asserts that the modest one-year prosecution bar proposed by Mann

16  would cause Apio "significant harm," incorrectly claiming that if the bar is granted, Apio "must

17  replace its litigation team, or give up the patent prosecution counsel its parent has used for over 15

18  years." Opposition, p.2.  Mann's proposed prosecution bar doesn't bar the entire SHELDON MAK

19  firm –  it just bars individual lawyers who are viewing the opposing party's confidential

20  information from doing patent prosecution work related to the disclosed technology for a short

21  time ending one year after this litigation concludes.[17]  Moreover, the bar applies with equal force

22  to Mann's counsel.  Under Mann's narrowly tailored proposed protective order, *only* those

23  ───────────────────

    [14]  *Avocent Redmond Corp. v Rose Electronics, Inc.,* 242 F.R.D. 574, 579 (D.Wash. 2007).

24  [15]  *Avocent,* 242 F.R.D. at 579.

25  [16]  *Trading Technologies I'ntl, Inc. v eSpeed, Inc.,* 2004 WL 2534389 (N.D. Ill.) [Exhibit D to
    Apio's Opposition].

26  [17]  Compare the 2-year post-litigation time period found reasonable in *Chan v Intuit, Inc.*, 218

27  F.R.D. 659, 662 (N.D. Cal. 2003).

28

1   individuals who receive *highly confidential technical or business information from the opposing*

2   *party* are barred from substantive involvement in the prosecution of patent applications

3   specifically *relating to the disclosed technology,* and then *only from the time of the disclosure*

4   *until one year after this litigation concludes.*

5          Apio's Opposition nowhere articulates a compelling reason why Mann's highly

6   confidential technical and business information must be viewed by Mr. Sheldon, or why access by

7   Marc Karish (a registered patent attorney[18] whose signature appears on virtually every formal

8   paper and piece of correspondence between the parties in this litigation) is insufficient.  The

9   Opposition doesn't assert that Mr. Karish has any significant involvement in the prosecution of

10  Apio's patent applications – the file history indicates that Mr. Karish had little or no involvement

11  with the prosecution of the patent-in-suit, and his name seems to have only very recently surfaced

12  in the prosecution of the progeny applications descending from the '818 patent.[19]

13  **A.    Mann's proposed prosecution bar will not unduly prejudice Apio**

14  **(1)    *Apio exaggerates Mr. Sheldon's purported indispensability***

15  (a)    The technology at issue is – after all – a disposable plastic food tray, not the Hubble Space

16  Telescope.  Contrary to Apio's hyperbole, no unusual effort or ability is required for a patent

17  litigator or prosecutor to understand this technology.

18  (b)    Review of the patent-in-suit and file history is not a daunting task because there is only

19  one patent-in-suit, a very thin file history, and there has been no re-examination at all.

20  (c)    Mr. Sheldon has obligingly attested that his litigation co-counsel, Mark Karish, already has

21  a "background . . . particularly suited to both Apio's patent prosecution and the present

22  litigation."[20]

23  (d)    It is not "very expensive and time-consuming to bring new prosecution counsel up to

24  speed" [Apio's Opposition, p. 4] because Mr. Karish is already "up to speed."  Apio's argument

25  _____

[18]    Exhibit B to the 5/27/08 Declaration of Jeffrey G. Sheldon ("Sheldon Decl.")

26  [19]    See Crawford Decl., ¶3 [Ex 1].

27  [20]    Declaration of Jeffrey G. Sheldon [dkt. #33] in support of Apio's Opposition, ¶ 13.

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1   here is refuted by Mr. Sheldon's own Declaration, which states:  "[m]uch of Apio's patent drafting

2   and prosecution is done by a patent agent, Tim Richardson, who is not employed by SMRA."[21]

3   (e)    Apio's Opposition [pp. 3, 9] acknowledges that the SHELDON MAK firm contains no less

4   than *twelve* patent prosecutors, and that most of Apio's patent prosecution work is performed by

5   outside patent agent(s) like Tim Richardson, all presumably "up to speed" on Apio's simple

6   disposable plastic party trays sufficiently to fill in for Mr. Sheldon (or other subject to the

7   proposed bar) until the prosecution bar ends one year after this litigation concludes.  Apio's

8   "severe prejudice" is merely lawyerly argument, and is contradicted by Apio's own statements.

