**EXHIBIT "H"**

07/21/2006  15:13  6508542384          RICHARDSON        **RECEIVED**    PAGE  01/15
                                                        CENTRAL FAX CENTER

                                                        JUL 2 1 2006

Docket No. 14181

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:   Pratte                    Group Art Unit: 1761

5  Serial No.:  10/222,435              Examiner: Robert Madsen (who has left the

Filing Date: August 16, 2002                   Office)

Title:       Party Tray

### Issue Fee paid March 2, 2006

*15 pages total.*

10  Mail Stop Issue Fee

Commissioner for Patents

P.O. Box 1450

Alexandria, VA 22313-1450

15                          <u>DISCLOSURE UNDER 37 CFR 1.56</u>

    In fulfilling the duty of candor and good faith, the information set out below
is disclosed to the Office in accordance with 37 CFR § 1.56. Applicant
understands that this Disclosure Statement will be placed in the file but will not
20  be considered by the Examiner (37 CFR 1.97 and MPEP 609.01).

    This information is being disclosed to the Office because it has been
supplied to the Applicant in communications from a lawyer, R. Scott Welde Esq.,
who apparently represents a third party (Foxy Foods, a company manufacturing
25  and supplying party trays), and who has asserted that the information is material.
Applicant disagrees. However, out of an abundance of caution, the information is
being disclosed to the Office. Out of the same abundance of caution, Applicant
is also disclosing to the Office additional information about party trays which were
manufactured and sold by the assignee of the Applicant, Apio, more than one
30  year before filing date of this application, and which are in some respects similar

**CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 CFR 1.8**
IHerebyy certify that this paper is being ssent byfacsimile transmission to the United States Patent and Trademark Office
(571-273-8300) on July 21, 2006
Typed name of person signing this certificate: T. H. P. Richardson, Reg No. 28,805, Tel No. 650 854 6304
Signature

PAGE 1/15 * RCVD AT 7/21/2006 6:09:53 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/17 * DNIS:2738300 * CSID:6508542384 * DURATION (mm-ss):06-44

to the party trays allegedly manufactured by Foxy Foods.  As with the information about party trays allegedly manufactured by Foxy Foods, Applicant believes that the information about the party trays manufactured by Apio is not material, and is disclosing it out of an abundance of caution.

5

**Information provided by the lawyer for Foxy Foods.**

In early March, 2006, after the issue fee had been paid on this application (on March 2, 2006), Applicant's attorney received a letter from Mr. Weide.
10   Attached to that letter was a copy of an e-mail message which appears to be dated January 5, 2005, and to be from Jerry.Hull@Sam's Club.com (Jerry Hull, according to the message, being a Senior Produce Buyer at Sam's Club), to *ndacosta@foxyproduce.com,* and which includes four photographs of a party tray described as *"the tray style SAM'S Club purchased from Foxy Foods in January*
15   *2001"*.  Attached hereto as Exhibit A is a copy of that e-mail message.  Since the photographs in Exhibit A are not very clear, and may well become less clear through reproduction, the following description of the photographs is provided.

The photographs show a circular party tray comprising a container body
20   having six compartments, each containing fresh vegetables.  The compartments surround a generally cylindrical dip container in the center of the container body.  A transparent sheet is sealed to the rim of the container body over the compartments and the dip container.  There is a rectangular opaque patch in the transparent sealing sheet.  The patch is positioned between the outer periphery
25   of the dip container and the rim of the container body and somewhat closer to the rim.  A transparent lid fits over the rim of the container body and covers the transparent sealing sheet.  It is not apparent from the photographs that there are any ribs or other conformations on the transparent lid, except around the periphery where the lid engages the rim of the container body.

30

2

H-002

In two of the photographs, the transparent sealing sheet and the transparent lid are on top of the vegetables, i.e. the container body is in the orientation in which the vegetables were loaded into the compartments. In one of those photographs (underneath which is typed *"Film and membrane on tray with rigid tray"*), a label covers most of the flat top of the dip container, leaving an unmarked peripheral portion; the label is visible through the transparent sheet and lid. The other of those photographs (underneath which is written *"Atmosphere control member/membrane on film"*) shows only a part (a part of the unmarked peripheral portion) of the flat top of the dip container.

5

10

In the other two photographs, the party tray has been inverted, so that the transparent sealing sheet and the transparent lid are underneath the vegetables. In one of those photographs (which has nothing typed underneath it), there appears to be a label on the curved side of the dip container, but the label is partially obscured by the container body and the vegetables; there is no label on the flat bottom surface of the dip container (which is visible through the bottom surface of the container body). In the other of those photographs [underneath which is written *"Foodstuffs resting on sealing sheet (with a membrane) and tray under sealing sheet This picture also shows the partitions"*], the dip container cannot be seen.

15

20

Mr. Weide's letter accompanying the e-mail message attached as Exhibit A states (in relevant part): -

25

*As indicated, this tray had the following features:*

*1) a container body having a base, an upstanding wall, a rim and partitions;*

*2) a sealing sheet which attaches to the rim of the container body, the sealing sheet having an atmosphere control member; and*

30

*3) a ribbed support tray which is located over the sealing sheet.*

3

H-003

*As illustrated, the tray is used to present foodstuffs such as fresh vegetables. In use, the body is loaded, the sealing sheet is applied to the body, the tray is connected, and then the entire tray is inverted so that the container body becomes the "top" of the tray for presentation/display.*

5

*It appears that this product and its method of use anticipate the claims which have been allowed in Apio's application or, at a minimum, the claims are limited in breadth so as to not otherwise cover the container or its method of use.*

10

In mid-April, 2006, Mr. Weide sent to Applicant's lawyer physical samples of the party tray allegedly purchased from Foxy Foods in 2001. The sample trays did not contain vegetables, did not carry any labels, and did not contain a dip container. Attached hereto as Exhibits B1, B2 and B3 are drawings of those

15   samples. Exhibit B1 shows a perspective view of the container body and sealing sheet, without the lid. Exhibit B2 shows a plan view and a cross-section with enlarged detail, of the container body and sealing sheet, without the lid. Exhibit B3 shows a perspective view, a plan view and a cross-section with enlarged detail, of the lid. The transparent lid (which fits over the sealing sheet and

20   engages the container body) has around its periphery conformations which engage the rim of the container body, and around its center a narrow circular conformation which corresponds generally to the outer periphery of the lid of a dip container placed in the center of the party tray.

25   Mr. Weide's letter accompanying the mid-April physical samples states (in relevant part): --

*My client is attempting to gather supporting documents regarding this container, including information regarding its production and use.*

30

4

H-004

*I understand that the container was normally marked with a product label. This label was placed on the side-wall of the container. So labeled, a consumer had an unobstructed view the foodstuffs through the container when the container was oriented with the either lid at the bottom or the*

5     *base at the bottom, since both the lid and base are transparent.*
*(emphasis in the original)*

*In this regard, the container certainly meets the "whereby the party tray can be displayed for sale in a display orientation in which the*

10    *foodstuffs are viewed by a shopper through the container body" language of claim 35 of the Apio application. Moreover, in that these containers were at one or more times displayed in the "lid" side down orientation, step (E) of claim 35 was satisfied by prior use of this container.*

15    The Apio application referred to in the letter is the present application, which is assigned to Apio.

In response to requests for evidence that the containers in question "were at one or more times displayed in the 'lid' side down orientation", and for a

20    physical sample of the dip container forming part of the party tray, Mr. Weide, in mid-May, 2006, supplied a physical sample of the tray containing a dip container. Mr. Weide's letter accompanying the mid-May physical samples states (in relevant part):

25    *My client is amassing evidence regarding the use of this tray in the "lid" side down orientation. As you can appreciate, it is taking some time to obtain this evidence because it is primarily in the possession of the original users of these trays.*

30    *In that the tray includes a plurality of ribs which extend from the lid and which therefor [sic] create an air space between the lid and the*

5

H-005

*sealing sheet which permits air circulation, it is unclear to my client why the tray does disclose* [sic] *this element of the claim (as asserted in your earlier letter of April 17, 2006). I note that the claim limitation does not recite any particular location of the ribs, the degree of air circulation or other feature would appear to distinguish over this tray configuration. My client would appreciate your client indicating in greater detail the basis for its assertion to the contrary.*

5

The mid-May sample is substantially the same as the mid-April sample except that it includes the dip container. The flat lid of the dip container is adjacent to the transparent sealing sheet, and carries a label identifying the contents of the container ("Ranch Veggie Dip"). This label is fully visible through the transparent sealing sheet and the transparent lid when the party tray is in the loading orientation, i.e. when the vegetables (when present) rest on the base of the container body. There is no label on the flat base of the dip container. There is also a second label identifying the contents of the dip container ("Ranch Veggie Dip") and secured to the curved surface of the dip container. The second label will be at least partially obscured when the container body is loaded with vegetables. The writing on the second label is the right way up when the party tray is in the loading orientation, i.e. the writing is the wrong way up if the party tray is inverted. The dip container, and the recess in the container body into which the dip container fits, are shaped so that it is not possible place the dip container with its lid adjacent to the bottom of the main container body. Thus, the only orientation of the party tray in which the labels can be read is the loading orientation.

