## TRANSMITTAL FORM AND FEE TRANSMITTAL

| Attorney Docket No.: | 14181 | First Named Inventor (a): | Pratte |
|---|---|---|---|
| Application No.: | 10/222,435 | Filing Date: | August 16, 2002 |
| Examiner: | Madsen | Group Art Unit: | 1761 |

(a) Where an inventor is not named, alphanumeric identifier provided in lieu thereof.

### This Transmittal Sheet is accompanied by

Reply to Office Action mailed February 9, 2005; Declaration; and an acknowledgment postcard

### Fee Calculations.  (Applicant is a small entity)

**Excess claim fees**

| | No. in Specification or after Amendment | No. Included in Filing Fee or Previously Paid For | No. Extra (b) | Applicable Fee | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | 53 | -47 = | 6 | x 50/25 (ea) | 150.00 |
| Independent Claims | 6 | -7 = | | x 200/100 (ea) | |
| | | | | Subtotal Extra claim fees ($) | 150.00 |

**Additional fees**

| | Fee Paid |
|---|---|
| Extension for Reply (1, 2, 3, 4 months:  $120/60, 450/225, 1020/510, 1590/795)     **month** | |
| Notice of Appeal (500/250) | |
| Petition to Commissioner | |
| Information Disclosure Statement ($180) | |
| Subtotal Additional fees | |

**Total Fees**

| | |
|---|---|
| Total Fees Submitted | **$150.00** |

### Authorization to Charge Deposit Account for Fees

The Assistant Commissioner for Patents is hereby authorized to charge the above fees and any additional fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit account.

Deposit Account No:  **19-2090**          Deposit Account Name:  **Sheldon & Mak**

This sheet is transmitted **in duplicate** if a fee is due.

**CERTIFICATE OF MAILING UNDER 37 CFR**

**1.8**

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class mail in an envelope addressed to: Mail Stop AF Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450
On April 7, 2005
Typed name of person signing this certificate: T. H. P. Richardson
Signature

Respectfully Submitted,

| Name | T. H. P. Richardson, Reg. No.28,805 |
|---|---|
| Tel. No. | 650-854-6304 |
| Fax No. | 626-795-6321 |
| Address | Sheldon & Mak |
| | 225 South Lake Avenue |
| | Pasadena |
| | CA  91101 |

Docket No. 14181

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Pratte                                  Group Art Unit:  1761

Serial No.:    10/222,435                             Examiner: Robert Madsen

Filing Date: August 16, 2002

Title:        Party Tray

Mail Stop AF

Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

## DECLARATION

I, Wesley P. Pratte, declare as follows.

1.      I am the inventor of the above identified patent application.  From 1978 until 1999, I was employed by American Stores in the retail food business, becoming a director of Meat, Seafood and Bakery operations for 266 Lucky Stores, a Southern California division of American Stores.  Since 1999, when Albertson's purchased American Stores, I have been employed by Apio Inc., the assignee of this application, as Director of Product Development.  Most of the products sold by Apio Inc. are fresh vegetables and other biologically respiring foodstuffs.  I am, therefore, very familiar with the requirements for packaging respiring foodstuffs for the retail trade.

2.      In my experience, fresh vegetables in party trays are invariably in the form of multiple pieces which are placed in the party tray with multiple contacts between the vegetable pieces.  In my opinion, it would be wholly impractical for each piece of vegetable in a party tray to be individually packed.  Such a party tray would contain one or more layers of vegetable pieces, and much of the volume of each layer would be taken up by the packaging around the vegetable pieces.  It would be neither economical nor attractive for the consumer.

1

H-173

3.      I am familiar with page 37 of the Albertson's catalog which has been referred to in the prosecution of this application.  Albertson's Instructions say that the container body (which is referred to as a lid) is to be filled with the vegetables, and that the tray is then to be applied to the container body. Albertson's does not say that the tray should engage the container body so that they are secured together, but it must in fact do so.

If there were ribs on Albertson's tray, on the side facing the container body, the effect of the ribs would depend upon their depth, strength and sharpness.  If the ribs were shallow, so that, when the tray was applied to the container body, the ribs did not contact or made only light contact with the vegetables, the ribs would not change the arrangement of the vegetables in any way.  If the ribs were deep enough to make forceful contact with the vegetables, when the tray was forced down in order to secure it to the container body, the ribs or the vegetables (or both) would be deformed.  There is no possibility that the ribs would work their way through the vegetables so that the vegetables were divided between compartments formed by the ribs and the container body. If the vegetables were deformed, the resultant bruising would damage both their appearance and their storability.  If the ribs were deformed, the whole tray would also be deformed, making it difficult, and perhaps impossible, to secure the lid to the container body.

4.      I am not aware of any actual or proposed party tray having separate upper and lower compartments, each containing foodstuffs.  In my opinion, such a two-compartment party tray would be impractical, because of the difficulty of unpacking and serving the contents of the two compartments.

5.      When the container body for a party tray has been prepared by molding a polymeric material so that base, wall, rim and partitions are all formed at the same time, the partitions necessarily define compartments of fixed dimensions.

6.    If a container has two compartments separated by a polymeric sheet, and each of the compartments is sealed, then an atmosphere control member placed over a window in the polymeric sheet will tend to bring the atmospheres in the two compartments into equilibrium.  Since such an atmosphere control member is not exposed to the air, it will not permit the introduction of atmospheric oxygen into either of the compartments or permit the removal of carbon dioxide from either of the compartments.  As a result, if either of the compartments contains fresh vegetables (or another respiring foodstuff), respiration of the foodstuffs will decrease the proportion of oxygen and increase the proportion of carbon dioxide. This will damage the foodstuffs and in due course cause them to become inedible.

7.    Contact between fresh vegetables and an atmosphere control member does not block the atmosphere control member so that it is no longer capable of transmitting gases such as oxygen and carbon dioxide.  All fresh vegetables have a sufficiently irregular surface that gases can pass between them and a surface on which they rest..

    The undersigned, having been warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the present application and any patent granted thereon, declares that all statements made herein on his own knowledge are true and that all statements made on information and belief are believed to be true.

Dated _____4 / 5_____, 2005

_Wesley P Pratte_

Wesley R. Pratte

3

H-175

Docket No. 14181

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Pratte                                Group Art Unit:  1761

Serial No.:    10/222,435                            Examiner: Robert Madsen

Filing Date: August 16, 2002

Title:         Party Tray

*FEE Record*

Mail Stop AF

Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

## REPLY

Sir,

    This paper is filed in reply to the Office Action mailed February 9, 2005, which is a final rejection.  A petition to remove the finality of the rejection has already been filed. Reexamination, reconsideration and allowance are respectfully requested in view of the Amendments and Remarks below, and the declaration attached.

### Amendments to the Specification

There are no amendments to the specification.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 7 of this paper.

**Remarks/Arguments** begin on page 22 of this paper.

### Summary

    The Office Action provides a very detailed and systematic discussion of the various rejections, in particular the rejections under 35 USC 103 of different sets of claims based on different combinations of references.  In deference to the approach adopted by the Examiner, and in the interests of completeness, this Reply contains a similarly detailed and systematic explanation of why those rejections should be

**CERTIFICATE OF MAILING UNDER 37 CFR 1.8**

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class mail in an envelope addressed to: Mail Stop AF Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 On April 7, 2005    Typed name of person signing this certificate: T. H. P. Richardson
    Signature

H-176

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2001

Application or Docket Number

10222435

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 16 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 16 minus 20= | * |
| INDEPENDENT CLAIMS | 3 minus 3 = | 1 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|
| RATE | FEE | RATE | FEE |
| BASIC FEE | 370.00 | OR BASIC FEE | 740.00 |
| X$ 9= | | OR X$18= | |
| X42= | | OR X84= | |
| +140= | | OR +280= | |
| TOTAL | 370 | OR TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| AMENDMENT A | Total | * 47 | Minus ** 25 | = 22 |
| | Independent | * 7 | Minus *** 6 | = 1 |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|
| RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR X$18= | |
| X42= | | OR X84= | |
| +140= | | OR +280= | |
| TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

A.NE
4/11/05

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| AMENDMENT B | Total | * 54 | Minus ** 47 | = 78 |
| | Independent | * 6 | Minus *** 7 | = |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|
| RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
| X$9= | 175.00 | OR X$18= | |
| X42= | | OR X84= | |
| +140= | | OR +280= | |
| TOTAL ADDIT. FEE | 175.00 pd. | OR TOTAL ADDIT. FEE | |

150.00 pd.
25.00 pd.

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| AMENDMENT C | Total | * | Minus ** | = |
| | Independent | * | Minus *** | = |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|
| RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR X$18= | |
| X42= | | OR X84= | |
| +140= | | OR +280= | |
| TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)    *U.S. Government Printing Office: 2001 — 484-484/39258    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

*Index of Claims*

| Application No. | Applicant(s) |
|---|---|
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit |
| Robert Madsen | 1761 |

| | | | |
|---|---|---|---|
| √ | Rejected | – | (Through numeral) Cancelled |
| = | Allowed | + | Restricted |
| N | Non-Elected | | |
| I | Interference | | |
| A | Appeal | | |
| O | Objected | | |

| Final | Original | 9/21/04 | Date | | | | | | | Final | Original | 1/26/5 | Date | | | | | | | Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | √ | | | | | | | | 51 | √ | | | | | | | | | 101 | | | | | | | | | |
| | 2 | √ | √ | | | | | | | | 52 | | | | | | | | | | 102 | | | | | | | | | |
| | 3 | √ | | | | | | | | | 53 | | | | | | | | | | 103 | | | | | | | | | |
| | 4 | √ | | | | | | | | | 54 | | | | | | | | | | 104 | | | | | | | | | |
| | 5 | √ | | | | | | | | | 55 | | | | | | | | | | 105 | | | | | | | | | |
| | 6 | N | | | | | | | | | 56 | | | | | | | | | | 106 | | | | | | | | | |
| | 7 | N | | | | | | | | | 57 | | | | | | | | | | 107 | | | | | | | | | |
| | 8 | N | | | | | | | | | 58 | | | | | | | | | | 108 | | | | | | | | | |
| | 9 | N | | | | | | | | | 59 | | | | | | | | | | 109 | | | | | | | | | |
| | 10 | N | | | | | | | | | 60 | | | | | | | | | | 110 | | | | | | | | | |
| | 11 | N | | | | | | | | | 61 | | | | | | | | | | 111 | | | | | | | | | |
| | 12 | N | | | | | | | | | 62 | | | | | | | | | | 112 | | | | | | | | | |
| | 13 | N | | | | | | | | | 63 | | | | | | | | | | 113 | | | | | | | | | |
| | 14 | N | | | | | | | | | 64 | | | | | | | | | | 114 | | | | | | | | | |
| | 15 | N | | | | | | | | | 65 | | | | | | | | | | 115 | | | | | | | | | |
| | 16 | N | | | | | | | | | 66 | | | | | | | | | | 116 | | | | | | | | | |
| | 17 | √ | | | | | | | | | 67 | | | | | | | | | | 117 | | | | | | | | | |
| | 18 | N | | | | | | | | | 68 | | | | | | | | | | 118 | | | | | | | | | |
| | 19 | N | | | | | | | | | 69 | | | | | | | | | | 119 | | | | | | | | | |
| | 20 | N | | | | | | | | | 70 | | | | | | | | | | 120 | | | | | | | | | |
| | 21 | N | | | | | | | | | 71 | | | | | | | | | | 121 | | | | | | | | | |
| | 22 | N | | | | | | | | | 72 | √ | | | | | | | | | 122 | | | | | | | | | |
| | 23 | N | | | | | | | | | 73 | | | | | | | | | | 123 | | | | | | | | | |
| | 24 | N | | | | | | | | | 74 | | | | | | | | | | 124 | | | | | | | | | |
| | 25 | | | | | | | | | | 75 | | | | | | | | | | 125 | | | | | | | | | |
| | 26 | – | √ | | | | | | | | 76 | | | | | | | | | | 126 | | | | | | | | | |
| | 27 | | | | | | | | | | 77 | | | | | | | | | | 127 | | | | | | | | | |
| | 28 | | | | | | | | | | 78 | | | | | | | | | | 128 | | | | | | | | | |
| | 29 | | | | | | | | | | 79 | | | | | | | | | | 129 | | | | | | | | | |
| | 30 | | | | | | | | | | 80 | | | | | | | | | | 130 | | | | | | | | | |
| | 31 | | | | | | | | | | 81 | | | | | | | | | | 131 | | | | | | | | | |
| | 32 | | | | | | | | | | 82 | | | | | | | | | | 132 | | | | | | | | | |
| | 33 | | | | | | | | | | 83 | | | | | | | | | | 133 | | | | | | | | | |
| | 34 | | | | | | | | | | 84 | | | | | | | | | | 134 | | | | | | | | | |
| | 35 | √ | | | | | | | | | 85 | | | | | | | | | | 135 | | | | | | | | | |
| | 36 | | | | | | | | | | 86 | | | | | | | | | | 136 | | | | | | | | | |
| | 37 | | | | | | | | | | 87 | | | | | | | | | | 137 | | | | | | | | | |
| | 38 | | | | | | | | | | 88 | | | | | | | | | | 138 | | | | | | | | | |
| | 39 | | | | | | | | | | 89 | | | | | | | | | | 139 | | | | | | | | | |
| | 40 | | | | | | | | | | 90 | | | | | | | | | | 140 | | | | | | | | | |
| | 41 | | | | | | | | | | 91 | | | | | | | | | | 141 | | | | | | | | | |
| | 42 | | | | | | | | | | 92 | | | | | | | | | | 142 | | | | | | | | | |
| | 43 | | | | | | | | | | 93 | | | | | | | | | | 143 | | | | | | | | | |
| | 44 | | | | | | | | | | 94 | | | | | | | | | | 144 | | | | | | | | | |
| | 45 | | | | | | | | | | 95 | | | | | | | | | | 145 | | | | | | | | | |
| | 46 | | | | | | | | | | 96 | | | | | | | | | | 146 | | | | | | | | | |
| | 47 | | | | | | | | | | 97 | | | | | | | | | | 147 | | | | | | | | | |
| | 48 | | | | | | | | | | 98 | | | | | | | | | | 148 | | | | | | | | | |
| | 49 | | | | | | | | | | 99 | | | | | | | | | | 149 | | | | | | | | | |
| | 50 | √ | | | | | | | | | 100 | | | | | | | | | | 150 | | | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. 05212004

