*1761*
*Jew*

OIPE
SEP 0 3 2004
PATENT & TRADEMARK OFFICE

# TRANSMITTAL FORM AND FEE TRANSMITTAL

| Attorney Docket No.: | 14181 | First Named Inventor (a): | Pratte |
|---|---|---|---|
| Application No.: | 10/222,435 | Filing Date: | August 16, 2002 |
| Examiner: | Robert Madsen | Group Art Unit: | 1761 |

### This Transmittal Sheet is accompanied by

Information Disclosure Statement (including PTO 1449 and references), and an Acknowledgement Postcard

5  ## Fee Calculations

### It is believed that no fee is due

### Authorization to Charge Deposit Account for Additional Fees

10  The Assistant Commissioner for Patents is hereby authorized to charge any fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit account.

Deposit Account No: **19-2090**     Deposit Account Name: **Sheldon & Mak**

---

**CERTIFICATE OF MAILING UNDER 37 CFR 1.8**

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class mail in an envelope addressed to: Mail Stop Amendment Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

On August 31, 2004

Typed name of person signing this certificate: T. H. P. Richardson

Signature

---

Respectfully Submitted,

Name      T. H. P. Richardson
Tel. No.650-854-6304 Fax No.626-795-6321
Sheldon & Mak
225 South Lake Avenue
Pasadena
CA 91101

15

H-274



Docket No. 14181

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: Pratte | Group Art Unit: 1761 |
| Serial No.: 10/222,435 | Examiner: Robert Madsen |
| Filing Date: August 16, 2002 | |
| Title: Party Tray | |

Mail Stop Amendment
Assistant Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### DISCLOSURE UNDER 37 CFR 1.56

Dear Sir:

In fulfilling the duty of candor and good faith, the documents listed on the attached PTO-1449 (two copies) are disclosed to the Office in accordance with 37 CFR § 1.56. It should be noted the word "prior" has been deleted from the attached PTO-1449. It is not admitted that the information in the listed documents is material to patentability as defined in 37 CFR § 1.56(b) or that the documents are analogous art. The Examiner is asked to consider the documents listed on the attached PTO-1449, and to confirm such consideration by returning an initialed and signed copy of the PTO-1449.

### CERTIFICATE OF MAILING UNDER 37 CFR 1.8

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class mail in an envelope addressed to: Mail Stop Amendment  Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 On August 31, 2004 Typed name of person signing this certificate: T. H. B. Richardson
Signature

H-275

Also attached is a copy of each of the document(s) listed on the attached PTO-1449. Insofar as the attached document(s) has/have markings thereon, no significance is intended by such markings.

The undersigned certifies under 37 CFR 1.97(e)(2) that none of the documents listed above was cited in a communication from a foreign patent office in a counterpart foreign application, or to the knowledge of the undersigned, after making reasonable inquiry, was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of this Disclosure statement. It is believed, therefore, that no fee is due. If this is incorrect, please charge any necessary fee for consideration of this Disclosure Statement to Deposit Account No. 19-2090 (Sheldon & Mak).

It is believed that this Disclosure complies with the requirements of of 37 CFR 1.56 and the MPEP. If the some reason the Examiner thinks otherwise, he is asked to call the undersigned so that any deficiencies can be remedied.

Respectfully submitted,

T.H.P.Richardson

Reg. No. 28,805

Tel. No. 650-854-6304

H-276

OIPE JCT12

SEP 0 3 2004

PATENT & TRADEMARK OFFICE

| Page | 1 | of | 1 |

| FORM PTO-1449 | U.S. DEPARTMENT OF COMMERCE | Atty. Docket No.: | Appl'n No.: |
|---|---|---|---|
| (Rev 8/83) | PATENT AND TRADEMARK OFFICE | **14181** | **10/222.435** |
| | | Applicant: Pratte | |
| **INFORMATION DISCLOSURE STATEMENT** | | Filing Date: | Group: 1761 |
| (Use several sheets if necessary) | | **August 16, 2002** | |

## US PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Name | Class | Sub-class | Filing date (if appropriate) |
|---|---|---|---|---|---|---|
| | 2003/0031769 | 2/2003 | Wyslotsky | 426 | 397 | 08/02 /2001 |
| | 2003/0087015 | 5/2003 | Wyslotsky | 426 | 397 | 08/02/2002 |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Country | Class | Sub-class | Translation enclosed (?) |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr. initial | Details of Document | Translation enclosed (?) |
|---|---|---|
| | | |

| Examiner's signature | Date considered |
|---|---|
| | |

* EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

H-277



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

Mail Date:    AUG 2 4 2004                    PAPER NO.

In re Application of                    :
Pratte, Wesley                          :          DECISION
Serial No: 10/222,435                   :             ON
Filed: August 16, 2002                  :          PETITION
For: PARTY TRAY                         :          UNDER 708.02,VIII

This is in response to the petition filed March 11, 2003, requesting that the above-identified application be granted Special Status. The petition has been considered under Section 708.02 (VIII) of the MPEP and 37 CFR 1.102(d) (fee paid).

The petition has been found to be deficient for the following reason: Section 708.02, VIII(C) requires that a pre-examination search be made; this search should cover all areas searchable by the examiner. However, our review shows Class 426, subclasses 419 and 415 should have been searched.

Accordingly, the petition is **DENIED.**

*Marian C Knode*

Marian C. Knode, Special Program Examiner
Technology Center 1700
Chemical and Materials Engineering

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena CA 91101

H-278



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/222,435 | 08/16/2002 | Wesley Paul Pratte | 14181 | 8932 |

7590    06/03/2004

Jeffrey G. Sheldon Esq.
Sheldon & Mak
Suite 900
225 South Lake Avenue
Pasadena, CA 91101

| EXAMINER |
|---|
| MADSEN, ROBERT A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

DATE MAILED: 06/03/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

H-279

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/222,435 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit | |
| | Robert Madsen | 1761 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>11 March 2003</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-25</u> is/are pending in the application.

    4a) Of the above claim(s) <u>6-16 and 18-25</u> is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-5 and 17</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d)

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date <u>8/16/02,3/11/03, 5/18/04</u>

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____

Application/Control Number: 10/222,435                                    Page 2

Art Unit: 1761

## DETAILED ACTION

### *Election/Restrictions*

1.    Restriction to one of the following inventions is required under 35 U.S.C. 121:

    I.    Claims 1-5,17, drawn to the method of preparing a party tray, classified in

        class 426, subclass 394.

    II.    Claims 6-15,18-24, drawn to a container body, classified in class 220,

        subclass 23.83.

    III.    Claims 16 and 25, drawn to drawn to a method of serving a party tray,

        classified in class 426, subclass 389.

2.    The inventions are distinct, each from the other because:

3.    Inventions I and II are related as process of making and product made. The
inventions are distinct if either or both of the following can be shown: (1) that the
process as claimed can be used to make other and materially different product or (2)
that the product as claimed can be made by another and materially different process
(MPEP § 806.05(f)). In the instant case, the product as claimed can be made by
another and materially different process. For example, the sealed container body can
be inverted and placed on top of the tray support instead of placing the tray on top of
the sealed container body and inverting the assembly.

4.    Inventions II and III are related as product and process of use. The inventions
can be shown to be distinct if either or both of the following can be shown: (1) the
process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different

process of using that product (MPEP § 806.05(h)). In the instant case, the product as

claimed can be used in a materially different process of using that product, such as

removing the tray, removing the sealing sheet, and transferring the contents from the

container body to the serving dish using a spoon.

5.      Inventions I and III are distinct inventions because invention I is a method of

preparing a party tray and invention III is a method of serving a party tray. The tray

prepared by the method of Invention I can be served in a method other than method of

serving a party tray of invention III. For example, serving may involve the steps of

removing the tray, removing the sealing sheet, and transferring the contents from the

container body to the serving dish using a spoon.

6.      With respect to invention II, claims are directed to the following patentably distinct

species of the claimed invention: (a) a container body for kit and (b) a container body for

a party tray. If applicant elects invention II, applicant is required under 35 U.S.C. 121 to

elect a single disclosed species for prosecution on the merits to which the claims shall

be restricted if no generic claim is finally held to be allowable. Currently, claim 6 is

generic. Applicant is advised that a reply to this requirement must include an

identification of the species that is elected consonant with this requirement, and a listing

of all claims readable thereon, including any claims subsequently added. An argument

that a claim is allowable or that all claims are generic is considered nonresponsive

unless accompanied by an election. Upon the allowance of a generic claim, applicant

will be entitled to consideration of claims to additional species which are written in

dependent form or otherwise include all the limitations of an allowed generic claim as

H-282

Application/Control Number: 10/222,435                                          Page 4
Art Unit: 1761

provided by 37 CFR 1.141. If claims are added after the election, applicant must

indicate which are readable upon the elected species. MPEP § 809.02(a). Should

applicant traverse on the ground that the species are not patentably distinct, applicant

should submit evidence or identify such evidence now of record showing the species to

be obvious variants or clearly admit on the record that this is the case. In either

instance, if the examiner finds one of the inventions unpatentable over the prior art, the

evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other

invention.

7.      During a telephone conversation with Tim Richardson on May 21, 2004 a

provisional election was made without traverse to prosecute the invention of group I,

claims 1-5,17 Affirmation of this election must be made by applicant in replying to this

Office action. Claims 6-16,18-25 are withdrawn from further consideration by the

examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.


