**EXHIBIT "I"**

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/408,442 | 04/20/2006 | Wesley Paul Pratte | 14181-3 | 9159 |

23676      7590      03/22/2007
SHELDON MAK ROSE & ANDERSON PC
225 SOUTH LAKE AVENUE
9TH FLOOR
PASADENA, CA 91101

| EXAMINER |
|---|
| THAKUR, VIREN A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 03/22/2007 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

PTOL-90A (Rev. 10/06)

APIO00131

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/408,442 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit | |
| | Viren Thakur | 1761 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS,
WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.
2a) ☐ This action is **FINAL.**   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
   closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>17-61</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>17-61</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____.
        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage
           application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>2/5/07; 8/12/06</u>.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

APIO00132

Application/Control Number: 11/408,442                                          Page 2
Art Unit: 1761

## DETAILED ACTION

### *Specification*

1.    The paragraph "Cross Reference to Related Application" is missing the patent
      number of Application Serial No. 10222435 filed August 16, 2002, which is now
      Patent No. 7083818.

### *Claim Rejections - 35 USC § 112*

2.    The following is a quotation of the second paragraph of 35 U.S.C. 112:

      The specification shall conclude with one or more claims particularly pointing out
      and distinctly claiming the subject matter which the applicant regards as his
      invention.

3.    **Claims 18, 32 and rejected under 35 U.S.C. 112, second paragraph, as being
      indefinite for failing to particularly point out and distinctly claim the subject
      matter which applicant regards as the invention.**

            The instant claims recite the limitation "such that."  It is not clear as to
      what type of dimensions can be considered such that the foodstuffs can be
      served from the tray.  In general, foodstuffs can always be served from a support
      tray but the limitation "such that" does not define the metes and bounds of the
      claim since it is unclear as what dimension would be considered such that the
      foodstuffs are ready to be served from the serving dish.

4.    **Claims 17-61 are rejected under 35 U.S.C. 112, second paragraph, as being
      indefinite for failing to particularly point out and distinctly claim the subject
      matter which applicant regards as the invention.**

Application/Control Number: 11/408,442                                    Page 3
Art Unit: 1761

The instant claims recite the limitation "atmosphere control member."  The specification recites wherein the limitation "atmosphere control member" denotes any member which modifies the rates at which oxygen and carbon dioxide pass into and out of the sealed package.  In the claims this limitation is broad since any member can modify the rate at which oxygen and carbon dioxide pass into and out of a sealed package.  For instance, adding a second layer on top of the sealed package would also modify the rate at which oxygen and carbon dioxide pass.

### Claim Rejections - 35 USC § 103

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.      Determining the scope and contents of the prior art.
2.      Ascertaining the differences between the prior art and the claims at issue.
3.      Resolving the level of ordinary skill in the pertinent art.
4.      Considering objective evidence present in the application indicating obviousness or nonobviousness.

7.      Claim 17-19, 21, 23- 25, 28, 30-31, 32-33, 35-36, 39, 41, 47-48, 49, 51, 52, 55 are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons – Vegetable Tray with Ranch Dressing (*Albertsons*) in view of Antoon Jr.

APIO00134

Application/Control Number: 11/408,442                          Page 4
Art Unit: 1761

(US 5045331) and Nordahl (US 5308630).  Applicant's admission of prior art
is also cited as evidence, as discussed below.

Albertsons teaches a method of preparing a party tray, which comprises
the steps of providing a transparent container body, which comprises a base (the
lid through which the vegetables are viewed).  Albertsons further teaches a
loading orientation as shown in step 3 of page 37 of Albertsons.  While in this
orientation, carrots, cauliflower, celery and broccoli are loaded into the lid.  These
vegetables are considered respiring foodstuffs.  Albertsons further teaches
attaching a support tray to the lid (see step 3 of page 37) and then turning over
the sealed package so that the food is viewed through the transparent lid.
Albertsons teaches an atmosphere around the foodstuffs since the package has
not been sealed under vacuum.  Additionally, since the package contains
respiring foodstuffs, the package would have had an atmosphere around the
foodstuffs.  Albertsons teaches where the finished orientation of the tray can be
considered the display orientation, since in this orientation the transparent
container body (lid) allows the foodstuffs to be viewed by a consumer.

Albertsons is silent in teaching partitions extending away from the base;
sealing a sealing sheet to the container body which contains the foodstuffs,
whose outer surface is defined by the container body and the sealing sheet and
which includes an atmosphere control member which covers a window in the
container body or a window in the sealing sheet.  Wherein the partitions are
cavity wall partitions.  Albertsons is silent in teaching wherein the party tray has
been subjected to the step of turning the party tray upside down so that the
foodstuffs rest on the base of the container body; then removing the support tray;
then removing the sealing sheet; then placing the support tray over the container
body; then turning the assembly upside down so that the foodstuffs are
supported on the support tray; then removing the container body so that the
foodstuffs can be served from the support tray.  Albertsons is further silent in
teaching wherein the container body has a depth of 1 to 4 inches; wherein the

APIO00135

Application/Control Number: 11/408,442                                        Page 5
Art Unit: 1761

container body has a depth of 1.25 to 2.5 inch; wherein the container body has a depth of 1.25 to 2.5 inch and a circumference of 40 to 70 inches.

Nordahl teaches a package comprising cut pieces of a fruit (Column 7, Lines 42-45), which is a respiring foodstuff, and placed into compartments within a base (Column 7, Lines 51-55). As can be seen in figure 5, item 66, Nordahl teaches multiple compartments that have been formed as a result of partitions (which are in between the compartments) that extend upward away from the base (item 52). These partitions are considered cavity wall partitions since they divide the base into multiple compartments into which fruit is placed. The compartments facilitate the arrangement of the cut pieces of fruit into a flower arrangement (Column 7, Lines 51-55) and thus would maintain the position of each cut piece in the flower arrangement.

Nordahl further teaches using a thermoplastic sheet (Figure 5, Item 54; Column 7, Lines 61-66) to seal the container for the purpose of preventing spillage of the apple segments within the tray (Column 7, Lines 58-60). The thermoplastic, and thus polymeric, sheet or the tray is formed of a limited gas permeable material to allow limited aerobic respiration of the fruit but prevent the anaerobic respiration that results in spoilage of the fruit (Column 6, Lines 20-25).

Given the teachings of Nordahl, it would have been obvious to seal the container body of Albertsons, which comprises vegetables, for the purpose of preventing movement and spillage of the vegetables. Sealing using a limited gas permeable sheet, as taught by Nordahl would have prevented the anaerobic respiration that results in spoilage of the fruit. Therefore, using a semi gas permeable sheet to cover the base of Albertsons would have been obvious for the purpose of preventing anaerobic respiration in the vegetables, which would result in spoilage and thus an unappealing product.

Regarding the partitions, Nordahl teach using compartments (which are formed as a result of extending partitions) for maintaining the position of the cut fruit within the base in a particular arrangement. Therefore, it would have been obvious to use extending partitions to create compartments in the container base

APIO00136

of Albertsons for the purpose of maintaining the arrangement of the different types of vegetables disposed therein. One would have had some expectation of success to include partitions in the domed container cover of Albertsons because Albertsons desires a divided container body (Page 37, See Step 2) and the prior art recognized advantages of utilizing partitions: facilitating packaging, providing the division feature during shipping, storage, display and providing additional structural support for the body when the body/tray structure is inverted after filling.

It would have been obvious to further include a sealing sheet over the fresh vegetable sections or compartments prior to applying the tray to cover the compartments, such that the sealing sheet would rest on the tray after the body / tray structure was inverted, since it has been well known in the art to use a transparent polymeric sheet to seal compartments of fresh vegetables in the body prior to applying a cover. Regarding extending container partitions and sealing a sealing sheet to the container body, thus creating a sealed package whose outer surface is defined by the container body and the sealing sheet, the admission of prior art in paragraphs 0003 – 0006 of the Pre-Grant Publication of the current application is cited as further evidence of the conventionality separating a container comprising fresh vegetables into sections, or compartments, which are located between a support and a transparent cover. The admission of the prior art states that in order to increase the shelf life, a transparent polymeric sheet has been conventionally used for sealing over the compartments of fresh vegetables prior to covering the compartments with a lid to allow for modified atmosphere packaging or a controlled atmosphere package. The admission of prior art also states that the support and cover are formed by molded polymeric materials. Therefore, as taught by Nordahl and cited by the admission of prior art, such a modification would increase the shelf life and provide for a modified atmosphere package or controlled atmosphere package. It would have been further obvious to seal the container body with the sealing

Application/Control Number: 11/408,442                                   Page 7
Art Unit: 1761

sheet after sealing since this would prevent dirt or other contaminants from falling into the filled container body.

Regarding the atmosphere control member, Antoon also teaches a sealed container body holding fruit or vegetables. Antoon teaches that providing an atmosphere control member would allow one to obtain an optimum environment to store fruits or vegetables and retard maturation and spoilage. Antoon teaches that providing the control member in a gas impermeable sealing sheet across the container body or in the gas impermeable walls would provide the desired effect of preventing maturation and spoilage, as long as the member is not blocked during storage (Abstract; Column 4, Lines 36-45; Column 6, Lines 35-59). Therefore, it would have been obvious to further modify Albertsons and provide at least one atmosphere control member since Antoon teaches providing an atmosphere control member for an otherwise gas impermeable fruits/vegetables storage container body will allow one to obtain an optimum storage environment and retard both maturation and spoilage. Furthermore, Antoon teaches that one may provide an atmosphere control member at any location of a container body, including on a sealing sheet covering the container body provided that the control member is not obstructed during storage. Therefore, to select any particular location, either in a wall of the container body or on the sealing sheet, would have been obvious depending on the particular arrangement of the container body during storage.