9   **2.    *Mann's substantial allegations of inequitable conduct justify a prosecution bar***

10         A prosecution bar is justified in view of Mann's *highly specific* allegations of *inequitable*

11  *conduct* occurring during Mr. Sheldon's prosecution of the application that eventually issued as

12  the '818 patent.  As set forth in Mann's Answer and Counterclaims, these actions include the

13  suppression of highly material prior art that would have prevented the issuance of the '818 patent

14  now being asserted by Mr. Sheldon on behalf of Apio against Mann.[22]  This constitutes, all by

15  itself, *intensely* "competitive decisionmaking" fully justifying the requested prosecution bar.

16  **B.    Even inadvertent disclose of Mann's highly confidential proprietary information
17          would cause severe economic injury to Mann**

18  **1.    *Apio's informed manipulation of the scope of its claims would harm Mann***

19         Apio posits:  "it is hard to imagine how any discovery obtained by Apio in this lawsuit can

20  possibly impact the three pending applications given that they are already constrained by the

21  disclosures filed far before this lawsuit."  Oppn. pp. 7-8. Yet the file history of the patent-in-suit is

22  replete with examples of Apio's attempts to improperly broaden the scope of its claims during

23  prosecution to stretch claims to cover competitive products – even *after* the application was

24  allowed.  When Apio learned about Foxy Foods' compartment container body,[23] Apio quickly

25  ────────────────

[21]   Declaration of Jeffrey G. Sheldon [dkt. #33] in support of Apio's Opposition, ¶ 11.

26  [22]   See Mann's Answer and Counterclaims, ¶¶ 20-39 [dkt. #4].

27  [23]   7/21/06 Disclosure Under 37 CFR 1.56, '818 file history, p.2, lns. 8-15 [Exhibit 11].

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1 submitted a late amendment changing claim 64 to limit it to a "single" continuous wall.[24]  This

2 was done so Apio could argue that the remaining independent claims (which simply refer to a

3 "continuous wall") would not be limited to the disclosed single peripheral wall to improperly

4 ensnare compartmented trays like Foxy's and to make it more difficult for competitors to "design

5 around" Apio's patent, and was improper because there was no support in the initial application for

6 anything but a single continuous wall.

7        An another example, Apio's initial disclosure to the PTO described an "atmosphere control

8 member" as a gas-permeable patch placed over a window in a container body or sealing sheet.[25]

9 Later, wishing to improperly broaden the scope of its claims to ensnare competitive products that

10 did not use such a patch, Apio's counsel slipped remarks in the file history stating that an

11 "atmosphere control member" could just be a hole in a container body or sealing sheet[26] – utterly

12 without support in the application's disclosure.  Again, these actions demonstrate the danger of

13 allowing Apio's counsel access to Mann's confidential information while the same counsel is at

14 the same time trying to obtain additional patent protection that would cover Mann's products.

15 Such actions are simply unfair and should be precluded by this Court in order to avoid further

16 attempts to improperly manipulate the scope of Apio's pending patent applications using Mann's

17 confidential information, particularly in light of the strong evidence of inequitable conduct that

18 Mann has already uncovered in connection with the prosecution of the patent-in-suit.

19        Contrary to Apio's assertions, there's no need "to imagine" how discovery obtained by

20 Apio could impact the scope of pending applications – the file history of the patent-in-suit

21 provides many concrete examples.  A patent prosecutor can amend claim terms and place remarks

22 in the file history to attempt to improperly broaden the scope of claim terms beyond the actual

23 disclosure of the application to cover competitive products that would otherwise avoid the claims,

24 and to make it more difficult for competitors to "design around" the patent claims.

---

25 [24]   3/6/06 Amendment After Notice of Allowance Under Rule 312, pp. 9, 13 [Exhibit 14].

26 [25]   Apio's 8/16/02 Specification, p.8, lns. 11-13 [Exhibit 12].

27 [26]   Apio's 11/3/04 Reply, p.22, lns. 5-12 [Exhibit 13].

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1

2

**2.** ***Apio's discovery requests seek highly confidential information of the type the courts properly bar from access by competitive decision-makers***

3   Apio's claim that "Mann fails to provide a single example justifying the need for a

4   prosecution bar" [Oppn. p.6] is disingenuous because Apio's very first Interrogatory demands *all*

5   facts relevant to noninfringement.[27] Thus, Apio's highly confidential information about why its

6   products and manufacturing don't infringe the claims of the '818 patent would be very useful to

7   Apio as it attempts to alter the scope of its pending patent applications' claims in order to ensnare

8   Mann and/or to make it difficult to "design around" Apio's patent claims.

9   Apio's document requests[28] broadly fish for: "All documents and things relating to

10  manufacturing of Mann Products since September 1, 2000" [Req. 4]; "All communications that