10

15

20

25

Applicant does not admit

(A)      that the party tray samples supplied in mid-April and mid-May, 2006, are substantially identical to party trays which SAM'S Club purchased from Foxy Foods in January, 2001 (after the party tray had

30

6

H-006

been loaded with vegetables, and the transparent sealing sheet and transparent lid applied thereto); or

(B)    that the party tray itself (i.e. the party tray without regard to its orientation) shown in the photographs communicated in early March,

5    2006, is substantially identical to party trays purchased by Sam's Club from Foxy Foods in January, 2001; or

(C)    that, even if the party tray itself shown in the photographs communicated in early March, 2006, is substantially identical to party trays purchased by Sam's Club from Foxy Foods in January, 2001, such trays

10    were at any time placed in the inverted orientation (i.e. with the transparent sheet and transparent lid underneath the vegetables) as shown in two of the photographs.

However, even if it is assumed, for the purposes of argument, that the

15    facts set out in paragraphs (A) and (B) are true, it is clear that the party trays which Sam's Club purchased from Foxy Foods in January, 2001 (and their preparation and use), are different from anything that has ever been claimed in this application.  An essential feature of all the method claims in this application, both as filed and as allowed, is that the container body (after it has been filled

20    with the foodstuffs while in the loading orientation, the sealing sheet sealed thereto, and the support tray placed thereover) **is turned upside down into the display orientation**. In the application as filed, there were also claims, now canceled, which do not have that essential feature, but which require that the partitions should be removable partitions, as distinct from the conventional cavity

25    wall partitions in the Foxy party trays.

Thus, putting together the information provided by the early-March photographs, the mid-April samples and the mid-May samples, the following conclusions can be reached.

30

7

H-007

1.     The party tray in the mid-March photographs was assembled only recently, i.e. not before the filing date of the present application.

Two facts (in particular, there are others) lead to this conclusion.

5          (A)     No such party tray could be in existence for more than a relatively short period (because the vegetables would go bad).

(B)     It has not been suggested that the photographs were taken in 2001. Moreover, the description of the photographs as "the tray **style** SAM' S Club purchased from Foxy Foods in January 2001" (emphasis added) confirms that

10    the tray in the photographs is a re-creation of a tray that allegedly existed in 2001.

2.     Foxy's 2001 trays (i.e. the party tray in the early March photographs, and the mid April and mid-May party tray samples) were not intended to be turned

15    upside down, i.e. from the loading orientation into the display orientation, at any time.

Two facts (in particular, there are others) lead to this conclusion, namely: -

(A)     In order for the identifying labels on Foxy's 2001 trays to be read by a shopper, the party tray must be in the loading orientation, with the

20    foodstuffs resting on the base of the container.  It is inconceivable that anyone would design and market a tray which required a purchaser to read an identifying label upside down, or would place an identifying label where the label could only be read by picking up the tray and turning it upside down.  Such a tray would not only be difficult to sell, but also would

25    fail to comply with FDA food labeling requirements.

(B)     If, contrary to the intended use of the tray, the Foxy 2001 tray had been turned upside down, the foodstuffs would then have rested on the sealing sheet, which is thin and flexible.  This would have forced the

30    sealing sheet, including the atmosphere control member, into contact with the lid.  The section of the lid which would have been contacted by the

8

H-003

atmosphere control member is completely flat, and as a result there would have been intimate contact between the atmosphere control member and the lid. This intimate contact would have rendered the atmosphere control member inoperative.

5

Mr. Weide, in the letter accompanying the mid-May samples, refers to a "*plurality of ribs which extend from the lid*" of Foxy's trays and "*create an air space between the lid and the sealing sheet which permits air circulation*". It appears that the "*ribs*" referred to in that statement are the

10    conformations which form a circular pattern corresponding to the top of the dip container. Whether or not those conformations permit air circulation around the top of the dip container under any circumstances, they are too far removed from the atmosphere control member to permit air to circulate between the lid and the atmosphere control member if the party tray is

15    turned upside down, i.e. they will not prevent the intimate contact which would render the atmosphere control member inoperative, as noted above. Thus, the allowed claims in this application are yet further distinguished from the 2001 Foxy Foods party trays by the requirement that the support tray comprises ribs such that, after step (E) -- i.e. the step

20    in which the party tray is turned upside down -- air can circulate between the support tray and the atmosphere control member.

**Party trays manufactured and sold by Apio more than one year before the filing date of the application.**

25

Applicant has previously disclosed information about party trays which are prior art to this application, including the Apio Trade Brochures which are of record. In addition, as noted at the beginning of this Disclosure Statement, more than one year before filing date of this application, Apio sold party trays which are

30    in some respects similar to those allegedly sold by Foxy Foods. Like the party trays illustrated in the Trade Brochures previously disclosed and the party trays

9

H-009

allegedly sold by Foxy Foods, the Apio party trays now disclosed were not designed to be, and were not, turned upside down for display.

     The Apio party trays now disclosed comprised a transparent container

5    body with multiple compartments formed by cavity walls extending from the base of the container body; fresh vegetables within the compartments; a dip container having its base adjacent to the bottom of the container body; a sealing sheet sealed to the rim of the container body; and a transparent lid placed over the sealing sheet.  The dimensions of the dip container were such that the lid of the

10   dip container could not be placed adjacent to the base of the container body. The dip container carried labels which could only be read when the party tray was in the loading orientation. The container body included a window which was covered by an atmosphere control member.  The sealing sheet did not include a window covered by an atmosphere control member. The transparent lid was

15   substantially the same as the lid on the mid-April and mid-May physical samples referred to above.

                                      Respectfully submitted

20

                                      T.H.P.Richardson

                                      Registration No. 28805

                                      Tel No. 650 854 6304

10

H-010

-----Original Message-----
From: Jerry Hall [mailto:jerry.hall@samsclub.com]
Sent: Wednesday, January 05, 2005 5:35 AM
To: edison@edisongroupco.com
Subject: RE: Veg-Tray

This is the individual stores item purchased since Paper-Pak's in January, 2001.

Jerry Hall
Senior Sourcing Buyer
(479) 277-0782
jerry.hall@samsclub.com

EXHIBIT A. Page 1 of 2 pages

SAMS CLUB CONFIDENTIAL



BEST AVAILABLE COPY

H-011

EXHIBIT A. page 2 of 2 pages.

Trays were shipped to Sam's Club & Wal-Mart in January 2001



Although the sealing sheet clings to the film



Film and membrane cling to the tray



Foodstuffs resting on sealing sheet (with membrane) and tray under sealing sheet
This picture also shows the partition

BEST AVAILABLE COPY
H-012

07/21/2006  15:13  6508542384              RICHARDSON                    PAGE  13/15



ATMOSPHERE CONTROL MEMBER

SEALING SHEET

EXHIBIT B1

PAGE:13/15 * RCVD AT 7/21/2006 6:09:53 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/17 * DNIS:2738300 * CSID:6508542384 * DURATION (mm-ss):06-44

BEST AVAILABLE COPY

H-013

EXHIBIT B2

AVAILABLE COPY

H-014

EXHIBIT B3

DETAIL G
SCALE 4 : 1

DETAIL H
SCALE 4 : 1

SECTION B-B
SCALE 1 : 1

Ø15.00

BEST AVAILABLE COPY

H-015



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

7590    06/16/2006

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA  91101

| EXAMINER |
|---|
| CANO, MILTON I |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 06/16/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

H-016

| *Response to Rule 312 Communication* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 10/222,435 | PRATTE, WESLEY  PAUL | |
| | Examiner | Art Unit | |
| | Milton I. Cano | 1761 | |

*– The MAILING DATE of this communication appears on the cover sheet with the correspondence address –*

1. ☒ The amendment filed on <u>06 March 2006</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☒ entered.

   b) ☐ entered as directed to matters of form not affecting the scope of the invention.

   c) ☐ disapproved because the amendment was filed after the payment of the issue fee.

        Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1)

        and the required fee to withdraw the application from issue.

   d) ☐ disapproved.  See explanation below.

   e) ☐ entered  in part. See explanation below.

Milton I. Cano
SPE
Art Unit: 1761

H-017



Docket No. 14181

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Pratte                          Group Art Unit:  1761

Serial No.:   10/222,435                     Examiner: Robert Madsen (who has left the

5   Filing Date: August 16, 2002                  Office)

Title:         Party Tray


Mail Stop Issue Fee

Commissioner for Patents

10   P.O. Box 1450

Alexandria, VA 22313-1450


### AMENDMENT UNDER 37 CFR 1.312

15   Sir,


This paper is a request for amendment under 37 CFR 1.312.