H-178

RECEIVED
CENTRAL FAX CENTER

MAR 0 9 2005                    Docket No. 14181

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

5    Applicant:   Pratte                          Group Art Unit: 1761

     Serial No.:  10/222,435                       Examiner: Robert Madsen

     Filing Date: August 16, 2002

     Title:       Party Tray


10   Mail Stop AF                                  by fax to 703-872-9306

     Commissioner for Patents

     P.O. Box 1450

     Alexandria, VA 22313-1450

                              PETITION

15   Sir,

          This paper is a petition to remove the finality of the Office Action mailed February

     9, 2005.


     **Summary**

20

          Applicant submits that the finality of the office action mailed February 9, 2005,

     should be withdrawn on either or both of the following grounds.

          (1)    Applicant has not received the full and fair hearing to which he is entitled,

          because the final rejection repeats rejections made in the previous office action

25        and is inconsistent with the Examiner's earlier statements, at an interview to

          discuss the previous office action, that the amendments and arguments

          submitted in the reply to the previous office action would overcome all the

          rejections raised in the previous office action.

CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 CFR 1.8

I hereby certify that this paper is being sent by facsimile transmission to the United States Patent and Trademark Office
(703 872 9306) on March 9, 2005
Typed name of person signing this certificate: T. H. P. Richardson, Reg No. 28805, Tel No. 650 854 6304, Fax No.
650 854 6304
Signature

H-179

(2)    the Examiner has failed to properly communicate the basis for the

rejections, in that the final rejection rejects all the claims under 35 USC 103 over

various combinations of documents, but fails to provide any rationale to justify

combining the documents.

5

**Facts**

(1)    On October 10, 2004, Applicant faxed to the Examiner, for his consideration prior

to an interview, draft amended claims and argument in answer to the first Office Action,

10    mailed June 3, 2004.  As noted in the Examiner's Interview Summary of the subsequent

interview on November 1, 2004, and in the Reply faxed November 3, 2004 to the Office

Action, the Examiner agreed, at the interview, that the draft amended claims and

argument overcame all the rejections. The draft argument did not include any evidence,

or any argument as to the propriety of combining the references, though it did state

15    explicitly that Applicant did not admit that the references could properly be combined.

The Reply to the Office Action substantially repeats the draft claims and arguments

considered by the Examiner at the interview, but did not add any further amendments or

arguments or supply any evidence, because the Examiner had made it clear, at the

interview, that there was no need for further amendment or argument, or for evidence.

20

(2)    The final rejection (while withdrawing one of the rejections made previously,

namely the rejection under 35 USC 103 over Carter and Nissley), rejects all the claims

on grounds which are substantially the same as those in the first Office Action, namely

rejections under 35 USC 103 over a combination of three references (Albertson's,

25    Brown and Wyslotsky) or a combination of those three references with one or both of

two further references (Sinnar and Antoon). The final rejection makes no reference to

the interview.

Neither the first office action nor the final rejection provides any rationale for

30    combining the references.

2

H-180

## Argument

(1)    The MPEP does not provide any explicit guidance as to whether, after an
Examiner has agreed, at an interview, that his rejections would be overcome by

5    explicitly stated amendments and arguments, the Examiner can thereafter properly
issue a **final** rejection on the same grounds. [For the avoidance of doubt, it is noted that
applicant agrees that the Examiner is entitled to change his mind; the only issue is
whether, having done so, he is entitled to make a **final** rejection in the present
circumstances.] However, MPEP 706.07 does contain the general instruction (emphasis

10   added)

> *The examiner should never lose sight of the fact that in every case, the
> applicant is entitled to a full and fair hearing, and that a clear issue between
> applicant and examiner should be developed, if possible, before appeal*

What is the effect of the present sequence of events, if the finality of the present Office

15   Action is maintained, and the Examiner refuses to enter any amendments and/or
evidence that Applicant may submit in reply to the Office Action?  It is that the Applicant,
having in effect been told by the Examiner, at the interview, that such amendments and
evidence are unnecessary, will have been deprived of the opportunity to make such
amendments and/or to have such evidence considered.  It is submitted that such action

20   would not be consistent with the Applicant's entitlement to a full and fair hearing, and
that the finality of the Office Action should, therefore, be withdrawn.

(2)    As noted above, neither the first office action nor the final rejection provides any
rationale for combining the references relied upon for the various rejections under 35

25   USC 103.

MPEP 706.02 (j) states (in relevant part, and with emphasis added)

> *35 USC 103 authorizes a rejection where, to meet the claim, it is
> necessary to modify a single reference or to combine it with one or more other*

30   > *references.  After indicating that the rejection is under 35 USC 103, the examiner
> should set forth in the Office Action...*

3

H-181

(D)    an explanation why one of ordinary skill in the art at the time the invention was made would have been motivated to make the proposed modification.

To establish a prima facie case of obviousness, **three basic criteria must**
5      **be met.  First there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art,** to modify the references or to combine reference teachings.... The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art and not
10     based on applicant's disclosure....

**It is important for an Examiner to properly communicate the basis for a rejection** so that the issues can be identified early and the applicant can be given fair  opportunity to reply.

15    Similarly MPEP 2143.01 states (in relevant part).

Obviousness can only be established by combining or modifying teachings of the prior art to produce the claimed invention where there is some teaching, suggestion, or motivation to do so found either explicitly or implicitly in the references themselves or in the knowledge generally available to one of ordinary
20     skill in the art.

It is submitted that in the present circumstances, it is improper for the examiner to make a final rejection, because the Examiner has failed
to properly communicate the basis for a rejection so that the issues can be
25     identified early and the applicant given fair opportunity to reply.

Merely by way of example, it is noted that the primary reference (in all the rejections), Albertson's, is concerned with a package containing fresh vegetables in a concave container having a flat closure member.  The vegetables, when the container is
30     on display, are viewed through the top of the concave container.  By contrast, the secondary reference (in all the rejections), Brown, is not concerned with fresh

4

H-182

03/08/2005  16:59    650-854-2384              T&S RICHARDSON                    PAGE  07

vegetables, or other biologically respiring materials, but rather with a package
containing pizza or like "fragile food items".  Brown makes use of a concave container
having a generally flat closure member with ribs which extend a little way into the
contents of the concave container.  A principal purpose of Brown's ribs is to secure the

5   contents of the container so that they retain an attractive appearance when viewed
through the closure member. Thus the problem addressed by Brown is irrelevant to
Albertson's, and there is no reason why one of ordinary skill in the one would have
considered the possibility of modifying Albertson's to incorporate teaching from Brown.

10                          Respectfully submitted

T.H.P.Richardson

Registration No. 28,805

Tel No. 650 854 6304

H-183

# TRANSMITTAL FORM AND FEE TRANSMITTAL

| Attorney Docket No. | 14181 | | Pratte |
|---|---|---|---|
| Application No. | 10/222,435 | | August 16, 2002 |
| Examiner | Madsen | | 1761 |

(a) Where an inventor is not named, alphanumeric identifier provided in lieu thereof.

## This Transmittal Sheet is accompanied by

Petition to remove finality of Office Action mailed February 9, 2005.

**RECEIVED**
**CENTRAL FAX CENTER**

**MAR 0 9 2005**

## Fee Calculations.  (Applicant is a small entity)

### Excess claim fees

| | Now Specified (fee or their submission) | No. Included in Filing Fee or Prev. Paid Balance | No. Extra | Applicable Fee | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | | - 20 = | | x 50/25 (ea) | |
| Independent Claims | | - 3 = | | x 200/100 (ea) | |
| | | | | Subtotal Extra claim fees | ($) |

### Additional fees

| | Fee Paid |
|---|---|
| Extension for Reply (1, 2, 3, 4 months: $120/60, 450/225, 1020/510, 1590/795)      month | |
| Notice of Appeal (500/250) | |
| Petition to Commissioner | 130.00 |
| Information Disclosure Statement ($180) | |
| Subtotal Additional fees | 130.00 |

### Total Fees

| | |
|---|---|
| Total Fees Submitted | $ 130.00 |

## Authorization to Charge Deposit Account for Fees

The Assistant Commissioner for Patents is hereby authorized to charge the above fees and any additional fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit account.

Deposit Account No:  **19-2090**          Deposit Account Name:  **Sheldon & Mak**

This sheet is transmitted **in duplicate** if a fee is due.

| CERTIFICATE OF FACSIMILE TRANSMISSION |
|---|
| **UNDER 37 CFR 1.8** |
| I hereby certify that this paper is being sent by facsimile transmission to the United States Patent and Trademark Office (703 872 9306) on March 9, 2005 |
| Typed name of person signing this certificate: T. H. P. Richardson Reg No. 28,805, Tel No. 650 854 6304 |
| Signature |

Respectfully Submitted,

Name      T. H. P. Richardson, Reg. No.28,805
Tel. No.   650-854-6304
Fax No.   626-795-6321
Address   Sheldon & Mak
          225 South Lake Avenue
          Pasadena
          CA  91101

H-184



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

7590    02/09/2005

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA  91101

| EXAMINER |
|---|
| MADSEN, ROBERT A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 02/09/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

H-185

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/222,435 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit |
| | Robert Madsen | 1761 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>04 November 2004</u>.

2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1,2 and 26-72</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1,2,26-72</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date <u>9/3, 11/9/2004</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____.