### Claim Rejections - 35 USC § 112

8.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

9.      Claims 1-5, 17 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention. Claim 1 recites the limitation "the assembly" in step

E. "The assembly" is not defined previously in the claim, and there is insufficient

antecedent basis for this limitation in the claim.

H-283

Application/Control Number: 10/222,435                                    Page 5
Art Unit: 1761

### Claim Rejections - 35 USC § 103

10.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

11.     Claim 1, and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Carter et

al. (EP0437082 A1) in view of Nissley (US 3610458).

12.     Carter et al. teach providing  a compartmented container body made from a

transparent polymeric material (e.g. polycarbonate) placing food in the compartments.

and applying a lid made of a polymeric sheet  to the top of the container, wherein the

food is cooked by removing the sheet, placing a plate, or support tray, over the

container body and the turning the tray covered container body upside down to deposit

the food onto the plate for preparation/consumption(Figures, Column 2, lines 15-

49,Column 3, line 32 to Column 4, line 15).  However, Carter is silent in teaching a

placing support tray on top of the container polymeric sheet sealed to the container

body and subsequently displaying the inverted sealed container body for sale as recited

in claims 1 and 17.

13.     Nissley also teaches  a food container with a transparent compartmented

container body that is filled with food , covered with a support tray. and inverting the tray

covered container body prior to consumption.  However, unlike Carter et al., Nissley

further teaches the filled container body can be stored either with or without the support

tray attached (Abstract, Column 3, line 25 to Column 4, line 17). Therefore, it would

have been obvious to modify Carter et al. and place the support tray on top of the

container polymeric sheet sealed to the container body and invert the tray covered

container body prior to consumption since Nissley teaches one may either store a filled

compartmented container body separately from the intended support tray or attached

the support tray to the top of the filled container body, tray covered container body prior

to consumption.


14.     Claims 1,3,17 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and Wyslotsky et al. (US 2030057217

A1).

15.     Albertson's (page 37) teaches a transparent container body (i.e. a lid), dividing

the container into four separate sections, placing fresh vegetables in the four sections of

the container body, placing a support tray over the container body, and inverting the

container body/support tray for display as recited in claims 1 and 17. However

Albertson's is silent in teaching dividing the lid comprises removably located partitions,

as recited in claim 1, sealing a sealing sheet across the container body prior to placing

the support tray over the container body as recited in claim 1, providing an atmosphere

control member, as recited in claim 3,

16.     With respect to providing partitions in the container body as recited in claim 1,

Brown, like Albertson's also teaches a transparent lid intended to divide and maintain

H-285

Application/Control Number: 10/222,435                                          Page 7
Art Unit: 1761

separate various portions of food items in a food package. However, Brown does so by providing partitions (Items 48 )on the packaging lid that offer the advantage of preventing movement of food items held between the partitions as well as providing additional support to the lid. Additionally Brown teaches ribs (items 58) for decoration(Column 1, line 7 to Column 2, line 17, Column 3, lines 10-24, Column 4, lines 26-39). Therefore it would have been obvious to include partitions in the lid of Albertson's that is intended to divide the vegetables into separate sections since Brown teaches providing partitions in the lid of a package that is intended to divide food items into different sections will offer the benefit that the partitions will prevent movement/commingling of the food items in addition to adding support to the lid.

17.      With respect to providing a sealing sheet as well as an atmosphere control member, as recited in claims 1 and 3, Wyslotsky et al., like Albertson's, teaches a package housing comprising a body (e.g. item 50) and a support tray (e.g. item 52), wherein fresh vegetables are filled into the body and the body is inverted for display. However, Wyslotsky et al. also teach it may be desirable to provide a sealing sheet (e.g. item 31) between the container body and support tray to serve as a tamper evident seal, wherein the seal is applied to the container body and the support tray is placed over the sheet, and Wyslotsky et al. further teaches including an atmosphere control member covering a window, along with ribs to increase gas flow, so that the fresh vegetables can respire to extend shelf life, (Paragraphs 35,46,47,51,52,61,62) Therefore, it would have been obvious to apply a sealing sheet prior to applying the tray to the lid of Albertson's, as recited in claim 1, since Wyslotsky et al. teach applying a lid to a

H-286

container body holding vegetables will provide a tamper evident seal for the consumer.

It would also have been obvious to include an atmosphere control member, as recited in

claim 3, since Wyslotsky et al. teach providing an atmosphere control member will

assist in extending the shelf life of fresh vegetables in an otherwise sealed package.


18.    Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and Wyslotsky et al. (US 2030057217

A1), as applied to claims 1,7,13 above, further in view of Sinner et al. (US 3038625).

19.    Modified Albertson's is silent in teaching removable partitions. However, Sinner

et al. who also teach produce package with partitions, teaches it is preferred for the

manufacturer to use removable partitions since produce varies in size and in order to

pack the same number of produce items one would have to be able to adjust the

partition size with removable partitions (Column 1, lines 16-47). Therefore it would have

been obvious to further modify Albertson's and include removable partitions since

Sinner et al. teach this allows the manufacture to custom fit the package and account

for variability in produce size.


20.    Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Albertson's in view of Brown (US 595366 B1) and Wyslotsky et al. (US 2030057217

A1), as applied to claims 1,7,13 above, further in view of Antoon (US 5045331).

21.    Regarding claim 4, modified Albertson's teaches an atmosphere control member

that covers window in the container body , ribs allow air to circulate, and ribs in the tray,

but is silent in teaching the sealing sheet has a window such that air circulates between the support member and the atmosphere control member.  Antoon also teaches including an atmosphere control member that covers a window in a body containing fruit or vegetables.  Antoon teaches providing the control member in the seal across the body  or in the walls will provide the same desired effect, as long as the member is not blocked during storage (Abstract, Column 4, lines 36-45, and  Column 6, lines 35-59). Therefore it would have been obvious to provide the control member in the sealed sheet of Albertson's since Antoon teaches on may provide an atmosphere control member at any location of a container holding produce as long it does not become obstructed during storage.  One would have been substituting one conventional atmosphere control member location for another for the same purpose:  controlling the flow of gases in and out of a container holding respiring produce.

22.    Regarding claim 5, Albertson's teaches fresh vegetables.

### Conclusion

23.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.  Waldburger (US 4328254)  teaches a sealed, compartmented body that is inverted and placed on a tray after removing the seal.  Antoni et al. (US 4874083) teach a  vegetable serving tray.  Kortsen (US 6447825 B1) and Bogner et al. (US 3031309) teach a sealed container body that is inverted on top of a tray after removing the seal. Cauquil (FR00260675A1) teaches a transparent compartmented

body inverted over a sealed tray. Mindell (GB 2307634 ) teaches inverted sealed

container bodies over a compartmented tray.

24.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Robert Madsen whose telephone number is (571) 272-

1402. The examiner can normally be reached on 7:00AM-3:30PM M-F.

25.    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Milton Cano can be reached on (571) 272-1398. The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

26.    Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Robert  Madsen
Examiner
Art Unit 1761

)

**MILTON I. CANO**
**SUPERVISORY PATENT EXAMINER**
**TECHNOLOGY CENTER 1700**

H-289

Page ___1___ of ___1___

| FORM PTO-1449 (Rev 8/83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | Atty. Docket No.: 14181 | Appl'n No.: not yet known |
|---|---|---|---|
| | INFORMATION DISCLOSURE STATEMENT | Applicant: Pratte | |
| | (Use several sheets if necessary) | Filing Date: Herewith | Group: not yet known |

J1046 U.S. PTO
10/222435
08/18/02

### US PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Name | Class | Sub-class | Filing date (if appropriate) |
|---|---|---|---|---|---|---|
| Ra | 5,254,354 | 10/93 | Stewart | 426 | 106 | |
| | 6,013,293 | 01/2000 | De Moor | 426 | 106 | |
| | 6,210,724 | 04/2001 | Clarke et al. | 426 | 118 | |
| Ra | 6,376,032 | 04/2002 | Clarke et al. | 428 | 34.7 | 12/05/96 |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Country | Class | Sub-class | Translation enclosed (?) |
|---|---|---|---|---|---|---|
| Ra | WO 00/04787 A 1 | Feb 3, 2000 | International | A23B7 | 148 | |
| | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr. initial | Details of Document | Translation enclosed (?) |
|---|---|---|
| Ra | Trade Brochure entitled "Smart Party Trading Headquarters" published by Apio Inc. | |
| Ra | Trade Brochure entitled "All Occasion Party Trays" published by Apio Inc. | |
| | | |
| | | |

| Examiner's signature | Beth-N/l | Date considered | 5/21/04 |
|---|---|---|---|

* EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Laoyout rev. 3/95

H-290

| INFORMATION DISCLOSURE CITATION *(Use Several sheets if necessary)* | | Docket Number 14181 | | | Application Number 10/222,425 | | |
|---|---|---|---|---|---|---|---|
| | | Applicant(s) PRATTE | | | | | |
| | | Filing Date: August 16, 2002 | | | Group Art Unit 3753 | | |

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL* | REF | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| *(init)* | A | RE36,867 | 09/12/00 | Rozzano | 426 | 87 | |
| *(init)* | B | D305,205 | 12/26/89 | Grindrod et al. | D9 | 418 | |
| | C | 2,731,996 | 01/24/56 | Hayes | 150 | 5 | |
| | D | 3,301,460 | 01/31/67 | Harrison | 229 | 15 | |
| | E | 3,487,972 | 01/06/70 | Swett | 220 | 20 | |
| | F | 4,335,842 | 06/22/82 | Bradford et al. | 229 | 25 | |
| | G | 5,277,329 | 01/11/94 | Pomroy et al. | 220 | 526 | |
| *(init)* | H | 5,657,874 | 08/19/97 | Hustad et al. | 206 | 724 | |
| *(init)* | I | 6,092,664 | 07/25/00 | Bartosek | 206 | 784 | |