Regarding instant claims 18, 19, 32, 33, 48, 49, Albertsons teaches wherein the support tray is used to serve divided vegetables (See Step 2 on Page 37). In light of the rejection under 112, second paragraph, the dimensions of the support tray can also serve the foodstuffs from the support tray. Modified Albertsons teaches sealing the container body with a sealing sheet so as to preserve the freshness of the vegetables and then placing the support tray thereon. Therefore, in order serve the vegetables, it would have been obvious to the ordinarily skilled artisan that the sealing sheet in between the container body (lid) and the tray would have to be removed. In order to do so, the ordinarily

skilled artisan would had to have turned the entire package upside down to remove the tray to gain access to the sealing sheet. The sealing sheet would then have to be removed to access the dressing and vegetables. Since the dressing has been placed within Albertsons container body (lid) so that the dressing opening is abutted against the top of the lid (i.e. upside down), the support tray would have had to have been reattached and the entire assembly turned over again so that the dressing cup is "right side up." Thus, performing these steps would have been obvious to the ordinarily skilled artisan in order to access the cup of dressing and vegetables of modified Albertsons.

Regarding instant claims 23, 25, 31, 36, 47, and 52 since the diameter of the tray is 12 inches (see table next to Recipe Instructions) the circumference would have been 12 inches times *pi* which yields a circumference of about 37 inches. Regarding the depth of 1 to 4 inches and 1.25 to 2.5 inches, Albertsons teaches filling four equal sections, or compartments of a 12 inch diameter body with 14 ounces of carrots, 12 ounces of cauliflower, 6 ounces of celery and 10 ounces of broccoli. It would have been obvious to the ordinarily skilled artisan to select any particular depth for the body, depending on the expected size and shape of each variety of vegetable. Depending on the size of the container it would have been obvious to the ordinarily skilled artisan that one would have to select an appropriate depth to accommodate enough vegetables of an expected size and shape in each compartment in order to achieve the desired weight. Additionally, the diameter of the trays would also have been dependent on the depth of the tray. A more shallow depth would have required a larger diameter container for accommodating the vegetables, therefore to select a diameter to accommodate the quantity of vegetables taught by Albertsons would have been obvious to the ordinarily skilled artisan.

Regarding instant claim 28, 39, 55 the support tray, as can be seen from the figure on page 37, has a solid color.

Regarding instant claims 30, 41, Albertsons discloses wherein a cup of Litehouse Ranch Dressing is placed upside down in the center of the lid.

APIO00139

Application/Control Number: 11/408,442                                      Page 9
Art Unit: 1761

Albertsons does not explicitly disclose wherein the cup has a lid, however in order to place the cup upside down on the base (lid) of the vegetable tray, it would have been obvious to the ordinarily skilled artisan that the cup would have a lid so as to prevent spilling the dressing contained within the cup. In light of the disclosure by the Applicant and the knowledge of one ordinarily skilled in the art, the Examiner interprets that to use a cup or a carton would have been an obvious modification for performing an equivalent function. In this case, the use of a cup or a carton as a container for holding a dip would have been equivalent means for containing the dip. Thus, the selection of any of these known equivalents to package a dip for mercantile use would have been within the level of ordinary skill in the art. In addition, Litehouse Ranch Dressing is a "brand name" dressing. Therefore, it would have been obvious to the ordinarily skilled artisan that the lid of the cup of dressing would have a label that can be read by the shopper. Providing a label would have informed the consumer of the type of dip contained within the party tray.

Regarding instant claims 17, 31, 42, 47 and 57, Albertsons teaches where the finished orientation of the tray can be considered the display orientation, wherein the transparent container body (lid) allows the foodstuffs to be viewed by a consumer. It would have further been obvious, to display the product for retail sale since such trays have been well known to be purchased by customers at retail locations such as supermarkets and grocery stores.

8.    Claim 20 is rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630) as applied to claims 17-19, 21, 23- 25, 28, 30-31, 32-33, 35-36, 39, 41, 47-48, 49, 51, 52, 55, above, and further in view of Wozniacki (US 4272008). Applicant's admission of prior art is also cited as evidence, as discussed above.

Albertsons in view of Antoon Jr. and Nordahl is taken as applied above. Albertsons teaches dividing the container body into compartments and filling each compartment with a desired weight of a particular vegetable.

However, Albertsons is silent in teaching removable partitions.

Wozniacki teach that fruit and vegetable packages conventionally utilize adjustable and removable dividers because fruits and vegetables vary in size. In order to pack the same weight of product items one would have to be able to adjust the partition size and shape, for example, such that the compartments can accommodate the desired amount of each of the vegetables or fruits (Column 1, Lines 10-26; Column 3, Lines 13-32; Column 3, Line 46 to Column 4, Line 3; Column 4, Lines 20-30, wherein the base of Figure 5 is the surface supporting the divider 10).

Therefore, it would have been obvious to further modify Albertsons' container body and provide removable partitions since Albertsons teaches a desired weight per compartment and Wozniacki teach fruits and vegetables vary in size and is preferred to use removable and adjustable such that for one particular size or shape to allow one to pack the same weight of fruits and vegetables in the same package by adjusting the partitions. Thus, Albertsons would benefit in that the size of the compartments would be readily adjusted to accommodate a variety of sizes and still assure a desired weight.

9.     **Claims 22, 26-27, 29, 34, 37, 38, 40, 42- 46, 50, 53, 54, 56-57, 58- 61 are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630) as applied to claims 17-19, 21, 23- 25, 28, 30-31, 32-33, 35-36, 39, 41, 47-48, 49, 51, 52, 55, above, and further in view of Wyslotsky et al. (US 20030057217). Applicant's admission of prior art is also cited as evidence, as discussed above.**

Application/Control Number: 11/408,442                                          Page 11
Art Unit: 1761

Albertsons in view of Antoon Jr. and Nordahl is taken as cited above.
Albertsons teaches a support tray and modified Albertsons teaches an
atmosphere control member that covers a window in the sealing sheet. All the
limitations of instant claim 42, 43, 44, 45, 57, 58, 59, 60 are shared with claims
17-19, 21, 23- 25, 28, 30-31, 32-33, 35-36, 39, 41, 47-48, 49, 51, 52, 55, above
except the limitations of the support tray comprising ribs and discontinuous
upstanding ribs and wherein the thickness of the support tray is at least 0.02 inch
and between 0.02 to 0.08 inches.

Albertsons is silent in teaching wherein the support tray comprises ribs
such air can circulate between the support tray and the atmosphere control
member, wherein the support tray comprises discontinuous upstanding ribs;
wherein the support tray has a thickness of at least 0.02 inches; and wherein the
support tray has a thickness of 0.02 to 0.08 inches.

Regarding the thickness, Wyslotsky et al. teach a thickness of 1000
microns, which is equivalent to 0.039 inches for the material used for the
container (Paragraph 0038). Wyslotsky et al. further teach wherein the thickness
used for the lid is 450 micron thick, which is 0.017 inches (Paragraph 0038). The
use of such a thickness controls the rate of diffusion of gases so as to maintain
the product's freshness (Paragraph 0035). Nevertheless, to use a thickness of
between 0.02 and 0.08 based on the teachings of Wyslotsky et al. would have
been obvious to the ordinarily skilled artisan for the purpose of controlling the
diffusion of gases and thus preserving the freshness of the fruit. Since
Albertsons discloses a variety of vegetables in the container, it would have been
obvious to increase the thickness so as to control the rate of diffusion of oxygen
for the purpose of maintaining freshness in vegetables while also extending the
vegetable's shelf life.

Regarding the discontinuous upstanding ribs, Wyslotsky et al.
(20030057217) teach upstanding ribs in the support tray (Figure 3E) for the
purpose of reinforcing the walls of the lid so that the lid provides support to the
base containing the vegetables, therein (Paragraph 0035).

APIO00142

Wyslotsky et al. also teach including an atmosphere control member
covering a window for controlling oxygen diffusion (Paragraphs 0051-0053) and
provides ribs on both the container body and tray to extend shelf life of the
vegetable by preventing microorganism contamination while also allowing for the
release of carbon dioxide gas (Paragraph 0051-0052). The Examiner interprets
that the ribs are discontinuous since the ribs do not continue through the top of
the lid (Figure 3E). The ribs also change the surface area of the package to
control the diffusion of oxygen into the package (Paragraph 0035), depending on
the type of vegetables disposed therein. In the case of Wyslotsky et al. the
window is considered a portion of the container which can be seen through on
which is applied a diffusion label for controlling the gas that enters and exits the
container. Thus, given the teachings of Wyslotsky it would have been obvious to
the ordinarily skilled artisan to use ribs on the tray of Albertsons for the purpose
of providing reinforcing support to the walls of the lid. Depending on the weight
of the products disposed within the container, the lid could be dislodged due to
shifts in weight and the subsequent flexing of the container as a result. Such a
modification, as taught by Wyslotsky et al. would have prevented the lid from
inadvertently dislodging during transport and would have extended the freshness
of the vegetable disposed therein by regulating the respiration of the food
product.

### Double Patenting

10.    The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to
prevent the unjustified or improper timewise extension of the "right to exclude"
granted by a patent and to prevent possible harassment by multiple assignees.
A nonstatutory obviousness-type double patenting rejection is appropriate where
the conflicting claims are not identical, but at least one examined application
claim is not patentably distinct from the reference claim(s) because the examined
application claim is either anticipated by, or would have been obvious over, the

APIO00143

reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

11.    **Claim 17-19, 30-33, 41-43, 47-49 and 57-58 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 62-67 of copending Application No. 11408443.** Although the conflicting claims are not identical, they are not patentably distinct from each other because the limitations of claims 62-67 of copending Application No. 11408443 encompass the limitations of claims 17-19, 30-33, 41-43, 47-49 and 57-58 of the instant application. In this case, although drawn to a method of preparing a party tray, the limitations of claims 62-67 copending of Application No. 11408443 are also directed to the steps of serving the party tray and thus encompass claims 17-19, 30-33, 41-43, 47-49 and 57-58 of the instant application.

This is a provisional obviousness-type double patenting rejection because the conflicting claims have not in fact been patented.

### *Conclusion*

12.    The prior art made of record and not relied upon is considered pertinent to
applicant's disclosure.


        Any inquiry concerning this communication or earlier communications from
the examiner should be directed to Viren Thakur whose telephone number is
(571)-272-6694.  The examiner can normally be reached on Monday through
Friday from 8:00 am - 4:30 pm.