11  question or challenge infringement, validity, or enforceability of the patent-in-suit" [Req. 9]; "All

12  documents and things related to Mann's affirmative defenses to Apio's claim in this matter,

13  including but not limited to all attorney opinion letters and memoranda" [Req. 12]; "All

14  documents and things related to Mann's claims against Apio in this matter, including but not

15  limited to all attorney opinion letters and memoranda" [Req. 13]; "All documents identified in

16  your responses to Apio's First Set of Interrogatories" [Req. 14]; "All documents that refer to,

17  relate to or in any way support Mann's contentions in paragraphs 14, 15, 17, 20, 22, 25, 26 of the

18  Answer and Counterclaim" [Req. 16]; and "All attorney opinion letters and memoranda regarding

19  infringement, invalidity or unenforceability of the patent-in-suit" [Req. 17]. The extremely broad

20  scope of information sought by Apio appears (albeit improperly) to encompass Mann's products

21  and plans for products outside the scope of Apio's pending application claims, but potentially

22  vulnerable to attack through improper claim amendments or comments placed in the file history

23  informed by the highly confidential technical information gleaned from Mann during discovery.

24

25

26  [27]   Apio's Interrogatory 1 re noninfringement [Exhibit 17].

27  [28]   Selected pages from Apio's Document Requests [Exhibit 18].

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1    Further, the financial and sales information sought by Apio [Reqs. 2, 3] could also be used

2  to strategically threaten infringement actions based on a calculation that, *e.g.,* a low current sales

3  volume of those products may not justify large litigation expenditures, regardless of the merits.

4    The reality of the threat to Mann is shown by the Power of Attorney forms and transmittal

5  sheets to the United States Patent and Trademark Office [Exhibit 9] for three Apio applications

6  *currently* being prosecuted, each of which are direct progeny applications from the very patent-in-

7  suit here.  On each of these forms, "Jeffrey G. Sheldon" is listed as the principal attorney to whom

8  all correspondence should be directed.  Apio has manifested its awareness of the competitive

9  threat these pending applications pose for Mann when it sent notice pursuant to 35 USC

10  §154(d)(1) (while this motion for a protective order was pending.) to Mann's counsel that "At least

11  the Mann products that are the subject of [this lawsuit] are within the scope of at least one claim of

12  each of the published applications."[29]  Mr. Sheldon in manipulating the scope of Apio's patent

13  claims during the patent application process and then suing Mann, a direct competitor, on those

14  very claims – intensely competitive decisionmaking under any standard.

15  **IV.    Conclusion**

16    The parties have agreed on all aspects of the proposed protective order, with the exception

17  of the provision of a prosecution bar.  The Court is respectfully requested to include a prosecution

18  bar in its protective order because the highly confidential business and technical information of

19  the parties in this case must be shielded from access by competitive decision-makers.  This

20  authority is specifically authorized by FED.R.CIV.P. 26(c), and is consistent with the holdings and

21  reasoning in the Federal Circuit's *U.S. Steel* case, the 9th Circuit's *Brown Bag* case, and the

22  Northern District of California's *Chan* case, as shown above.

23

24  [29]  May 27, 2008 letter from Marc Karish to Michael Crawford and first page of each attachment
          thereto [Exhibit 10].

25

26

27

28

**Mann's Reply to Apio's Opposition to Motion for Protective Order**

#1334592

1

2                                                    Respectfully submitted,

3    June 10, 2008                                   MANN PACKING COMPANY, INC.
                                                     by its attorneys
4

5                                                    O/S
                                                     _____
6                                                    Joseph S. Presta, Va. Bar No. 29645
                                                     Michael E. Crawford, Va. Bar No. 39566
7                                                    NIXON & VANDERHYE P.C.
                                                     901 North Glebe Road
8                                                    Arlington, VA 22203
                                                     703-816-4000 (main)
9                                                    703-816-4100 (facsimile)

10                                                   Virginia A. Crisp, Cal. Bar No. 121387
                                                     COBLENTZ, PATCH, DUFFY & BASS, LLP
11                                                   One Ferry Building, Suite 200
                                                     San Francisco, CA 94111-4213
12                                                   415-391-4800 (main)
                                                     415-989-1663 (facsimile)
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | | | Case No. 5:07-CV-5628-JF/PVT |
|---|---|---|---|
| **Mann's Reply to Apio's Opposition to Motion for Protective Order** | | | |

#1334592