Since Examiner Madsen has left the Office, SPE Cano has agreed

20   informally to review this paper.


**"Special" Status of This Application.**


As noted in the Reply mailed on January 16, 2006, and at the interview on

25   January 12, 2006, Applicant is extremely anxious that this application should

proceed  to grant with the minimum delay, and it was indicated informally at the

interview that, in view of the history of this application, it might be possible for

future processing to be carried out on the basis that the application had been

"made special."  Applicant is grateful for the rapid issuance of a Notice of

30   Allowance in accordance with that indication, and hopes that, for the same


1

H-018

reasons, the printing and grant of the patent can likewise be advanced on the basis that the application has been "made special".

**Amendments to the Specification**

5

Amendments to the specification begin on page 3 of this paper.  The amendments return parts of the specification to the wording in the application as filed, or correct minor and obvious errors.

10   **Amendments to the Claims**

Amendments to the claims are reflected in the listing of claims which begins on page 4 of this paper.  The Notice of Allowance states that the allowed claims have been renumbered as claims 1-23.  However, the renumbered claims have

15   not been sent to Applicant, and the claims set out below are therefore based on the claims before allowance. This was the form of amendment recommended by SPE Cano in a recent telephone conversation.

In the amended claims set out below, the only amendment is to claim 64.

20

**Remarks/Arguments**

Remarks/arguments begin on page 13 of this paper.

2

H-019

**Amendments to the Specification.**

1.      Please cancel the new paragraph Inserted after page 6, line 19.  The new paragraph begins with the words "in this method..." and ends with the words

5      "... packaging atmosphere is air"; is set out in full on page 3 of the Reply filed November 3, 2004; and was entered (see paragraph 1 of the Office Action mailed February 9, 2005).

2.      Please rewrite the paragraph beginning on page 8, line 6 (with the words

10      "The sealed packages...") and ending on page 8, line 13 (with the words "... in the packaging atmosphere.")  as follows.  Amendment of this paragraph was previously requested on page 3 of the Reply filed November 3, 2004, and the requested amendment was entered (see paragraph 1 of the Office Action mailed February 9, 2005).  The paragraph is now been amended so that it is identical

15      with the original paragraph in the specification as filed

The sealed packages referred to in describing the invention <u>preferably include an atmosphere control member.</u>  ~~include one or more atmosphere control members.~~ The term "atmosphere control member" is used herein to denote any

20      member which modifies the rates at which oxygen and carbon dioxide pass into and out of the sealed package.  Atmosphere control members are well-known and are described for example in U.S. Patent No. 6,376,032 and WO 00/0477, the entire disclosures of which are incorporated herein by reference for all purposes. An atmosphere control member can for example be placed over a

25      window in the container body and/or over a window in the sealing sheet.  ~~The atmosphere control member(s) are preferably such that at 22°C at least 75% of the oxygen entering the packaging atmosphere (i.e. the atmosphere within the sealed package surrounding the foodstuffs) passes through the atmosphere control member(s), and the atmosphere control member(s) can provide~~

30      ~~substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.~~

3

*H·020*

3.    Please rewrite the paragraph beginning on page 10, line 24 (with the
words "The support tray...") and ending on page 11, line 5 (with the words
"... viewing the foodstuffs.") as follows.

5

The support tray is constructed so that a user can pick up the support tray
with the sealed party tray package on it, and so that it protects the sealing sheet
during handling of the party tray.  Preferably, the support tray is made by
thermoforming or otherwise molding a suitable polymeric material, e.g.

10    polyethylene.  The thickness of the support tray is for example 0.02-0.08 inch
(0.5-2 mm). example 0.02-0.08 in. (0.5-2 mm). The support tray can be formed
with corrugations, corrugated, ribs or other conformations which increase its yes
meter structural strength.  When the sealing sheet includes an atmosphere
control member, the support tray preferably comprises ribs such that air can

15    circulate between the support tray and at least the portion of the sealing sheet
including the atmosphere control member.  The support tray is preferably black
or another solid color to provide a contrasting background for viewing the
foodstuffs.

20

4

H-021

**Amendments to the Claims**

This listing of claims will replace all prior versions, and listings, of claims in the application.

5

**Listing of Claims**.

1-34. (Canceled)

10    35. (Previously presented)        A method of preparing a party tray which comprises the steps of

    A)    providing a container body which

        (i)    is composed of a transparent polymeric material,

        (ii)    has a depth of 1 to 4 in.,

15        (iii)    has a circumference of 30 to 100 in.; and

        (iv)    comprises

            1)    a base,

            2)    a continuous wall which extends away from the base and is contiguous with the base,

20            3)    a continuous rim which is contiguous with the wall, and

            4)    partitions which extend away  from the base in the same direction as the wall; and

        (v)    has a loading orientation in which the wall extends upwards

25            from the base, and the partitions extend upwards from the base and create fillable compartments within the container body; the partitions being cavity walls, and the container body having been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time;

30        B)    while the container body is in the loading orientation, placing foodstuffs in  the compartments so that the foodstuffs rest on the base, at

5

H-022

least some of the foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

C)      after step B, and without any intermediate step between step B and step C, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes an atmosphere control member included in the sealing sheet;

D)      after step C, placing a support tray over the sealing sheet; and

E)      after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray, the support tray comprising ribs such that, after step (E), air can circulate between the support tray and the atmosphere control member;

whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

36. (Previously presented)      A method according to claim 35 wherein the support tray has a solid color.

37. (Previously presented)      A method according to claim 35 wherein the atmosphere control member covers a window in the sealing sheet.

38. (Canceled)

39. (Previously presented)      A method according to claim 35 wherein the ribs on the support tray are discontinuous, upstanding ribs.

40. (Canceled)

6

H-023

41. (Previously presented)    A method according to claim 35 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

5

42. (Previously presented)    A method according to claim 35 wherein the atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

10    43. (Previously presented)    A method according to claim 35 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

15    44. (Previously presented)    A method of preparing a party tray which comprises the steps of

 A)    providing a container body which

  (i)    is composed of a transparent polymeric material,

  (ii)    has a depth of 1 to 4 in.,

20      (iii)    has a circumference of 30 to 100 in.; and

  (iv)    comprises

   1)    a base,

   2)    a continuous wall which extends away from the base and is contiguous with the base,

25       3)    a continuous rim which is contiguous with the wall, and

   4)    partitions which extend away from the base in the same direction as the wall; and

  (v)    has a loading orientation in which the wall extends upwards

30      from the base, and the partitions extend upwards from the base and create fillable compartments within the container body;

7

the partitions being cavity walls, and the container body having been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time;

B)    while the container body is in the loading orientation, placing foodstuffs in  the compartments so that the foodstuffs rest on the base, at least some of the foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes an atmosphere control member included in the sealing sheet;

D)    after step C, placing a support tray over the sealing sheet; and

E)    after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray, the support tray comprising ribs such that, after step (E), air can circulate between the support tray and the atmosphere control member;

whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

45. (Previously presented)        A method according to claim 44 wherein the atmosphere control member covers a window in the sealing sheet.

46. (Previously presented)        A method according to claim 44 wherein the support tray has a solid color.

8

H-025

47. (Previously presented)        A method according to claim 44 wherein the ribs on the support tray are discontinuous, upstanding ribs.

48. (Canceled)

5

49. (Previously presented)        A method according to claim 44 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

10  50. (Canceled)

51. (Previously presented)        A method according to claim 44 which includes; after step E, the step of displaying the party tray for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container
15  body.

52-63. (Canceled)

64. (Currently amended)        A method of preparing a party tray which
20  comprises the steps of
          A)      providing a container body which
                  (i)      is composed of a transparent polymeric material,
                  (ii)     has a depth of 1 to 4 in.,
                  (iii)    has a circumference of 30 to 100 in.;
25              (iv)     comprises
                           1)      a base,
                           2)      a single continuous wall which extends away from the
                                   base and is contiguous with the base,
                           3)      a continuous rim which is contiguous with the wall,
30                          and

9

H-026

4)    partitions which extend away from the base in the same direction as the wall, and are removably located in the container body; and

(v)    has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base and create fillable compartments within the container body; and

B)    while the container body is in the loading orientation, placing foodstuffs in  the compartments so that the foodstuffs rest on the base, at least some of the foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes an atmosphere control member included in the sealing sheet;

D)    after step C, placing a support tray over the sealing sheet; and

E)    after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray, the support tray comprising ribs such that, after step (E), air can circulate between the support tray and the atmosphere control member;

whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.