Application/Control Number: 10/222,435                                        Page 2
Art Unit: 1761

## DETAILED ACTION

1.      The Amendment filed November 4, 2004 had been entered. Claims 3-25 have

been cancelled, and claims 26-72 have been added.  Claims 1,2,26-72 remain pending.

2.      The rejections previously made under 35 U.S.C. 112, 2nd paragraph have been

withdrawn in light of the amendment.

### Claim Objections

3.      Claim 54 is objected to under 37 CFR 1.75(c), as being of improper dependent

form for failing to further limit the subject matter of a previous claim.  Applicant is

required to cancel the claim(s), or amend the claim(s) to place the claim(s) in proper

dependent form, or rewrite the claim(s) in independent form. One could infringe on claim

54, which recites the control member may cover a window in the container body without

infringing one claim 52 which recites the control member covers a window in the sealing

sheet.

### Claim Rejections - 35 USC § 112

4.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

5.      Claims 31,40,56,65 are rejected under 35 U.S.C. 112, second paragraph, as

being indefinite for failing to particularly point out and distinctly claim the subject matter

which applicant regards as the invention.  It is unclear how one determines little or no

visual impact. It is not clear if this relates to transparency , a particular thickness or a particular shape.

### Claim Rejections - 35 USC § 103

6.      The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

7.      Claims 1, 26, 27, 29, 32-36,38, 41-44,46, 49-51 are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertson's in view of Brown (US 595366 B1) and Wyslotsky et al. (US 2030057217 A1).

8.      Regarding claims 1, 26,27,29, 32-36,38,41-44,46,49-51, Albertson's teaches a transparent container body, or lid that is domed shaped (i.e. has a contiguous wall extending fro the base and rim), placing dip into the center of container body as recited in claims 32,41,49,dividing the body into compartments, placing fresh vegetables into the compartments , placing a 12" round support tray, which would imply that the body is about 12" in diameter (i.e. a circumference of 30-100 in) , turning the package upside-down , whereby the vegetables are on display for a shopper as recited in claim 34,43,51 (as shown in the Figure, See Page 37). Albertson's is silent in teaching the body is made of polymeric material, has a depth of 1-4 in, is sealed with a polymeric sheet material prior to applying the tray, including an atmosphere control member on the wall of the container body as recited in claims 29, 38,46, so that 75% of the oxygen or only pathway for oxygen and carbon dioxide to pass into/out of package is via the control member as recited in claims 33,42,44,50 further utilizing ribs to circulate the air, using partitions extending from the body to create the compartments in the body, as recited in

Application/Control Number: 10/222,435                                    Page 4
Art Unit: 1761

claims 1,35 and 44, wherein there is no immediate step between placing the vegetables

in the body and sealing with the sheet, as recited in claim 26,35, and the vegetables

rest on the sheet when the body/tray assembly is inverted, as recited in claim 27,36,44.

9.      With respect to the particular dome shaped container body depth, to select any

particular depth, given that the tray that fits over the body has diameter is 12" and thus

the diameter of the body should be similar in rim diameter in order to fit with the tray ,

would have been an obvious matter of design choice depending on the desired quantity

of vegetables to be included in the container body since the greater the depth, the

greater the container body volume (at a set edge diameter), and the greater amount of

vegetables may be included.

10.     With respect to providing partitions extending upwardly from the transparent

container body, Albertson's domed container body is essentially a lid that is used to

initially divide 4 segments of vegetables so when a tray is placed over the lid and the

structure is inverted, the vegetables remain divided in 4 segments on the tray while on

display.   Brown, like Albertson's also teaches a transparent lid , or a domed container

body, intended to divide and maintain separate various portions of food items when

paired with tray.   However, Brown provides partitions (Items 48 ) extending from the

base of the lid.   Brown teaches  the advantage of providing partitions is that the

movement of food on the tray is prevented during display and the lid base is provided

with structural support  (Column 1, line 7 to Column 2, line 17, Column 3, lines 10-24,

Column 4, lines 26-39).   Therefore, it would have been obvious to modify Albertson's

container body and provide partitions that extend from the base (i.e. in the upward

Application/Control Number: 10/222,435                                      Page 5
Art Unit: 1761

direction during filling) since Brown teaches partitions in a container body that serves as

a tray lid will prevent movement of the food items and provide additional structurally

support for the body when used as a tray lid. One would have been substituting one

domed shaped container body design for another for the same purpose: maintaining

division between food items supported by a tray covered by a domed container body.

11.    With respect to forming a domed container body of polymeric material (to provide

good barrier properties to maintain freshness), sealing the body with a polymeric sheet

material prior to applying the tray, not providing an intermediate step between filling and

sealing, having the vegetables rest on the sheet when the body/tray assembly is

inverted, and including an atmosphere control member in a wall of the body so that

oxygen and carbon dioxide only pass through the package via the control member,

Wyslotsky et al., like Albertson's teaches a container body (item 50) made of polymeric

material and tray (item 52) for fresh vegetables, wherein the vegetables are fed into the

container body and the container body is inverted for display. Wyslotsky et al. further

teach it is desirable to provide a sealing sheet(item 31) between the body and the tray

to serve as a tamper evident seal, wherein the seal is applied to the container body and

the support tray is placed over the sheet. Wyslotsky et al. further teach including an

atmosphere control member covering a window in the container body (e.g. item 30 with

cover 38 in the equivalent section to item 50 in Figures 10a, b) for high oxygen diffusion

, along with ribs to increase gas flow, so that the fresh vegetables can respire to extend

shelf life (Paragraphs 25,35,46,47,51,52,53,5461,62).   Therefore, it would have been

obvious to form the container body of polymeric material since Wyslotsky et al. teach

H-190

Application/Control Number: 10/222,435                                          Page 6
Art Unit: 1761

particular polymeric materials will provide excellent barrier properties to maintain

freshness.  It would have been further obvious to provide  a sealing sheet prior to

applying the tray to the container body of Albertson's , that no intermediate step would

be including between the filling and sealing steps, and the vegetables would rest upon

the film after turning over the tray/body assembly  since Wyslotsky et al. teach applying

a sheet over the food items  will provide a tamper evident seal for the consumer,

Albertson's does not include any step in between filling the body and applying the tray,

and since the film would cover the open portion of the container body the vegetables

would rest on the film when the tray was inverted.  It also would have been obvious to

include an atmosphere control member a window in the container body so oxygen and

carbon dioxide pass through the package only via the window, since Wyslotsky et al.

teach providing an atmosphere control member a window in the container body of high

oxygen diffusion will assist in extending the shelf life of fresh vegetables in an otherwise

completely sealed package (i.e. the polymeric material of the package otherwise does

not permit the flow of gases into the package). It would have been further obvious to

include ribs at all locations of the package (i.e. tray and body) since Wyslotsky et al.

teach ribs across the entire package provides air flow.



12.     Claims 2, 30, 31,39,40,47,48 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Albertson's in view of Brown (US 595366 B1) and  Wyslotsky et al.

H-191

Application/Control Number: 10/222,435                                      Page 7
Art Unit: 1761

(US 2030057217 A1), as applied to claims 1, 26, 27, 29, 32-36,38, 41-44,46, 49-51

further in view of Sinner et al. (US 3038625).

13.     Regarding claims 2,31,40, and 48,modified Albertson's teaches the lid is made of

transparent material, but is silent in teaching removable partitions as recited in claims

2,31, 40,48 that have no visual impact as recited in claims 31 ,40 and 48  However,

Sinner et al. who also teach produce package with partitions, teaches it is preferred for

the manufacturer to use removable partitions since produce varies in size and in order

to pack the same number of produce items one would have to be able to adjust the

partition size with removable partitions (Column 1, lines 16-47).  Therefore it would have

been obvious to further modify Albertson's and include removable partitions since

Sinner et al. teach this allows the manufacture to custom fit the package and account

for variability in produce size.  It would have been further obvious to select partitions

that are transparent since the container body of Albertson's is transparent and this

would match the appearance, and since they are transparent they would provide little or

no visible impact.

14.     Regarding claims 30,39 and 47, modified Albertson's teaches a body that  is

made of polymeric material. It is notoriously well known to mold polymeric container

bodies.  Sinner et al. who also teach produce package with partitions, teaches using

removable partitions (i.e. once not molded with the container body) allows one to

package the same quantity of a given produce in a given container wherein the produce

varies in size (Column 1, lines 16-47).  Therefore, to mold the entire container body at

once with the partitions would have been an obvious result effective variable of the size

Application/Control Number: 10/222,435                                      Page 8
Art Unit: 1761

variation of the vegetables packaged in the container body and whether or not one

desired to package the same number of vegetables per division or simply the same

volume per division since Sinner et al. teach produce package with removable

partitions allow one to package the same quantity of a given produce in a given

container wherein the produce varies in size.


15.     Claims 28,37,45 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and Wyslotsky et al. (US 2030057217

A1), as applied to claims 1, 26, 27, 29, 32-36,38, 41-44,46, 49-51 further in view of

Sinner et al. (US 3038625).

16.     As discussed above in the rejection of claims 1, 26, 27, 29, 32-36,38, 41-44,46,

49-51, modified Albertson's include ribs in both body and tray to provide suffient air flow

between the atmosphere control member and the package, but is silent in teaching the

control member covers a window on the sealing sheet and the ribs allow for air to

circulate between the control member and sealing sheet. Antoon also teaches including

an atmosphere control member that covers a window in a body containing fruit or

vegetables.  Antoon teaches providing the control member in the seal across the body

or in the walls will provide the same desired effect, as long as the member is not

blocked during storage (Abstract, Column 4, lines 36-45, and Column 6, lines 35-59).

Therefore it would have been further obvious to provide an additional control member in

the sealed sheet of Albertson's since Antoon teaches one may provide an atmosphere

control member at any location of a container holding produce as long it does not

H-193

become obstructed during storage, and by providing a window in the sheet of

Albertson's gas flow in and out of the container body would still be possible.  It would

have been further obvious that a control member covers a window on the sealing sheet

and the ribs allow for air to circulate between the control member and sealing sheet

since modified Albertson's includes ribs on both the sections of the package (i.e. both

body and tray).


17.     Claims 52-54,57-59 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Albertson's in view of Brown (US 595366 B1) and  Wyslotsky et al. (US

2030057217 A1) and Antoon (US 5045331).

18.     Regarding claims 52,53,54,57-59 Albertson's teaches a transparent container

body, or lid that is domed shaped (i.e. has a contiguous wall extending fro the base and

rim), placing dip into the center of container body as recited in claim 57 dividing the

body into compartments, placing fresh vegetables into the compartments , placing a 12"

round support tray, which would imply that the body is about 12" in diameter (i.e. a

circumference of 30-100 in) , turning the package upside-down , whereby the

vegetables are on display for a shopper as recited in claim 52 and 59 (as shown in the

Figure, See Page 37).  Albertson's is silent in teaching the body is made of polymeric

material, has a depth of 1-4 in, is sealed with a polymeric sheet material prior to

applying the tray, including an atmosphere control member on the sealing sheet as

recited in claims 52 and 54, so the only pathway for oxygen and carbon dioxide to pass

into/out of package is via the control member as recited in claim 58 further utilizing ribs

H·194

Application/Control Number: 10/222,435                                    Page 10
Art Unit: 1761

to circulate the air between the control member and sealing sheet as recited in claim

53,using partitions extending from the body to create the compartments in the body, and

the vegetables rest on the sheet when the body/tray assembly is inverted, as recited in

claim 52.

19.      With respect to the particular dome shaped container body depth, to select any

particular depth, given that the tray that fits over the body has diameter is 12" and thus

the diameter of the body should be similar in rim diameter in order to fit with the tray ,

would have been an obvious matter of design choice depending on the desired quantity

of vegetables to be included in the container body since the greater the depth, the

greater the container body volume (at a set edge diameter), and the greater amount of

vegetables may be included.