### FOREIGN PATENT DOCUMENTS

| | REF | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | N |
|---|---|---|---|---|---|---|---|---|
| | J | | | | | | | |
| | K | | | | | | | |
| | L | | | | | | | |
| | M | | | | | | | |
| | N | | | | | | | |
| | O | | | | | | | |

### OTHER ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| | REF | |
|---|---|---|
| *(init)* | P | "Albertson's Caramel Apple Tray", page 32A |
| *(init)* | Q | "Albertson's Fresh Food Tray", page 34 |
| *(init)* | R | "Albertson's Fresh Melon Tray", page 35 |
| *(init)* | S | "Albertson's Fresh Vegetable Tray, page 37 |

| EXAMINER *(signature)* | DATE CONSIDERED 5/21/04 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

H-291

Page ___1___ of ___1___

| FORM PTO-1449 (Rev 8/83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | Atty. Docket No.: 14181 | Appl'n No.: 10/222.435 |
|---|---|---|---|
| | INFORMATION DISCLOSURE STATEMENT | Applicant: Pratte | |
| | (Use several sheets if necessary) | Filing Date: August 16, 2002 | Group: not yet known |

*(OIPE / JC87 / MAR 1 1 2003 / PATENT & TRADEMARK OFFICE stamp)*

## US PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Name | Class | Sub-class | Filing date (if appropriate) |
|---|---|---|---|---|---|---|
| Ra | 3,079,028 | 2/1963 | Rosner | 220 | 22 | |
| Ra | 3,104,776 | 9/1963 | Bostrom | — | — | |
| | 3,107,027 | 10/1963 | Shaeng-chiao Hong | 220 | 23.8 | |
| | 3,244,537 | 4/1966 | Cease | 99 | 192 | |
| | 3,247,988 | 4/1966 | Cease | 214 | 301 | |
| | 3,305,126 | 2/1967 | Cease | 220 | 23.83 | |
| | 4,081,646 | 3/1978 | Goltsos | 219 | 10.55 | |
| | 4,574,174 | 3/1986 | McGonigle | 219 | 10.55 | |
| | 4,660,716 | 4/1987 | McMahon et al. | 206 | 216 | |
| | 4,939,332 | 7/1990 | Hahn | 219 | 10.55 | |
| | 4,966,295 | 10/1990 | Parrish | 220 | 22.3 | |
| | Des 250,928 | 1/1979 | Franklin | D 7 | 27 | |
| | Des 269,930 | 8/1983 | Powers | D 7 | 1 | |
| | Des 305,409 | 1/1990 | Michaud et al. | D 9 | 425 | |
| | Des 318,207 | 7/1991 | Anderson | D 7 | 549 | |
| | Des 361,508 | 8/1995 | Schnack | D 9 | 425 | |
| | Des 382,796 | 8/1997 | Mangla | D 9 | 420-425 | |
| Ra | Des 384,861 | 10/1997 | Richard | D 7 | 553 | |
| Ra | Des 415,422 | 10/1999 | McCann | D 9 | 429 | |

## FOREIGN PATENT DOCUMENTS

| * Exr. initial | Document number | Date | Country | Class | Sub-class | Translation enclosed (?) |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| Exr. initial | Details of Document | Translation enclosed (?) |
|---|---|---|
| | | |

| Examiner's signature  *(signature)* | Date considered  5/21/04 |
|---|---|

* EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Laoyout rev. 3/85

H-292

| | Notice of References Cited | | Application/Control No. 10/222,435 | Applicant(s)/Patent Under Reexamination PRATTE, WESLEY PAUL | |
|---|---|---|---|---|---|
| | | | Examiner Robert Madsen | Art Unit 1761 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-3,031,309 | 04-1962 | BOGNER JOSEPH F; et. al. | 426/90 |
| | B | US-3,038,625 | 06-1962 | SINNER EDWIN A; et. al. | 217/33 |
| | C | US-3,610,458 | 10-1971 | Nissley, Robert | 220/23.4 |
| | D | US-4,328,254 | 05-1982 | Waldburger, Peter | 426/393 |
| | E | US-4,874,083 | 10-1989 | Antoni et al. | 220/523 |
| | F | US-6,447,825 b1 | 09-2002 | Korsten, Gerd | 426/115 |
| | G | US-6,595,366 b1 | 07-2003 | Brown, Dean R. | 206/551 |
| | H | US-2003/0057217 a1 | 03-2003 | Wyslotsky et al. | 220/912 |
| | I | US-5,045,331 | 09-1991 | Antoon, Jr., Mitchell K. | 426/118 |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | FR 2606752 A1 | 05-1988 | France | Cauquil | B65D 43/02 |
| | O | EP 437082 A1 | 07-1991 | European Patent | CARTER et al. | B65D 01/34 |
| | P | GB 2307634 A | 06-1997 | United Kingdom | MINDELL, B | A47G 19/26 |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

PUB-NO:        FR002606752A1

DOCUMENT-IDENTIFIER:  FR 2606752 A1

TITLE:        Packaging assembly for foodstuffs

PUBN-DATE:    May 20, 1988

ASSIGNEE-INFORMATION:
NAME                          COUNTRY
CAUQUIL MICHEL                    FR

APPL-NO:    FR08616058

APPL-DATE:    November 17, 1986

PRIORITY-DATA: FR08616058A ( November 17, 1986)

INT-CL (IPC):  B65D043/02

EUR-CL (EPC):  B65D043/02 ; B65D051/20, B65D081/34

US-CL-CURRENT: 206/562

ABSTRACT:

   CHG DATE=19990617 STATUS=O> The invention relates to a packaging assembly
for foodstuffs, in particular for a dish or meal to be re-heated.  This
assembly comprises a sterilisable tray 1 closed by a crimped fluid-tight cover
3, a second separable tray 7, transparent to microwaves and snap-fit means 4, 8
adapted to make it possible to fix the two trays in a removable way, one
inverted upon the other.  When the foodstuffs are consumed, after withdrawing
the cover 3, the former may be transferred into the second tray by inverting
the assembly in order to re-heat the foodstuffs by means of microwaves.
<IMAGE>

H-294

DERWENT-ACC-NO:     1988-184946

DERWENT-WEEK:     198827

COPYRIGHT 1999 DERWENT INFORMATION LTD

TITLE:          Food container for pre-cooked meal - uses metal
                container for food, with detachable plastics cover
                suitable for microwave cooking

INVENTOR: CAUQUIL, M

PATENT-ASSIGNEE:  CAUQUIL M[CAUQI]

PRIORITY-DATA: 1986FR-0016058 (November 17, 1986)

PATENT-FAMILY:

| PUB-NO | PUB-DATE | LANGUAGE | PAGES | MAIN-IPC |
|--------|----------|----------|-------|----------|
| FR 2606752 A | May 20, 1988 | N/A | 011 | N/A |

APPLICATION-DATA:

| PUB-NO | APPL-DESCRIPTOR | APPL-NO | APPL-DATE |
|--------|-----------------|---------|-----------|
| FR 2606752A | N/A | 1986FR-0016058 | November 17, 1986 |

INT-CL (IPC):  A47J047/14,  B65D081/34


ABSTRACTED-PUB-NO: FR 2606752A

BASIC-ABSTRACT:

The food container, e.g for a precooked meal which has to be reheated before
consumption, consists of a base, (1) e.g of an aluminium alloy, which contains
the food and has a sealed lid, and a plastic cover.  The cover is made e.g of a
transparent polystyrene and is suitable for use in a microwave oven.

The cover may be equipped with detachable inner partitions (10), and may be
used to display a label of the contents.  After the sealed lid has been
removed, the food contained in the metal base is turned into the plastic cover
for microwave cooking.  The cover can then be used as a dish from which the
food is eaten, with compartments used for condiments, bread or a drink glass.

USE/ADVANTAGE - Food container of greater convenience and suitability for
microwave use.

CHOSEN-DRAWING: Dwg.1/9

TITLE-TERMS: FOOD CONTAINER PRE COOK MEAL METAL CONTAINER FOOD DETACH PLASTICS
        COVER SUIT MICROWAVE COOK

DERWENT-CLASS:  P28 Q34


SECONDARY-ACC-NO:
Non-CPI Secondary Accession Numbers: N1988-141246

H-295

⑲ RÉPUBLIQUE FRANÇAISE

**INSTITUT NATIONAL**
**DE LA PROPRIÉTÉ INDUSTRIELLE**

**PARIS**

⑪ N° de publication : **2 606 752**
(à n'utiliser que pour les commandes de reproduction)

㉑ N° d'enregistrement national : **86 16058**

㉛ Int Cl⁴ : B 65 D 81/34; A 47 J 47/14.

⑫ **DEMANDE DE BREVET D'INVENTION**          A1

㉒ Date de dépôt : 17 novembre 1986.

㉚ Priorité :

㊸ Date de la mise à disposition du public de la demande : BOPI « Brevets » n° 20 du 20 mai 1988.

㊽ Références à d'autres documents nationaux apparentés :

⑰ Demandeur(s) : *CAUQUIL Michel.* — FR.

㉒ Inventeur(s) : Michel Cauquil.

㊱ Titulaire(s) :

㊴ Mandataire(s) : Cabinet Barre, Gatti et Laforgue.