        If attempts to reach the examiner by telephone are unsuccessful, the
examiner's supervisor, Milton Cano can be reached on (571)272-1398.  The fax
phone number for the organization where this application or proceeding is
assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from
the Patent Application Information Retrieval (PAIR) system.  Status information
for published applications may be obtained from either Private PAIR or Public
PAIR.  Status information for unpublished applications is available through
Private PAIR only.  For more information about the PAIR system, see http://pair-
direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-
free). If you would like assistance from a USPTO Customer Service
Representative or access to the automated information system, call 800-786-
9199 (IN USA OR CANADA) or 571-272-1000.


Viren Thakur
Examiner
Art Unit: 1761

KEITH HENDRICKS
PRIMARY EXAMINER

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/408,443 | 04/20/2006 | Wesley Paul Pratte | 14181-1 | 9156 |

23676        7590        03/22/2007
SHELDON MAK ROSE & ANDERSON PC
225 SOUTH LAKE AVENUE
9TH FLOOR
PASADENA, CA 91101

| EXAMINER |
|---|
| THAKUR, VIREN A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 03/22/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS
from the mailing date of this communication.

PTOL-90A (Rev. 10/06)

APIO00115

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/408,443 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit |
| | Viren Thakur | 1761 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1,2,4,17-39 and 41-67</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1,2,4,17-39 and 41-67</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>2/5/07; 8/12/06</u>
4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____ .

APIO00116

Application/Control Number: 11/408,443                                    Page 2
Art Unit: 1761

## DETAILED ACTION

### Specification

1.      The paragraph "Cross Reference to Related Application" is missing the patent
number of Application Serial No. 10222435 filed August 16, 2002, which is now
Patent No. 7083818.

### Claim Objections

2.      Claims 42-43 are objected to for being duplicate claims.  Claims 42 and 43 are
the same as claims 38 and 39.

### Claim Rejections - 35 USC § 112

3.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out
and distinctly claiming the subject matter which the applicant regards as his
invention.

4.      **Claims 1-2, 4, 17-39 and 41-67 are rejected under 35 U.S.C. 112, second
paragraph, as being indefinite for failing to particularly point out and
distinctly claim the subject matter which applicant regards as the
invention.**

        The instant claims recite the limitation "atmosphere control member."  The
specification recites wherein the limitation "atmosphere control member" denotes
any member which modifies the rates at which oxygen and carbon dioxide pass

APIO00117

Application/Control Number: 11/408,443                                    Page 3
Art Unit: 1761

into and out of the sealed package.  In the claims this limitation is broad since any member can modify the rate at which oxygen and carbon dioxide pass into and out of a sealed package.  For instance, adding a second layer on top of the sealed package would also modify the rate at which oxygen and carbon dioxide pass.

5.    **Claims 18, 30, 45, 50 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.**

The instant claims recite the limitation "dimensions such that."  It is not clear as to what type of dimensions can be considered such that the foodstuffs can be served from the tray.  In general, foodstuffs can always be served from a support tray but the limitation "such that" does not define the metes and bounds of the claim since it is unclear as what dimension would be considered such that the foodstuffs are ready to be served from the serving dish.

### Claim Rejections - 35 USC § 103

6.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

7.    The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

APIO00118

Application/Control Number: 11/408,443                                    Page 4
Art Unit: 1761

1.  Determining the scope and contents of the prior art.
2.  Ascertaining the differences between the prior art and the claims at issue.
3.  Resolving the level of ordinary skill in the pertinent art.
4.  Considering objective evidence present in the application indicating obviousness or nonobviousness.

8.  **Claim 1, 17-21, 24, 26-28, 30-31, 33, 35-36, 41, 44- 46, 58-59, 61-63, 65, and 67 are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons – Vegetable Tray with Ranch Dressing (*Albertsons*) in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630). Applicant's admission of prior art is also cited as evidence, as discussed below.**

Albertsons teaches a method of preparing a party tray, which comprises the steps of providing a transparent container body, which comprises a base (the lid through which the vegetables are viewed). Albertsons further teaches a loading orientation as shown in step 3 of page 37 of Albertsons. While in this orientation, carrots, cauliflower, celery and broccoli are loaded into the lid. These vegetables are considered respiring foodstuffs. Albertsons further teaches attaching a support tray to the lid (see step 3 of page 37) and then turning over the sealed package so that the food is viewed through the transparent lid. Albertsons teaches an atmosphere around the foodstuffs since the package has not been sealed under vacuum. Additionally, since the package contains respiring foodstuffs, the package would have had an atmosphere around the foodstuffs. Albertsons teaches where the finished orientation of the tray can be considered the display orientation, since in this orientation the transparent container body (lid) allows the foodstuffs to be viewed by a consumer.

Albertsons is silent in teaching partitions extending away from the base; sealing a sealing sheet to the container body which contains the foodstuffs, whose outer surface is defined by the container body and the sealing sheet and which includes an atmosphere control member which covers a window in the container body or a window in the sealing sheet. As recited in instant claim 17, wherein the partitions are cavity wall partitions. As recited in instant claims 62, 63, 65, 67, Albertsons is silent in teaching wherein the party tray has been

APIO00119

subjected to the step of turning the party tray upside down so that the foodstuffs
rest on the base of the container body; then removing the support tray; then
removing the sealing sheet; then placing the support tray over the container
body; then turning the assembly upside down so that the foodstuffs are
supported on the support tray; then removing the container body so that the
foodstuffs can be served from the support tray.   Albertsons is further silent in
teaching wherein the container body has a depth of 1 to 4 inches; wherein the
container body has a depth of 1.25 to 2.5 inch; wherein the container body has a
depth of 1.25 to 2.5 inch and a circumference of 40 to 70 inches.

Nordahl teaches the steps of preparing a package by cutting pieces of a
fruit (Column 7, Lines 42-45), which is a respiring foodstuff, and placing the
pieces of fruit into compartments within a base (Column 7, Lines 51-55).  As can
be seen in figure 5, item 66 Nordahl teaches multiple compartments that have
been formed as a result of partitions (which are in between the compartments)
that extend upward away from the base (item 52).  These partitions are
considered cavity wall partitions since they divide the base into multiple
compartments into which fruit is placed.  The compartments facilitate the
arrangement of the cut pieces of fruit into a flower arrangement (Column 7, Lines
51-55) and thus would maintain the position of each cut piece in the flower
arrangement.

Nordahl further teaches sealing the container with a thermoplastic sheet
(Figure 5, Item 54; Column 7, Lines 61-66) for the purpose of preventing spillage
of the apple segments within the tray (Column 7, Lines 58-60).  The
thermoplastic, and thus polymeric, sheet and the tray can be formed of a limited
gas permeable material to allow limited aerobic respiration of the fruit and also
prevent the anaerobic respiration that results in spoilage of the fruit (Column 6,
Lines 20-25).

Given the teachings of Nordahl, it would have been obvious to seal the
container body after filling the container body with the vegetables for the purpose
of preventing movement and spillage of the vegetables.  Sealing using a limited

APIO00120

gas permeable sheet, as taught by Nordahl would prevented the anaerobic respiration that results in spoilage of the fruit. Therefore, using a semi gas permeable sheet to cover the base of Albertsons would have been obvious for the purpose of preventing anaerobic respiration in the vegetables, which would result in spoilage and thus an unappealing product and to further prevent spillage of the vegetables out of the compartments

Regarding the partitions, Nordahl teach using compartments (which are formed as a result of extending partitions) for maintaining the position of the cut fruit within the base in a particular arrangement. Therefore, it would have been obvious to use extending partitions to create compartments in the container base of Albertsons for the purpose of maintaining the arrangement of the different types of vegetables disposed therein. One would have had a reasonable expectation of success to include partitions in the container base of Albertsons because Albertsons desires a divided the broccoli, cauliflower, carrots and celery within the container body (Page 37, See Step 2) and the prior art recognized advantages of utilizing partitions: facilitating packaging, providing the division feature during shipping, storage, display and providing additional structural support for the body when the body/tray structure is inverted after filling.

It would have been obvious to further include a sealing sheet over the fresh vegetable sections or compartments prior to applying the tray to cover the compartments, such that the sealing sheet would rest on the tray after the body / tray structure was inverted, since it has been well known in the art to use a transparent polymeric sheet to seal compartments of fresh vegetables in the body prior to applying a cover. Regarding extending container partitions and sealing a sealing sheet to the container body, thus creating a sealed package whose outer surface is defined by the container body and the sealing sheet, the admission of prior art in paragraphs 0003 – 0006 of the Pre-Grant Publication of the current application is cited as further evidence of the conventionality separating a container comprising fresh vegetables into sections, or compartments, which are located between a support and a transparent cover.

Application/Control Number: 11/408,443                                          Page 7
Art Unit: 1761

The admission of the prior art states that in order to increase the shelf life, a transparent polymeric sheet has been conventionally used for sealing over the compartments of fresh vegetables prior to covering the compartments with a lid to allow for modified atmosphere packaging or a controlled atmosphere package. The admission of prior art also states that the support and cover are formed by molded polymeric materials. Therefore, as taught by Nordahl and cited by the admission of prior art, such a modification would increase the shelf life and provide for a modified atmosphere package or controlled atmosphere package. It would have been further obvious to seal the container body with the sealing sheet after sealing since this would prevent dirt or other contaminants from falling into the filled container body.

Regarding the atmosphere control member, Antoon also teaches a sealed container body holding fruit or vegetables. Antoon teaches that providing an atmosphere control member would allow one to obtain an optimum environment to store fruits or vegetables and retard maturation and spoilage. Antoon teaches that providing the control member in a gas impermeable sealing sheet across the container body or in the gas impermeable walls would provide the desired effect of preventing maturation and spoilage, as long as the member is not blocked during storage (Abstract; Column 4, Lines 36-45; Column 6, Lines 35-59). Therefore, it would have been obvious to further modify Albertsons and provide at least one atmosphere control member since Antoon teaches providing an atmosphere control member for an otherwise gas impermeable fruits/vegetables storage container body will allow one to obtain an optimum storage environment and retard both maturation and spoilage. Furthermore, Antoon teaches that one may provide an atmosphere control member at any location of a container body, including on a sealing sheet covering the container body provided that the control member is not obstructed during storage. Therefore, to select any particular location, either in a wall of the container body or on the sealing sheet, would have been obvious depending on the particular arrangement of the container body during storage.