65. (Previously presented)      A method according to claim 64 wherein the partitions are composed of a polymeric material having a thickness less than 0.125 inch.


10

66. (Previously presented)        A method according to claim 64 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

5    67. (Previously presented)        A method according to claim 64 wherein the atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

68. (Previously presented)        A method according to claim 64 which
10    includes, after step E, the step of displaying the party tray for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

69-80.  (Canceled)
15

81. (Previously presented)        A method according to claim 64 wherein the container body includes by location members formed in the container body as the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the
20    wall of the container body, whereby, when all the partitions are located within the container body by the location members, each of the compartments has a fixed size.

82.  (Previously presented)        A method according to claim 64 where the
25    partitions have one or more of the following characteristics
        (a)    at least one of the partitions comprises two or more straight
        portions at right angles to each other and to the base,
        (b)    at least one of the partitions comprises two or more straight
        portions at  right angles to the base and with a curved portion between
30        them, and

11

H-028

(c)      two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles to the first partitions and to the base, some or all of the first and second partitions are slotted so that they fit together.

5

83. (Previously presented)        A method according to claim 64 wherein the support tray has a solid color.

84. (Previously presented)        A method according to claim 64 wherein the
10  ribs on the support tray are discontinuous, upstanding ribs.

85. (Previously presented)        A method according to claim 64 wherein the atmosphere control member covers a window in the sealing sheet.

12

H-029

## REMARKS

### The Amendments to the Specification.

5   The amendments to pages 6 and 8 of the specification remove the amendments requested in the reply filed November 4, 2004, which were entered (see paragraph 2 of the Office Action mailed February 9, 2005), and return the relevant passages to the text of the original specification. Applicant believes that there is basis for the previously requested amendments, but is canceling the

10 previously requested amendments in view of the rejections under 35 USC 112 set out in paragraphs 2-7 of the Office Action mailed 10/26/2005 those rejections being based upon the Examiner's perception that certain features in those claims, which are also features in the previously requested amendments, have no support in the original specification.

15

   The amendments to pages 10-11 of the specification correct minor and obvious errors.

### The Amendments to the Claims.

20

   The only amendment to the claims restricts independent claim 64 by replacing "a continuous wall" by -- a **single** continuous wall --. The container body shown in the Figures has a single continuous wall and thus provides basis for this amendment. The other independent claims (claims 35 and 44) remain in

25 broad form, covering the possibility that the container body comprises a single continuous wall or two or more continuous walls (in the same way as, as noted on page 15 of the Reply filed January 16, 2006, a sealed package which contains "an atmosphere control member" can contain a single atmosphere control member or more than one atmosphere control member).

30

13

H-030

Container bodies with two or more continuous walls are shown for example in U.S. Patent No. 4,660,716 (McMahon et al.), in particular in the Figures thereof.  McMahon was cited by the Applicant and discussed on page 4 of the Petition to Make Special filed March 11, 2003, where it is

5  noted that McMahon's compartmented tray "corresponds to the container body of the claims".  McMahon was also relied upon by the Examiner in the Office Action mailed October 26, 2005 (see paragraphs 20 and 55 of the Office Action).  Container bodies with two or more continuous walls are also shown for example in U.S. Patent Nos. 3,244,537 (Cease), 4,081,646

10  (Goltsos) and 4,574,174 (McGonigle), each of which is discussed in the Petition to Make Special filed March 11, 2003, noting that the compartmented tray of the reference "corresponds to the container body of the claims".

15

Respectfully Submitted

T.H.P.Richardson

T.H.P.Richardson

Registration No. 28805

20  Tel No. 650 854 6304

14

H-031

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**    (571)-273-2885

OIPE
MAR 0 6 2006
PATENTS

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

7590    02/08/2006

Jeffrey G. Sheldon Esq.
Sheldon & Mak    03/07/2006 JBALINA2 00000082 192090    10222435
Suite 900
225 South Lake Avenue    01 FC:2501    700.00 DA
Pasadena, CA 91101    02 FC:1504    300.00 DA
03 FC:8001    9.00 DA

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

Norman Anderson                          (Depositor's name)
_____                  (Signature)
2-2-06                                    (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

TITLE OF INVENTION: PARTY TRAY

03/07/2006 JBALINA2 00000082 10222435
01 FC:2501    700.00 DA
02 FC:1504    300.00 DA
03 FC:8001    9.00 DA

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $1000 | 05/08/2006 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MADSEN, ROBERT A | 1761 | 428-394000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1    Jeffrey G. Sheldon
2    Sheldon & Mak PC
3    _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Apio, Inc.                             Guadalupe, California

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are enclosed:**

☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☒ Advance Order - # of Copies    3

**4b. Payment of Fee(s):**

☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number 19-2090 (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date 3/2/06

Typed or printed name    Jeffrey G. Sheldon    Registration No. 27,953

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

H-032

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | EXAMINER |
|---|---|---|---|
| 7590 | 02/08/2006 | | MADSEN, ROBERT A |

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA 91101

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 02/08/2006

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

TITLE OF INVENTION: PARTY TRAY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $1000 | 05/08/2006 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. **PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS ABANDONED.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.

H-033

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>  **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590    02/08/2006

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA 91101

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

TITLE OF INVENTION: PARTY TRAY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $1000 | 05/08/2006 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MADSEN, ROBERT A | 1761 | 428-394000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are enclosed:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s):
☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

H-034

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

7590    02/08/2006

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA 91101

| EXAMINER |
|---|
| MADSEN, ROBERT A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 02/08/2006

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 99 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 99 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 01/06) Approved for use through 04/30/2007.

H-035

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Notice of Allowability** | 10/222,435 | PRATTE, WESLEY PAUL | |
| | Examiner | Art Unit | |
| | Robert Madsen | 1761 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>January 16,2005</u>.

2. ☒ The allowed claim(s) is/are <u>35-37,39,41-47,49,51,64-68,81-85( renumbered as claims 1-23)</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

      a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the

           International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

        Paper No./Mail Date _____.

    **Identifying indicia** such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)          5. ☐ Notice of Informal Patent Application (PTO-152)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)    6. ☐ Interview Summary (PTO-413),
                                                 Paper No./Mail Date _____ .

3. ☐ Information Disclosure Statements (PTO-1449 or PTO/SB/08),   7. ☐ Examiner's Amendment/Comment
       Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit    8. ☐ Examiner's Statement of Reasons for Allowance
       of Biological Material

                                                   9. ☐ Other _____.

MILTON I. CANO
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/222,435 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit |
| | Robert Madsen | 1761 |

## ISSUE CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | |
| 426 | 394 | 426 | 392 | 396 | 419 | 115 | 120 | | |

| INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|
| B | 6 | 5 | B | 25/04 |
| B | 6 | 5 | D | 25/04 |
| | | | | / |
| | | | | / |
| | | | | / |

(Assistant Examiner) 1/23/06 (Date)

(Legal Instruments Examiner) 2/6/6 (Date)

MILTON I. CANO 2/6/06
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700

**Total Claims Allowed: 23**

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|
| 1 | 11 |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 35 | | | | | | | | | | | | |
| 2 | 36 | | | | | | | | | | | | |
| 3 | 37 | | | | | | | | | | | | |
| 4 | 39 | | | | | | | | | | | | |
| 5 | 41 | | | | | | | | | | | | |
| 6 | 42 | | | | | | | | | | | | |
| 7 | 43 | | | | | | | | | | | | |
| 8 | 44 | | | | | | | | | | | | |
| 9 | 45 | | | | | | | | | | | | |
| 10 | 46 | | | | | | | | | | | | |
| 11 | 47 | | | | | | | | | | | | |
| 12 | 49 | | | | | | | | | | | | |
| 13 | 51 | | | | | | | | | | | | |
| 14 | 64 | | | | | | | | | | | | |
| 15 | 65 | | | | | | | | | | | | |
| 16 | 66 | | | | | | | | | | | | |
| 17 | 67 | | | | | | | | | | | | |
| 18 | 68 | | | | | | | | | | | | |
| 19 | 81 | | | | | | | | | | | | |
| 20 | 82 | | | | | | | | | | | | |
| 21 | 83 | | | | | | | | | | | | |
| 22 | 84 | | | | | | | | | | | | |
| 23 | 85 | | | | | | | | | | | | |

H-037

**Search Notes**

| | |
|---|---|
| Application No. | Applicant(s) |
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit |
| Robert Madsen | 1761 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 426 | 106 | 5/21/2004 | RAM |
| 426 | 112 | 5/21/2004 | RAM |
| 426 | 115 | 5/21/2004 | RAM |
| 426 | 119 | 5/21/2004 | RAM |
| 426 | 120 | 5/21/2004 | RAM |
| 426 | 389 | 5/21/2004 | RAM |
| 426 | 392 | 5/21/2004 | RAM |
| 426 | 394 | 5/21/2004 | RAM |
| 426 | 395 | 5/21/2004 | RAM |
| 206 | 541 | 5/21/2004 | RAM |
| 206 | 545 | 5/21/2004 | RAM |
| 206 | 546 | 5/21/2004 | RAM |
| 206 | 548 | 5/21/2004 | RAM |
| 206 | 216 | 5/21/2004 | RAM |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST TEXT SEARCH | 5/21/2004 | RAM |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Best Available Copy