20.      With respect to providing partitions extending upwardly from the transparent

container body, Albertson's domed container body is essentially a lid that is used to

initially divide 4 segments of vegetables so when a tray is placed over the lid and the

structure is inverted, the vegetables remain divided in 4 segments on the tray while on

display.   Brown, like Albertson's also teaches a transparent lid , or a domed container

body, intended to divide and maintain separate various portions of food items when

paired with tray.  However, Brown provides partitions (Items 48 ) extending from the

base of the lid.  Brown teaches  the advantage of providing partitions is that the

movement of food on the tray is prevented during display and the lid base is provided

with structural support (Column 1, line 7 to Column 2, line 17, Column 3, lines 10-24,

Column 4, lines 26-39).   Therefore, it would have been obvious to modify Albertson's

Application/Control Number: 10/222,435                                Page 11
Art Unit: 1761

container body and provide partitions that extend from the base (i.e. in the upward

direction during filling) since Brown teaches partitions in a container body that serves as

a tray lid will prevent movement of the food items and provide additional structurally

support for the body when used as a tray lid. One would have been substituting one

domed shaped container body design for another for the same purpose:  maintaining

division between food items supported by a tray covered by a domed container body.

21.      With respect to forming a domed container body of polymeric material (to provide

good barrier properties to maintain freshness), sealing the body with a polymeric sheet

material prior to applying the tray, not providing an intermediate step between filling and

sealing, having the vegetables rest on the sheet when the body/tray assembly is

inverted, and including an atmosphere control member in a wall of the body so that

oxygen and carbon dioxide only pass through the package via the control member,

Wyslotsky et al., like Albertson's teaches a container body (item 50) made of polymeric

material and tray (item 52) for  fresh vegetables, wherein the vegetables are fed into the

container body and the container body is inverted for display.  Wyslotsky et al. further

teach it is desirable to provide a sealing sheet(item 31) between the body  and the tray

to serve as a tamper evident seal, wherein the seal is applied to the container body and

the support tray is placed over the sheet.  Wyslotsky et al. further teach  including an

atmosphere control member covering a window in the container body (e.g. item 30 with

cover 38 in the equivalent section to item 50 in Figures 10a, b) for high oxygen diffusion

, along with ribs to increase gas flow on both sections of the package so that the fresh

vegetables can respire to extend shelf life (Paragraphs 25,35,46,47,51,52,53,5461,62).

H-196

Application/Control Number: 10/222,435                                    Page 12
Art Unit: 1761

Therefore, it would have been obvious to form the container body of polymeric material

since Wyslotsky et al. teach particular polymeric materials will provide excellent barrier

properties to maintain freshness.  It would have been further obvious to provide  a

sealing sheet prior to applying the tray to the container body of Albertson's , that no

intermediate step would be including between the filling and sealing steps, and the

vegetables would rest upon the film after turning over the tray/body assembly  since

Wyslotsky et al. teach applying a sheet over the food items  will provide a tamper

evident seal for the consumer, Albertson's does not include any step in between filling

the body and applying the tray, and since the film would cover the open portion of the

container body the vegetables would rest on the film when the tray was inverted.  It also

would have been obvious to include an atmosphere control member a window in the

container body so oxygen and carbon dioxide pass through the package only via the

window, since Wyslotsky et al. teach providing an atmosphere control member a

window in the container body of high oxygen diffusion will assist in extending the shelf

life of fresh vegetables in an otherwise completely sealed package (i.e. the polymeric

material of the package otherwise does not permit the flow of gases into the package).

It would have been further obvious to include ribs at all locations of the package (i.e.

tray and body) since Wyslotsky et al. teach ribs across the entire package provides air

flow.

22.     With respect to provide a covering over a window in the sealing sheet, Antoon

also teaches including an atmosphere control member that covers a window in a body

containing fruit or vegetables.  Antoon teaches providing the control member in the seal

H-197

Application/Control Number: 10/222,435                                     Page 13
Art Unit: 1761

across the body  or in the walls will provide the same desired effect, as long as the

member is not blocked during storage (Abstract, Column 4, lines 36-45, and  Column 6,

lines 35-59).  Therefore it would have been further obvious to provide an additional

control member in the sealed sheet of Albertson's since Antoon teaches one may

provide an atmosphere control member at any location of a container holding produce

as long it does not become obstructed during storage, and by providing a window in the

sheet of Albertson's gas flow in and out of the container body would still be possible.

23.    Claims 55 and 56  are rejected under 35 U.S.C. 103(a) as being unpatentable

over Albertson's in view of Brown (US 595366 B1) and  Wyslotsky et al. (US

2030057217 A1) and Antoon (US 5045331), as applied to claims 52-54,57-59 further in

view of Sinner et al. (US 3038625).

24.    Regarding claim 55, modified Albertson's teaches a body that  is made of

polymeric material. It is notoriously well known to mold polymeric container bodies.

Sinner et al. who also teach produce package with partitions, teaches using removable

partitions (i.e. once not molded with the container body) allows one to package the

same quantity of a given produce in a given container wherein the produce varies in

size (Column 1, lines 16-47).  Therefore, to mold the entire container body at once with

the partitions would have been an obvious result effective variable of the size variation

of the vegetables packaged in the container body and whether or not one desired to

package the same number of vegetables per division or simply the same volume per

division since Sinner et al. teach produce package with  removable partitions allow one

H-198

Application/Control Number: 10/222,435                              Page 14
Art Unit: 1761

to package the same quantity of a given produce in a given container wherein the

produce varies in size.

25.      Regarding claim 56 modified Albertson's teaches the lid is made of transparent

material, but is silent in teaching removable partitions that have no visual impact.

However, Sinner et al. who also teach produce package with partitions, teaches it is

preferred for the manufacturer to use removable partitions since produce varies in size

and in order to pack the same number of produce items one would have to be able to

adjust the partition size with removable partitions (Column 1, lines 16-47). Therefore it

would have been obvious to further modify Albertson's and include removable partitions

since Sinner et al. teach this allows the manufacture to custom fit the package and

account for variability in produce size. It would have been further obvious to select

partitions that are transparent since the container body of Albertson's is transparent and

this would match the appearance, and since they are transparent they would provide

little or no visible impact.


26.      Claims 60-63 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and Sinner et al. (US 3038625).and

Wyslotsky et al. (US 2030057217 A1) and Antoon (US 5045331).

27.      Regarding claims 60-63, Albertson's teaches a transparent container body, or lid

that is domed shaped (i.e. has a contiguous wall extending fro the base and rim),

placing dip into the center of container body as recited in claim 61 dividing the body into

compartments, placing fresh vegetables into the compartments , placing a 12" round

H-199

support tray, which would imply that the body is about 12" in diameter (i.e. a

circumference of 30-100 in) , turning the package upside-down , whereby the

vegetables are on display for a shopper as recited in claim 60 and 63 (as shown in the

Figure, See Page 37). Albertson's is silent in teaching the body is made of polymeric

material, has a depth of 1-4 in, is sealed with a polymeric sheet material prior to

applying the tray, including an atmosphere control member on the sealing sheet as

recited in claim 60, so the only pathway for oxygen and carbon dioxide to pass into/out

of package is via the control member as recited in claim 62,using partitions extending

from the body to create the compartments in the body , all molded from polymeric

material as recited in claim 60.

28.      With respect to the particular dome shaped container body depth, to select any

particular depth, given that the tray that fits over the body has diameter is 12" and thus

the diameter of the body should be similar in rim diameter in order to fit with the tray ,

would have been an obvious matter of design choice depending on the desired quantity

of vegetables to be included in the container body since the greater the depth, the

greater the container body volume (at a set edge diameter), and the greater amount of

vegetables may be included.

29.      With respect to providing partitions extending upwardly from the transparent

container body, Albertson's domed container body is essentially a lid that is used to

initially divide 4 segments of vegetables so when a tray is placed over the lid and the

structure is inverted, the vegetables remain divided in 4 segments on the tray while on

display.   Brown, like Albertson's also teaches a transparent lid , or a domed container

body, intended to divide and maintain separate various portions of food items when paired with tray.  However, Brown provides partitions (Items 48 ) extending from the base of the lid.  Brown teaches  the advantage of providing partitions is that the movement of food on the tray is prevented during display and the lid base is provided with structural support  (Column 1, line 7 to Column 2, line 17, Column 3, lines 10-24, Column 4, lines 26-39).   Therefore, it would have been obvious to modify Albertson's container body and provide partitions that extend from the base (i.e. in the upward direction during filling) since Brown teaches partitions in a container body that serves as a tray lid will prevent movement of the food items and provide additional structurally support for the body when used as a tray lid. One would have been substituting one domed shaped container body design for another for the same purpose:  maintaining division between food items supported by a tray covered by a domed container body.

30.    With respect to molding the container body with the partitions, Sinner et al. also teach produce package with partitions, teaches using removable partitions (i.e. once not molded with the container body) allows one to package the same quantity of a given produce in a given container wherein the produce varies in size (Column 1, lines 16-47). Therefore, to mold the entire container body at once with the partitions would have been an obvious result effective variable of the size variation of the vegetables packaged in the container body and whether or not one desired to package the same number of vegetables per division or simply the same volume per division since Sinner et al. teach produce package with  removable partitions allow one to package the same quantity of a given produce in a given container wherein the produce varies in size.

Application/Control Number: 10/222,435                                    Page 17
Art Unit: 1761

31.    With respect to forming a domed container body of polymeric material (to provide

good barrier properties to maintain freshness), sealing the body with a polymeric sheet

material prior to applying the tray, not providing an intermediate step between filling and

sealing, having the vegetables rest on the sheet when the body/tray assembly is

inverted, and including an atmosphere control member in a wall of the body so that

oxygen and carbon dioxide only pass through the package via the control member,

Wyslotsky et al., like Albertson's teaches a container body (item 50) made of polymeric

material and tray (item 52) for fresh vegetables, wherein the vegetables are fed into the

container body and the container body is inverted for display.  Wyslotsky et al. further

teach it is desirable to provide a sealing sheet(item 31) between the body and the tray

to serve as a tamper evident seal, wherein the seal is applied to the container body and

the support tray is placed over the sheet.  Wyslotsky et al. further teach including an

atmosphere control member covering a window in the container body (e.g. item 30 with

cover 38 in the equivalent section to item 50 in Figures 10a, b) for high oxygen diffusion

, along with ribs to increase gas flow on both sections of the package so that the fresh

vegetables can respire to extend shelf life (Paragraphs 25,35,46,47,51,52,53,5461,62).

Therefore, it would have been obvious to form the container body of polymeric material

since Wyslotsky et al. teach particular polymeric materials will provide excellent barrier

properties to maintain freshness.  It would have been further obvious to provide a

sealing sheet prior to applying the tray to the container body of Albertson's , that no

intermediate step would be including between the filling and sealing steps, and the

vegetables would rest upon the film after turning over the tray/body assembly  since

H- 202

Application/Control Number: 10/222,435                                    Page 18
Art Unit: 1761

Wyslotsky et al. teach applying a sheet over the food items  will provide a tamper

evident seal for the consumer, Albertson's does not include any step in between filling

the body and applying the tray, and since the film would cover the open portion of the

container body the vegetables would rest on the film when the tray was inverted.  It also

would have been obvious to include an atmosphere control member a window in the

container body so oxygen and carbon dioxide pass through the package only via the

window, since Wyslotsky et al. teach providing an atmosphere control member a

window in the container body of high oxygen diffusion will assist in extending the shelf

life of fresh vegetables in an otherwise completely sealed package (i.e. the polymeric

material of the package otherwise does not permit the flow of gases into the package).