�554 Ensemble de conditionnement pour aliments.

㊗ L'invention concerne un ensemble de conditionnement pour aliments, en particulier pour plat ou repas à réchauffer. Cet ensemble comprend une barquette stérilisable 1 fermée par un opercule étanche serti 3, une seconde barquette séparable 7, transparente à l'égard des micro-ondes et des moyens d'encliquetage 4, 8 adaptés pour permettre de fixer de façon amovible les deux barquettes renversées l'une sur l'autre. Lors de la consommation des aliments, après retrait de l'opercule 3, ceux-ci peuvent être transférés dans la seconde barquette par renversement de l'ensemble pour réaliser un réchauffage des aliments au moyen des micro-ondes.



FR 2 606 752 - A1

H-296

2606752

1

ENSEMBLE DE CONDITIONNEMENT POUR ALIMENTS

L'invention concerne un ensemble de
5 conditionnement pour aliments, en particulier pour plat ou
repas à réchauffer.

Les plats à réchauffer servis notamment dans
les transports aériens sont généralement contenus dans des
barquettes, chacune obturée par un opercule étanche serti sur
10 celle-ci. Ces barquettes sont métalliques en vue de permettre
de les sertir de façon étanche et de les stériliser après
fermeture.

Toutefois, ce type de conditionnement
présente plusieurs défauts. Le plus grave réside dans
15 l'impossibilité d'effectuer un chauffage des aliments par
micro-ondes. Les fours à micro-ondes sont en effet devenus un
moyen très répandu et très commode de chauffage, et la nature
métallique des barquettes ne permet pas de les utiliser. Il
est à souligner que cette nature métallique est une nécessité
20 compte-tenu des conditions de sertissage en ambiance
graisseuse et des conditions de stérilisation que ne
supporteraient pas d'autres matériaux (en particulier les
matières synthétiques). Par ailleurs, les barquettes de
conditionnement actuelles ne donnent pas la faculté de
25 stocker, en un seul ensemble compact, des aliments
complémentaires, solides ou préconditionnés, destinés à
accompagner le plat lors de sa consommation, soit à titre
d'adjuvant (sel, poivre, portion de pain), soit pour le
compléter et fournir un véritable repas (entrée, portion de
30 fromage, dessert, gobelet de boisson...).

La présente invention se propose de fournir
un ensemble de conditionnement perfectionné, capable de
pallier les insuffisances des dispositifs connus.

Un objectif essentiel de l'invention est en
35 particulier de fournir un ensemble de conditionnement, offrant
les mêmes possibilités de sertissage et stérilisation que les
dispositifs connus et permettant de réaliser un réchauffage
commode des aliments au moyen des micro-ondes.

Un autre objectif est de permettre de
40 conditionner dans ledit ensemble, d'une part, des aliments

H-297

2606752

2

appelés à être ajoutés ou à servir de complément au plat à
réchauffer, d'autre part, le cas échéant, des couverts utiles
lors de la consommation.

5       Un autre objectif est de réaliser lesdits
ensembles de conditionnement à partir de barquettes
stérilisables traditionnelles afin de conserver strictement le
processus classique de remplissage, sertissage et
stérilisation, sans aucun investissement au niveau des
10 machines appelées à effectuer ces opérations.

A cet effet, l'ensemble de conditionnement
visé par l'invention comprend, en premier lieu, une barquette
stérilisable, notamment métallique, ayant une face ouverte, et
un opercule étanche serti autour de ladite face ouverte de
15 barquette ; selon la présente invention, l'ensemble comprend :
        . une seconde barquette, séparable, ayant une
face ouverte et formée d'un matériau de qualité alimentaire,
transparent ou peu absorbant à l'égard des micro-ondes,
        . et des moyens d'encliquetage adaptés pour
20 permettre de fixer de façon amovible les deux barquettes
renversées l'une sur l'autre avec leur face ouverte en
correspondance.

De façon classique, l'opercule peut être
serti sur la première barquette par un bourrelet de sertissage
25 situé à la périphérie de la face ouverte de celle-ci. Selon
l'invention, les moyens d'encliquetage de l'ensemble de
conditionnement comprennent alors, de préférence, un rebord
d'encliquetage agencé autour de la face ouverte de la seconde
barquette de façon à pouvoir s'encliqueter autour du bourrelet
30 de sertissage de la première barquette.

Ainsi, le plat à réchauffer est contenu dans
la première barquette, stérilisable et étanche, qui est
identique aux barquettes connues, la technique de
conditionnement restant traditionnelle. Ensuite, la seconde
35 barquette est encliquetée sur la première de façon à former un
tout compact. Le cas échéant, cette seconde barquette peut
contenir des couverts et des additifs ou compléments
alimentaires du plat ; ces derniers sont avantageusement logés
dans des compartiments qui sont formés par des moyens
40 amovibles de compartimentage (croisillons...) disposés dans la

H-298

2606752

3

seconde barquette.

Lors de l'utilisation, la seconde barquette
est séparée de la première, puis l'opercule est ôté de la
5  première barquette. Le cas échéant après retrait de son
contenu, la seconde barquette est ensuite à nouveau
encliquetée sur la première, et l'ensemble est retourné : le
plat à réchauffer est ainsi transvasé dans la seconde
barquette sans aucun risque d'éclaboussure. La première
10 barquette est alors enlevée et le plat peut être inséré dans
un four à micro-ondes pour le réchauffer. La seconde barquette
peut en particulier être réalisée en matière synthétique,
éventuellement décorée, le plat étant ensuite consommé dans
celle-ci.

15        D'autres caractéristiques de l'invention
ressortiront de la description qui suit en référence aux
dessins annexés, lesquels en présentent à titre non limitatif
un mode de réalisation ; sur ces dessins :
             - la figures 1 est une vue schématique en
20 perspective d'un ensemble de conditionnement conforme à
l'invention,
             - la figure 2 en est une coupe par un plan A,
             - la figure 3 en est une vue de détail en
perspective montrant un plot d'encliquetage de la seconde
25 barquette,
             - les figures 4, 5, 6, 7, 8 et 9 sont des
schémas  montrant  l'utilisation  de  l'ensemble  de
conditionnement conforme à l'invention.
             L'ensemble de conditionnement représenté à
30 titre d'exemple aux figures comprend une barquette 1 en
alliage léger d'aluminium. Cette barquette de forme générale
parallélépipédique rectangle aux angles arrondis peut
comprendre des saillies et creux tels que 2 en vue de la
rigidifier, tout en améliorant son esthétique. Une de ses
35 grandes faces (face supérieure opposée au fond) est ouverte et
est obturée, après remplissage, par un opercule métallique 3.
Cet opercule est serti autour de la face ouverte de la
barquette 1 au moyen d'un bourrelet de sertissage 4.
             De plus, de façon connue en soi, l'opercule 3
40 comporte un élément de traction, en l'exemple un anneau 5, et

H-299

2606752

4

possède une ligne de découpage en vue de son ouverture. Cette
ligne, qui est symbolisée en 6 sur le détail de la figure 2,
suit sensiblement le périmètre de l'opercule.

5          La fabrication de la barquette 1, son
sertissage et sa stérilisation sont réalisés de façon
traditionnelle. Il est à noter que la nature métallique de
cette barquette est imposée, d'une part, par le sertissage (un
sertissage étanche n'étant pas possible avec les matières
10 synthétiques si l'on n'est pas dans des conditions rigoureuses
de propreté), d'autre part, par la stérilisation (à une
température de l'ordre de 115° C, incompatible avec
l'utilisation des matières synthétiques).

          Par ailleurs, l'ensemble de conditionnement
15 comprend une seconde barquette 7 en matière synthétique de
qualité alimentaire, transparente aux micro-ondes. Cette
barquette peut en particulier être en matière transparente à
la lumière, telle que polystyrène transparent désigné
"cristal".

20          Cette barquette 7 possède une forme
parallélépipédique rectangle semblable à celle de la première.
Son volume est au moins égal à celui de la première barquette
et peut avantageusement être légèrement supérieur, par exemple
de 10 à 20 % par rapport à celui de ladite première barquette.

25          La seconde barquette 7 possède une face
ouverte de forme et de surface équivalentes à celles de la
première barquette, avec un rebord périphérique
d'encliquetage 8 apte à venir coiffer extérieurement le
bourrelet de sertissage 4 et à s'encliqueter sur celui-ci. A
30 cet effet, le rebord 8 possède des plots d'encliquetage tels
que 8a répartis intérieurement autour et à la base de celui-ci
en vue de venir s'appuyer élastiquement sous le bourrelet de
sertissage 4. Il est à noter que ces plots d'encliquetage 8a
pourraient être remplacés par un court retour d'encliquetage
35 s'étendant de façon continue autour du rebord 8.

          De plus, la barquette 7 est pourvue
d'oreilles externes 9, en l'exemple à chacun de ses angles au
niveau de la base du rebord 8, qui permettent de la saisir et
de décrocher par traction les moyens d'encliquetage (8, 8a)
40 de la seconde barquette par rapport au bourrelet 4 de la

H-300

2606752

5

première.

Par ailleurs, la barquette 7 est avantageusement pourvue d'un croisillon amovible de
5 compartimentage 10, qui la divise en plusieurs compartiments, chacun adapté à la mise en place d'aliments complémentaires : sachet de sel et de poivre, portion de pain ensachée, gobelet fermé de boisson, entrées préconditionnées, portions de fromage ou desserts... En outre, le croisillon 10 peut être
10 échancré, comme le montre en 10a la figure 1, en vue de permettre de loger longitudinalement dans la barquette 7 des couverts jetables (fourchette, cuillère, couteau...) utiles lors de la consommation.