APIO00122

Regarding instant claims 18, 30, 45, 62, 63, 65, 67,  Albertsons teaches wherein the support tray is used to serve divided vegetables (See Step 3 on Page 37).  Modified Albertsons teaches sealing the container body with a sealing sheet so as to preserve the freshness of the vegetables and then placing the support tray thereon.  Therefore, in order serve the vegetables, it would have been obvious to the ordinarily skilled artisan that the sealing sheet in between the container body (lid) and the tray would have to be removed.  In order to do so, the ordinarily skilled artisan would had to have turned the entire package upside down to remove the tray to gain access to the sealing sheet.  The sealing sheet would then have to be removed to access the dressing and vegetables.  Since the dressing has been placed within Albertsons container body (lid) so that the dressing opening is abutted against the top of the lid (i.e. upside down), the support tray would have had to have been reattached and the entire assembly turned over again so that the dressing cup is "right side up."  Thus, performing these steps would have been obvious to the ordinarily skilled artisan in order to access the cup of dressing and vegetables of modified Albertsons.  Furthermore regarding instant claims 18, 30 and 45, the Examiner notes that the limitation "after" recites a future state.  After performing the recited steps the foodstuffs *can* be served from the support tray.  Thus, since Albertsons discloses a method of preparing a party tray after the steps recited are performed, the tray of Albertsons would have been capable of serving the foodstuffs from the support tray.

Regarding instant claims 19-21, 28, 31, 41, 44, 46, 58, 59, since the diameter of the tray is 12 inches (see table next to Recipe Instructions) the circumference would have been 12 inches times *pi* which yields a circumference of about 37 inches. Regarding the depth of 1 to 4 inches and 1.25 to 2.5 inches, Albertsons teaches filling four equal sections, or compartments of a 12 inch diameter body with 14 ounces of carrots, 12 ounces of cauliflower, 6 ounces of celery and 10 ounces of broccoli.  It would have been obvious to the ordinarily skilled artisan to select any particular depth for the body, depending on the expected size and shape of each variety of vegetable.  Depending on the size of

the container it would have been obvious to the ordinarily skilled artisan that one would have to select an appropriate depth to accommodate enough vegetables of an expected size and shape in each compartment in order to achieve the desired weight. Additionally, the diameter of the trays would also have been dependent on the depth of the tray. A more shallow depth would have required a larger diameter container for accommodating the vegetables, therefore to select a diameter to accommodate the quantity of vegetables taught by Albertsons would have been obvious to the ordinarily skilled artisan.

Regarding instant claim 24, 33, 41 the support tray, as can be seen from the figure on page 37, has a solid color.

Regarding instant claim 26, 35, 41, 44 and 61, Albertsons discloses wherein a cup of Litehouse Ranch Dressing is placed upside down in the center of the lid. Albertsons does not explicitly disclose wherein the cup has a lid, however in order to place the cup upside down on the base (lid) of the vegetable tray, it would have been obvious to the ordinarily skilled artisan that the cup would have a lid so as to prevent spilling the dressing contained within the cup. In light of the disclosure by the Applicant and the knowledge of one ordinarily skilled in the art, the Examiner interprets that to use a cup or a carton would have been an obvious modification for performing an equivalent function. In this case, the use of a cup or a carton as a container for holding a dip would have been an equivalent means for containing the dip. Thus, the selection of any of these known equivalents to package a dip for mercantile use would have been within the level of ordinary skill in the art. In addition, Litehouse Ranch Dressing is a "brand name" dressing. Therefore, it would have been obvious to the ordinarily skilled artisan that the lid of the cup of dressing would have a label that can be read by the shopper. Providing a label would have informed the consumer of the type of dip contained within the party tray.

Regarding instant claims 1, 27, 28, 36, 41, 44, 58, Albertsons teaches where the finished orientation of the tray can be considered the display orientation, wherein the transparent container body (lid) allows the foodstuffs to

be viewed by a consumer. It would have further been obvious after performing the steps of loading the vegetables and sealing the package, to display the product for retail sale since such trays have been well known to be purchased by customers at retail locations such as supermarkets and grocery stores.

Further regarding instant claim 44, it would have been obvious to the ordinarily skilled artisan to display a plurality of substantially identical party trays for the purpose of allowing sale of a similar party tray to multiple customers. Stacking and displaying multiple trays has been well known in the art as a means for speeding up the sale of multiple units to customers without the customer having to wait for an additional unit to be made.

9. **Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630) as applied to claims 1, 17-21, 24, 26-28, 30-31, 33, 35-36, 41, 44- 46, 58-59, 61-63, 65, and 67, above, and further in view of Wozniacki (US 4272008). Applicant's admission of prior art is also cited as evidence, as discussed above.**

Albertsons in view of Antoon Jr. and Nordahl is taken as applied above. Albertsons teaches dividing the container body into compartments and filling each compartment with a desired weight of a particular vegetable.

However, Albertsons is silent in teaching removable partitions.

Wozniacki teach that fruit and vegetable packages conventionally utilize adjustable and removable dividers because fruits and vegetables vary in size. In order to pack the same weight of product items one would have to be able to adjust the partition size and shape, for example, such that the compartments can accommodate the desired amount of each of the vegetables or fruits (Column 1, Lines 10-26; Column 3, Lines 13-32; Column 3, Line 46 to Column 4, Line 3; Column 4, Lines 20-30, wherein the base of Figure 5 is the surface supporting the divider 10).

APIO00125

Therefore, it would have been obvious to further modify Albertsons' container body and provide removable partitions since Albertsons teaches a desired weight per compartment and Wozniacki teach fruits and vegetables vary in size and preferred to use removable and adjustable partitions to allow one to pack the same weight of fruits and vegetables in the same package by adjusting the partitions. Thus, Albertsons would benefit in that the size of the compartments would be readily adjusted to accommodate a variety of sizes and still assure a desired weight.

10. **Claims 4, 22-23, 25, 29, 32, 34, 37- 39, 42-43, 47-57, 60, 64 and 66 are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630) as applied to claims 1, 17-21, 24, 26-28, 30-31, 33, 35-36, 41, 44- 46, 58-59, 61-63, 65, and 67, above, and further in view of Wyslotsky et al. (US 20030057217). Applicant's admission of prior art is also cited as evidence, as discussed above.**

Albertsons in view of Antoon Jr. and Nordahl is taken as cited above. Albertsons teaches a support tray and modified Albertsons teaches an atmosphere control member that covers a window in the sealing sheet. All the limitations of instant claim 37- 39, 42, 48- 51, 54, 56-57, 64, and 66 are shared with claims 1, 17-21, 24, 26-28, 30-31, 33, 35-36, 41, 44- 46, 58-59, 61-63, 65, and 67 above except the limitations of the support tray comprising ribs and discontinuous upstanding ribs and wherein the thickness of the support tray is at least 0.02 inch and between 0.02 to 0.08 inches.

Albertsons is silent in teaching wherein the support tray comprises ribs such that air can circulate between the support tray and the atmosphere control member; wherein the support tray comprises discontinuous upstanding ribs; wherein the support tray has a thickness of at least 0.02 inches; and wherein the support tray has a thickness of 0.02 to 0.08 inches.

Regarding the thickness, Wyslotsky et al. teach a thickness of 1000 microns, which is equivalent to 0.039 inches for the material used for the container (Paragraph 0038). Wyslotsky et al. further teach wherein the thickness used for the lid is 450 micron thick, which is 0.017 inches (Paragraph 0038). The use of such a thickness controls the rate of diffusion of gases so as to maintain the product's freshness (Paragraph 0035). Nevertheless, to use a thickness of between 0.02 and 0.08 based on the teachings of Wyslotsky et al. would have been obvious to the ordinarily skilled artisan for the purpose of controlling the diffusion of gases and thus preserving the freshness of the fruit. Since Albertsons discloses a variety of vegetables in the container, it would have been obvious to increase the thickness so as to control the rate of diffusion of oxygen for the purpose of maintaining freshness in vegetables while also extending the vegetable's shelf life.

Regarding the discontinuous upstanding ribs, Wyslotsky et al. (20030057217) teach upstanding ribs in the support tray (Figure 3E) for the purpose of reinforcing the walls of the lid so that the lid provides support to the base containing the vegetables, therein (Paragraph 0035).

Wyslotsky et al. also teach including an atmosphere control member covering a window for controlling oxygen diffusion (Paragraphs 0051-0053) and provides ribs on both the container body and tray to extend shelf life of the vegetable by preventing microorganism contamination while also allowing for the release of carbon dioxide gas (Paragraph 0051-0052). The Examiner interprets that the ribs are discontinuous since the ribs do not continue through the top of the lid (Figure 3E). The ribs also change the surface area of the package to control the diffusion of oxygen into the package (Paragraph 0035), depending on the type of vegetables disposed therein. In the case of Wyslotsky et al. the window is considered a portion of the container which can be seen through on which is applied a diffusion label for controlling the gas that enters and exits the container. Thus, given the teachings of Wyslotsky it would have been obvious to the ordinarily skilled artisan to use ribs on the tray of Albertsons for the purpose

of providing reinforcing support to the walls of the lid.  Depending on the weight

of the products disposed within the container, the lid could be dislodged due to

shifts in weight and the subsequent flexing of the container as a result.  Such a

modification, as taught by Wyslotsky et al. would have prevented the lid from

inadvertently dislodging during transport and would have extended the freshness

of the vegetable disposed therein by regulating the respiration of the food

product.