U.S. Patent and Trademark Office

Part of Paper No  05212004

H-038

**Search Notes (continued)**

| Application No. | Applicant(s) |
|---|---|
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit | |
| Robert Madsen | 1761 | |

*Best Available Copy*

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 206 | 562 | 5/21/2004 | RAM |
| 206 | 563 | 5/21/2004 | RAM |
| 220 | 23.83 | 5/21/2004 | ram |
| 206 | 561 | 5/21/2004 | Ram |
| 206 | 564 | 5/21/2004 | Rm |
| 206 | 557 | 5/21/2004 | Ram |
| 426 | 113 | 5/21/2004 | Ram |
| 426 | 114 | 5/21/2004 | Ram |
| UPDATED | SEARCH | 1/7/05 | Ra |
| UPDATED | ALL | 10/7/05 | Ram |
| 220 | 529 | | |
| | 532 | | |
| | 555 | | |
| UPDATE | BALL | 1/23/06 | Ra |
| 426 | 394 418 40 | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 426 | 394 395 396 | 1/23/06 | Ra |
| | 419 | | |
| 426/ 115, 120 | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

H-039



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 8932**

| SERIAL NUMBER 10/222,435 | FILING DATE 08/16/2002 RULE | CLASS 428 | GROUP ART UNIT 1761 | ATTORNEY DOCKET NO. 14181 |
|---|---|---|---|---|

**APPLICANTS**

Wesley Paul Pratte, Arroyo Grande, CA;

** CONTINUING DATA ***************************
*None Pern 1/23/06*

** FOREIGN APPLICATIONS ***************************
*None Pern 1/23/06*

IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** SMALL ENTITY **
** 09/27/2002

| Foreign Priority claimed ☐ yes ☑ no | STATE OR COUNTRY CA | SHEETS DRAWING 5 | TOTAL CLAIMS 25 | INDEPENDENT CLAIMS 4 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☑ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged                Examiner's Signature        Initials | | | | |

**ADDRESS**

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena , CA
91101

**TITLE**
Party tray

| FILING FEE RECEIVED 1004 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |

*H-040*

## BEST AVAILABLE COPY

01/16/2006  18:28    650-854-2384          T&S RICHARDSON                    PAGE  01

## TRANSMITTAL FORM AND FEE TRANSMITTAL

| | | | |
|---|---|---|---|
| Attorney Docket No. | 14181 | | Pratte |
| Application No. | 10/222,435 | | August 16, 2002 |
| Examiner | Madsen | | 1761 |

(a) Where an inventor is not named, alphanumeric identifier provided in lieu thereof.

### By fax to 571 273 8300    Total of 21 sheets

### This Transmittal Sheet is accompanied by

Reply to the Office Action mailed October 26, 2005 (including Statement of the Substance of the Interview
on January 12, 2006)

RECEIVED
CENTRAL FAX CENTER

### Fee Calculations. (Applicant is a small entity)

JAN 16 2006

It is believed that no fee is due.

#### Excess claim fees

| | | No. Included in Prior Paid-For Amount | | Applicable Fee | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | | - 20 = | | x 50/25 (ea) | |
| Independent Claims | | - 3 = | | x 200/100 (ea) | |
| | | | Subtotal Extra claim fees | | ($) |

#### Additional fees

| | Fee Paid |
|---|---|
| Extension for Reply (1, 2, 3, 4 months:  $120/60, 450/225, 1020/510, 1590/795)          month | |
| Notice of Appeal (500/250) | |
| Petition to Commissioner | |
| Information Disclosure Statement ($180) | |
| Subtotal Additional fees | |

#### Total Fees

| | Total Fees Submitted | $ |
|---|---|---|

### Authorization to Charge Deposit Account for Fees

The Assistant Commissioner for Patents is hereby authorized to charge any fees required under 37 CFR §§ 1.16 and 1.17,
and credit any overpayments to, the following deposit account.

Deposit Account No: **19-2090**          Deposit Account Name:  **Sheldon & Mak**

Respectfully Submitted,

CERTIFICATE OF FACSIMILE TRANSMISSION
UNDER 37 CFR 1.8

I hereby certify that this paper is being sent  by facsimile transmission to the
United States Patent and Trademark Office (703 872 9306) on January 16,
2006
Typed name of person signing this certificate:  T. H. P. Richardson Reg No.
28,805, Tel No. 571 273 8300
Signature

Name     T. H. P. Richardson, Reg. No.28,805
Tel. No.     650-854-6304
Fax No.     626-795-6321
Address     Sheldon & Mak
225 South Lake Avenue
Pasadena
CA  91101

H-041

01/16/2006  18:28    650-854-2384            T&S RICHARDSON                         PAGE  02

RECEIVED
CENTRAL FAX CENTER

JAN 1 6 2006

Docket No. 14181

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Pratte                                 Group Art Unit: 1761

Serial No.:   10/222,435                             Examiner: Robert Madsen

5  Filing Date: August 16, 2002

Title:        Party Tray


Mail Stop Amendment

Commissioner for Patents

10  P.O. Box 1450

Alexandria, VA 22313-1450


### REPLY

Sir,

15          This paper is filed in reply to the Office Action mailed October 26, 2005, and to

file a Statement of the Substance of the Interview which took place on January 12,

2006. Reexamination, reconsideration and allowance are respectfully requested in view

of the Amendments and Remarks below.


20   **"Special" Status of This Application**


            At the interview, the undersigned noted that Applicant was extremely anxious

that this application should proceed to grant with minimum delay, and that examination

had been subject to unusual delay in the Office.  SPE Cano acknowledged this fact, and

25   indicated that it might be possible for future examination of this application to be carried

out on the basis that the application had been "made special".  Applicant sincerely

hopes that this will be possible, with a Notice of Allowance being dispatched in the near

future; and, after the Issue Fee has been paid, with the printing and issuance of the

patent being advanced on the basis that the application has been "made special".

### CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 CFR 1.8

I hereby certify that this paper is being sent by facsimile transmission to the United States Patent and Trademark Office
(571-273-8300) on January 16, 2006
Typed name of person signing this certificate: T. H. P. Richardson, Reg No. 28,805, Tel No. 650 854 6304
Signature

H-042

By way of example, it may be noted that on March 11, 2003, Applicant filed a Petition to Make Special under 37 CFR 1.102, and that it was not until seventeen months later that the decision on that Petition issued.  The Petition was denied on the

5  ground that the preexamination search referred to in the Petition failed to cover class 426, subclasses 419 and 415. At no time during the prosecution of this application has any patent in class 426, subclasses 419 and 415, been cited; nor, apparently, has the Examiner found it necessary to search in those subclasses of class 426.  It may also be noted that in an interview on November 1, 2004, the Examiner agreed that the

10  amendments discussed at the interview, which were subsequently presented in the Reply mailed November 3, 2004, would overcome all the rejections raised in the Office Action mailed June 3, 2004; that on February 9, 2005, the Examiner issued a final rejection relying in part on new references and stating that Applicant's amendment necessitated the new grounds of rejection; that on March 9, 2005, Applicant filed a

15  petition to withdraw the finality of the February 9, 2005, Office Action; that on July 29, 2005, nearly five months after the Petition had been filed, the Petition was granted; and that on October 26, 2005, the present non-final Office Action, relying on new references, was mailed.

20  **Statement of the Substance of the Interview.**

Supervisory Patent Examiner Cano and Examiner Madsen are thanked for their courtesy and attention at the interview with the undersigned on January 12, 2006.  The Interview Summary prepared by SPE Cano is correct.  As noted in that Interview

25  Summary, it was agreed that the proposed amended claims considered at the interview (which are the same as the amended claims set out below) overcome all the rejections made in the Office Action mailed October 26, 2005.  Specifically, the following matters were discussed and agreed.

(1)    It was agreed that there was support in the original specification for the

30  absence of any intermediate step between steps B and C, as required by amended claim 35, having regard to the accepted understanding of the term

2

H-043

"comprises", in particular taken with page 5, lines 13-17 and 17-22 of the original specification; and that the rejection under 35 USC 112 set out in paragraph 6 of the Office Action mailed October 26, 2005, would, therefore, be withdrawn.

5  (2)    It was agreed that the proposed amendments to claim 81 would overcome the rejection under 35 USC 112 raised in paragraph 8 of the Office Action mailed October 26, 2005.