32.      With respect to provide a covering over a window in the sealing sheet, .  Antoon

also teaches including an atmosphere control member that covers a window in a body

containing fruit or vegetables.  Antoon teaches providing the control member in the seal

across the body  or in the walls will provide the same desired effect, as long as the

member is not blocked during storage (Abstract, Column 4, lines 36-45, and  Column 6,

lines 35-59).  Therefore it would have been further obvious to provide an additional

control member in the sealed sheet of Albertson's since Antoon teaches one may

provide an atmosphere control member at any location of a container holding produce

as long it does not become obstructed during storage, and by providing a window in the

sheet of Albertson's gas flow in and out of the container body would still be possible.

H-203

Application/Control Number: 10/222,435                                         Page 19
Art Unit: 1761

33.     Claims 64,66-72 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and  Wyslotsky et al. (US 2030057217

A1) and Sinner et al. (US 3038625).

34.     Regarding claims 64,66-72, Albertson's teaches a transparent container body, or

lid that is domed shaped (i.e. has a contiguous wall extending fro the base and rim),

placing dip into the center of container body as recited in claims 66 and 69,dividing the

body into compartments, placing fresh vegetables into the compartments , placing a 12"

round support tray, which would imply that the body is about 12" in diameter (i.e. a

circumference of 30-100 in) , turning the package upside-down , whereby the

vegetables are on display for a shopper as recited in claims 68,72 (as shown in the

Figure, See Page 37).  Albertson's is silent in teaching the body is made of polymeric

material, has a depth of 1-4 in, is sealed with a polymeric sheet material prior to

applying the tray, including an atmosphere control member on the wall of the container

body as recited in claims 64 and 69 so that 75% of the oxygen or only pathway for

oxygen and carbon dioxide to pass into/out of package is via the control member as

recited in claims 67 and 70 using removable partitions extending from the body to

create the compartments in the body as recited in claims 64 and 69.

35.     With respect to the particular dome shaped container body depth, to select any

particular depth, given that the tray that fits over the body has diameter is 12" and thus

the diameter of the body should be similar in rim diameter in order to fit with the tray ,

would have been an obvious matter of design choice depending on the desired quantity

of vegetables to be included in the container body since the greater the depth, the

Application/Control Number: 10/222,435                                      Page 20
Art Unit: 1761

greater the container body volume (at a set edge diameter), and the greater amount of
vegetables may be included.

36.     With respect to providing partitions extending upwardly from the transparent
container body, Albertson's domed container body is essentially a lid that is used to
initially divide 4 segments of vegetables so when a tray is placed over the lid and the
structure is inverted, the vegetables remain divided in 4 segments on the tray while on
display.  Brown, like Albertson's also teaches a transparent lid , or a domed container
body, intended to divide and maintain separate various portions of food items when
paired with tray.  However, Brown provides partitions (Items 48 ) extending from the
base of the lid.  Brown teaches  the advantage of providing partitions is that the
movement of food on the tray is prevented during display and the lid base is provided
with structural support  (Column 1, line 7 to Column 2, line 17, Column 3, lines 10-24,
Column 4, lines 26-39).   Therefore, it would have been obvious to modify Albertson's
container body and provide partitions that extend from the base (i.e. in the upward
direction during filling) since Brown teaches partitions in a container body that serves as
a tray lid will prevent movement of the food items and provide additional structurally
support for the body when used as a tray lid. One would have been substituting one
domed shaped container body design for another for the same purpose:  maintaining
division between food items supported by a tray covered by a domed container body.

37.     With respect to forming removable partitions, Sinner et al. who also teach
produce package with partitions, teaches it is preferred for the manufacturer to use
removable partitions since produce varies in size and in order to pack the same number

of produce items one would have to be able to adjust the partition size with removable

partitions (Column 1, lines 16-47). Therefore it would have been obvious to further

modify Albertson's and include removable partitions since Sinner et al. teach this allows

the manufacture to custom fit the package and account for variability in produce size.

38.    With respect to forming a domed container body of polymeric material (to provide

good barrier properties to maintain freshness), sealing the body with a polymeric sheet

material prior to applying the tray, , and including an atmosphere control member in a

wall of the body so that oxygen and carbon dioxide only pass through the package via

the control member, Wyslotsky et al., like Albertson's teaches a container body (item

50) made of polymeric material and tray (item 52) for fresh vegetables, wherein the

vegetables are fed into the container body and the container body is inverted for

display. Wyslotsky et al. further teach it is desirable to provide a sealing sheet(item 31)

between the body and the tray to serve as a tamper evident seal, wherein the seal is

applied to the container body and the support tray is placed over the sheet. Wyslotsky

et al. further teach including an atmosphere control member covering a window in the

container body (e.g. item 30 with cover 38 in the equivalent section to item 50 in Figures

10a, b) for high oxygen diffusion , along with ribs to increase gas flow, so that the fresh

vegetables can respire to extend shelf life (Paragraphs 25,35,46,47,51,52,53,5461,62).

Therefore, it would have been obvious to form the container body of polymeric material

since Wyslotsky et al. teach particular polymeric materials will provide excellent barrier

properties to maintain freshness. It would have been further obvious to provide a

sealing sheet prior to applying the tray to the container body of Albertson's , that no

H-206

Application/Control Number: 10/222,435                                    Page 22
Art Unit: 1761

intermediate step would be including between the filling and sealing steps, and the

vegetables would rest upon the film after turning over the tray/body assembly since

Wyslotsky et al. teach applying a sheet over the food items will provide a tamper

evident seal for the consumer, Albertson's does not include any step in between filling

the body and applying the tray, and since the film would cover the open portion of the

container body the vegetables would rest on the film when the tray was inverted. It also

would have been obvious to include an atmosphere control member a window in the

container body so oxygen and carbon dioxide pass through the package only via the

window, since Wyslotsky et al. teach providing an atmosphere control member a

window in the container body of high oxygen diffusion will assist in extending the shelf

life of fresh vegetables in an otherwise completely sealed package (i.e. the polymeric

material of the package otherwise does not permit the flow of gases into the package).

39.    Regarding claim 65, as discussed above modified Albertson's teaches a body is

made of transparent polymeric material, but is silent in teaching the partitions do not

provide any visual impact. However, it would have been obvious to select transparent

partitions, since the container body of Albertson's is transparent and this would match

the appearance, and being transparent, they would provide little or no visible impact.


### Response to Arguments

40.    Applicant's arguments with respect to Carter et al. and Nissley have been fully

considered and are persuasive. The rejection of Claim 1 and 17 under 35 U.S.C.


H-207

Application/Control Number: 10/222,435                                    Page 23
Art Unit: 1761

103(a) as being unpatentable over Carter et al. (EP0437082 A1) in view of Nissley (US

3610458) has been withdrawn.

41.     With respect to Applicant's arguments directed to the combination of Brown and

Albertson's, applicant asserts that the partitions of Brown do not extend upwardly from

the base and that Brown does not teach compartments.  However, "upwardly" is relative

to the particular angle from which one views the lid, and a compartment is defined as a

separate division or section (See Merriam-Webster Online).  Brown teaches partitions

extending from the base to the open end of the lid that divide the lid into sections for the

purpose of fixing the position of food items held between the lid and a tray.   These

sections Albertson's "fixes" the position of food items held between a lid and a tray by

dividing the lid into sections, filling the lid, covering the lid with a tray, and inverting the

lid/tray structure to arrive at food items held in a fixed position between a lid and a tray.

Thus, Brown teaches how one can "divide" a lid into sections such that food secured

between the lid and a tray remains fixed in a particular location.

42.     With respect to arguments directed to Wyslosky et al., Wyslosky et al. are relied

for providing motivation to modify the overall package of Albertson's such that is

appropriate to store fresh vegetables  (e.g. including a separating sheet, atmosphere

control member, polymeric material , ribs for improving air flow, etc. See the claim

rejections for the discussion).  Albertson's is the primary reference, teaches fresh

vegetables, the general shape and dimension of the container body and tray, and filling

the container body in air atmosphere.

H-208

Application/Control Number: 10/222,435                                    Page 24
Art Unit: 1761

43.    With respect to Sinner,  Sinner is relied on as motivation for or against providing

removable partitions in produce packages.  Sinner teaches removable dividers in a

package allow one to alter the section size to accommodate a particular number of

items.  Again, Albertson's is the primary reference, teaches fresh vegetables, the

general shape and dimension of the container body and tray, dividing the body to

accommodate vegetables, including vegetable dip.

44.    With respect to Antoon, Antoon is relied on as motivation for including an

atmosphere control member in any location on the package (i.e. across a sealing sheet

or a wall), depending on how the package is stored.  Antoon is not relied on for teaching

any particular body/tray structure with ribs as argued by Applicant.  Again, Albertson's is

the primary reference, and teaches the general shape and dimension of the container

body and tray.  Furthermore, Wyslosky et al. as discussed above in the rejection teach

providing ribs everywhere across a given package, to facilitate airflow.


### Conclusion

45.    Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

46.    A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

H-209

Application/Control Number: 10/222,435                    Page 25
Art Unit: 1761

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

47.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Robert Madsen whose telephone number is (571) 272-

1402.  The examiner can normally be reached on 7:00AM-3:30PM M-F.

48.    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Milton Cano can be reached on (571) 272-1398.  The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

49.    Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Robert  Madsen
Examiner
Art Unit 1761

MILTON I. CANO
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700

H-210

Page ___1___ of ___1___

| FORM PTO-1449<br>(Rev 8/83)<br><br>**INFORMATION DISCLOSURE STATEMENT**<br><br>(Use several sheets if necessary) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | Atty. Docket No.:<br>**14181** | Appl'n No.:<br>**10/222.435** |
|---|---|---|---|

| | | Applicant: Pratte | |
| Filing Date:<br>**August 16, 2002** | Group: 1761 |

## US PATENT DOCUMENTS

| * Exr.<br>initial | Document<br>number | Date | Name | Class | Sub-<br>class | Filing date (if<br>appropriate) |
|---|---|---|---|---|---|---|
| ✓ | 2003/0031769 | 2/2003 | Wyslotsky | 426 | 397 | 08/02 /2001 |
| ✓ | 2003/0087015 | 5/2003 | Wyslotsky | 426 | 397 | 08/02/2002 |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * Exr.<br>initial | Document<br>number | Date | Country | Class | Sub-<br>class | Translation<br>enclosed (?) |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr.<br>initial | Details of Document | Translation<br>enclosed (?) |
|---|---|---|
| | | |

| Examiner's signature | Date considered 1/7/05 |
|---|---|

\* EXAMINER: Initial if citation considered, whether or not citation is in conformance with MEPE 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Laoyout rev. 3/95

H - 211

Page ___1___ of ___1___

| FORM PTO-1449   U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE<br><br>INFORMATION DISCLOSURE STATEMENT<br><br>(Use several sheets if necessary) | Atty. Docket No.:<br>14181 | Appl'n No.:<br>10/222,435 |
|---|---|---|
| | Applicant: Pratte, Wesley Paul | |
| | Filing Date:<br>August 16,2002 | Group:<br>1761 |

## US PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Name | Class | Sub-class | Filing date (if appropriate) |
|---|---|---|---|---|---|---|
| *(initial)* | 3,507,667 | 04/1970 | Magnen | 99 | 171 | |
| | 4,769,262 | 09/1988 | Ferrar et al. | 428 | 35 | |
| | 4,842,875 | 06/1989 | Anderson | 426 | 118 | |
| | 4,879,078 | 11/1989 | Antoon | 264 | 41 | |
| | 4,910,032 | 03/1990 | Antoon | 426 | 118 | |
| | 4,923,703 | 05/1990 | Antoon | 426 | 118 | |
| | 5,160,768 | 11/1992 | Antoon | 428 | 35.2 | |
| | 5,672,406 | 09/1997 | Challis et al. | 428 | 136 | |
| | 5,832,699 | 11/1998 | Zobel | 53 | 461 | |
| | 5,908,649 | 06/1999 | Floyd et al. | 426 | 109 | |
| *(initial)* | 6,296,923 | 10/2001 | Zobel | 428 | 137 | 6/1994 |