Les figures 4 à 9 illustrent l'utilisation de
15 l'ensemble de conditionnement conforme à l'invention et mettent en évidence ses avantages.

Une fois garni, l'ensemble se présente sous la forme d'un tout compact, comme le montre la figure 4. Le plat à réchauffer (plat en sauce ou autre) est étanchément
20 logé dans la barquette métallique 1 dont le sertissage et la stérilisation autorisent de longues durées de conservation. Les aliments additionnels ou accessoires sont disposés dans la barquette 7. Celle-ci, transparente à la lumière, peut contenir une fiche "menu", visible de l'extérieur.
25 Lors de la consommation, l'utilisateur sépare la barquette 1 de la barquette 7, en tirant sur les oreilles 9 de cette dernière afin de décrocher les moyens d'encliquetage (figure 5). Les aliments additionnels ou accessoires sont alors récupérés, les croisillons de compartimentage étant
30 enlevés.

L'utilisateur ouvre ensuite la barquette 1 en découpant son opercule 3 par traction sur l'anneau 5 (figure 6).

Puis la barquette 7 est à nouveau
35 encliquetée sur la barquette 1 (figure 7) et l'ensemble est renversé pour transférer le plat à réchauffer dans ladite barquette 7 (figure 8).

Cette dernière peut alors être disposée dans un four à micro-ondes pour obtenir un plat chaud (figure 9),
40 lequel peut être consommé directement dans celle-ci.

H-301

2606752

6

REVENDICATIONS

1/ - Ensemble de conditionnement pour aliments, en particulier pour plat ou repas à réchauffer, comprenant une barquette stérilisable (1) ayant une face ouverte, et un opercule étanche (3) serti autour de ladite face ouverte de barquette, caractérisé en ce qu'il comprend une seconde barquette séparable (7), ayant une face ouverte et formée d'un matériau de qualité alimentaire, transparent ou peu absorbant à l'égard des micro-ondes, et des moyens d'encliquetage (4, 8) adaptés pour permettre de fixer de façon amovible les deux barquettes (1, 7) renversées l'une sur l'autre avec leur face ouverte en correspondance.

2/ - Ensemble de conditionnement selon la revendication 1, dans lequel l'opercule (3) est serti sur la première barquette (1) par un bourrelet de sertissage (4), caractérisé en ce que les moyens d'encliquetage comprennent un rebord d'encliquetage (8) agencé autour de la face ouverte de la seconde barquette (7) de façon à pouvoir s'encliqueter autour du bourrelet de sertissage (4) de la première barquette.

3/ - Ensemble de conditionnement selon l'une des revendications 1 ou 2, caractérisé en ce que la seconde barquette (7) est dotée d'oreilles externes de préhension (9) en vue de permettre, par traction, un décrochage des moyens d'encliquetage (4, 8).

4/ - Ensemble de conditionnement selon l'une des revendications 1, 2 ou 3, caractérisé en ce que la seconde barquette (7) possède une face ouverte de forme et surface équivalentes à celles de la première barquette (1).

5/ - Ensemble de conditionnement selon l'une des revendications 1, 2, 3 ou 4, caractérisé en ce que la seconde barquette (7) possède un volume au moins égal à celui de la première barquette (1).

6/ - Ensemble de conditionnement selon l'une des revendications 1, 2, 3, 4 ou 5, caractérisé en ce que la seconde barquette (7) est pourvue de moyens amovibles de compartimentage (10), en vue de réaliser des compartiments pour loger des aliments solides ou préconditionnés ou des couverts.

H·302

7

2606752

      7/ - Ensemble de conditionnement selon l'une des revendications précédentes, dans lequel l'opercule (3) de la première barquette comporte un élément de traction (5) et
5 possède une ligne de découpage (6) en vue de son ouverture.

      8/ - Ensemble de conditionnement selon l'une des revendications précédentes, dans lequel la première barquette (1) est métallique, la seconde barquette (7) étant réalisée en matière synthétique.

10       9/ - Ensemble de conditionnement selon la revendication 8, dans lequel la seconde barquette (7) est réalisée en matière synthétique, transparente à la lumière.

H-303

2606752

1/3



Fig. 1

2606752

2/3



Fig. 2

Fig. 3

H-305

2606752

3 /3



Fig. 4

Fig. 5

Fig. 6

Fig. 7

Fig. 8

Fig. 9

H-306



Europäisches Patentamt

European Patent Office

Office européen des brevets

(11) Publication number: **0 437 082 A1**



(12)                    **EUROPEAN PATENT APPLICATION**

(21) Application number: 90314119.0

(22) Date of filing: 21.12.90

(51) Int. Cl.⁵: **B65D 1/34**, B65D 81/34

(30) Priority: 09.01.90 GB 9000416

(43) Date of publication of application:
17.07.91 Bulletin 91/29

(84) Designated Contracting States:
AT BE CH DE DK ES FR GB GR IT LI LU NL SE

(71) Applicant: H.J. HEINZ COMPANY LIMITED
Hayes Park, Hayes
Middlesex UB4 8AL(GB)

(72) Inventor: Carter, Leigh
26 Bourne Court
South Ruislip, Middlesex HA4 6SW(GB)
Inventor: Harrison, Brian Aubrey
44A Grosvenor Road
Birkdale, Southport, PR8 2ET(GB)

(74) Representative: Pendlebury, Anthony et al
PAGE, WHITE & FARRER 54 Doughty Street
London WC1N 2LS(GB)

(54) **Ovenable container.**

(57) During reheating of pre-cooked, pre-packaged foodstuffs drying out may occur at the edges of the foodstuffs in the package and good presentation of the reheated foodstuffs is difficult to achieve upon removal from the package and transfer to a plate.

An ovenable container (4) is provided for foodstuffs and comprises a base portion (1) and an inwardly-directed lateral flange (9) sealed to the base portion (1) or an integral part thereof, at or in the vicinity of the mouth of the container (4). The lateral flange (9) extends inwardly by an amount sufficient to inhibit loss of liquid from the container during heating of the foodstuffs (5) in the container when inverted over a plate (6), and is sufficiently flexible after the heating to permit removal of the container (4) from the plate (6) without substantial disturbance of the foodstuffs (5).



Fig.4.

EP 0 437 082 A1

# OVENABLE CONTAINER

The present invention relates to an ovenable container for foodstuffs which facilitates the serving of foodstuffs such as frozen or chilled ready meals.

Convenience foods such as pre-cooked ready meals are becoming increasingly popular, particularly with the rapid reheating times that are available using microwave or conventional thermal ovens. Such foods are usually sold in pre-packaged form. However, reheating of the foodstuffs tends to result in drying out occurring at the edges of the foodstuffs in the package. Furthermore, good presentation of the reheated foodstuffs is difficult to achieve upon removal from the package and transfer to a plate.

The present invention provides an ovenable container for foodstuffs comprising a base portion and an inwardly-directed lateral flange sealed to the base portion or an integral part thereof, at or in the vicinity of the mouth of the container, wherein the lateral flange extends inwardly by an amount sufficient to inhibit loss of liquid from the container during heating of the foodstuffs in the container when inverted over a plate, the lateral flange being sufficiently flexible after the heating to permit removal of the container from the plate without substantial disturbance of the foodstuffs.

The lateral flange should extend inwardly by an amount sufficient to inhibit loss of liquid from the foodstuffs during the heating of the container in its inverted position without extending so far as to trap some of the foodstuffs when the container is removed from the plate. The width of the flange will depend on the size of the container and on the type of foodstuffs present in the container. For example, the larger the container the further inwardly the flange may extend. Similarly, a substantially liquid foodstuff may be packed in a container having a large flange whereas a more solid foodstuff would require a smaller flange. Generally the containers will range from say 10 cm to 30 cm in width with a depth in the region of 3 cm. Preferably, the lateral flange extends inwardly by at least 5 mm, more preferably by 8 to 20 mm. The lateral flange may run substantially continuously around the periphery of the container. Alternatively, part of the lateral flange may be interrupted, for example by slits provided that at least about 10 mm of the flange extending inwardly runs substantially continuously around the periphery of the container. Preferably, it is formed by an endless strip of material sealed to the base portion.

The loss of liquid is thought to occur by a combination of vapourisation and seepage. When the foodstuffs are heated, some of the liquid present will be vapourised and will escape by venting out from between the container and the plate. Additionally, some liquid will escape by seepage from between the container and the plate. Thus, a function of the lateral flange is to provide a barrier between the foodstuffs and the plate so as to inhibit such loss of liquid. The presence of the barrier tends to produce a degree of sealing between the container and the plate. This may also reduce heat loss from the foodstuffs and, as a consequence, may increase efficiency of heating and reduce the time required for cooking. Advantageously, the presence of the lateral flange may also impart to the base portion additional rigidity or stability.

The container may be of any conventional shape. For example, in horizontal cross-section it could be square, rectangular, elliptical or circular. Preferably the container is substantially circular in horizontal cross-section and preferably has an annular flange around the periphery. Whatever the horizontal cross-sectional shape of the container, the base portion may comprise a single compartment or it may comprise a plurality of compartments, the purpose of which is to keep separate different types of foodstuffs.