### Double Patenting

11.    The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to
prevent the unjustified or improper timewise extension of the "right to exclude"
granted by a patent and to prevent possible harassment by multiple assignees.
A nonstatutory obviousness-type double patenting rejection is appropriate where
the conflicting claims are not identical, but at least one examined application
claim is not patentably distinct from the reference claim(s) because the examined
application claim is either anticipated by, or would have been obvious over, the
reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed.
Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In
re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686
F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ
619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA
1969).
       A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or
1.321(d) may be used to overcome an actual or provisional rejection based on a
nonstatutory double patenting ground provided the conflicting application or
patent either is shown to be commonly owned with this application, or claims an
invention made as a result of activities undertaken within the scope of a joint
research agreement.
       Effective January 1, 1994, a registered attorney or agent of record may
sign a terminal disclaimer. A terminal disclaimer signed by the assignee must
fully comply with 37 CFR 3.73(b).

12.    **Claims 62-67 are provisionally rejected on the ground of nonstatutory**

**obviousness-type double patenting as being unpatentable over claims 17,**

**31, 42, 47, and 57 of copending Application No. 11408442.** Although the

Application/Control Number: 11/408,443                                    Page 14
Art Unit: 1761

conflicting claims are not identical, they are not patentably distinct from each
other because claims 17, 31, 42, 47, and 57 of copending Application No.
11408442 encompass the limitations of claims 62-67.  Instant claims 62-67 recite
wherein the steps of turning the party tray upside down, removing the support
tray, removing the sealing sheet, placing a serving dish over the container body,
turning the assembly upside down so that the foodstuffs are supported on the
serving dish and removing the container body, are performed in the same state
as the method of preparing.   The Examiner notes, however that claims 18, 30,
45 and 50 of the instant application recites the limitation "after."  This limitation is
a future state of the method of preparing the party tray and does not provided a
patentable step to the instant method claims.  After performing the recited steps
the foodstuffs must only be capable of being served from the support tray.  Thus,
claims 17, 31, 42, 47, and 57 of copending Application No. 11408442 encompass
the limitations of claims 62-67.

     This is a <u>provisional</u> obviousness-type double patenting rejection because
the conflicting claims have not in fact been patented.


### Conclusion


13.    The prior art made of record and not relied upon is considered pertinent to
       applicant's disclosure.


          Any inquiry concerning this communication or earlier communications from
the examiner should be directed to Viren Thakur whose telephone number is
(571)-272-6694.  The examiner can normally be reached on Monday through
Friday from 8:00 am - 4:30 pm.

          If attempts to reach the examiner by telephone are unsuccessful, the
examiner's supervisor, Milton Cano can be reached on (571)272-1398.  The fax

APIO00129

Application/Control Number: 11/408,443                                    Page 15
Art Unit: 1761

phone number for the organization where this application or proceeding is
assigned is 571-273-8300.

Information regarding the status of an application may be obtained from
the Patent Application Information Retrieval (PAIR) system. Status information
for published applications may be obtained from either Private PAIR or Public
PAIR. Status information for unpublished applications is available through
Private PAIR only. For more information about the PAIR system, see http://pair-
direct.uspto.gov. Should you have questions on access to the Private PAIR
system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-
free). If you would like assistance from a USPTO Customer Service
Representative or access to the automated information system, call 800-786-
9199 (IN USA OR CANADA) or 571-272-1000.

Viren Thakur
Examiner
Art Unit: 1761

KEITH HENDRICKS
PRIMARY EXAMINER

APIO00130

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/409,354 | 04/20/2006 | Wesley Paul Pratte | 14181-2 | 1743 |

23676    7590    03/21/2007
SHELDON MAK ROSE & ANDERSON PC
225 SOUTH LAKE AVENUE
9TH FLOOR
PASADENA, CA 91101

| EXAMINER |
|---|
| THAKUR, VIREN À |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1761 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 03/21/2007 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

PTOL-90A (Rev. 10/06)

APIO00146

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/409,354 | PRATTE, WESLEY PAUL |
| | Examiner | Art Unit | |
| | Viren Thakur | 1761 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>17-61</u> is/are pending in the application.

　　4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>17-61</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

　　a) ☐ All    b) ☐ Some * c) ☐ None of:

　　　　1. ☐ Certified copies of the priority documents have been received.

　　　　2. ☐ Certified copies of the priority documents have been received in Application No. _____.

　　　　3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

　　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
　　Paper No(s)/Mail Date <u>2/5/07; 8/12/06</u>.

4) ☐ Interview Summary (PTO-413)
　　Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

APIO00147

Application/Control Number: 11/409,354                                    Page 2
Art Unit: 1761

## DETAILED ACTION

### *Specification*

1.   The paragraph "Cross Reference to Related Application" is missing the patent
     number of Application Serial No. 10222435 filed August 16, 2002, which is now
     Patent No. 7083818.

### *Claim Rejections - 35 USC § 112*

2.   The following is a quotation of the second paragraph of 35 U.S.C. 112:

     The specification shall conclude with one or more claims particularly pointing out
     and distinctly claiming the subject matter which the applicant regards as his
     invention.

3.   **Claims 17-61 are rejected under 35 U.S.C. 112, second paragraph, as being
     indefinite for failing to particularly point out and distinctly claim the subject
     matter which applicant regards as the invention.**

           The instant claims recite the limitation "atmosphere control member." The
     specification recites wherein the limitation "atmosphere control member" denotes
     any member which modifies the rates at which oxygen and carbon dioxide pass
     into and out of the sealed package. In the claims this limitation is broad since
     any member can modify the rate at which oxygen and carbon dioxide pass into
     and out of a sealed package. For instance, adding a second layer on top of the
     sealed package would also modify the rate at which oxygen and carbon dioxide
     pass.

APIO00148

4.    **Claims 33 and 49 are rejected under 35 U.S.C. 112, second paragraph, as**
      **being indefinite for failing to particularly point out and distinctly claim the**
      **subject matter which applicant regards as the invention.**

      The instant claims recite the limitation "such that." It is not clear as to
what type of dimensions can be considered such that the foodstuffs can be
served from the tray. In general, foodstuffs can always be served from a support
tray but the limitation "such that" does not define the metes and bounds of the
claim since it is unclear as what dimension would be considered such that the
foodstuffs are ready to be served from the serving dish.


                        *Claim Rejections - 35 USC § 102*


5.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that
      form the basis for the rejections under this section made in this Office action:

      A person shall be entitled to a patent unless –

      (b) the invention was patented or described in a printed publication in this or a
      foreign country or in public use or on sale in this country, more than one year
      prior to the date of application for patent in the United States.

6.    **Claim 17, 19, 21, 23, 27 are rejected under 35 U.S.C. 102(b) as being**
      **anticipated by Colucci et al. (US 5165947).**

            Colucci et al. disclose a transparent container body (Figure 1, Item 25)
which comprises a base (Figure 1, See bottom of container) and partitions
(Figure 2, Item 23) which extend away from the base and create compartments
(Figure 2, Item 28) within the container body; respiring foodstuffs (Column 2,
Lines 5-11) in the compartments; a sealing sheet (Column 2, Lines 11-14; Figure
2, Item 40) sealed to the container body thus creating a sealed package, which
includes an atmosphere control member (Figure 2, Item 40) which covers a
window in the container body. Based on Applicant's specification the
atmosphere control member denotes any member, which modifies the rates at

APIO00149

Application/Control Number: 11/409,354                                    Page 4
Art Unit: 1761

which oxygen and carbon dioxide pass into and out of the sealed package. In
the case of Colucci et al. the sealing sheet is gas permeable and thus would
modify the rate at which oxygen and carbon dioxide pass into and out of the
package. The opening of the container can be considered a window in the
container body upon which an atmosphere control member (the gas permeable
sealing sheet) is applied. In addition, Colucci et al. disclose an atmosphere
control member (Figure 2, Item 50) that covers a window on the sealing sheet.
On column 5, lines 3-7, Colucci et al. state that openings may be provided on the
overlay so as to aid in gas permeation. Therefore, the overlay acts to modify the
rate at which oxygen and carbon dioxide pass into and out of the package. In
addition, Colucci et al. disclose wherein the container is comprised of
thermoplastic resin, such as polyethylene terephthalate (Column 5, Lines 45-59).
These resins have been known to the ordinarily skilled artisan to have some level
of gas permeability. The addition of a humectant packet (Figure 2, Item 22) to a
window of the container body would further modify the rate at which oxygen and
carbon dioxide pass into and out of the package. The window is interpreted as
any region of the container body or sealing sheet through which gas can
permeate or a transparent region in the sealing sheet or container body. Colucci
et al. further disclose a support tray (Figure 2, Item 50) comprised of plastic or
paperlike material (Column 5, Line 1), which is adjacent to the sealing sheet
(Figure 2, Item 40). By placing the support tray on top of the sealing sheet, the
support tray inherently provides support to the sealing sheet. The party tray is
considered reversible between a loading orientation wherein the partitions extend
upwards from the base and the foodstuffs rest on the base of the container body
and a display orientation in which the foodstuffs rest on the sealing sheet and the
sealing sheet is supported by the support tray. As can be seen in Figure 1 and
Figure 2, the tray can be turned upside down into a display configuration so that
the foodstuffs rest on the sealing sheet and a loading configuration wherein the
foodstuffs rest on the base. Regarding instant claim 19, the partitions are cavity
wall partitions, since the partitions create a cavity within which the tomatoes are

APIO00150

Application/Control Number: 11/409,354                                Page 5
Art Unit: 1761

placed.  Regarding instant claim 21, the limitation "after" denotes a future state.
After the party tray is subjected to the recited steps the foodstuffs must be
capable of being served from the support tray.  The instant claim further recites
wherein all the foodstuffs *can* be served from the support tray.  Colucci et al.
disclose a support tray that is capable of serving the foodstuffs.  In addition, since
the package of Colucci et al. comprises a support tray and a sealing sheet, <u>after</u>
the steps of turning over the package so that the foodstuffs rest on the container
base, removing the support tray, removing the sealing sheet, reattaching the
support tray and turning the package over, after which the container body is
removed, are performed, the foodstuffs of Colucci et al. would have been
capable of being served on the support tray.  The Examiner notes that the
limitation "after" denotes a future state of the party tray and thus, after the tray is
subjected to the recited steps it must only be capable of serving foodstuffs.  In
the instant case, since the package can undergo the recited steps the package
also has a support tray that is capable of serving the foodstuffs.  Regarding
instant claim 27, in being made from the paper like material, the support tray
would have had a solid color.

### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed
or described as set forth in section 102 of this title, if the differences between the
subject matter sought to be patented and the prior art are such that the subject
matter as a whole would have been obvious at the time the invention was made
to a person having ordinary skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which the invention was
made.

Application/Control Number: 11/409,354                                    Page 6
Art Unit: 1761

8.    The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148
USPQ 459 (1966), that are applied for establishing a background for determining
obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.    Determining the scope and contents of the prior art.
2.    Ascertaining the differences between the prior art and the claims at issue.
3.    Resolving the level of ordinary skill in the pertinent art.
4.    Considering objective evidence present in the application indicating
obviousness or nonobviousness.

9.    **Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Colucci et al. (US 5165947) in view of Wozniacki (US 4272008). Colucci et
al. is taken as cited above.**

Colucci et al. further teach wherein the tomatoes placed within the
container can be of varying sizes (Column 2, Lines 58-67). Colucci et al. is silent
in teaching wherein the partitions are removable.

Wozniacki teaches that fruits and vegetable packages conventionally
utilize adjustable and removable dividers because fruits and vegetables vary in
size, and in order to pack the same weight of product items one would have to be
able to adjust the partition size and shape, for example, such that at least one of
the partitions comprises two or more straight portions at right angles to each
other and the base, depending on the shape and size of the fruits and vegetables
(Column 1, Lines 10-26; Column 3, Lines 13-32; Column 3, Line 46 to Column 4,
Line 3; Column 4, Lines 20-30, wherein the base of Figure 5 is the surface
supporting the divider 10).

Since Colucci et al. teach using the container for varying sizes of
tomatoes, it would have been obvious to have provided removable dividers, as
taught by Wozniacki for the purpose of being able to use the same container with
different sized tomatoes. By using removable partitions, the partitions could have
been arranged so that the same container that is used for holding one size of
tomatoes can also be used for holding a smaller or larger size tomato. This

would have made the container of Colucci et al. usable for different sized
tomatoes without having to change the dimensions of the container.

10.    **Claim 20, 25-26 and 28 are rejected under 35 U.S.C. 103(a) as being
unpatentable over Colucci et al. (US 5165947) in view of Wyslotsky et al.
(US 20030057217).**

Colucci et al. are taken as cited above.  Colucci et al. are silent in teaching
wherein the support tray comprises ribs; wherein the ribs are discontinuous
upstanding ribs, and wherein the thickness of the support tray is between 0.02
and 0.08 inches.

Regarding the thickness, Wyslotsky et al. teach a thickness of 1000
microns, which is equivalent to 0.039 inches for the material used for the
container (Paragraph 0038).  Wyslotsky et al. further teach wherein the thickness
used for the domed lid is 450 micron thick, which is 0.017 inches (Paragraph
0038).  The use of such a thickness controls the rate of diffusion of gases so as
to maintain the product's freshness (Paragraph 0035).  Nevertheless, to use a
thickness of between 0.02 and 0.08 would have been obvious to the ordinarily
skilled artisan, given the teachings of Wyslotsky et al. for the purpose of
controlling the rate of diffusion of the gases, so as to maintain the product's
freshness.  Regarding the ribs, Wyslotsky et al. (20030057217) teach upstanding
ribs in the support tray (Figure 3E) for the purpose of reinforcing the walls of the
lid so that the lid provides support to the base containing the vegetables, therein
(Paragraph 0035).  In addition, the ribs also change the surface area of the
package to control the diffusion of oxygen into the package (Paragraph 0035),
depending on the type of vegetables disposed therein.  Different vegetables have
different rates of respiration and this also depends on the size of the vegetable.
Therefore, using ribs aides in selectively adjusting the metabolic rate for each
type of vegetable being packaged without having to resort to a large number of
polymeric material (Paragraph 0035).  Colucci et al. disclose wherein the type of

tomatoes placed into the container can vary in size and shape (Column 2, Lines
58-67) and use holes in the support tray (Figure 2, Item 52) for the purpose of
aiding gas permeation in and out of the film (Column 5, Lines 3-7). Given the
teachings of Wyslotsky et al. it would have been obvious to use ribs for the
support tray for the purpose of providing a stronger support tray surface which
also increases the surface area for diffusion of gases. Such a modification would
have aided in optimizing the regulation of the different sized and shaped
tomatoes that can be placed into Colucci et al.'s container.

Regarding the atmosphere control member, Colucci et al. disclose an
atmosphere control member as cited above, in paragraph 6.

11.    Claims 22, 24, 29, 30, 31, 33-35, 38, 40, 41, 42, 43, 44, 46, 47, 49-51, 54, 56,
57-59 are rejected under 35 U.S.C. 103(a) as being unpatentable over
Colucci et al. (US 5165947) in view of Albertsons. All Occasion Party Trays
is cited as evidence, as discussed below.

Colucci et al. are taken as cited above, in paragraph 6. The limitations of
instant claim 31, 42, 46, 47 and 57 are taken as cited above in paragraph 6,
except for the depth and circumference of the container body and the carton of
dressing.

Colucci et al. are silent in teaching wherein the container body has a
circumference of 30 to 100 inches and further wherein the circumference is
between 40 to 70 inches. Additionally, Colucci et al. are silent in teaching
wherein the party tray is displayed for sale in the display orientation. Colucci et
al. is further silent in teaching a carton of dressing in the container body having a
lid which is adjacent to the base of the container body and carries a label which
can be read by a shopper when the party tray is displayed for sale in the display
orientation.

Albertsons teaches circular trays having a 12 inch diameter (see
Ingredients Label on page 37) and thus a 38 inch circumference, containing

respiring vegetables and wherein the party tray is displayed for sale in the display
orientation (See Figure on page 37). That is, the party tray is placed with the
transparent container body on top with the support tray being the resting surface.
Albertsons teaches wherein a cup of Litehouse Ranch Dressing is placed upside
down in the center of the lid. Albertsons does not explicitly disclose wherein the
cup has a lid, however in order to place the cup upside down on the base (lid) of
the vegetable tray, it would have been obvious to the ordinarily skilled artisan that
the cup has a lid so as to prevent spilling the dressing contained within the cup.
In light of the disclosure by the Applicant and knowledge of one ordinarily skilled
in the art, the Examiner interprets that to use a cup or a carton would have been
an obvious modification for performing an equivalent function. In this case, the
use of a cup or a carton as a container for holding a dip would have been
equivalent means for containing the dip. Thus, the selection of any of these
known equivalents to package a dip for mercantile use would have been within
the level of ordinary skill in the art. In addition, Litehouse Ranch Dressing is a
"brand name" dressing. Therefore it would have been obvious to the ordinarily
skilled artisan that the lid of the cup of dressing would have a label that can be
read by the shopper. Providing a label would have informed the consumer of the
type of dip contained within the party tray.

     Regarding the depth of the container and the circumference, Colucci et al.
further teach wherein the depth of the container is about 2.5 inches (Column 2,
Lines 64-67) which is within the range of 1 to 4 inches and 1.25 to 2.5 inches.
Based on the length of the container of 8 inches and a width of about 5.5 inches
(Column 2, line 68 to Column 3, Line 1), the hypotenuse of a triangle having this
length and width is 9.7 inches, and two triangles form a rectangle when their
hypotenuses are adjacent. This hypotenuse would have been the diameter of a
circle; and thus in this case the circumference would have been approximately 30
inches. Nevertheless, Colucci et al. does not teach a circular container,
however; changing the shape of the container of Colucci et al. would not have
provided a patentable feature over the prior art, since the function of a

APIO00155

rectangular container holding tomatoes would perform the same as a circular
container for holding tomatoes. In addition, Albertsons teaches that it has been
well known in the art to use circular trays to package vegetables. Therefore, to
use a circular vegetable tray would not have provided a patentable feature over
the prior art. Colucci et al. further teaches holding a more than two tomatoes
within the package (Column 2, Lines 60-62). Depending on the number of
tomatoes that are placed in the container of Colucci et al., it would have been
obvious to increase the diameter to be greater than 9.7 inches (and thus a
circumference of greater than 30) for the purpose of holding a larger amount of
tomatoes within the package.

Regarding instant claims 33, 34, 38, 49, 50, 54 and 58, Colucci et al. are
taken as cited above in paragraph 6.

Regarding instant claims 30, 41, and 56 Colucci et al. teach wherein the
support tray is a paperlike material (Column 5, Lines 1-3) and thus is also solid.
By having the transparent container body on top of the solid colored support
base, the consumer would have been able to view the contents of within the
package of Albertsons without having a solid colored support base in the way.
Similarly, by placing the tray of Colucci et al. so that the solid colored support tray
is beneath the transparent container body, the consumer would not have had to
turn the package over in order to view the tomatoes within the package.
Therefore, it would have been obvious given the teachings of Albertsons to place
the package of Colucci et al. in a display orientation for sale for the purpose of
preventing the solid support tray from obstructing the view of the contents within
the container.

Regarding the carton of dressing, Albertsons teaches providing a carton of
dressing placed upside down. Having a lid would have been obvious for the
purpose of preventing spillage of the dressing. Providing a label would have
been obvious since Albertsons discloses the brand name "Litehouse Ranch
Dressing." Colucci et al. teach wherein the packaged tray can be used for
foodstuffs other than tomatoes (Column 9, Lines 12-14). Albertsons teaches that

APIO00156

it has been well known to package dips, such as dressings with vegetables. To the ordinarily skilled artisan dressings and dips have been well known to be eaten with fruits and vegetables such as tomatoes, broccoli, celery, cauliflower and carrots. This is further evidenced by the figures in All Occasion Party Trays. Dips and dressings provide a complimentary flavor for fruits and vegetables. Therefore, it would have been obvious given the teachings of Albertsons to include a carton of dressing for the purpose of providing a customer convenient package that provides a dressing to be included with the fruit or vegetable. By providing a label, the consumer would have been able to view the specific flavor of dressing, thus the consumer would have known what type of package is being purchased.