(3)    It was agreed that the rejection under 35 USC 112 discussed in paragraphs 9-12 of the Office Action mailed October 26, 2005, insofar as it was applicable to the proposed amended claims, would be withdrawn. It was noted in

10  particular that it is well-known to those of ordinary skill in the art that an atmosphere control member must have one surface exposed to air and the other surface exposed to the atmosphere which is to be controlled, and that it is, therefore, unnecessary for the specification to state explicitly any additional structural components needed to ensure that the ribs on the support tray enable

15  air to circulate between the support tray and the atmosphere control member.

(4)    It was agreed that the only rejection under 35 USC 103 which was relevant to the proposed amended claims was the rejection discussed in paragraph 30 of the Office Action, and that the rejection would be withdrawn in view of the fact that the ribs disclosed in the Wyslotsky reference do not form part

20  of a support tray.

In addition, as noted above, Applicant's desire for speedy prosecution was discussed.

## Amendments to the Specification

There are no amendments to the specification.

25  **Amendments to the Claims** are reflected in the listing of claims which begins on page 4 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

3

H-044

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

5

**Listing of Claims:**

1-34.  (Canceled)

10    35. (Currently amended)          A method of preparing a party tray which comprises the steps of

    A)    providing a container body which

        (i)    is composed of a transparent polymeric material,

        (ii)    has a depth of 1 to 4 in.,

15        (iii)    has a circumference of 30 to 100 in.; and

        (iv)    comprises

            1)    a base,

            2)    a continuous wall which extends away from the base and is contiguous with the base,

20            3)    a continuous rim which is contiguous with the wall, and

            4)    partitions which extend away  from the base in the same direction as the wall; and

        (v)    has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base and create

25        fillable compartments within the container body;

    the partitions being cavity walls, and the container body having been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time;

    B)    while the container body is in the loading orientation, placing foodstuffs in

30    the compartments so that the foodstuffs rest on the base, at least some of the

4

H-045

01/16/2006  18:28    650-854-2384              T&S RICHARDSON                    PAGE  06

foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

C)      after step B, and without any intermediate step between step B and step

5      C, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes <u>an</u> at least one atmosphere control member <u>included in the sealing sheet</u>;

10     D)      after step C, placing a support tray over the sealing sheet; and

E)      after step D, turning the sealed package and the support tray placed thereon upside-down<u>, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray, the support tray comprising ribs such that, after step (E), air can circulate between the support tray and the</u>

15     <u>atmosphere control member</u>;

whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

36.  (Currently amended)   A method according to claim 35 wherein, after step E, the

20    foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray <u>has a solid color</u>.

37.  (Currently amended)   A method according to claim <u>35</u> 36 wherein the atmosphere control member, or one of the atmosphere control members if there is more than one

25    atmosphere control member, covers a window in the sealing sheet, and the support tray comprises ribs such that air can circulate between the support tray and the atmosphere control member.

38.  (Canceled)

30

5

PAGE 6/21 * RCVD AT 1/16/2006 9:26:55 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/26 * DNIS:2738300 * CSID:650 854 2384 * DURATION (mm-ss):10-38

H-046

39. (Currently amended)   A method according to claim 35 wherein the <u>ribs on the support tray are discontinuous, upstanding ribs.</u> ~~partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time.~~

5

40. (Canceled)

41. (Previously presented)        A method according to claim 35 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton
10    has walls which help to define the compartments.

42. (Currently amended)        A method according to claim 35 wherein the ~~said at least one~~ atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

15

43. (Previously presented)        A method according to claim 35 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

20    44. (Currently amended)            A method of preparing a party tray which comprises the steps of.

    A)        providing a container body which
        (i)        is composed of a transparent polymeric material,
        (ii)       has a depth of 1 to 4 in.,
25            (iii)      has a circumference of 30 to 100 in.; and
        (iv)       comprises
            1)        a base,
            2)        a continuous wall which extends away from the base and is
                contiguous with the base,
30                3)        a continuous rim which is contiguous with the wall, and

6

H-047

4)      partitions which extend away from the base in the

same direction as the wall; and

(v)      has a loading orientation in which the wall extends upwards from

the base, and the partitions extend upwards from the base and create

5          fillable compartments within the container body; ~~and~~

the partitions being cavity walls, and the container body having been prepared by

molding a polymeric material, thus forming the base, wall, rim and partitions at

the same time;

B)      while the container body is in the loading orientation, placing foodstuffs in

10      the compartments so that the foodstuffs rest on the base, at least some of the

foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the

compartments being multiple pieces of a fresh vegetable;

C)      after step B, sealing a sealing sheet of polymeric material to the rim of the

container body so that the sealing sheet extends over the compartments and

15      creates a sealed package (i) which contains the foodstuffs and a packaging

atmosphere around the foodstuffs, (ii) whose outer surface is defined by the

container body and the sealing sheet, and (iii) which includes an ~~at least one~~

atmosphere control member included in the sealing sheet;

D)      after step C, placing a support tray over the sealing sheet; and

20      E)      after step D, turning the sealed package and the support tray placed

thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the

sealing sheet is supported by the support tray, the support tray comprising ribs

such that, after step (E), air can circulate between the support tray and the

atmosphere control member;

25      whereby the party tray can be displayed for sale in a display orientation in which the

foodstuffs are viewed by a shopper through the container body.


45.  (Currently amended)  A method according to claim 44 wherein the atmosphere

control member~~, or one of the atmosphere control members if there is more than one~~

30      ~~atmosphere control member,~~ covers a window in the sealing sheet~~, and the support tray~~


7

H-048

~~comprises ribs such that air can circulate between the support tray and the atmosphere~~
~~control member.~~

46. (Currently amended)   A method according to claim 44 wherein the <u>support tray has</u>
5    <u>a solid color.</u> ~~atmosphere control member, or each of the atmosphere control members~~
~~if there is more than 1 atmosphere control member, covers a window in the sealing~~
~~sheet or a window in the container body.~~

47. (Currently amended)   A method according to claim 44 wherein the <u>ribs on the</u>
10   <u>support tray are discontinuous, upstanding ribs.</u> ~~partitions are cavity walls, and the~~
~~container body has been prepared by molding a polymeric material, thus forming the~~
~~base, wall, rim and partitions at the same time.~~

48. (Canceled)
15

49. (Previously presented)      A method according to claim 44 wherein, before step
B, a carton of vegetable dip is placed in the center of the container body, and the carton
has walls which help to define the compartments.

20   50. (Canceled)

51. (Previously presented)      A method according to claim 44 which includes, after
step E, the step of displaying the party tray for sale in a display orientation in which the
foodstuffs are viewed by a shopper through the container body.
25

52-63. (Canceled)

64. (Currently amended)         A method of preparing a party tray which comprises
the steps of
30       A)     providing a container body which
               (i)      is composed of a transparent polymeric material,

8

H-049

01/16/2006  18:28   650-854-2384              T&S RICHARDSON                    PAGE  10

(ii)     has a depth of 1 to 4 in.,

(iii)    has a circumference of 30 to 100 in.;

(iv)     comprises

       1)     a base,

5              2)     a continuous wall which extends away from the base and is contiguous with the base,

       3)     a continuous rim which is contiguous with the wall, and

       4)     partitions which extend away from the base in the same direction as the wall, and are removably located in the container

10              body; and

(v)      has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base and create fillable compartments within the container body; and

B)       while the container body is in the loading orientation, placing foodstuffs in

15     the compartments so that the foodstuffs rest on the base, at least some of the foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

C)       after step B, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and

20     creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes <u>an</u> at least one atmosphere control member <u>included in the sealing sheet</u>;

D)       after step C, placing a support tray over the sealing sheet; and

25     E)       after step D, turning the sealed package and the support tray placed thereon upside-down<u>, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray; the support tray comprising ribs such that, after step (E), air can circulate between the support tray and the atmosphere control member</u>;

30     whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.

9

H-050

01/16/2006  18:28     650-854-2384          T&S RICHARDSON                    PAGE   11

65. (Previously presented)        A method according to claim 64 wherein the partitions
are composed of a polymeric material having a thickness less than 0.125 inch.

5   66. (Previously presented)        A method according to claim 64 wherein, before step
B, a carton of vegetable dip is placed in the center of the container body, and the carton
has walls which help to define the compartments.

67. (Currently amended)        A method according to claim 64 wherein the said at
10   least one atmosphere control member provides substantially the only pathways for
oxygen and carbon dioxide to enter or leave the packaging atmosphere.

68. (Previously presented)        A method according to claim 64 which includes, after
step E, the step of displaying the party tray for sale in a display orientation in which the
15   foodstuffs are viewed by a shopper through the container body.