## FOREIGN PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Country | Class | Sub-class | Translation enclosed (?) |
|---|---|---|---|---|---|---|
| *(initial)* | 0351116 | | Europe | | | |
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr. initial | Details of Document | Translation enclosed (?) |
|---|---|---|
| *(initial)* | Food Technology, September 1988, 70-77, "Modified Atmosphere Packaging of Fresh Produce" by Zagory and Kader | N/A |

| Examiner's signature *(signature)* | Date considered   1/7/05 |
|---|---|

* EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

H-212

| *Notice of References Cited* | Application/Control No. 10/222,435 | Applicant(s)/Patent Under Reexamination PRATTE, WESLEY PAUL | |
|---|---|---|---|
| | Examiner Robert Madsen | Art Unit 1761 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | Merriam-Webster Online. http//www.m-w.com. |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 01072005

H-213

## Index of Claims

| | |
|---|---|
| Application No. | 10/222,435 |
| Applicant(s) | PRATTE, WESLEY PAUL |
| Examiner | Robert Madsen |
| Art Unit | 1761 |

| Symbol | Meaning | Symbol | Meaning |
|---|---|---|---|
| √ | Rejected | – | (Through numeral) Cancelled |
| = | Allowed | + | Restricted |
| N | Non-Elected | A | Appeal |
| I | Interference | O | Objected |

| Final | Original | 5/21/04 | 1/19/05 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | √ | | | | | | | | |
| | 2 | √ | | | | | | | | | |
| | 3 | √ | | | | | | | | | |
| | 4 | √ | | | | | | | | | |
| | 5 | √ | | | | | | | | | |
| | 6 | N | | | | | | | | | |
| | 7 | N | | | | | | | | | |
| | 8 | N | | | | | | | | | |
| | 9 | N | | | | | | | | | |
| | 10 | N | | | | | | | | | |
| | 11 | N | | | | | | | | | |
| | 12 | N | | | | | | | | | |
| | 13 | N | | | | | | | | | |
| | 14 | N | | | | | | | | | |
| | 15 | N | | | | | | | | | |
| | 16 | N | | | | | | | | | |
| | 17 | √ | | | | | | | | | |
| | 18 | N | | | | | | | | | |
| | 19 | N | | | | | | | | | |
| | 20 | N | | | | | | | | | |
| | 21 | N | | | | | | | | | |
| | 22 | N | | | | | | | | | |
| | 23 | N | | | | | | | | | |
| | 24 | N | | | | | | | | | |
| | 25 | | | | | | | | | | |
| | 26 | √ | | | | | | | | | |
| | 27 | | | | | | | | | | |
| | 28 | | | | | | | | | | |
| | 29 | | | | | | | | | | |
| | 30 | | | | | | | | | | |
| | 31 | | | | | | | | | | |
| | 32 | | | | | | | | | | |
| | 33 | | | | | | | | | | |
| | 34 | | | | | | | | | | |
| | 35 | | | | | | | | | | |
| | 36 | | | | | | | | | | |
| | 37 | | | | | | | | | | |
| | 38 | | | | | | | | | | |
| | 39 | | | | | | | | | | |
| | 40 | | | | | | | | | | |
| | 41 | | | | | | | | | | |
| | 42 | | | | | | | | | | |
| | 43 | | | | | | | | | | |
| | 44 | | | | | | | | | | |
| | 45 | | | | | | | | | | |
| | 46 | | | | | | | | | | |
| | 47 | | | | | | | | | | |
| | 48 | | | | | | | | | | |
| | 49 | | | | | | | | | | |
| | 50 | √ | | | | | | | | | |

| Final | Original | 1/3/05 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 51 | √ | | | | | | | | | |
| | 52 | | | | | | | | | | |
| | 53 | | | | | | | | | | |
| | 54 | | | | | | | | | | |
| | 55 | | | | | | | | | | |
| | 56 | | | | | | | | | | |
| | 57 | | | | | | | | | | |
| | 58 | | | | | | | | | | |
| | 59 | | | | | | | | | | |
| | 60 | | | | | | | | | | |
| | 61 | | | | | | | | | | |
| | 62 | | | | | | | | | | |
| | 63 | | | | | | | | | | |
| | 64 | | | | | | | | | | |
| | 65 | | | | | | | | | | |
| | 66 | | | | | | | | | | |
| | 67 | | | | | | | | | | |
| | 68 | | | | | | | | | | |
| | 69 | | | | | | | | | | |
| | 70 | | | | | | | | | | |
| | 71 | | | | | | | | | | |
| | 72 | | | | | | | | | | |
| | 73 | | | | | | | | | | |
| | 74 | | | | | | | | | | |
| | 75 | | | | | | | | | | |
| | 76 | | | | | | | | | | |
| | 77 | | | | | | | | | | |
| | 78 | | | | | | | | | | |
| | 79 | | | | | | | | | | |
| | 80 | | | | | | | | | | |
| | 81 | | | | | | | | | | |
| | 82 | | | | | | | | | | |
| | 83 | | | | | | | | | | |
| | 84 | | | | | | | | | | |
| | 85 | | | | | | | | | | |
| | 86 | | | | | | | | | | |
| | 87 | | | | | | | | | | |
| | 88 | | | | | | | | | | |
| | 89 | | | | | | | | | | |
| | 90 | | | | | | | | | | |
| | 91 | | | | | | | | | | |
| | 92 | | | | | | | | | | |
| | 93 | | | | | | | | | | |
| | 94 | | | | | | | | | | |
| | 95 | | | | | | | | | | |
| | 96 | | | | | | | | | | |
| | 97 | | | | | | | | | | |
| | 98 | | | | | | | | | | |
| | 99 | | | | | | | | | | |
| | 100 | | | | | | | | | | |

| Final | Original | Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 101 | | | | | | | | | | |
| | 102 | | | | | | | | | | |
| | 103 | | | | | | | | | | |
| | 104 | | | | | | | | | | |
| | 105 | | | | | | | | | | |
| | 106 | | | | | | | | | | |
| | 107 | | | | | | | | | | |
| | 108 | | | | | | | | | | |
| | 109 | | | | | | | | | | |
| | 110 | | | | | | | | | | |
| | 111 | | | | | | | | | | |
| | 112 | | | | | | | | | | |
| | 113 | | | | | | | | | | |
| | 114 | | | | | | | | | | |
| | 115 | | | | | | | | | | |
| | 116 | | | | | | | | | | |
| | 117 | | | | | | | | | | |
| | 118 | | | | | | | | | | |
| | 119 | | | | | | | | | | |
| | 120 | | | | | | | | | | |
| | 121 | | | | | | | | | | |
| | 122 | | | | | | | | | | |
| | 123 | | | | | | | | | | |
| | 124 | | | | | | | | | | |
| | 125 | | | | | | | | | | |
| | 126 | | | | | | | | | | |
| | 127 | | | | | | | | | | |
| | 128 | | | | | | | | | | |
| | 129 | | | | | | | | | | |
| | 130 | | | | | | | | | | |
| | 131 | | | | | | | | | | |
| | 132 | | | | | | | | | | |
| | 133 | | | | | | | | | | |
| | 134 | | | | | | | | | | |
| | 135 | | | | | | | | | | |
| | 136 | | | | | | | | | | |
| | 137 | | | | | | | | | | |
| | 138 | | | | | | | | | | |
| | 139 | | | | | | | | | | |
| | 140 | | | | | | | | | | |
| | 141 | | | | | | | | | | |
| | 142 | | | | | | | | | | |
| | 143 | | | | | | | | | | |
| | 144 | | | | | | | | | | |
| | 145 | | | | | | | | | | |
| | 146 | | | | | | | | | | |
| | 147 | | | | | | | | | | |
| | 148 | | | | | | | | | | |
| | 149 | | | | | | | | | | |
| | 150 | | | | | | | | | | |

H-214

| **Search Notes** | Application No. 10/222,435 | Applicant(s) PRATTE, WESLEY PAUL | |
|---|---|---|---|
| | Examiner Robert Madsen | Art Unit 1761 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 426 | 106 | 5/21/2004 | RAM |
| 426 | 112 | 5/21/2004 | RAM |
| 426 | 115 | 5/21/2004 | RAM |
| 426 | 119 | 5/21/2004 | RAM |
| 426 | 120 | 5/21/2004 | RAM |
| 426 | 389 | 5/21/2004 | RAM |
| 426 | 392 | 5/21/2004 | RAM |
| 426 | 394 | 5/21/2004 | RAM |
| 426 | 395 | 5/21/2004 | RAM |
| 206 | 541 | 5/21/2004 | RAM |
| 206 | 545 | 5/21/2004 | RAM |
| 206 | 546 | 5/21/2004 | RAM |
| 206 | 548 | 5/21/2004 | RAM |
| 206 | 216 | 5/21/2004 | RAM |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST TEXT SEARCH | 5/21/2004 | RAM |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

U.S. Patent and Trademark Office

Part of Paper No 05212004

H-215

## Search Notes (continued)

| Application No. | Applicant(s) |
|---|---|
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit |
| Robert Madsen | 1761 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 206 | 562 | 5/21/2004 | RAM |
| 206 | 563 | 5/21/2004 | RAM |
| 220 | 23.83 | 5/21/2004 | ram |
| 206 | 561 | 5/21/2004 | RAM |
| 206 | 564 | 5/21/2004 | RM |
| 206 | 557 | 5/21/2004 | RAM |
| 426 | 113 | 5/21/2004 | Ram |
| 426 | 114 | 5/21/2004 | RAM |
| UPDATED | SEARCH | 1/7/05 | Ra |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

U.S. Patent and Trademark Office

Part of Paper No  05212004

H-216



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

7590     11/10/2004

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA  91101

| EXAMINER |
|---|
| MADSEN, ROBERT A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 11/10/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

H·217

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
|  | 10/222,435 | PRATTE, WESLEY PAUL |
|  | Examiner | Art Unit |
|  | Robert Madsen | 1761 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *R. Madsen*.                          (3)*W. Pratte*.

(2) *T. Richardson*.                       (4)_____.

Date of Interview: <u>01 November 2004</u>.

Type:   a)☒ Telephonic   b)☐ Video Conference
        c)☐ Personal [copy given to:  1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☒ Yes   e)☐ No.
    If Yes, brief description: <u>*The invention was presented*</u> .

Claim(s) discussed: <u>*1-5 and 17*</u>.

Identification of prior art discussed: _____.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: <u>*A proposed amendment was presented that overcomes the rejections set forth in the previous office action. Examiner noted an updated search is required*</u>.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

MILTON I. CANO
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 1700

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.

Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)                          Interview Summary                          Paper No. 11012004

H-218

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
    (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

11-10-04

IPU 1761 $

## TRANSMITTAL FORM AND FEE TRANSMITTAL

| Attorney Docket No.: | 14181 | First Named Inventor (a): | Pratte |
|---|---|---|---|
| Application No.: | 10/222,435 | Filing Date: | August 16, 2002 |
| Examiner: | Robert Madsen | Group Art Unit: | 1761 |

### This Transmittal Sheet is accompanied by

Information Disclosure Statement (including PTO 1449 in duplicate, and references), and an Acknowledgement Postcard

5    **Fee Calculations**

(1)    **Filing Fee**

(2)    **Extra Claim Fees**

(3)    **Additional or other fees**

Information Disclosure Statement ($180)      **Fee Paid**    **$ 180.00**

10    Total Fees Submitted                     **$ 180.00**

### Authorization to Charge Deposit Account for Additional Fees

The Assistant Commissioner for Patents is hereby authorized to charge any additional fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit
15 account.