The container should be constructed from a suitable food grade material. The base portion may be flexible or semi-rigid whereas the lateral flange is preferably flexible at room temperature. The choice of materials depends upon the use to which the container is put. For microwave cooking, metallic materials should not be used. A temperature resistance of 130°C is preferred for microwave cooking whereas temperature resistance of 210°C is preferred for thermal oven cooking. Preferably, the base portion is made of a plastics material such as a polyester or polycarbonate. The method of forming the base portion is chosen according to the material from which it is made. For example, where polycarbonate is used the base portion may be thermoformed. The lateral flange may also be made of a plastics material, preferably a polyester.

Once foodstuffs have been placed in the container, the container may be overwrapped. Among the types of overwrapping which may be used are conventional plastics wrapping or cartoning. Preferably a removable lid is used, more preferably a peelable lid sealed to the flange so as to form a peelable seal. Because the overwrapping or lid is removed prior to cooking, there is no need for this to be constructed from an ovenable material. However, it is preferable for the container and, where applicable, the lid, to be stable to, for example, -30°C for frozen food applications and to 0°C for chilled foods. The lid is preferably made from a

H·308

polyester.

In the case of microwave heating the plate is preferably a serving plate from which the meal is to be eaten. In the case of thermal oven heating the plate may be a heat-resistant serving plate or an oven baking tray or sheet from which the food would have to be transferred to a serving plate before eating.

Means for holding the container may also be present on the base portion for the purpose of aiding lifting of the container from the plate after cooking. For example, the base portion may have holding tabs and these tabs may extend laterally from the base portion.

The invention will now be further described, by way of example only, with reference to the drawings in which:

Figure 1 is a vertical sectional view of one embodiment of the base portion of the container;

Figure 2 is a plan view of an annular ring which is sealable to the base portion shown in Figure 1;

Figure 3 is a plan view of a lid for use with the annular ring of Figure 2;

Figure 4 shows a vertical sectional view of a schematic representation of this embodiment of the assembled container in which foodstuffs are placed; and

Figure 5 shows a further embodiment of the container lifted from the foodstuffs after cooking.

The drawings relate to embodiments of the container having a circular cross-section. The container is manufactured by forming base portion 1 to a thickness of at least 12 microns from a polyester (Melinex-ICI) by drawing the material into a suitably-sized pocket. This is then filled with the foodstuffs. The diameter of base portion 1 at the periphery of rim 7 is the same as that of annular ring 2, typically 190 mm. The annular ring 2 is made from a polyester (Mylar 100 XM963 - Du Pont) and forms a 20mm wide strip. This is weld sealed to the rim 7, which is typically 10 mm wide so as to form an inwardly-directed lateral flange of 10 mm. The depth of the container is 30 mm. Lid 3 is also made from a polyester (Mylar 100 OL - Du Pont). This is sealed to the upper surface of annular ring 2 and is shown in Figure 3 with a tab portion 8. In the further embodiment illustrated in Figure 5, the base portion 1 has holding taps 10 extending laterally therefrom. The finished product may be frozen or chilled as is appropriate.

For the purpose of microwave heating, the lid is peeled off and the ready meal placed on a serving plate 6. Where the ready meal is frozen, simple inversion of the container onto the plate 6 is sufficient. However, where the ready meal is chilled, the plate 6 should preferably be placed upside-down over the mouth of the container and then the container and plate inverted together to prevent spillage of the foodstuffs 5. During heating of the filled container in a microwave oven, inwardly-directed lateral flange 9 inhibits loss of liquid from the container by acting as a barrier between the plate 6 and the foodstuffs 5. Once heating has finished, the container 1 is simply lifted from the plate 6 preferably by the holding tabs. Because the lateral flange 9 is flexible, the foodstuffs remain on the plate 6 virtually undisturbed thereby improving their presentation. Similarly, the container may be heated in a conventional thermal oven instead of a microwave oven.

**Claims**

1. An ovenable container (4) for foodstuffs (5) comprising a base portion (1) and an inwardly-directed lateral flange (9) sealed to the base portion or an integral part thereof, at or in the vicinity of the mouth of the container (4), wherein the lateral flange (9) extends inwardly by an amount sufficient to inhibit loss of liquid from the container (4) during heating of the foodstuffs (5) in the container (4) when inverted over a plate (6), the lateral flange (9) being sufficiently flexible after the heating to permit removal of the container (4) from the plate (6) without substantial disturbance of the foodstuffs (5).

2. An ovenable container as claimed in claim 1, wherein the lateral flange (9) extends inwardly by at least 5 mm.

3. An ovenable container as claimed in claim 2, wherein the lateral flange (9) extends inwardly by 8 to 20 mm.

4. An ovenable container as claimed in any of the preceding claims, wherein the lateral flange (9) forms a substantially continuous strip around the mouth of the container (4).

5. An ovenable container as claimed in any of the preceding claims wherein the lateral flange (9) is made of a plastics material.

6. An ovenable container as claimed in claim 5 wherein the plastics material of the lateral flange (9) is a polyester.

7. An ovenable container as claimed in any of the preceding claims wherein the lateral flange (9) is formed by an endless strip of material (2) sealed to the base portion (1).

H-309

8. An ovenable container as claimed in any of the preceding claims, wherein the container (4) is substantially circular in horizontal cross-section.

9. An ovenable container as claimed in any one of the preceding claims, wherein the base portion (1) is made of a plastics material.

10. An ovenable container as claimed in claim 9, wherein the plastics material of the base portion (1) is a polyester or polycarbonate.

11. An ovenable container as claimed in any one of the preceding claims which further comprises a removable lid (3).

12. An ovenable container as claimed in claim 11, wherein the lid (3) is a peelable lid which is sealed to the flange (9).

13. An ovenable container as claimed in any of the preceding claims wherein the base portion (1) has holding tabs (10) for facilitating removal of the container (4) from the plate (5).

5

10

15

20

25

30

35

40

46

50

55

H-310

EP 0 437 082 A1



Fig.1.

Fig.2.

EP 0 437 082 A1



*Fig. 3.*



*Fig. 4.*

EP 0 437 082 A1



Fig. 5.



**European
Patent Office**

# EUROPEAN SEARCH
REPORT

Application Number

**EP 90 31 4119**

## DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (Int. Cl.5) |
|---|---|---|---|
| A | WO-A-8 809 292  (TOYO SEIKAN KAISHA)<br>* Abstract; figure 1 *<br>- - - | 1 | B 65 D<br>1/34<br>B 65 D 81/34 |
| A | FR-A-2 607 114  (GLINEL)<br>- - - - - | | |

| | TECHNICAL FIELDS SEARCHED (Int. Cl.5) |
|---|---|
| | B 65 D<br>A 47 G |

The present search report has been drawn up for all claims

| Place of search | Date of completion of search | Examiner |
|---|---|---|
| The Hague | 02 April 91 | LEONG C.Y. |

**CATEGORY OF CITED DOCUMENTS**

X : particularly relevant if taken alone
Y : particularly relevant if combined with another
document of the same category
A : technological background
O : non-written disclosure
P : intermediate document
T : theory or principle underlying the invention

E : earlier patent document, but published on, or after
the filing date
D : document cited in the application
L : document cited for other reasons

& : member of the same patent family, corresponding
document

H-314

(12) **UK Patent Application** (19) **GB** (11) **2 307 634** (13) **A**

(43) Date of A Publication 04.06.1997

(21) Application No 9524464.6

(22) Date of Filing 30.11.1995

(71) Applicant(s)
Garodge Ltd

(Incorporated in the United Kingdom)

64/68 Camden High Street, LONDON, NW1 0LT,
United Kingdom

(72) Inventor(s)
Bertram Mindell

(74) Agent and/or Address for Service
B Mindell
17 Beaufort Road, Ealing, LONDON, W5 3EB,
United Kingdom

(51) INT CL$^6$
A47G 19/30 19/26 , B65D 25/14

(52) UK CL (Edition O )
A4A AEA AEAB ALG AR
B8P PKB

(56) Documents Cited
GB 1373830 A    GB 0687530 A    GB 0615022 A
EP 0674868 A1    EP 0509864 A1    US 4880951 A

(58) Field of Search
UK CL (Edition O ) A4A AEA ALG AQ AR , B8D
DCW21, B8P PKB
INT CL$^6$ A47G 19/26 19/30 23/00 23/04 23/08 , A47J
36/06 36/16 47/02 , B65D 25/14 25/16 25/18
ONLINE:WPI

(54) **Liner/lid for food receptacle**

(57)  A liner (2) having a lip (3) can rest upon the rebated edge (5) of a receptacle (1) which receptacle is a part of a larger container (4), so that when said liner is turned upside down the lip still rests upon said rebated edge so that in such a position said liner assumes the function of a lid for said receptacle. A first liner (2) can be placed in the receptacle (1) and a second liner inverted thereon as a lid, the lips (3) of both being received in the rebate. The larger container or tray (4) has a central aperture (6) for mounting on and around a pole.



Fig. 1



Fig 3

GB 2 307 634 A

H-315





Fig. 1



Fig 2

H-316

2/2



Fig 3

H·317

**2307634**

- 1 -

### LINER/LID

THE PRESENT INVENTION REFERS TO A LINER WHICH FITS INTO A RECEPTACLE. THE SHAPE OF THE LINER AND OF THE RECEPTACLE ARE SUCH THAT THE LINER, WHEN TURNED UPSIDE DOWN, CAN ASSUME THE FUNCTION OF A LID.  BOTH THE LINER AND THE RECEPTACLE MAY BE IN ANY CONVENIENT SHAPE SUCH AS A DISH, A BOWL, A POT OR A BUCKET.  THE RECEPTACLE MAY FORM AN INTEGRAL OR A REMOVABLE PART OF A LARGER RECEPTACLE. THE LINER CAN BE MADE OF ANY RIGID OR FLEXIBLE MATERIAL.