12. Claims 32, 36, 37, 39, 45, 48, 52-53, 55 and 61 are rejected under 35 U.S.C. 103(a) as being unpatentable over Colucci et al. (US 5165947) in view of Albertsons, as applied to claims 22, 24, 29, 30, 31, 33-35, 38, 40, 41, 42, 43, 44, 46, 47, 49-51, 54, 56, 57-59, above, and in further view of Wyslotsky et al. (US 20030057217). All Occasion Party Trays is cited as evidence, as discussed above.

Colucci et al. in view of Albertsons is taken as cited in the rejection above.

Colucci et al. are silent in teaching wherein the support tray comprises ribs, and wherein the ribs are discontinuous upstanding ribs that allow for air circulation between the support tray of the atmosphere control member.

Regarding the thickness, Wyslotsky et al. teach a thickness of 1000 microns, which is equivalent to 0.039 inches for the material used for the container (Paragraph 0038). Wyslotsky et al. further teach wherein the thickness used for the domed lid is 450 micron thick, which is 0.017 inches (Paragraph 0038). The use of such a thickness controls the rate of diffusion of gases so as to maintain the product's freshness (Paragraph 0035). Nevertheless, to use a thickness of between 0.02 and 0.08 would have been obvious to the ordinarily skilled artisan, given the teachings of Wyslotsky et al. for the purpose of

Application/Control Number: 11/409,354                                    Page 12
Art Unit: 1761

controlling the rate of diffusion of the gases, so as to maintain the product's
freshness. Regarding the ribs, Wyslotsky et al. (20030057217) teach upstanding
ribs in the support tray (Figure 3E) for the purpose of reinforcing the walls of the
lid so that the lid provides support to the base containing the vegetables, therein
(Paragraph 0035). In addition, the ribs also change the surface area of the
package to control the diffusion of oxygen into the package (Paragraph 0035),
depending on the type of vegetables disposed therein. Different vegetables have
different rates of respiration and this also depends on the size of the vegetable.
Therefore, using ribs aides in selectively adjusting the metabolic rate for each
type of vegetable being packaged without having to resort to a large number of
polymeric material (Paragraph 0035). Colucci et al. disclose wherein the type of
tomatoes placed into the container can vary in size and shape (Column 2, Lines
58-67) and use holes in the support tray (Figure 2, Item 52) for the purpose of
aiding gas permeation in and out of the film (Column 5, Lines 3-7). Given the
teachings of Wyslotsky et al. it would have been obvious to use ribs for the
support tray for the purpose of providing a stronger support tray surface which
also increases the surface area for diffusion of gases. Such a modification would
have aided in optimizing the regulation of the different sized and shaped
tomatoes that can be placed into Colucci et al.'s container.

13.    **Claim 17, 19, 21- 24, 27, 29, 30-31, 33- 35, 38, 40-41, 46-47, 49- 51 and 57- 59**
       **are rejected under 35 U.S.C. 103(a) as being unpatentable over Albertsons**
       **– Vegetable Tray with Ranch Dressing (*Albertsons*) in view of Antoon Jr.**
       **(US 5045331) and Nordahl (US 5308630). Applicant's admission of prior art**
       **is also cited as evidence, as discussed below.**

            Albertsons teaches a party tray (see page 37), which comprises a
       transparent container body that comprises a base (the lid through which the
       vegetables are viewed). Albertsons further teaches foodstuffs, vegetables in
       particular, in the base as shown in step 3 of page 37 of Albertsons. These

vegetables are considered respiring foodstuffs. Albertsons further teaches a
support tray attached to the lid (see step 3 of page 37) and the party tray being in
a display orientation in which the food is viewed through the transparent lid.
Albertsons teaches an atmosphere around the foodstuffs since the package has
not been sealed under vacuum. Albertsons further teaches wherein the
dimensions of the support tray are such that the foodstuffs can be served from
the support tray. Additionally, since the package contains respiring foodstuffs,
the package would obviously have had an atmosphere around the foodstuffs.
Albertsons teaches where the finished orientation of the tray can be considered
the display orientation, wherein the transparent container body (lid) allows the
foodstuffs to be viewed by a consumer.

Albertsons is silent in teaching partitions extending away from the base;
sealing a sealing sheet to the container body which contains the foodstuffs,
whose outer surface is defined by the container body and the sealing sheet and
which includes an atmosphere control member which covers a window in the
container body or a window in the sealing sheet. Wherein the partitions are
cavity wall partitions. Albertsons is silent in teaching wherein the party tray has
been subjected to the step of turning the party tray upside down so that the
foodstuffs rest on the base of the container body; then removing the support tray;
then removing the sealing sheet; then placing the support tray over the container
body; then turning the assembly upside down so that the foodstuffs are
supported on the support tray; then removing the container body so that the
foodstuffs can be served from the support tray.   Albertsons is further silent in
teaching wherein the container body has a depth of 1 to 4 inches; wherein the
container body has a depth of 1.25 to 2.5 inch; wherein the container body has a
depth of 1.25 to 2.5 inch and a circumference of 40 to 70 inches.

Nordahl teaches a package comprising cut pieces of a fruit (Column 7,
Lines 42-45), which is a respiring foodstuff, and placing said pieces of fruit into
compartments within a base (Column 7, Lines 51-55). As can be seen in figure
5, item 66, Nordahl teaches multiple compartments that have been formed as a

result of partitions (which are in between the compartments) that extend upward away from the base (item 52). These partitions are considered cavity wall partitions since they divide the base into multiple compartments into which fruit is placed. The compartments facilitate the arrangement of the cut pieces of fruit into a flower arrangement (Column 7, Lines 51-55) and thus would maintain the position of each cut piece in the flower arrangement.

Nordahl further teaches using a thermoplastic sheet (Figure 5, Item 54; Column 7, Lines 61-66) to seal the container for the purpose of preventing spillage of the apple segments within the tray (Column 7, Lines 58-60). The thermoplastic, and thus polymeric, sheet and the tray are formed of a limited gas permeable material to allow limited aerobic respiration of the fruit but prevent the anaerobic respiration that results in spoilage of the fruit (Column 6, Lines 20-25).

Given the teachings of Nordahl, it would have been obvious to seal the container body of Albertsons, which comprises vegetables, for the purpose of preventing movement and spillage of the vegetables. Sealing using a limited gas permeable sheet, as taught by Nordahl would prevent the anaerobic respiration that results in spoilage of the fruit. Therefore, using a semi gas permeable sheet to cover the base of Albertsons would have been obvious for the purpose of preventing anaerobic respiration in the vegetables, which would result in spoilage and thus an unappealing product.

Regarding the partitions, Nordahl teach using compartments (which are formed as a result of extending partitions) for maintaining the position of the cut fruit within the base in a particular arrangement. Therefore, it would have been obvious to use extending partitions to create compartments in the container base of Albertsons for the purpose of maintaining the arrangement of the different types of vegetables disposed therein. One would have had some expectation of success to include partitions in the domed container cover of Albertsons because Albertsons desires a divided container body and the prior art recognized advantages of utilizing partitions: facilitating packaging, providing the division

feature during shipping, storage, display and providing additional structural support for the body when the body/tray structure is inverted after filling.

It would have been obvious to further include a sealing sheet over the fresh vegetable sections or compartments prior to applying the tray to cover the compartments, such that the sealing sheet would rest on the tray after the body / tray structure was inverted, since it has been well known in the art to use a transparent polymeric sheet to seal compartments of fresh vegetables in the body prior to applying a cover. Regarding extending container partitions and sealing a sealing sheet to the container body, thus creating a sealed package whose outer surface is defined by the container body and the sealing sheet, the admission of prior art in paragraphs 0003 – 0006 of the Pre-Grant Publication of the current application is cited as further evidence of the conventionality separating a container comprising fresh vegetables into sections, or compartments, which are located between a support and a transparent cover. The admission of the prior art states that in order to increase the shelf life, a transparent polymeric sheet has been conventionally used for sealing over the compartments of fresh vegetables prior to covering the compartments with a lid to allow for modified atmosphere packaging or a controlled atmosphere package. The admission of prior art also states that the support and cover are formed by molded polymeric materials. Therefore, as taught by Nordahl and cited by the admission of prior art, such a modification would increase the shelf life and provide for a modified atmosphere package or controlled atmosphere package. It would have been further obvious to seal the container body with the sealing sheet after sealing since this would prevent dirt or other contaminants from falling into the filled container body.

Regarding the atmosphere control member, Antoon also teaches a sealed container body holding fruit or vegetables. Antoon teaches that providing an atmosphere control member would allow one to obtain an optimum environment to store fruits or vegetables and retard maturation and spoilage. Antoon teaches that providing the control member in a gas impermeable sealing sheet across the

container body or in the gas impermeable walls would provide the desired effect
of preventing maturation and spoilage, as long as the member is not blocked
during storage (Abstract; Column 4, Lines 36-45; Column 6, Lines 35-59).
Therefore, it would have been obvious to further modify Albertsons and provide
an atmosphere control member since Antoon teaches providing an atmosphere
control member for an otherwise gas impermeable fruits/vegetables storage
container body would allow one to obtain an optimum storage environment and
retard both maturation and spoilage.  Furthermore, Antoon teaches that one may
provide an atmosphere control member at any location of a container body,
including on a sealing sheet covering the container body provided that the control
member is not obstructed during storage.  Therefore, to select any particular
location, either in a wall of the container body or on the sealing sheet, would
have been obvious depending on the particular arrangement of the container
body during storage.