69-80. (Canceled)

81. (Currently amended)   A method according to claim 64 wherein the partitions are
20   removably located within the container body includes by location members formed in
the container body as the container body was molded, the location members being in
the base of the container body or in the wall of the container body, or in both the base
and the wall of the container body, whereby, when all the partitions are located within
the container body by the location members, each of the compartments has a fixed size.

25

82. (Currently amended)        A method according to claim 64 where the partitions
are removably located within the container body and have one or more of the following
characteristics
        (a)     at least one of the partitions comprises two or more straight portions at
30              right angles to each other and to the base,

PAGE 11/21 * RCVD AT 1/16/2006 9:26:55 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/26 * DNIS:2738300 * CSID:650 854 2384 * DURATION (mm-ss):10-38

H-051

01/16/2006  18:28    650-854-2384          T&S RICHARDSON                    PAGE  12

(b)      at least one of the partitions comprises two or more straight portions at
right angles to the base and with a curved portion between them, and

(c)      two or more first partitions which are parallel to each other and at right
angles to the base, and one or more second partitions which are at right angles
to the first partitions and to the base, some or all of the first and second partitions
are slotted so that they fit together.

83. (New)     A method according to claim 64 wherein the support tray has a solid color.

84. (New)     A method according to claim 64 wherein the ribs on the support tray are
discontinuous, upstanding ribs.

85. (New)     A method according to claim 64 wherein the atmosphere control member
covers a window in the sealing sheet.

11

H-052

## REMARKS

### Summary

5          The Office Action provides a very detailed and systematic discussion of the
various rejections.  As noted above, in the Statement of the Substance of the Interview,
the claims have been extensively amended, and it has been agreed that all the
rejections are overcome by the proposed amendments.  The rejections which are
relevant to the amended claims are discussed below, but it is believed to be
10      unnecessary to burden the record with detailed discussion of the numerous rejections
under 35 USC 103 which are not relevant to the amended claims.  It should, however,
be noted that the amendments have been made in the interests of speedy prosecution
of this application, without prejudice to the prosecution of broader or different claims in
one or more continuing applications, and that Applicant does not accept that any of the
15      rejections set out in the Office Action is justified.

### Amendments

**1. Amendment of the independent claims.**
20

          The claims have been extensively amended, and as a result, there are now only
three independent claims, claims 35, 44 and 64, each of which has been further defined
by amendment
          (a)      to replace "at least one atmosphere control member" by -- an atmosphere
25        control member --; and
          (b)      to require that the sealing sheet includes an atmosphere control member
          and that the support tray comprises ribs such that, after step (E), air can circulate
          between support tray and the atmosphere control member (basis on page 8,
          lines 6-13, and page 11, lines 1-3).
30  Claims 35 and 44 have also been further defined by amendment to require that the
partitions are cavity walls, and that the container body has been prepared by molding a

12

H-053

polymeric material, thus forming the base, wall, rim and partitions at the same time (basis on page 8, lines 15-17, and page 9, lines 1-2). Claim 64 continues to require that the partitions are removable partitions.

5        Claims 35 and 64 have also been further defined by amendment to require (as claim 44 already required) that, after step E, the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray.

        As a result of these amendments, claims 35 and 44 are the same, except that
10    claim 35 requires (and claim 44 does not require) the absence of any step between steps B and C; and each of the independent claims 35, 44 and 64 contains the following definitions 1-7 (as more fully set out in the claims themselves).

        (1)    The container body has a depth of 1 to 4 in. and a circumference of 30 to 100 in.

15    (2)    The partitions extend away from the base in the same direction as the wall, so that, when the container body is in the loading orientation, the partitions extend upwards from the base and create fillable components within the container body.

        (3)    The foodstuffs placed in at least one of the compartments are multiple
20    pieces of a fresh vegetable.

        (4)    A sealing sheet of polymeric material is sealed to the rim of the container body, so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body
25    and sealing sheet, and (iii) which includes an atmosphere control member which is included in the sealing sheet.

        (5)    A support tray is placed over the sealing sheet.

        (6)    The sealed package and the support tray placed thereon are turned upside down, and as a result the foodstuffs rest on the sealing sheet and the
30    sealing sheet is supported by the support tray.

13

H-054

(7)    The support tray comprises ribs such that, after the sealed package and the support tray have been turned upside down, air can circulate between the support tray and the atmosphere control member.

Each of the independent claims also contains one or more of the following features

5    8-10 (as more fully set out in the respective claims)

(8)    There is no intermediate step between step B and Step C (claim 35).

(9)    The partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions simultaneously (claims 35 and 44).

10    (10)   The partitions are removably located in the container body (claim 64).

**Amendment of the Dependent Claims, and Addition of New Dependent Claims.**

The dependent claims have been amended for consistency with the amended

15    independent claims. In addition,

Claims 36 and 45, dependent on claims 35 and 44 respectively, have been amended to replace the former requirements by a requirement that the support tray has a solid color (basis on page 11, line 4); new claim 83, dependent on claim 64, similarly specifies that the support tray has a solid color.

20    Claims 39 and 47, dependent on claims 35 and 44 respectively, have been amended to require that the ribs on the support sheet are discontinuous, upstanding ribs (basis on page 12, line 20); and new claim 84, dependent on claim 64, similarly specifies that the ribs on the support tray are discontinuous, upstanding ribs.

25    Claim 81 has been amended to make it clear that it is only when the removable partitions are located within the container body by the location members that each of the compartments has a fixed size.

New claim 85, dependent on claim 64, specifies that the atmosphere control member covers a window in sealing sheet.

30

H-055

**The Rejections under 35 USC 112**

Applicant respectfully traverses the rejection of

(1)     claims 1, 2, 26-53, 55-68 and 73-82 under 35 USC 112, first paragraph, as

5     failing to comply with the written description requirement, and

(2)     claims 28, 37, 45, 53, 58 and 62 under 35 USC 112, second paragraph,

as being indefinite for failing to particularly point out and distinctly claim the

subject matter which applicant regards as the invention,

insofar as those rejections are applicable to the amended claims and insofar as those

10     rejections can be understood, for the following reasons.

The rejections under 35 USC 112 have been rendered moot by the cancellation

of claims, or have been overcome by amendments to the claims.  As noted in the

Statement of the Substance of the Interview above, it was agreed at the interview that

15     all the rejections would be withdrawn.  For the record, the following comments are made

on the rejections.

1.     The rejection of claims 1, 2, 26-53, 55-68 and 73-82 on the ground that claims

1, 35, 44, 52, 60 and 64 refer to "at least one atmosphere control member" for which

20     there is no support in the originally filed specification.

As noted above, in the remaining independent claims, the requirement that the

sealed package contains "at least one atmosphere control member" has been replaced

by a requirement that the sealed package contains "an atmosphere control member".

25     Consequential amendments have been made in the dependent claims referring to

atmosphere control members.  For the sake of the record, it is noted that replacing "at

least one atmosphere control member" by -- an atmosphere control member -- makes

no difference to the scope of the claims, since a sealed package which contains more

than one atmosphere control member necessarily contains "an atmosphere control

30     member".

15

H-056

2.      The rejection of claims 1, 2, 26-53, 55-68 and 73-82 on the ground that claim 1
requires that the initial packaging atmosphere is air, for which there is no support in the
originally filed specification.

5        None of the amended claims contains this requirement, and the rejection is,
therefore, moot.

3.      The rejection of claims 1, 2, 26-53, 55-68 and 73-82 on the ground that claims 26
and 35 require the absence of any intermediate step between step B and step C, for
10    which there is no support in the originally filed specification.

        In the amended claims, only claim 35, and the claims dependent on claim 35,
require the absence of any intermediate step between step B and step C.

15        The original specification discloses that the method **comprises** step B and, after
step B, step C.  If there could be any doubt that such disclosure includes the possibility
that those steps are carried out consecutively, with no intermediate step, that doubt is
removed by the disclosure in the original specification that

            *The term "comprises" and grammatical equivalents thereof are used*
20        *herein to mean that other components, ingredients, steps etc. are **optionally***
        *present.  For example, an article "comprising" (or "which comprises")*
        *components A, B and C can consist of (i.e. **contain only**) components A, B and*
        *C, or **can contain not only components A, B and C but also one or more***
        ***other components**.  (Page 5, lines 13-17, emphasis added)*
25    Paragraph 6 of the Office Action refers to the disclosure in the original specification (at
page 5, lines 17-22) that a method which comprises two or more defined steps
            *can include one or more other steps which are carried out... between two of the*
            *defined steps*
        and apparently reaches the conclusion that this disclosure **excludes** the possibility that
30    there is no step between the defined steps (alternatively put, that there **must be** other
steps carried out between the defined steps).  The passage in question does not state

16

H-057

that the method **must** include one or more other steps, but that the method **can** include one or more other steps.  The difference between "must include" and "can include" is critical.