     Deposit Account No:   **19-2090**      Deposit Account Name:   **Sheldon & Mak**

---

**EXPRESS MAIL CERTIFICATION UNDER**
**37 CFR 1.10**

I hereby certify that this paper is being deposited with the "Express Mail Post Office to Addressee" service of the United States Postal Service on the date indicated below and is addressed to Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450
Express Mail mailing label No. EP907126138US  Date of Deposit Nov 9,2004
Typed name of person signing this certificate: T. H. P. Richardson
Signature

---

Respectfully Submitted,

Name    T. H. P. Richardson
Tel. No.650-854-6304 Fax No.626-795-6321
Sheldon & Mak
225 South Lake Avenue
Pasadena
CA 91101

---

11/12/2004 HALI11   00000084 192090   10222435

01 FC:1806      180.00 DA

H-220



Docket No. 14181

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Pratte

Group Art Unit: 1761

Serial No.: 10/222,435

Examiner: Robert Madsen

Filing Date: August 16, 2002

Title: Party Tray

Mail Stop Amendment

Assistant Commissioner for Patents

P.O. Box 1450

Alexandria, VA 22313-1450

## DISCLOSURE UNDER 37 CFR 1.56

In fulfilling the duty of candor and good faith, the documents listed on the attached PTO-1449 (two copies) are disclosed to the Office in accordance with 37 CFR § 1.56. It should be noted the word "prior" has been deleted from the attached PTO-1449. It is not admitted that the information in the listed documents is material to patentability as defined in 37 CFR § 1.56(b) or that the documents are analogous art. The Examiner is asked to consider these documents, and to confirm such consideration by returning an initialed and signed copy of the PTO-1449.

Also attached is a copy of each of the documents listed on the attached PTO-1449. Insofar as the attached documents have markings thereon, no significance is intended by such markings.

11/12/2004 HALI11    00000084 10222435
01 FC:1806        180.00 DA

## EXPRESS MAIL CERTIFICATION UNDER 37 CFR 1.10

I hereby certify that this paper is being deposited with the "Express Mail Post Office to Addressee" service of the United States Postal Service on the date indicated below and is addressed to Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450
Express Mail mailing label No. EP907126138US  Date of Deposit Nov 9,2004
Typed name of person signing this certificate: T. H. P. Richardson  Signature

H-221

This Disclosure Statement is filed under the provisions of 37 CFR 1.97(c) which require payment of the fee as set forth in 37 CFR 1.17(p).  Please charge the fee for consideration of the Disclosure Statement to Deposit Account No. 19-2090 (Sheldon & Mak).

It is believed that this Disclosure complies with the requirements of 37 CFR 1.56 and the MPEP.  If the some reason the Examiner thinks otherwise, he is asked to call the undersigned so that any deficiencies can be remedied.

Respectfully submitted,

T.H.P.Richardson
Reg. No. 27,805
Tel. No. 650-854-6304

H·222

CIPE JOB
NOV 0 9 2004
PATENT & TRADEMARK OFFICE

Page _____ 1 _____ of _____ 1 _____

| FORM PTO-1449   U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE<br><br>**INFORMATION DISCLOSURE STATEMENT**<br><br>(Use several sheets if necessary) | Atty. Docket No.:<br>**14181** | Appl'n No.:<br>**10/222,435** |
|---|---|---|
| | Applicant: Pratte, Wesley Paul | |
| | Filing Date:<br>**August 16,2002** | Group:<br>**1761** |

### US PATENT DOCUMENTS

| * Exr.<br>initial | Document<br>number | Date | Name | Class | Sub-<br>class | Filing date (if<br>appropriate) |
|---|---|---|---|---|---|---|
| | 3,507,667 | 04/1970 | Magnen | 99 | 171 | |
| | 4,769,262 | 09/1988 | Ferrar et al. | 428 | 35 | |
| | 4,842,875 | 06/1989 | Anderson | 426 | 118 | |
| | 4,879,078 | 11/1989 | Antoon | 264 | 41 | |
| | 4,910,032 | 03/1990 | Antoon | 426 | 118 | |
| | 4,923,703 | 05/1990 | Antoon | 426 | 118 | |
| | 5,160,768 | 11/1992 | Antoon | 428 | 35.2 | |
| | 5,672,406 | 09/1997 | Challis et al. | 428 | 136 | |
| | 5,832,699 | 11/1998 | Zobel | 53 | 461 | |
| | 5,908,649 | 06/1999 | Floyd et al. | 426 | 109 | |
| | 6,296,923 | 10/2001 | Zobel | 428 | 137 | 6/1994 |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * Exr.<br>initial | Document<br>number | Date | Country | Class | Sub-<br>class | Translation<br>enclosed<br>(?) |
|---|---|---|---|---|---|---|
| | 0351116 | | Europe | | | |
| | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr.<br>initial | Details of Document | Translation<br>enclosed<br>(?) |
|---|---|---|
| | Food Technology, September 1988, 70-77, "Modified Atmosphere Packaging of Fresh<br>Produce" by Zagory and Kader | N/A |

| | |
|---|---|
| Examiner's signature | Date considered |

* EXAMINER: Initial if citation considered, whether or not citation is in conformance with
MPEP 609; draw line through citation if not in conformance and not considered. Include
copy of this form with next communication to applicant.

H-223



⑲ 
Europäisches Patentamt

European Patent Office

Office européen des brevets

⑪ Publication number: **0 351 116 A2**

⑫ **EUROPEAN PATENT APPLICATION**

㉑ Application number: 89306712.4

㉒ Date of filing: 03.07.89

㊿ Int. Cl.⁴: **B65D 81/24**

㉚ Priority: 15.07.88 GB 8816950

㊸ Date of publication of application:
17.01.90 Bulletin 90/03

㊻ Designated Contracting States:
AT BE CH DE ES FR GB GR IT LI NL SE

⑦ Applicant: COURTAULDS FILMS &
PACKAGING (HOLDINGS) LTD.
Bath Road
Bridgwater Somerset TA6 4PA(GB)

⑦ Inventor: Zobel, Michael George Reinhardt
24 Lower Road
Woolavington Bridgwater Somerset(GB)

⑦ Representative: Claisse, John Anthony, Dr.
Courtaulds Films & Packaging (Holdings) Ltd
Bath Road
Bridgwater Somerset TA6 4PA(GB)

�civilian Polymeric films.

㊗ The invention provides polymeric films for the storage or packaging of plant material, the film being perforate and having a water vapour permeability of not more than 800g m⁻² day⁻¹ and an oxygen permeability of not more than 200000 cm³ m⁻² day⁻¹ atmosphere⁻¹, both permeabilities being measured at 25°C with a relative humidity of 75 percent. Various plant materials, for example carrots, tomatoes, calabrese and mushrooms heat sealed in packs of films of the invention have shown improved shelf lives compared with similar plant materials packaged for example in polyethylene cling film or polyvinyl chloride stretch wrap.

EP 0 351 116 A2

# POLYMERIC FILMS

This invention concerns polymeric films, and in particular polymeric films for the storage or packaging of plant materials.

During storage, plant materials continue to respire even when the materials have been removed from the plant on which they were growing or when the plant material has been dug out of the ground. Thus fruit and vegetables, for example, continue to place demands on the surrounding atmosphere during storage, and deterioration of the quality of the plant materials occurs through water loss and surrounding levels of oxygen and carbon dioxide which do not favour their remaining fresh.

The freshness of fruit and vegetables can be prolonged by packaging, and this can have the added advantage of reducing damage when the fresh produce is displayed on a supermarket shelf. However, there are problems with the use of many packaging materials as the atmosphere within the package changes as respiration proceeds. This can be a particular problem with plant materials which undergo a climacteric stage during ripening, when a sharp rise in the rate of respiration occurs. Thus, while polymeric films, e.g. polyolefin films, can improve the shelf life of fruit and vegetables, a point can come during their storage when deterioration is accelerated by the changes in the atmosphere within the package.

Various proposals have been made for overcoming the problems with storing plant materials in packages made from polymeric films. British Patent Specifications 1106265 and 1134667, for example, describe control of the atmosphere within a package so that the oxygen content is less than that of normal air while the carbon dioxide content is greater than that of normal air, this being effected by the use of imperforate polyethylene sheet of a thickness that it is permeable to oxygen and carbon dioxide and of an area sufficient to allow the sealed-in produce to establish and maintain a controlled atmosphere within the package. Although oxygen and carbon dioxide levels are controlled by this method, the water content of the atmosphere is not and this can lead to undesirable water levels which can increase deterioration of the packaged materials.

Films with very high water permeability are proposed in Japanese Patent Publication 62.148247, 50 to 300 holes per square centimetre being made in the film, each hole being from 50 to 300 microns in diameter. These films are proposed for wrapping cut flowers where the water vapour permeability has to be sufficient to remove condensed water droplets.

Other proposals include the use of gas and water-vapour impermeable films which have permeable windows let into them, the windows being made of more permeable materials. Alternatively, composite containers have been proposed in which one side of the container is made from an impervious plastics film and another side is made from a microporous film.

According to the present invention there is provided a polymeric film for the storage or packaging of plant material, the film being perforate and having a water vapour permeability of not more than 800g m$^{-2}$ day$^{-1}$ and an oxygen permeability of not more than 200000 cm$^3$ m$^{-2}$ day$^{-1}$ atmosphere$^{-1}$, both permeabilities being measured at 25° C with a relative humidity of 75 percent.

Films of the present invention have the advantage of providing packages with the desired degree of oxygen permeability to give good storage life to plant materials stored in them while at the same time enabling the water permeability of the packages to be controlled to a desired level, this being achieved without the necessity for special windows or a number of films for the one package. Films of the present invention can be produced which are generally stiffer than conventional cling film, thus enabling them to be used more readily on horizontal or vertical form fill seal packaging machinery. Furthermore, they will usually be clear as the perforations used are very small.

The water vapour permeability of the films of the present invention can be selected by the type of polymer used for the film. Examples of polymers which can be used include regenerated cellulose, homo and copolymers of polyolefins, e.g. with vinyl acetate or methyl acrylate, polyesters and polyamides. The films can furthermore be laminates and/or can include one or more layers, e.g. a heat sealable layer. Films of regenerated cellulose can be used to achieve water vapour permeability over a wide range, typically up to 800g m$^{-2}$ day$^{-1}$ measured at 25° C and 75 percent relative humidity for a film 24 microns thick. Lower permeabilities can be achieved by the use of a thicker film, but it is generally preferred to apply a coating to the film when it is desired to reduce its permeability to water vapour. Suitable materials for the purpose are known in the art. Thus water vapour permeabilities of 100-800g m$^{-2}$ day$^{-1}$ can be achieved, and if desired lower values, e.g. down to 80g m$^{-2}$ day$^{-1}$, or even lower, e.g. as little as 10g m$^{-2}$ day$^{-1}$. can be achieved. When a coating is present, the permeability will usually be less than 500g m$^{-2}$ day$^{-1}$

Polyolefins can also be used to make films of the present invention, the inherent water vapour

H-225

permeability of films of such materials tending to be substantially less than that of uncoated regenerated cellulose films of the same thickness. Polyethylene films 30 microns thick typically have water vapour permeabilities of about $4g\ m^{-2}\ day^{-1}$, while polypropylene films of the same thickness typically have water vapour permeabilities of $1-2g\ m^{-2}\ day^{-1}$.

The water vapour permeability of the film will be selected to suit the respiration requirements of the plant material to be packaged, and therefore there are no overall preferences for water vapour permeability other than that the permeability be selected to optimise the storage life of the packaged plant material.

The oxygen permeability of films of the present invention is not more than $200000cm^3\ m^{-2}\ day^{-1}$ $atmosphere^{-1}$ as measured at 25°C and 75 percent relative humidity. As with water vapour permeability, different plant materials require films with different oxygen permeabilities, and permeabilities of not more than 100000, e.g. less than $50000\ cm^3$ $m^{-2}\ day^{-1}\ atmosphere^{-1}$ are often preferred. Lower oxygen permeabilities still can be achieved, for example less than $10000\ cm^3\ m^{-2}\ day^{-1}$ $atmosphere^{-1}$. The oxygen permeability will, however, be greater than that inherent for the material of the film, and typically it should be at least $900\ cm^3$ $m^{-2}\ day^{-1}\ atmosphere^{-1}$ greater than that of the material of the film. This usually means at least $3500\ cm^3\ m^{-2}\ day^{-1}\ atmosphere^{-1}$.