THE INVENTION RELATES PARTICULARLY BUT NOT EXCLUSIVELY TO RECEPTACLES INTENDED TO HOLD FOOD.

EATING AWAY FROM THE COOKING AREA, PARTICULARLY EATING OUT OF DOORS, IS BECOMING MORE POPULAR. IT WOULD BE DESIRABLE TO BE ABLE TO TRANSPORT FOOD FROM THE COOKING AREA TO A RECEPTACLE WHICH IS SITUATED ELSEWHERE BUT ALSO TO BE ABLE TO COVER SUCH FOOD WITH A LID SO AS TO KEEP AWAY DIRT AND INSECTS. THIS FACILITY WOULD BE EVEN MORE DESIRABLE IF THE RECEPTACLE WERE TEMPORARILY OR PERMANENTLY IN A FIXED LOCATION.

ACCORDINGLY THE PRESENT INVENTION PROVIDES A LINER SHAPED TO FIT WITHIN A RECEPTACLE, SAID LINER HAVING A LIP WHICH CAN REST UPON THE REBATED EDGE OF SAID RECEPTACLE SAID REBATED EDGE BEING SO SHAPED AND DIMENSIONED THAT WHEN SAID LINER IS TURNED UPSIDE DOWN SAID LIP RESTS UPON SAID REBATED EDGE SO THAT SAID LINER ASSUMES THE FUNCTION OF A LID FOR SAID RECEPTACLE.

SAID RECEPTACLE CAN EITHER BE A SINGLE UNIT OR CAN FORM AN INTEGRAL OR A REMOVABLE PART OF A LARGER DISH, BOWL OR CONTAINER CONSISTING OF MORE THAN ONE RECEPTACLE SUCH AS A DIVIDED PLATE OR A  "CHIP AND DIP" TRAY.

SAID RECEPTACLE CAN BE ROUND, SQUARE OR ANY OTHER SUITABLE SHAPE. IT CAN, IF REQUIRED, HAVE A TUBE OR APERTURE THROUGH IT SO AS TO ALLOW IT TO FIT ROUND A POLE SUCH AS A PARASOL POLE. THE LINER AND THE RECEPTACLE CAN CONVENIENTLY BE MADE OF ANY PLASTIC MATERIAL e.g. POLYPROPYLENE BUT IT IS ENVISAGED THAT OTHER MATERIALS SUCH AS CHINA, PORCELAIN, TERRACOTTA, EARTHENWARE, POTTERY, WOOD, GLASS OR METAL MAY ALTERNATIVELY BE USED.

PREFERABLY, BUT NOT INVARIABLY, SAID LIP WILL EXTEND ALONG THE TOTAL CIRCUMFERENCE OF SAID LINER.

THERE CAN, IF REQUIRED BY DESIGN OR FUNCTION CONSIDERATIONS, BE A CONTINUATION OF THE BORDERS OF SAID RECEPTACLE BEYOND SAID REBATED EDGE. SUCH CONTINUATION CAN ALSO OCCUR IF SAID RECEPTACLE FORMS AN INTEGRAL PART OF A LARGER CONTAINER.

BAD ORIGINAL 

H-318

-2-

PREFERABLY THE REBATE AT THE EDGE OF THE RECEPTACLE WILL BE
SUFFICIENTLY DEEP TO ACCOMMODATE SIMULTANEOUSLY THE THICKNESS
OF THE LIP OF THE LINER AND THE THICKNESS, WHEN TURNED UPSIDE
DOWN, OF THE LIP OF ANOTHER LINER AS A LID. THE UPRIGHT SIDE
OF THE REBATED EDGE CAN BE EITHER VERTICAL, ANGLED OR SHAPED.
IF IT IS ANGLED OR SHAPED THIS MAY HELP IN KEEPING THE LINER
MORE SECURELY IN POSITION WHEN IT ASSUMES THE FUNCTION OF A
LID.

THE WIDTH OF ALL OR PART OF THE SAID REBATED EDGE OF THE
SAID CONTAINER CAN IF REQUIRED BE WIDER THAN THE WIDTH OF SAID
LIP OF SAID LINER IN ORDER TO EASE PLACING OF SAID LINER IN
AND ITS REMOVAL FROM SAID CONTAINER.

PREFERRED EMBODIMENTS OF THE INVENTION ARE DESCRIBED BELOW BY
WAY OF EXAMPLE ONLY WITH REFERENCE TO FIGURES 1 TO 3 OF THE
ACCOMPANYING DRAWINGS WHEREIN:

FIGURE 1 IS AN ELEVATION IN SECTION OF A LINER FITTING WITHIN
A RECEPTACLE.

FIGURE 2 IS AN ELEVATION IN SECTION OF A LINER TURNED UPSIDE
DOWN ON A RECEPTACLE AND ASSUMING THE FUNCTION OF A LID.

FIGURE 3 IS AN ELEVATION VIEWED FROM ABOVE OF A NUMBER OF
LINERS FITTING WITHIN A NUMBER OF RECEPTACLES FORMING PART OF
A LARGER CONTAINER.

REFERRING TO FIGURE 1 THE ILLUSTRATED RECEPTACLE 1 AND THE
LINER 2 ARE SHOWN CUT AWAY TO REVEAL THE LINER WHOSE LIP 3 IS
RESTING ON THE REBATED EDGE 5 OF SAID RECEPTACLE.   FOR
PURPOSES OF CLARITY A GAP IS SHOWN BETWEEN THE CONTAINER AND
THE LINER BUT IN REALITY NO GAP WILL NORMALLY BE APPARENT.

REFERRING TO FIGURE 2 THE ILLUSTRATED RECEPTACLE 1 AND THE
LINER 2 ARE SHOWN CUT AWAY TO REVEAL THE LINER TURNED UPSIDE
DOWN WHOSE LIP 3 IS RESTING ON THE REBATED EDGE 5 OF SAID
RECEPTACLE IN WHICH EMBODIMENT SAID LINER ASSUMES THE FUNCTION
OF A LID FOR SAID RECEPTACLE.

REFERRING TO FIGURE 3 THE ILLUSTRATED RECEPTACLE 1 AND THE
LINER 2 ARE SHOWN VIEWED FROM ABOVE THE RECEPTACLE FORMING A
PART OF A LARGER DISH 4 CONTAINING MORE THAN ONE RECEPTACLE
EACH OF WHICH IS CAPABLE OF ACCOMODATING A LINER, A LID OR
BOTH SIMULTANEOUSLY. IN THE EMBODIMENT SHOWN OF THE LARGER
DISH 4 THERE IS A CENTRAL AREA 6 WHICH REPRESENTS EITHER AN
ADDITIONAL RECEPTACLE OR A TUBE OR AN APERTURE.

BAD ORIGINAL 

H-319

- 3 -

## CLAIMS

1. A LINER SHAPED TO FIT  WITHIN A RECEPTACLE. SAID LINER
HAVING A LIP WHICH CAN REST UPON THE REBATED EDGE OF SAID
RECEPTACLE SAID REBATED EDGE BEING SO SHAPED AND DIMENSIONED
THAT WHEN SAID LINER IS TURNED UPSIDE DOWN SAID LIP RESTS UPON
SAID REBATED EDGE SO THAT SAID LINER ASSUMES THE FUNCTION OF A
LID.

2. A RECEPTACLE AS CLAIMED IN CLAIM 1 WHICH FORMS AN INTEGRAL
OR A REMOVABLE PART OF A LARGER DISH, BOWL OR CONTAINER
CONSISTING OF OR SUPPORTING MORE THAN ONE RECEPTACLE.

3. A RECEPTACLE AS CLAIMED IN CLAIMS 1 AND 2 WHERE SAID
REBATED EDGE IS SUFFICIENTLY DEEP TO ACCOMMODATE
SIMULTANEOUSLY BOTH THE LIP OF SAID LINER AND THE LIP OF SAID
LID.

4. A RECEPTACLE AS CLAIMED IN ANY PREVIOUS CLAIM WHERE THE
UPRIGHT SIDE OF SAID REBATED EDGE CAN BE EITHER VERTICAL OR
ANGLED OR SHAPED.

5. A RECEPTACLE AS CLAIMED IN ANY PREVIOUS CLAIM WHERE ALL OR
PART OF THE WIDTH OF SAID REBATED EDGE CAN BE WIDER THAN THE
WIDTH OF THE LIP OF SAID LINER.

6. A LINER AND A RECEPTACLE SUBSTANTIALLY AS DESCRIBED
HEREINABOVE WITH REFERENCE TO ANY OF THE FIGURES 1, 2 AND 3 OF
THE ACCOMPANYING DRAWINGS.

7. A CONTAINER ARRANGEMENT SUBSTANTIALLY AS DESCRIBED
HEREINABOVE WITH REFERENCE TO FIGURE 3 OF THE ACCOMPANYING
DRAWINGS COMPRISING ONE OR MORE RECEPTACLES AND LINERS AS
DESCRIBED IN ANY OF THE PREVIOUS CLAIMS.