Regarding instant claims 21, 33 and 49, Albertsons teaches wherein the
support tray is used to serve divided vegetables (See Step 2 on Page 37).  In
light of the rejection under 112, second paragraph, the dimensions of the support
tray can also serve the foodstuffs from the support tray.  Modified Albertsons
teaches sealing the container body with a sealing sheet so as to preserve the
freshness of the vegetables and then placing the support tray thereon.
Therefore, in order serve the vegetables, it would have been obvious to the
ordinarily skilled artisan that the sealing sheet in between the container body (lid)
and the tray would have to be removed.  In order to do so, the ordinarily skilled
artisan would have had to have turned the vegetable tray upside down to remove
the tray to gain access to the sealing sheet.  The sealing sheet would then have
to be removed to access the dressing and vegetables.  Since the dressing has
been placed within Albertsons container body (lid) so that the dressing opening is
abutted against the top of the lid, the support tray would have had to have been
reattached and the entire assembly turned over again so that the dressing cup is
"right side up."  Thus, performing these steps would have been obvious to the

Application/Control Number: 11/409,354
Art Unit: 1761

ordinarily skilled artisan in order to access the cup of dressing and then vegetables of modified Albertsons, which provides for a sealing sheet in between the support tray and the container base. Furthermore regarding instant claims 21, 33 and 49, the Examiner notes that the limitation "after" recites a future state. After performing the recited steps the foodstuffs *can* be served from the support tray. Thus, since Albertsons discloses a method of preparing a party tray after the steps recited are performed, the tray of Albertsons would have been capable of serving the foodstuffs from the support tray.

Regarding instant claims 22, 24, 31, 35, 46, 47, 51, 57 and 59, since the diameter of the tray is 12 inches (see table next to Recipe Instructions) the circumference would have been 12 inches times *pi* which yields a circumference of about 37 inches. Regarding the depth of 1 to 4 inches and 1.25 to 2.5 inches, Albertsons teaches filling four equal sections, or compartments of a 12 inch diameter body with 14 ounces of carrots, 12 ounces of cauliflower, 6 ounces of celery and 10 ounces of broccoli. It would have been obvious to the ordinarily skilled artisan to select any particular depth for the body, depending on the expected size and shape of each variety of vegetable. Depending on the size of the container it would have been obvious to the ordinarily skilled artisan that one would have to select an appropriate depth to accommodate enough vegetables of an expected size and shape in each compartment in order to achieve the desired weight. Additionally, the diameter of the trays would also have been dependent on the depth of the tray. A more shallow depth would have required a larger diameter container for accommodating the vegetables, therefore to select a diameter to accommodate the quantity of vegetables taught by Albertsons would have been obvious to the ordinarily skilled artisan.

Regarding instant claim 27 and 38 the support tray, as can be seen from the figure on page 37, has a solid color.

Regarding instant claims 29, 40, 46 and 57, Albertsons teaches wherein a cup of Litehouse Ranch Dressing is placed upside down in the center of the lid. Albertsons does not explicitly disclose wherein the cup has a lid, however in

order to place the cup upside down on the base (lid) of the vegetable tray, it would have been obvious to the ordinarily skilled artisan that the cup has a lid so as to prevent spilling the dressing contained within the cup. In light of the disclosure by the Applicant and knowledge of one ordinarily skilled in the art, the Examiner interprets that to use a cup or a carton would have been an obvious modification for performing an equivalent function. In this case, the use of a cup or a carton as a container for holding a dip would have been equivalent means for containing the dip. Thus, the selection of any of these known equivalents to package a dip for mercantile use would have been within the level of ordinary skill in the art. In addition, Litehouse Ranch Dressing is a "brand name" dressing. Therefore it would have been obvious to the ordinarily skilled artisan that the lid of the cup of dressing would have a label that can be read by the shopper. Providing a label would have informed the consumer of the type of dip contained within the party tray.

Regarding instant claims 17, 30, 41, 46 and 57, Albertsons teaches where the finished orientation of the tray can be considered the display orientation, wherein the transparent container body (lid) allows the foodstuffs to be viewed by a consumer. It would have further been obvious after performing the steps of loading the vegetables and sealing the package, to display the product for retail sale since such trays have been well known to be purchased by customers at retail locations such as supermarkets and grocery stores.

Further regarding instant claim 46, it would have been obvious to the ordinarily skilled artisan to display a plurality of substantially identical party trays for the purpose of allowing sale of a similar party tray to multiple customers. Stacking and displaying multiple trays has been well known in the art as a means for speeding up the sale of multiple units to customers without the customer having to wait for an additional unit to be made.

14.    Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over
       Albertsons in view of Antoon Jr. (US 5045331) and Nordahl (US 5308630) as
       applied to claims 17, 19, 21- 24, 27, 29, 30-31, 33- 35, 38, 40-41, 46-47, 49- 51
       and 57- 59, above, and further in view of Wozniacki (US 4272008).
       Applicant's admission of prior art is also cited as evidence, as discussed
       above.

              Albertsons in view of Antoon Jr. and Nordahl is taken as applied above.
       Albertsons teaches dividing the container body into compartments and filling
       each compartment with a desired weight of a particular vegetable.

              However, Albertsons is silent in teaching removable partitions.

              Wozniacki teach that fruit and vegetable packages conventionally utilize
       adjustable and removable dividers because fruits and vegetables vary in size.  In
       order to pack the same weight of product items one would have to be able to
       adjust the partition size and shape, for example, such that the compartments can
       accommodate the desired amount of each of the vegetables or fruits (Column 1,
       Lines 10-26; Column 3, Lines 13-32; Column 3, Line 46 to Column 4, Line 3;
       Column 4, Lines 20-30, wherein the base of Figure 5 is the surface supporting
       the divider 10).

              Therefore, it would have been obvious to further modify Albertsons'
       container body and provide removable partitions since Albertsons teaches a
       desired weight per compartment and Wozniacki teaches that fruits and
       vegetables vary in size, and preferred to use removable and adjustable partitions
       to allow one to pack the same weight of fruits and vegetables in the same
       package by adjusting the partitions.  Thus, Albertsons would benefit in that the
       size of the compartments would be readily adjusted to accommodate a variety of
       sizes and still assure a desired weight.

15.    Claims 20, 25-26, 28, 32, 36-37, 39, 42- 45, 48, 52-56, 60 and 61 are rejected
       under 35 U.S.C. 103(a) as being unpatentable over Albertsons in view of

**Antoon Jr. (US 5045331) and Nordahl (US 5308630) as applied to claims 17,
19, 21- 24, 27, 29, 30-31, 33- 35, 38, 40-41, 46-47, 49- 51 and 57- 59, above,
and further in view of Wyslotsky et al. (US 20030057217). Applicant's
admission of prior art is also cited as evidence, as discussed below.**

Albertsons in view of Antoon Jr. and Nordahl is taken as cited above.
Albertsons teaches a support tray and modified Albertsons teaches an
atmosphere control member that covers a window in the sealing sheet. All the
limitations of instant claim 42, 43, 44 are shared with claims 17, 19, 21- 24, 27,
29, 30-31, 33- 35, 38, 40-41, 46-47, 49- 51 and 57- 59, above except the
limitations of the support tray comprising ribs and discontinuous upstanding ribs
and wherein the thickness of the support tray is at least 0.02 inch and between
0.02 to 0.08 inches.

Albertsons is silent in teaching wherein the support tray comprises ribs
such air can circulate between the support tray and the atmosphere control
member, wherein the support tray comprises discontinuous upstanding ribs;
wherein the support tray has a thickness of at least 0.02 inches; and wherein the
support tray has a thickness of 0.02 to 0.08 inches.

Regarding the thickness, Wyslotsky et al. teach a thickness of 1000
microns, which is equivalent to 0.039 inches for the material used for the
container (Paragraph 0038). Wyslotsky et al. further teach wherein the thickness
used for the lid is 450 micron thick, which is 0.017 inches (Paragraph 0038). The
use of such a thickness controls the rate of diffusion of gases so as to maintain
the product's freshness (Paragraph 0035). Nevertheless, to use a thickness of
between 0.02 and 0.08 based on the teachings of Wyslotsky et al. would have
been obvious to the ordinarily skilled artisan for the purpose of controlling the
diffusion of gases and thus preserving the freshness of the fruit. Since
Albertsons discloses a variety of vegetables in the container, it would have been
obvious to increase the thickness so as to control the rate of diffusion of oxygen
for the purpose of maintaining freshness in vegetables while also extending the
vegetable's shelf life.

Application/Control Number: 11/409,354                                    Page 21
Art Unit: 1761

Regarding the discontinuous upstanding ribs, Wyslotsky et al. (20030057217) teach upstanding ribs in the support tray (Figure 3E) for the purpose of reinforcing the walls of the lid so that the lid provides support to the base containing the vegetables, therein (Paragraph 0035).

Wyslotsky et al. also teach including an atmosphere control member covering a window for controlling oxygen diffusion (Paragraphs 0051-0053) and provides ribs on both the container body and tray to extend shelf life of the vegetable by preventing microorganism contamination while also allowing for the release of carbon dioxide gas (Paragraph 0051-0052). The Examiner interprets that the ribs are discontinuous since the ribs do not continue through the top of the lid (Figure 3E). The ribs also change the surface area of the package to control the diffusion of oxygen into the package (Paragraph 0035), depending on the type of vegetables disposed therein. In the case of Wyslotsky et al. the window is considered a portion of the container which can be seen through on which is applied a diffusion label for controlling the gas that enters and exits the container. Thus, given the teachings of Wyslotsky it would have been obvious to the ordinarily skilled artisan to use ribs on the tray of Albertsons for the purpose of providing reinforcing support to the walls of the lid. Depending on the weight of the products disposed within the container, the lid could be dislodged due to shifts in weight and the subsequent flexing of the container as a result. Such a modification, as taught by Wyslotsky et al. would have prevented the lid from inadvertently dislodging during transport and would have extended the freshness of the vegetable disposed therein by regulating the respiration of the food product.

### Conclusion

16.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Application/Control Number: 11/409,354                               Page 22
Art Unit: 1761

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Viren Thakur whose telephone number is (571)-272-6694. The examiner can normally be reached on Monday through Friday from 8:00 am - 4:30 pm.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Milton Cano can be reached on (571)272-1398. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Viren Thakur
Examiner
Art Unit: 1761

KEITH HENDRICKS
PRIMARY EXAMINER