5    4.      The rejection of claims 1, 2, 26-53, 55-68 and 73-82 on the ground that claims 33 and 50 require that at 22°C at least 75% of the oxygen entering the packaging atmosphere passes through said at least atmosphere control member, for which there is no support in the original disclosure.

10          None of the amended claims contains this requirement, and the rejection is, therefore, moot.

      5.      The rejection of claims 1, 2, 26-53, 55-68 and 73-82 on the ground that the removable partitions in claims 73, 75, 77, 79 and 81 cannot result in compartments
15   having a fixed size, as required by claims 73, 75, 77, 79 and 81.

            Claims 73, 75, 77 and 79 have been canceled.  Claim 81 has been amended to make it clear that it is only when all the removable partitions are located within the container body by the location members that each of the compartments has a fixed size.
20   As noted above, in the Statement of the Substance of the Interview, it was agreed at the interview that this amendment overcame the rejection.

      6.      The rejection of claims 28, 37, 45, 53, 58 and 62 under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the
25   subject matter which applicant regards as the invention, in particular because the claims are "incomplete for omitting essential structural cooperative relationships of the elements, such omission amounting to a gap between the necessary structural connections. "

30          As noted above, in the Statement of the Substance of the Interview, It was agreed at the interview that this rejection, insofar as it was applicable to the proposed

17

H-058

amended claims, would be withdrawn.  It was noted in particular that it is well-known to those of ordinary skill in the art that an atmosphere control member must have one surface exposed to air and the other surface exposed to the atmosphere which is to be controlled, and that it is, therefore, unnecessary for the specification to state explicitly

5    any additional structural components needed to ensure that the ribs on the support tray enable air to circulate between the support tray and the atmosphere control member.

For the sake of completeness, Applicant also notes that those skilled in the art (a) would recognize in Applicant's disclosure a description of the invention defined in the

10   amended claims; and (b) would have no difficulty in making and using the invention defined in the amended claims.  As the specification states, at page 8, line 9, "atmosphere control members are well-known", and this includes, of course, knowledge that, in use, one side of the control member must be exposed to the packaging atmosphere and the other side exposed to an external atmosphere (usually air).

15   Reference may be made, for example, to column 1, lines 23-47 of US Patent No. 6,376,032, incorporated by reference in this application.  The specification includes disclosure of one specific way of ensuring such exposure (ribs on the support tray), and it is unnecessary for the specification to provide further structural description of how a tray supporting the sheet enables such exposure.  As the specification states, at page

20   11, lines 7-9, "those skilled in the art will have no difficulty, having regard to their own knowledge and the disclosure of this specification, in manufacturing suitable container bodies, partitions and support trays".

Applicant also notes that the term "rib" is used, and would be understood by one

25   of ordinary skill in the art to be used, in a broad sense to include any conformation which ensures that "air can circulate between the support tray and the atmosphere control member".  The Random House Dictionary, 2nd edition, unabridged, after giving various definitions of the term "rib" in the fields of anatomy and architecture, then states:

    5.    *something resembling a rib in form, position, or use, as a supporting or*

30       *strengthening part.*

18

H-059

6.    *a structural member that supports the shape of something: an umbrella rib.*

**The Rejections under 35 USC 103**

5

Applicant respectfully traverses the rejections under 35 USC 103 of

(a)    claims 35, 36, 38, 40-44, 47-52 and 55-63  over  (i) Albertson's page 37 (hereinafter Albertson's), in view of (ii) the admission of the prior art, (iii) US 4,660,716 (hereinafter McMahon), (iv) US 1,695,366 (hereinafter Brown), and (v) US 5,045,331 (hereinafter Antoon);

10

(b)    claims 37, 45 and 53 over  (i) Albertson's, in view of (ii) the admission of the prior art, (iii) McMahon, (iv) Brown, (v) Antoon, and (vi) US 2003/0057217 (hereinafter Wyslotsky);

(c)    claims 75, 77 and 79 over (i) Albertson's, in view of

15

(ii) the admission of the prior art, (iii) McMahon, (iv) Brown, (v) Antoon, and (vi) US 4593816 (hereinafter Langenbeck);

(d)    claims 76, 78 and 80 over  (i) Albertson's, in view of (ii) the admission of the prior art, (iii) McMahon, (iv) Brown, (v) Antoon, and (vi) US 4272008 (hereinafter Wozniacki);

20

(e)    claims 1, 26, 27, 29, 30 and 32-34 over (i) Albertson's, in view of (ii) the admission of the prior art, (iii) McMahon, (iv) Brown and (v) Antoon;

(f)    claims 2, 31 and 73 over (i) Albertson's, in view of (ii) the admission of the prior art, (iii) McMahon, (iv) Brown, (v) Antoon and (vi)  Langenbeck;

(g)    claims 2, 31 and 74 over (i) Albertson's, in view of (ii) the admission of the

25

prior art, (iii) McMahon, (iv) Brown, (v) Antoon and (vi) US 4272008 (hereinafter Wozniacki);

(h)    claim 28 over (i) Albertson's, in view of (ii) the admission of the prior art, (iii) McMahon, (iv) Brown, (v) Antoon and (vi) Wyslotsky;

(i)    claims 64-68 and 82 over (i) Albertson's, in view of (ii) the admission of the

30

prior art, (iii) McMahon and (iv) Antoon; and

19

*H-060*

(j)      claim 81 over (i) Albertson's, in view of (ii) the admission of the prior art, (iii) Wozniacki, (iv) McMahon, (v) Antoon, and (vi) US 3749299 (hereinafter Ingle);

insofar as those rejections are applicable to the amended claims, for the reasons set out

5   below. [Applicant understands, from a telephone conversation between the Examiner and Jeffrey G. Sheldon on or about December 8, 2005, that the Examiner also intended to reject claims 39 and 46 under 35 USC 103, and this Reply assumes, therefore, that 39 and 46 were rejected over the references cited in (a) and/or (b) above.]

10        As noted above, a feature of all the amended claims is that the support tray comprises ribs such that air can circulate between the support tray and the atmosphere control member included in the sealing sheet. Before the proposed amendments, claims 28, 37, 45 and 53 included this feature. Each of claims 28, 37, 45 and 53 was rejected over a combination of references including Wyslotsky, which was relied upon

15  as making it obvious to modify Albertson's container body to include this feature (see paragraph 30 of the Office Action). However, as discussed and agreed at the interview, the ribs disclosed in Wyslotsky do not form part of a support tray on which rests a sealing sheet including an atmosphere control member. Furthermore, as explained in detail in the previous response (pages 3 and 39-46), the only sealing sheet disclosed by

20  Wyslotsky is the "diaphragm" shown in Figures 12 and 13, which cannot function as an atmosphere control member.

## CONCLUSION

25        It is submitted that, having regard to the amendments made to the claims, the facts and arguments set out above, and the agreement reached at the interview, this application is now in condition for allowance. If, however, the Examiner has any remaining issues, he is asked to call the undersigned.

Respectfully submitted

30

T.H.P. Richardson.  Registration No. 28,805,  Tel No. 650 854 6304

20

H-061

PTO/SB/06 (08-03)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number _11888 935_

### CLAIMS AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a)) | | | | $ | OR | | $ |
| TOTAL CLAIMS (37 CFR 1.16(c)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(b)) | minus 3 = | * | X $ = | | OR | X $ = | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(d)) | | | + $ = | | OR | + $ = | |
| | | | TOTAL | | OR | TOTAL | |

\* If the difference in column 1 is less than zero, enter "0" in column 2.

### CLAIMS AS AMENDED – PART II

_1-16-36_

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * _25_ | Minus | ** _54_ | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * _3_ | Minus | *** _7_ | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

_35,99,16,9_

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(c)) | * | Minus | ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

H-062

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Interview Summary** | 10/222,435 | PRATTE, WESLEY PAUL | |
| | Examiner | Art Unit | |
| | Robert Madsen | 1761 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Milton I. Cano (PTO)._          (3)_Robert Madsen (PTO)._

(2) _Tim Richardson (Applicant rep.)._          (4)_____.

Date of Interview: 1/12/06

Type:  a)☐ Telephonic  b)☐ Video Conference
       c)☒ Personal [copy given to: 1)☐ applicant  2)☒ applicant's representative]

Exhibit shown or demonstration conducted:  d)☐ Yes  e)☐ No.
    If Yes, brief description: _____.

Claim(s) discussed: _35,44,64 and 81._

Identification of prior art discussed: _all of record._

Agreement with respect to the claims f)☒ was reached.  g)☐ was not reached.  h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Discussed the 112, 2nd paragraph and prior art issues related to the arrangement of the ribs. Applicant's representative provided explanation on how the prior art's ribs defined over the instant ribs of the instant tray. Applicant will submit amendment and remarks to reflect such distinction._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

MILTON I. CANO
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700

Examiner Note:  You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
#### Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

H-064