The oxygen permeability of films of the present invention is achieved by perforations in the film. The size of the perforations affects the oxygen permeability of the film, and they are preferably from 20 to 100 microns, more preferably 40 to 60 microns and advantageously about 50 microns mean diameter. If the perforations are too large, control of oxygen permeability is not possible, and if the holes are too small large number of holes are required which in particular adds to the cost of the film. Typically it is preferred to have up to 1000 perforations in the film per square metre of film surface, but as few as 10 perforations or even less can be used. This is very significantly lower than the frequency of perforations in the films proposed in Japanese Patent Publication 62.148247 which proposes 50 to 300 holes per square centimetre, i.e. at least five hundred times fewer perforations for the same area of film. As will be appreciated, the size and number of perforations in films in accordance with the invention will be selected according to the plant material to be packaged. However, there should be sufficient perforations in the film that each package of plant material has at least one perforation. This usually requires at least 50 perforations per square metre. Usually the film will have fewer than 500 perforations per square metre,

and typically from 100 to 300 per square metre.

The holes or perforations in films of the present invention can be produced by known methods. It is, however, unlikely that they will be sufficiently small to achieve the desired oxygen permeability if mechanical puncturing methods are used, and the preferred methods are electrical discharge and optical means, e.g. using a laser.

In most applications, it will be necessary to be able to heat seal films of the present invention, in particular to ensure that the oxygen permeability depends on the perforations in the film rather than leaks in the package. Various heat sealable layers can therefore be present on films of the present invention, and as will be appreciated these will affect the inherent water vapour permeability of the films. Of course, the film itself may be of a heat sealable material.

As will be appreciated by those skilled in the art, any heat sealable layer or other layer should not obscure the perforations in the film, and the perforations will therefore usually be made in a film already having such layers. These layers, which can be selected from those known in the art, can be formed in known manner, for example by co-extrusion or by coating.

In packaging plant materials, the film will be selected to meet the requirements of the material to be packaged, both in terms of water vapour permeability (i.e. the type and thickness of polymer used for the film) and oxygen permeability (i.e. the size and frequency of perforations, these also differing for the same material under different temperature conditions.) Obviously when very small numbers of perforations are used, e.g. about 10 per square metre, the amount of film used for an individual pack should be such as to include at least one perforation in the surface of the film so that oxygen can pass between the interior of the pack and the atmosphere outside.

Various types of fruits, vegetables, herbs and flowers have shown particularly good shelf lives when stored in packages made from films of the present invention. Thus broccoli, carrots, mushrooms and tomatoes, which represent a wide variety of plant materials in terms of requirements for oxygen, carbon dioxide and water vapour during respiration, have all shown extended shelf lives when compared with those packed in hitherto proposed polymeric packaging films.

The following Examples are given by way of illustration only. All parts are by weight and all temperatures are in °C unless stated otherwise.

Example 1

After discarding any showing signs of damage,

H-226

carrots were washed, placed for 1 minute in chilled water containing 25 ppm of chlorine, and then rinsed with cold water. The carrots were allowed to dry, and packs were prepared by heat sealing them in a variety of films, each pack having internal dimensions of 20cm x 18cm and containing approximately 0.35kg of carrots. A similar quantity of carrots on an open tray without any wrapping film acted as a control. The samples were all stored at 20°C and 50 percent relative humidity.

The films used were as follows:-

(A) - heat sealable oriented polypropylene 25 microns thick and having 100 holes per square metre, the mean diameter of the holes being about 50 microns

(B) - as film (A) but with 68 holes per square metre

(C) - as film (A) but with 34 holes per square metre

(D) - as film (A) but without any holes

(E) - imperforate polyethylene cling film 25 microns thick

(F) - imperforate polyvinyl chloride stretch wrap film 25 microns thick

All of the packs having a film over the carrots had a much improved shelf life compared with the unwrapped control. The packs had mould free shelf lives of at least seven days, the unwrapped carrots becoming dried, shrivelled and unacceptable after three days. The packs wrapped with the imperforate films (D), (E) and (F) either became anaerobic within three days or were becoming so by 10 days. The carrots wrapped in film (B) were particularly good, those wrapped in films (A) and (C) being somewhat less so but still significantly better than those wrapped in the other films.

Water losses from all of the packaged carrots were acceptable in all cases at less than 1% by weight after 10 days.

## Example 2

The procedure of Example 1 was repeated for tomatoes except that they were packed in trays of six after washing and then drying for one hour. The calices were not removed.

Each tray was wrapped in one of the films (A) and (C)-(F) of Example 1, and a further tray was left unwrapped as a control.

The unwrapped tomatoes became very soft and mouldy after four days, and those wrapped in film (F) became mouldy after three days. Film (A), with 100 holes per square metre, led to widespread mould after seven days, the tomatoes having become soft after four days. However, tomatoes packed in film (C) remained firm even after six days.

## Example 3

Packs of unwashed calabrese were prepared by wrapping 150g of the calabrese on trays 025m x 0.185m (area 0.0925m²), the films being:-

(G) - 25 micron thick heat sealable oriented polypropylene film

(H) - film (G) with 21 holes over pack area

(I) - film (G) with 7 holes over pack area

For comparison purposes, 150g samples of calabrese were packed in 25 microns thick polyvinyl chloride cling film or simply left unwrapped.

The unwrapped pack was very limp and showed browning after two days at 20°C and 50 percent relative humidity. Under the same conditions, the calabrese packed in the polyvinyl chloride cling film showed yellowing after two days whereas the perforated films of the present invention did not show adverse signs until nearly six days. After three days, the calabrese packed in the unperforated polypropylene film showed dry ends and it was limper than that in the perforated film. At 4°C, calabrese stored in films of the present invention were still very good and fresh after 17 days and of better appearance than any of the samples packed using the other films.

## Example 4

Using the procedure of Example 3, 200g of unwashed mushrooms were packed in a variety of films as follows:-

(J) - unperforated heat sealable regenerated cellulose film 25 microns thick and having a water vapour permeability of 80g m⁻² day⁻¹ - pack size 0.25m x 0.185m (area 0.0925m²)

(K) - film (J) with 53 holes over pack area - pack size 0.175m x 0.125m (area 0.0875m²)

(L) - as film (K) but with 25 holes over same pack area

(M) - as film (K) but with 12 holes over same pack area

Comparison tests were also carried out using 25 micron thick polyvinyl chloride cling film with 200g of mushrooms on a 0.175m x 0.125m tray and with the same amount of mushrooms unwrapped, the packs being stored at 20°C and 50 percent relative humidity.

The unwrapped mushrooms were unacceptable after two days, as were those packed in the cling film and in film (J). The mushrooms packed in film (K) were still acceptable approaching six days, whereas those packed in films (L) and (M) were showing significant signs of deterioration after three days.

A similar series of tests at 4°C using films of the present invention based on the same regener-

ated cellulose film but with 12, 25 and 50 holes respectively over the pack area showed very good results at up to 20 days whereas the unperforated film and the cling film led to an unacceptable product and in some cases mould formation after only two days.

## Claims

1. A polymeric film for the storage or packaging of plant material, the film being perforate and having a water vapour permeability of not more than 800g $m^{-2}$ $day^{-1}$ and an oxygen permeability of not more than 200000$cm^3$ $m^{-2}$ $day^{-1}$ atmosphere$^{-1}$, both permeabilities being measured at 25$^{\circ}$C with a relative humidity of 75 percent.

2. A film according to claim 1, wherein the film is of regenerated cellulose.

3. A film according to claim 2, wherein the regenerated cellulose has a coating thereon which modifies the water vapour permeability of the film.

4. A film according to any of the preceding claims, wherein the water vapour permeability is from 100 to 800g $m^{-2}$ $day^{-1}$.

5. A film according to any of claims 1 to 3, wherein the water vapour permeability is at least 10g $m^{-2}$ $day^{-1}$, preferably at least 80g $m^{-2}$ $day^{-1}$.

6. A film according to claim 1 wherein the film is of a polyolefin.

7. A film according to claim 6, wherein the polyolefin is polyethylene or polypropylene.

8. A film according to any of the preceding claims, wherein the oxygen permeability of the film is not more than 100000 $cm^3$ $m^{-2}$ $day^{-1}$ atmosphere$^{-1}$.

9. A film according to claim 8, wherein the oxygen permeability of the film is less than 50000 $cm^3$ $m^{-2}$ $day^{-1}$ atmosphere$^{-1}$.

10. A film according to claim 9, wherein the oxygen permeability is less than 10000 $cm^3$ $m^{-2}$ $day^{-1}$ atmosphere$^{-1}$.

11. A film according to any of the preceding claims, having from 10 to 1000 perforations per square metre.

12. A film according to any of the preceding claims, wherein the perforations are from 20 to 100 microns mean diameter.

13. A film according to claim 12, wherein the mean diameter of the perforations is from 40 to 60 microns.

14. A film according to claim 13, wherein the mean diameter of the perforations is about 50 microns.

15. A film according to any of the preceding claims, which is clear.

16. A film according to any of the preceding claims, having at least one heat sealable surface.

5

H-228

11/04/2004  20:53  650-8542384          T&S RICHARDSON          PAGE  01

RECEIVED
CENTRAL FAX CENTER
NOV 0 3 2004

## TRANSMITTAL FORM AND FEE TRANSMITTAL

| | | | |
|---|---|---|---|
| Attorney | 14161 | | Pratte |
| Application | 10/222,435 | | August 16, 2002 |
| Examiner | Robert Madsen | | 1761 |

**This Transmittal Sheet is accompanied by**
Reply to Office Action mailed June 3, 2004; and copy of European Application 0351116.

**Fee Calculations (applicant is a small entity)**

| | | | | | |
|---|---|---|---|---|---|
| (1)  Filing fee | | | | 740/370 | $ |
| (2) | | | | | |
| Total Claims | 47 | -25 = | 22 | x 18/9 | $198.00 |
| Ind. Claims | 7 | - 6 = | 1 | x 80/40 | $40.00 |
| Multiple dependent claim(s) presented for first time (c) | | | No | 280/140 | $ |
| | | | Subtotal (2) Extra claim fees | | $238.00 |
| (3) | | | | | $ 215.00 |
| Extension for Reply (1,2,3 months: $110/55, 430/215, 980/490) 2 months | | | | | $ 215.00 |
| Petition to Commissioner ($130) | | | | | |
| Information Disclosure Statement ($180) | | | | | |
| | | | Subtotal (3) Additional or other fees | | $215.00 |
| | | Total Fees Submitted (Sum of Subtotals (1), (2), and (3)) | | | $453.00 |

**Authorization to Charge Deposit Account for the above Fees**
The Assistant Commissioner for Patents is hereby authorized to charge the above fees and any additional fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit account.

Deposit Account No:  19-2090        Deposit Account Name:  Sheldon & Mak

CERTIFICATE OF FACSIMILE
TRANSMISSION UNDER 37 CFR 1.8
I hereby certify that this paper is being sent by facsimile transmission to the United States Patent and Trademark Office (703) 872 9306) on November 3, 2004
Typed name of person signing this certificate:
T. H. P. Richardson, Reg No. 27805
Tel No. 650 854 6304
Signature

Respectfully Submitted,

Name        T. H. P. Richardson
Reg. No 27805
Tel. 650-854-6304
Fax No.626-795-6321
Sheldon & Mak
225 South Lake Avenue
Pasadena, CA 91101

PAGE 2/37 * RCVD AT 11/3/2004 10:53:20 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID:650 8542384 * DURATION (mm-ss):18-44

11/09/2004 BHRRIS1 00000002 192090 10222435
Sale Ref: 00000002 DAM: 192090 10222435
01 FC:2202    198.00 DA
02 FC:2204    44.00 DA

H-229