BAD ORIGINAL 

H-320

4

**Amendments to the claims have been filed as follows**

1. A TRAY HAVING A CENTRAL APERTURE FOR MOUNTING THE TRAY ON A SUPPORTING POLE, THE TRAY HAVING DEPRESSIONS DISTRIBUTED AROUND ITS CENTRAL APERTURE, THE DEPRESSIONS HAVING REBATED EDGES AND RESPECTIVE REMOVABLE LINERS BEING ACCOMMODATED IN THE DEPRESSIONS, THE LINERS HAVING LIPPED EDGES WHICH ARE LOCATED WITHIN THE REBATED EDGES AND THE REBATED EDGES BEING SO SHAPED AND DIMENSIONED THAT THE REBATES CAN RECEIVE AND LOCATE THE LIP OF AN UPSIDE-DOWN LINER ACTING AS A LID RESTING ON THE LIP OF AN UPRIGHT LINER ACCOMMODATED IN A DEPRESSION.

2. A TRAY AS CLAIMED IN CLAIM 1 WHICH HAS AN UPSIDE-DOWN LINER ACTING AS A LID SUPPORTED ON AN UPRIGHT LINER IN A SAID DEPRESSION.

3.. A TRAY AS CLAIMED IN CLAIM 1 OR 2 WHEREIN SAID LINERS ARE SUPPORTED BY THEIR LIPPED EDGES RESTING ON SAID REBATED EDGES.

4. A TRAY AS CLAIMED IN CLAIM 1 OR CLAIM 2 WHEREIN THE REBATED EDGES HAVE A NON-VERTICAL UPRIGHT WALL WHICH SHAPED OR ANGLED TO KEEP AN INVERTED LINER ACTING AS A LID SECURELY IN POSITION.

5. A TRAY AS CLAIMED IN ANY PRECEDING CLAIM WHEREIN THERE IS A GAP BETWEEN THE SIDE WALL OF A REBATED EDGE AND THE OUTER PERIPHERY OF THE LIP OF THE CORRESPONDING LINER.

6. A TRAY AS CLAIMED IN ANY PRECEDING CLAIM WHICH IS COMPOSED OF PLASTICS MATERIAL.

7. A TRAY AS CLAIMED IN ANY OF CLAIMS 1 TO 5 WHICH IS COMPOSED OF TERRACOTTA OR EATHENWARE.

8. A TRAY SUITABLE FOR POLE-MOUNTING, SUBSTANTIALLY AS DESCRIBED HEREINABOVE WITH REFERENCE TO FIGURES 1 TO 3 OF THE ACCOMPANYING DRAWINGS.

H-321





The
**Patent**
**Office**
**5**

| | |
|---|---|
| **Application No:** GB 9524464.6 | **Examiner:** Stephen Smith |
| **Claims searched:** 1-7 | **Date of search:** 12 April 1996 |

## Patents Act 1977
## Search Report under Section 17

**Databases searched:**

UK Patent Office collections, including GB, EP, WO & US patent specifications, in:

UK Cl (Ed.O): A4A (AEA, ALG, AQ, AR); B8D (DCW21); B8P (PK8)

Int Cl (Ed.6): A47G 19/26, 19/30, 23/00, 23/04, 23/08; A47J 36/06, 36/16, 47/02; B65D 25/14, 25/16, 25/18

Other:   ONLINE:WPI

**Documents considered to be relevant:**

| Category | Identity of document and relevant passage | Relevant to claims |
|---|---|---|
| X | GB 1373830         (AMERICAN METALCRAFT) especially Figures 6-8 | 1, 3-5 |
| X | GB 687530          (MURRAY) especially Figure 3 | 1, 3-5 |
| X | GB 615022          (HUMPHRIES) especially Figures 2 and 3 | 1 |
| X | EP 0674868 A1      (MONETTI) especially Figure 4 | 1, 2 |
| X | EP 0509664 A1      (MOBIL) especially Figure 2 | 1, 3-5 |
| X | US 4880951         (LEVINSON) especially Figure 8 | 1, 3-5 |

| | | | |
|---|---|---|---|
| X | Document indicating lack of novelty or inventive step | A | Document indicating technological background and/or state of the art |
| Y | Document indicating lack of inventive step if combined with one or more other documents of same category. | P | Document published on or after the declared priority date but before the filing date of this invention. |
| & | Member of the same patent family. | E | Patent document published on or after, but with priority date earlier than, the filing date of this application. |

H-322

An Executive Agency of the Department of Trade and Industry

### Index of Claims

| Application No. | Applicant(s) |
|---|---|
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit |
| Robert Madsen | 1761 |

| | | | | |
|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim | | Date |
|---|---|---|
| Final | Original | 5/21/04 |
| | 1 | √ |
| | 2 | √ |
| | 3 | √ |
| | 4 | √ |
| | 5 | √ |
| | 6 | N |
| | 7 | N |
| | 8 | N |
| | 9 | N |
| | 10 | N |
| | 11 | N |
| | 12 | N |
| | 13 | N |
| | 14 | N |
| | 15 | N |
| | 16 | N |
| | 17 | √ |
| | 18 | N |
| | 19 | N |
| | 20 | N |
| | 21 | N |
| | 22 | N |
| | 23 | N |
| | 24 | N |
| | 25 | |
| | 26 | |
| | 27 | |
| | 28 | |
| | 29 | |
| | 30 | |
| | 31 | |
| | 32 | |
| | 33 | |
| | 34 | |
| | 35 | |
| | 36 | |
| | 37 | |
| | 38 | |
| | 39 | |
| | 40 | |
| | 41 | |
| | 42 | |
| | 43 | |
| | 44 | |
| | 45 | |
| | 46 | |
| | 47 | |
| | 48 | |
| | 49 | |
| | 50 | |

| Claim | | Date |
|---|---|---|
| Final | Original | |
| | 51 | |
| | 52 | |
| | 53 | |
| | 54 | |
| | 55 | |
| | 56 | |
| | 57 | |
| | 58 | |
| | 59 | |
| | 60 | |
| | 61 | |
| | 62 | |
| | 63 | |
| | 64 | |
| | 65 | |
| | 66 | |
| | 67 | |
| | 68 | |
| | 69 | |
| | 70 | |
| | 71 | |
| | 72 | |
| | 73 | |
| | 74 | |
| | 75 | |
| | 76 | |
| | 77 | |
| | 78 | |
| | 79 | |
| | 80 | |
| | 81 | |
| | 82 | |
| | 83 | |
| | 84 | |
| | 85 | |
| | 86 | |
| | 87 | |
| | 88 | |
| | 89 | |
| | 90 | |
| | 91 | |
| | 92 | |
| | 93 | |
| | 94 | |
| | 95 | |
| | 96 | |
| | 97 | |
| | 98 | |
| | 99 | |
| | 100 | |

| Claim | | Date |
|---|---|---|
| Final | Original | |
| | 101 | |
| | 102 | |
| | 103 | |
| | 104 | |
| | 105 | |
| | 106 | |
| | 107 | |
| | 108 | |
| | 109 | |
| | 110 | |
| | 111 | |
| | 112 | |
| | 113 | |
| | 114 | |
| | 115 | |
| | 116 | |
| | 117 | |
| | 118 | |
| | 119 | |
| | 120 | |
| | 121 | |
| | 122 | |
| | 123 | |
| | 124 | |
| | 125 | |
| | 126 | |
| | 127 | |
| | 128 | |
| | 129 | |
| | 130 | |
| | 131 | |
| | 132 | |
| | 133 | |
| | 134 | |
| | 135 | |
| | 136 | |
| | 137 | |
| | 138 | |
| | 139 | |
| | 140 | |
| | 141 | |
| | 142 | |
| | 143 | |
| | 144 | |
| | 145 | |
| | 146 | |
| | 147 | |
| | 148 | |
| | 149 | |
| | 150 | |

U.S. Patent and Trademark Office

Part of Paper No  05212004

H-323

## Search Notes

| Application No. | Applicant(s) |
|---|---|
| 10/222,435 | PRATTE, WESLEY PAUL |
| Examiner | Art Unit |
| Robert Madsen | 1761 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 426 | 106 | 5/21/2004 | RAM |
| 426 | 112 | 5/21/2004 | RAM |
| 426 | 115 | 5/21/2004 | RAM |
| 426 | 119 | 5/21/2004 | RAM |
| 426 | 120 | 5/21/2004 | RAM |
| 426 | 389 | 5/21/2004 | RAM |
| 426 | 392 | 5/21/2004 | RAM |
| 426 | 394 | 5/21/2004 | RAM |
| 426 | 395 | 5/21/2004 | RAM |
| 206 | 541 | 5/21/2004 | RAM |
| 206 | 545 | 5/21/2004 | RAM |
| 206 | 546 | 5/21/2004 | RAM |
| 206 | 548 | 5/21/2004 | RAM |
| 206 | 216 | 5/21/2004 | RAM |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST TEXT SEARCH | 5/21/2004 | RAM |
| | | |

U.S. Patent and Trademark Office

Part of Paper No. 05212004

H-324

# Search Notes (continued)

| | Application No. | Applicant(s) |
|---|---|---|
| | 10/222,435 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit |
| | Robert Madsen | 1761 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 206 | 562 | 5/21/2004 | RAM |
| 206 | 563 | 5/21/2004 | RAM |
| 220 | 23.83 | 5/21/2004 | ram |
| 206 | 561 | 5/21/2004 | RAM |
| 206 | 564 | 5/21/2004 | RAM |
| 206 | 557 | 5/21/2004 | RAM |
| 420 | 113 | 5/21/2004 | RAM |
| 420 | 114 | 5/21/2004 | RAM |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

H-325