Docket No. 14181

THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Pratte                        Group Art Unit:  1761

Serial No.:    10/222,435                    Examiner: Robert Madsen

5   Filing Date: August 16, 2002

Title:         Party Tray


Mail Stop AF

Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450

10

### REPLY

Sir,

This paper is filed in reply to the Office Action mailed February 9, 2005, which is

a final rejection.  A petition to remove the finality of the rejection has already been filed.

15  Reexamination, reconsideration and allowance are respectfully requested in view of the

Amendments and Remarks below, and the declaration attached.


### Amendments to the Specification

There are no amendments to the specification.

20  **Amendments to the Claims** are reflected in the listing of claims which begins on page

7 of this paper.

**Remarks/Arguments** begin on page 22 of this paper.


### Summary

25

The Office Action provides a very detailed and systematic discussion of the

various rejections, in particular the rejections under 35 USC 103 of different sets of

claims based on different combinations of references.  In deference to the approach

adopted by the Examiner, and in the interests of completeness, this Reply contains a

30  similarly detailed and systematic explanation of why those rejections should be

### CERTIFICATE OF MAILING UNDER 37 CFR 1.8

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class
mail in an envelope addressed to: Mail Stop AF  Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450
On April 7, 2005    Typed name of person signing this certificate: T. H. P. Richardson
            Signature

withdrawn.  It is thought, however, that it will be helpful to begin by providing a summary of the principal issues.

**Finality of the Office Action**

5

It is submitted that the finality of the office action should be withdrawn, having regard to the reasons set out in the previously-filed petition and because one of the rejections under 35 USC 103 is not clear, as discussed on page 22 below.

10    **Amendments**

Each of the independent claims has been amended to make it clear that
(1)    the container body has a loading orientation, in which both the wall and the partitions extend upwards from the base, thus creating fillable compartments into which,
15    in step (B), the foodstuffs are placed so that the foodstuffs rest on the base -- this has been done in view of the Examiner's comments in paragraph 41 of the Office Action;
(2)    the foodstuffs placed in at least one of the compartments are multiple pieces of a vegetable -- this has been done in order to provide an additional distinction over Sinner, which is concerned only with compartments specifically designed to accommodate a
20    single piece of fruit; and
(3)    the sealing sheet extends over the compartments -- this has been done in view of the Examiner's apparent misunderstanding that the sealing sheet can be a circumferential tamper-proof seal as disclosed in Wyslotsky.

25    **The Rejections under 35 USC 103 including Brown.**

Each of the rejections relies upon a combination of Albertson's and Brown as disclosing partitions which extend upwards from the base and create compartments within the container body, as required by all the claims.  However, a combination of
30    Albertson's and Brown would place ribs on Albertson's tray, **not** in Albertson's container body. Such ribs cannot create fillable compartments, since the tray having the ribs on it

Exhibit C

is placed on the container body **after** the container body has been filled with vegetables.
. Furthermore, the ribs, depending upon their depth, strength and sharpness, would

      (i)     make no impression on the vegetables, i.e. would not create anything that
      could possibly be regarded as a compartment; or

5         (ii)    deform and bruise the vegetables, thus damaging their appearance and
      their storability, and/or make it impossible to secure the tray to the container body
      -- an obviously undesirable result.

[See paragraph 3 of the attached Declaration.]

The essential purpose of the ribs on Brown's lid is to preserve the appearance of the

10   pizza, cake or other foodstuff adjacent to the lid.  Turning Brown's package upside
down, as required by Albertson's and by the claims, would nullify that essential purpose.

      The full argument will be found in section A below, at pages 30-36.

### The rejections under 35 USC 103 including Wyslotsky

15

      Each of the rejections includes Wyslotsky as a reference.  Essential features of
Wyslotsky include (a) the use of a reduced oxygen initial atmosphere, and (b)a step
between loading and sealing to produce such an initial atmosphere.  Wyslotsky's
circumferential tamperproof seal (item 31) is not a sealing sheet as defined in claims, as

20   alleged in the Examiner's argument.  Wyslotsky does disclose a sealing sheet (item 54),
but it is present **only** in packages having two compartments which are separated by the
sealing sheet and each of which contains foodstuffs.  Wyslotsky also discloses an
atmosphere control member (ACM), but the ACM is part of the container body, not part
of the sealing sheet. There is good reason for this. If the ACM was part of Wyslotsky's

25   sealing sheet, it would not be exposed to the outside atmosphere, but only to the
atmospheres within the two compartments.  It would not, therefore, function as an ACM,
since it would not allow oxygen to enter, and carbon dioxide to leave, either of those
atmospheres.  This would result in damage to the foodstuffs (see paragraph 6 of the
attached Declaration).

30

3

Exhibit C

Each of the rejections based on Wyslotsky should, therefore, be withdrawn, but the reasons depend upon the particular claims, as summarized below.

1.      Claims 1 and 26-34 (claim 1 being independent).

These claims require that **the initial packaging atmosphere is air**. This is contrary to

5   the teaching of Wyslotsky. In this connection, it is pertinent to refer to in re Wesslau (147 USPQ 391, 393 (CCPA 1965), in which the CCPA stated

> It is impermissible within the framework of section 103 to pick and choose from
> any one reference to the exclusion of other parts necessary to the full
> appreciation of what such reference fairly suggests to one skilled in the art.

10  The full argument is in section B1 below, at pages 37-44

2.      Claims 26 and 35-43 (claim 35 being independent).

These claims require that there is **no step between steps B and C**. This is contrary to the teaching of Wyslotsky. In re Wesslau is likewise pertinent. The full argument is in section B2 below, at pages 44-45.

15  3a.     Claims 27, 28, 37, 44-59 (claims 44 and 52 being independent).

These claims require **that the foodstuffs rest on sealing sheet and that the sealing sheet is supported by the support tray**. This requirement is contrary to Wyslotsky's requirement that the sealing sheet lies between two separate compartments -- there is not (and cannot be) in Wyslotsky, a support tray which supports the sealing sheet. The

20  full argument is in Section B3 below, at pages 45-46.

3b.     Claims 28, 37 and 45 further require **that the sealing sheet comprises an ACM covering a window in the sealing sheet and that the support tray comprises ribs such that air can circulate between the support tray and the ACM**. This is still further from anything disclosed by Wyslotsky. Part of the Examiner's argument is that

25  Wyslotsky discloses "ribs to increase gas flow". However the purpose of Wyslotsky's ribs is to increase the surface area of the container. They do not ensure the flow of air to an ACM which would otherwise be blocked, nor is there any suggestion that they should do so.

3c.     Claims 52-53 and 55-59 (claim 52 being independent).

4

Exhibit C

These claims require **an ACM which covers a window in the sealing sheet**. This is contrary to Wyslotsky's teaching, in which, if the ACM is in the sealing sheet, it will not function in the manner required of an ACM.

The full argument for 3b and 3c is in sections D and E below, at pages 53-59.

5

**The Rejections under 35 USC 103 including Sinner.**

A number of the rejections include Sinner. Sinner discloses removable partitions, for the packing of premium quality fruit, with each fruit being **individually** packed in its

10  own compartment. Each of Sinner's compartments is defined by partitions which are free to move over the base of Sinner's container body, so that the compartment can change in size as the individual fruit is placed in the compartment, to accommodate individual fruits of different and unpredictable sizes. As is well-known to those skilled in the art, and as is shown for example by Albertson's and the drawings of this application,

15  fresh vegetables in party trays are invariably in the form of multiple pieces which are placed in the party tray with multiple contacts between the vegetable pieces; and it would be wholly impractical to pack each piece of vegetable separately (see paragraph 2 of the attached Declaration). Each of the independent claims has been amended to require that the foodstuffs in at least one of the compartments are multiple pieces of a

20  vegetable. One of ordinary skill in the art would not, therefore, consider Sinner to be a useful source of information for partitions to be placed in a party tray.

Each of the rejections based on Sinner should, therefore, be withdrawn, for the reason just stated, and also for reasons depending upon particular claims, as

25  summarized below.

1.      Claims 73, 75, 77, 79 and 81.

These claims, which have been added by amendment, require **that the partitions are removably located within the container body by location members formed in the container body as the container body was molded, so that each of the**

30  **compartments has a fixed size**. This is directly contrary to Sinner's teaching.

2.      Claims 74, 76, 78, and 82.

5

Exhibit C

These claims, which have been added by amendment, specify **that at least one of the partitions has a particular configuration** which is entirely different from, and is not suggested by, Sinner's arrangement of interlocking inverted V-shaped partitions.

3.      Claims 30, 39, 47, 55 and 60-63 (claim 60 being independent).

5    These claims require that the base, wall, rim and partitions have been molded at the same time. Such molded-in partitions necessarily produce compartments of a fixed size (see paragraph 5 of the attached Declaration). This is directly contrary to Sinner's central purpose, which is to provide compartments which will adapt, at the time of loading, to the packaging of individual fruits of different and unpredictable sizes.

10   The full argument is in Section C below, at pages 47-52.


**The rejections including Antoon.**


A number of the rejections include Antoon, which is relied on as motivation for
15   including an ACM in any location, depending on how the package is stored, in particular over a window in a sealing sheet. Applicant agrees that Antoon teaches that an ACM should not be blocked during storage. But this teaching points **away** from placing an ACM in the sealing sheet of a container resulting from modification of Albertson's by the teaching of Wyslotsky. As noted above, Wyslotsky discloses a sealing sheet **only** for a
20   container having two distinct compartments, the compartments being separated by the sealing sheet and containing different foodstuffs. Placing an ACM on the sealing sheet would be contrary to Antoon's teaching, both because the foodstuffs would be likely to block the ACM and because the ACM, because it is not exposed to air, would not function properly (see paragraphs 6-7 of the attached Declaration).

25        The full argument is in Sections E and F below, at pages 56-60.


30


6

Exhibit C

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the
5    application:

**Listing of Claims:**

1. (Currently amended)     A method of preparing a party tray which comprises the
10    steps of

A)     providing a container body which

(i)     is composed of a transparent polymeric material,

(ii)     has a depth of 1 to 4 in.,

(iii)     has a circumference of 30 to 100 in.; ~~and~~

15    (iv)     comprises

1)     a base,

2)     a continuous wall which extends away from the base and is
contiguous with the base,

3)     a continuous rim which is contiguous with the wall, and

20    4)     partitions which extend <u>away</u> ~~upwards~~ from the base <u>in the
same direction as the wall; and</u>

<u>(v)     has a loading orientation in which the wall extends upwards from
the base, and the partitions extend upwards from the base</u> and create
<u>fillable</u> compartments within the container body; <u>and</u>

25    B)     <u>while the container body is in the loading orientation,</u> placing foodstuffs in
the compartments <u>so that the foodstuffs rest on the base,</u> at least some of the
foodstuffs being fresh vegetables <u>and the foodstuffs placed in at least one of the
compartments being multiple pieces of a fresh vegetable;</u>

C)     after step B, sealing a sealing sheet of polymeric material to the rim of the
30    container body <u>so that the sealing sheet extends over the compartments and
creates</u> ~~, thus creating~~ a sealed package (i) which contains the foodstuffs and a

7

Exhibit C

packaging atmosphere around the foodstuffs, the initial packaging atmosphere being air, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member;

D)      after step C, placing a support tray over the sealing sheet; and

5        E)      after step D, turning the sealed package and the support tray placed thereon upside-down;

whereby the party tray can be displayed for sale in a display orientation in which so that the foodstuffs are viewed by a shopper through the container body.

10    2.  (Original)  A method according to claim 1 wherein the partitions are removably located within the container body.

3-25.  (Canceled)

15    26.  (Previously presented)        A method according to claim 1 wherein there is no intermediate step between step B and step C.

27.  (Previously presented)        A method according to claim 1 wherein, after step E, the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the

20    support tray.

28.  (Currently amended)        A method according to claim 27 wherein the atmosphere control member, or one of the atmosphere control members if there is more than one atmosphere control member, covers a window in the sealing sheet, and the

25    support tray comprises ribs such that air can circulate between support tray member and the atmosphere control member.

29.  (Previously presented)        A method according to claim 1 wherein the atmosphere control member, or each of the atmosphere control members if there is

30    more than one atmosphere control member, covers a window in the sealing sheet or a window in the container body.

8

Exhibit C

30. (Previously presented)      A method according to claim 1 wherein the partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time.

5

31. (Currently amended)      A method according to claim 2 wherein the partitions are composed of polymeric material having a thickness less than 0.125 inch. ~~have little or no visual impact when the party tray is displayed for sale so that the foodstuffs are viewed by a shopper through the container body.~~

10

32. (Previously presented)      A method according to claim 1 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

15   33. (Previously presented)      A method according to claim 1 wherein at 22°C at least 75% of the oxygen entering the packaging atmosphere passes through said at least one atmosphere control member.

34. (Currently amended)      A method according to claim 1 which includes, after
20   step E, the step of displaying the party tray for sale in a display orientation in which ~~so that~~ the foodstuffs are viewed by a shopper through the container body.

35. (Currently amended)      A method of preparing a party tray which comprises the steps of

25        A)      providing a container body which
                (i)      is composed of a transparent polymeric material,
                (ii)     has a depth of 1 to 4 in.,
                (iii)    has a circumference of 30 to 100 in.; and
                (iv)     comprises
30                      1)      a base,

9

Exhibit C

2)      a continuous wall which extends away from the base and is contiguous with the base,

3)      a continuous rim which is contiguous with the wall, and

4)      partitions which extend <u>away</u> ~~upwards~~ from the base <u>in the same direction as the wall; and</u>

(v)    <u>has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base</u> and create <u>fillable</u> compartments within the container body; <u>and</u>

B)    <u>while the container body is in the loading orientation,</u> placing foodstuffs in the compartments <u>so that the foodstuffs rest on the base,</u> at least some of the foodstuffs being fresh vegetables <u>and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable</u>;

C)    after step B, and without any intermediate step between step B and step C, sealing a sealing sheet of polymeric material to the rim of the container body <u>so that the sealing sheet extends over the compartments and creates</u> , ~~thus creating~~ a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member;

D)    after step C, placing a support tray over the sealing sheet; and

E)    after step D, turning the sealed package and the support tray placed thereon upside-down;

whereby the party tray can be displayed for sale <u>in a display orientation in which</u> ~~so that~~ the foodstuffs are viewed by a shopper through the container body.

36. (Previously presented)      A method according to claim 35 wherein, after step E, the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray.

37. (Currently amended)      A method according to claim 36 wherein the atmosphere control member, or one of the atmosphere control members if there is more

10

Exhibit C

than one atmosphere control member, covers a window in the sealing sheet, and the support tray comprises ribs such that air can circulate between support tray ~~member~~ and the atmosphere control member.

5    38. (Previously presented)        A method according to claim 35 wherein the atmosphere control member, or each of the atmosphere control members if there is more than one atmosphere control member, covers a window in the sealing sheet or a window in the container body.

10    39. (Previously presented)        A method according to claim 35 wherein the partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time.

        40. (Currently amended)        A method according to claim 35 wherein the partitions
15    are removably located within the container body and are composed of a polymeric material having a thickness less than 0.125 inch. ~~have little or no visual impact when the party tray is displayed for sale so that the foodstuffs are viewed by a shopper through the container body.~~

20    41. (Previously presented)        A method according to claim 35 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

        42. (Previously presented)        A method according to claim 35 wherein said at least
25    one atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

        43. (Currently amended)        A method according to claim 35 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which ~~so~~
30    ~~that~~ the foodstuffs are viewed by a shopper through the container body.

Exhibit C

44. (Currently amended)          A method of preparing a party tray which comprises the steps of

    A)    providing a container body which

        (i)    is composed of a transparent polymeric material,

5        (ii)    has a depth of 1 to 4 in.,

        (iii)    has a circumference of 30 to 100 in.; and

        (iv)    comprises

            1)    a base,

            2)    a continuous wall which extends away from the base and is

10             contiguous with the base,

            3)    a continuous rim which is contiguous with the wall, and

            4)    partitions which extend <u>away</u> ~~upwards~~ from the base <u>in the</u> <u>same direction as the wall; and</u>

        <u>(v)</u>    <u>has a loading orientation in which the wall extends upwards from</u> <u>the base, and the partitions extend upwards from the base</u> and create

15        <u>fillable</u> compartments within the container body; <u>and</u>

    B)    <u>while the container body is in the loading orientation,</u> placing foodstuffs in the compartments <u>so that the foodstuffs rest on the base,</u> at least some of the foodstuffs being fresh vegetables <u>and the foodstuffs placed in at least one of the</u>

20    <u>compartments being multiple pieces of a fresh vegetable;</u>

    C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body <u>so that the sealing sheet extends over the compartments and</u> <u>creates</u> ~~, thus creating~~ a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined

25    by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member;

    D)    after step C, placing a support tray over the sealing sheet; and

    E)    after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the

30    sealing sheet is supported by the support tray;

12

Exhibit C

whereby the party tray can be displayed for sale in a display orientation in which ~~so that~~ the foodstuffs are viewed by a shopper through the container body.

45. (Currently amended)        A method according to claim 44 wherein the
5    atmosphere control member, or one of the atmosphere control members if there is more than one atmosphere control member, covers a window in the sealing sheet, and the support tray comprises ribs such that air can circulate between support tray ~~member~~ and the atmosphere control member.

10    46. (Previously presented)        A method according to claim 44 wherein the atmosphere control member, or each of the atmosphere control members if there is more than one atmosphere control member, covers a window in the sealing sheet or a window in the container body.

15    47. (Previously presented)        A method according to claim 44 wherein the partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time.

48. (Currently amended)        A method according to claim 44 wherein the partitions
20    are removably located within the container body and are composed of a polymeric material having a thickness less than 0.125 inch. ~~have little or no visual impact when the party tray is displayed for sale so that the foodstuffs are viewed by a shopper through the container body.~~

25    49. (Previously presented)        A method according to claim 44 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

50. (Previously presented)        A method according to claim 44 wherein at 22°C at
30    least 75% of the oxygen entering the packaging atmosphere passes through said at least one atmosphere control member.

13

Exhibit C

51. (Currently amended)        A method according to claim 44 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which ~~so that~~ the foodstuffs are viewed by a shopper through the container body.

5

52. (Currently amended)        A method of preparing a party tray which comprises the steps of

    A)    providing a container body which

        (i)    is composed of a transparent polymeric material,

10        (ii)    has a depth of 1 to 4 in.,

        (iii)    has a circumference of 30 to 100 in.; and

        (iv)    comprises

            1)    a base,

            2)    a continuous wall which extends away from the base and is

15                contiguous with the base,

            3)    a continuous rim which is contiguous with the wall, and

            4)    partitions which extend away ~~upwards~~ from the base in the same direction as the wall; and

        (v)    has a loading orientation in which the wall extends upwards from

20            the base, and the partitions extend upwards from the base and create fillable compartments within the container body; and

    B)    while the container body is in the loading orientation, placing foodstuffs in the compartments so that the foodstuffs rest on the base, at least some of the foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the

25    compartments being multiple pieces of a fresh vegetable;

    C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates ~~, thus creating~~ a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined

30    by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member, the atmosphere control member, or one of the

14

Exhibit C

atmosphere control members if there is more than one atmosphere control member, covering a window in the sealing sheet, and;

D)      after step C, placing a support tray over the sealing sheet; and

E)      after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray;

whereby the party tray can be displayed for sale in a display orientation in which ~~so that~~ the foodstuffs are viewed by a shopper through the container body.

53. (Currently amended)       A method according to claim 52 wherein the support tray comprises ribs such that air can circulate between the support tray ~~member~~ and the atmosphere control member.

54. (Canceled)

55. (Previously presented)       A method according to claim 52 wherein the partitions are cavity walls, and the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions at the same time.

56. (Currently amended)       A method according to claim 52 wherein the partitions are removably located within the container body and are composed of a polymeric material having a thickness less than 0.125 inch. ~~have little or no visual impact when the party tray is displayed for sale so that the foodstuffs are viewed by a shopper through the container body.~~

57. (Previously presented)       A method according to claim 52 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

15

Exhibit C

58. (Previously presented)      A method according to claim 52 wherein said at least one atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

5  59. (Currently amended)      A method according to claim 52 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which so that the foodstuffs are viewed by a shopper through the container body.

60. (Currently amended)      A method of preparing a party tray which comprises
10  the steps of
        A)      providing a container body which
                (i)      is composed of a transparent polymeric material,
                (ii)     has a depth of 1 to 4 in.,
                (iii)    has a circumference of 30 to 100 in.; and
15              (iv)    comprises
                        1)      a base,
                        2)      a continuous wall which extends away from the base and is contiguous with the base,
                        3)      a continuous rim which is contiguous with the wall,
20                      4)      partitions which extend away upwards from the base in the same direction as the wall; and create compartments within the container body;
                (v)      has been prepared by molding a polymeric material, thus forming the base, the wall, the rim and the partitions at same time; and
25              (vi)     has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base and create fillable compartments within the container body; and
        B)      while the container body is in the loading orientation, placing foodstuffs in the compartments so that the foodstuffs rest on the base, at least some of the
30      foodstuffs being fresh vegetables and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;

16

Exhibit C

C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body so that the sealing sheet extends over the compartments and creates , thus creating a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member, the atmosphere control member, or one of the atmosphere control members if there is more than one atmosphere control member, covering a window in the sealing sheet, and;

D)    after step C, placing a support tray over the sealing sheet; and

E)    after step D, turning the sealed package and the support tray placed thereon upside-down;

whereby the party tray can be displayed for sale in a display orientation in which so that the foodstuffs are viewed by a shopper through the container body.

61. (Previously presented)    A method according to claim 60 wherein, before step B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

62. (Previously presented)    A method according to claim 60 wherein said at least one atmosphere control member provides substantially the only pathways for oxygen and carbon dioxide to enter or leave the packaging atmosphere.

63. (Currently amended)    A method according to claim 60 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which so that the foodstuffs are viewed by a shopper through the container body.

64. (Currently amended)    A method of preparing a party tray which comprises the steps of

A)    providing a container body which

(i)    is composed of a transparent polymeric material,

(ii)    has a depth of 1 to 4 in.,

17

Exhibit C

(iii)    has a circumference of 30 to 100 in.;

(iv)    comprises

1)    a base,

2)    a continuous wall which extends away from the base and is contiguous with the base,

3)    a continuous rim which is contiguous with the wall, and

4)    partitions which extend <u>away</u> <s>upwards</s> from the base <u>in the same direction as the wall,</u> <s>and create compartments within the container body</s> and are removably located in the container body;

<u>and</u>

<u>(v)    has a loading orientation in which the wall extends upwards from the base, and the partitions extend upwards from the base</u> and create <u>fillable</u> compartments within the container body; <u>and</u>

B)    <u>while the container body is in the loading orientation,</u> placing foodstuffs in the compartments <u>so that the foodstuffs rest on the base,</u> at least some of the foodstuffs being fresh vegetables <u>and the foodstuffs placed in at least one of the compartments being multiple pieces of a fresh vegetable;</u>

C)    after step B, sealing a sealing sheet of polymeric material to the rim of the container body <u>so that the sealing sheet extends over the compartments and creates</u> <s>, thus creating</s> a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii) whose outer surface is defined by the container body and the sealing sheet, and (iii) which includes at least one atmosphere control member;

D)    after step C, placing a support tray over the sealing sheet; and

E)    after step D, turning the sealed package and the support tray placed thereon upside-down;

whereby the party tray can be displayed for sale <u>in a display orientation in which</u> the foodstuffs are viewed by a shopper through the container body.

65.  (Currently amended)        A method according to claim 64 wherein the partitions <u>are composed of a polymeric material having</u> <u>a thickness less than 0.125 inch.</u> <s>have</s>

18

Exhibit C

little or no visual impact when the party tray is displayed for sale so that the foodstuffs are viewed by a shopper through the container body.

66.  (Previously presented)        A method according to claim 64 wherein, before step
5    B, a carton of vegetable dip is placed in the center of the container body, and the carton has walls which help to define the compartments.

67.  (Previously presented)        A method according to claim 64 wherein said at least one atmosphere control member provides substantially the only pathways for oxygen
10    and carbon dioxide to enter or leave the packaging atmosphere.

68.  (Currently amended)        A method according to claim 64 which includes, after step E, the step of displaying the party tray for sale in a display orientation in which so that the foodstuffs are viewed by a shopper through the container body.
15

69-72.  (Canceled)

73.  (New)    A method according to claim 1 wherein the partitions are removably located within the container body by location members formed in the container body as
20    the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the wall of the container body, whereby each of the compartments has a fixed size.

74.  (New)    A method according to claim 1 where the partitions are removably located
25    within the container body and have one or more of the following characteristics
        (a)    at least one of the partitions comprises two or more straight portions at right angles to each other and to the base,
        (b)    at least one of the partitions comprises two or more straight portions at right angles to the base and with a curved portion between them, and
30        (c)    two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles

19

Exhibit C

to the first partitions and to the base, some or all of the first and second partitions are slotted so that they fit together.

75. (New)    A method according to claim 35 wherein the partitions are removably
5  located within the container body by location members formed in the container body as the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the wall of the container body, whereby each of the compartments has a fixed size.

10  76. (New)    A method according to claim 35 where the partitions are removably located within the container body and have one or more of the following characteristics

    (a)    at least one of the partitions comprises two or more straight portions at right angles to each other and to the base,

    (b)    at least one of the partitions comprises two or more straight portions at
15  right angles to the base and with a curved portion between them, and

    (c)    two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles to the first partitions and to the base, some or all of the first and second partitions are slotted so that they fit together.

20

77. (New)    A method according to claim 44 wherein the partitions are removably located within the container body by location members formed in the container body as the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the wall of
25  the container body, whereby each of the compartments has a fixed size.

78. (New)    A method according to claim 44 where the partitions are removably located within the container body and have one or more of the following characteristics

    (a)    at least one of the partitions comprises two or more straight portions at
30  right angles to each other and to the base,

20

Exhibit C

(b)     at least one of the partitions comprises two or more straight portions at right angles to the base and with a curved portion between them, and

(c)     two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles to the first partitions and to the base, some or all of the first and second partitions are slotted so that they fit together.

79. (New)    A method according to claim 52 wherein the partitions are removably located within the container body by location members formed in the container body as the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the wall of the container body, whereby each of the compartments has a fixed size.

80. (New)    A method according to claim 52 where the partitions are removably located within the container body and have one or more of the following characteristics

(a)     at least one of the partitions comprises two or more straight portions at right angles to each other and to the base,

(b)     at least one of the partitions comprises two or more straight portions at right angles to the base and with a curved portion between them, and

(c)     two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles to the first partitions and to the base, some or all of the first and second partitions are slotted so that they fit together.

81. (New)    A method according to claim 64 wherein the partitions are removably located within the container body by location members formed in the container body as the container body was molded, the location members being in the base of the container body or in the wall of the container body, or in both the base and the wall of the container body, whereby each of the compartments has a fixed size.

21

Exhibit C

82.  (New)    A method according to claim 64 where the partitions are removably located within the container body and have one or more of the following characteristics

    (a)    at least one of the partitions comprises two or more straight portions at right angles to each other and to the base,

5    (b)    at least one of the partitions comprises two or more straight portions at right angles to the base and with a curved portion between them, and

    (c)    two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles to the first partitions and to the base, some or all of the first and second partitions

10    are slotted so that they fit together.

Exhibit C

## Remarks

Request to reconsider the Finality of the Office Action.

5          Applicant has previously filed a Petition to the Commissioner to withdraw the finality of the Office Action.  The Examiner is asked to withdraw the finality of the Office Action in view of the reasons set out in that Petition, and the following reasons, which were not apparent when the Petition was filed.

10    1.      Paragraph 15 of the Office Action rejects claims 28, 37 and 45 over Albertson's, Brown, Wyslotsky and Sinner. There is no other rejection of claims 28, 37 and 45. However, the discussion of this rejection in paragraph 16 of the Office Action does not refer to Sinner, and the rejection cannot, therefore, be understood.  It is apparent, therefore, that no clear issue has been developed between Applicant and Examiner with
15    regard to claims 28, 37 and 45, as is necessary before an appeal.

          As discussed below, it appears possible that the Examiner intended to reject claims 28, 37 and 45 over Albertson's, Brown, Wyslotsky and Antoon (rather than Sinner).  The Remarks below include an argument that any such putative rejection should be withdrawn.  That argument has been presented in the interests of speedy
20    prosecution, and in the expectation that if the Examiner did indeed intend to reject claims 28, 37 and 45 over Albertson's, Brown, Wyslotsky and Antoon, he will recognize that any such rejection should be withdrawn.  It remains true, however, that, if the Examiner continues to reject claims 28, 37 and 45, any such rejection will either be a
25    new rejection (for example a rejection over Albertson's, Brown, Wyslotsky and Antoon) or will repeat the rejection over Albertson's, Brown, Wyslotsky and Sinner and explain the relevance of Sinner to that rejection.  In either case, it is submitted, a new Office Action will be required.

30

23

Exhibit C

<u>Request to enter the Amendments and to consider the attached Declaration, even if the finality of the Office Action is maintained.</u>

The Examiner is asked to enter the requested amendments, and to consider the

5    attached declaration, even if the finality of the Office Action is maintained.  The amendments made to the existing claims are requested in order to overcome objections or rejections made by the Examiner or in the interests of clarity, and thus place the claims in better condition for appeal.  New claims 73-82 have been added to claim embodiments of the invention which are clearly distinguished from the references.  The

10    Declaration is in large measure directed to factual matters which, it is believed, will be apparent to the Examiner, but which the Applicant wishes to put beyond doubt.

<u>Amendment of the independent claims (claims 1, 35, 44, 52, 60 and 64).</u>

15    Each of the independent claims has been amended to make it clear that

(1)    the container body has a loading orientation, in which both the wall and the partitions extend upwards from the base, thus creating fillable compartments into which, in step (B), the foodstuffs are placed so that the foodstuffs rest on the

20    base -- this has been done in view of the Examiner's comments in paragraph 41 of the Office Action;

(2)    the foodstuffs placed in at least one of the compartments are multiple pieces of a vegetable -- this has been done in order to provide an additional distinction over Sinner, which is concerned only with compartments specifically

25    designed to accommodate a single piece of fruit; and

(3)    the sealing sheet extends over the compartments -- this has been done in view of the Examiner's apparent misunderstanding that the sealing sheet can be a circumferential tamper-proof seal as disclosed in Wyslotsky.

Basis for amendment (1) will be found for example on page 2, line 28, and in the

30    drawings and the description thereof.  Basis for amendment (2) will be found for example in the drawings and the description thereof.  Basis for amendment (3) will be

Exhibit C

found for example on page 6, lines 15-18, which requires that the sealed package containing the foodstuffs has **an outer surface which is defined by the container body and the sealing sheet**, and in the drawings and the description thereof.

5    Amendment of dependent claims 28, 37, 45 and 53 in the interests of clarity.

Claims 28, 37, 45 and 53 have been amended in the interests of consistent terminology, by replacing "support member" by -support tray -.

10    Amendment of claims 31, 40, 48, 56 and 65 and the rejection under 35 USC 112

Claims 31, 40, 48, 56 and 65 have been amended to replace the references therein to partitions which have little or no visible impact by references to partitions which are composed of a polymeric material having a thickness less than 0.125 inch
15    (basis on page 9, lines 5-7), thus overcoming the rejection under 35 USC 112.

Cancellation of claim 54 and the objection under 37 CFR 1.75(c)

Claim 54 has been canceled in order to overcome the objection under 37 CFR
20    1.75(c).

Cancellation of claims 69-72.

Claim 69-72 have been canceled to simplify issues.
25

Addition of new claims 73-82

Dependent claims 72-82 have been added to claim preferred embodiments of the invention.  Basis for claims 73, 75, 77, 79 and 81 will be found on page 3, lines 20-22
30    and page 10, lines 7-11.  Basis for claims 74, 76, 78, 80 and 82 will be found on page 9, lines 16-23, and in the drawings.

25

Exhibit C

The Rejections under 35 USC 103.

Applicant respectfully traverses

5     (a)     the rejection of claims 1, 26, 27, 29, 32-36, 38, 41-44, 46, and 49-51 as unpatentable over Albertson's page 37 (hereinafter Albertson's) in view of US 1,695,366 (hereinafter Brown) and US 2003/0057217 (hereinafter Wyslotsky),

(b)     the rejection of claims 2, 30, 31, 39, 40, 47 and 48 as unpatentable over Albertson's in view of Brown and Wyslotsky, and further in view of US 3,038,625

10     (hereinafter Sinner),

(c)     the rejection of claims 28, 37 and 45 over Albertson's in view of Brown and Wyslotsky, and further in view of Sinner,

(d)     the rejection of claims 52-54 and 57-59 over Albertson's in view of Brown and Wyslotsky, and US 5,045,331 (hereinafter Antoon),

15     (e)     the rejection of claims 55 and 56 over Albertson's in view of Brown and Wyslotsky, and Antoon,

(f)     the rejection of claims 60-63 over Albertson's in view of Brown and Sinner and Wyslotsky, and Antoon, and

(g)     the rejection of claims 64 and 66-72 over Albertson's in view of Brown and

20     Wyslotsky, and Sinner,

insofar as those rejections are applicable to the amended claims, for the following reasons.

This part of Applicant's Remarks is divided into the sections and subsections

25  tabulated below. In many cases, an argument first advanced against one rejection is also relevant to one or more later rejections. In those cases, the argument against the later rejection merely refers to, and does not repeat, the earlier argument.

Exhibit C

| Pg | SECTION A – applicable to all the rejections | |
|---|---|---|
| 30 | A1 | Albertson's does not disclose or suggest partitions as defined in the claims. |
| 31 | A2 | Albertson's and Brown cannot properly be combined. |
| 32 | A3a | The arguments in the Office Action based on a combination of Albertson's and Brown are erroneous. |
| 35 | A3b | Additional reasons why the combination of Albertson's and Brown does not disclose or suggest partitions as defined in the claims |

| 37 | SECTION B – applicable to the rejection of claims 1, 26, 27, 29, 32-36, 38, 41-44, 46 and 49-51 (claims 1, 35 and 44 being independent) over Albertson's, Brown and Wyslotsky. | |
|---|---|---|
| 38 | B1 | Claims 1, 26, 27, 29 and 32-34 (claim 1 being independent) require (i) partitions, a sealing sheet and an atmosphere control member (ACM) as defined, and (ii) **air as the initial packaging atmosphere**. |
| 39 | | B1a    Wyslotsky does not disclose a sealing sheet which is also a tamper evident seal, as alleged by the Office Action. |
| 40 | | B1b    Wyslotsky discloses the possibility of using a sealing sheet **only** in a package having two distinct compartments, separated by the sealing sheet, and loaded with different foodstuffs.  Such packages are excluded from claims 27 and 28. |
| 42 | | B1c    Wyslotsky's packages having a single compartment are already sealed.  There would be no reason, therefore, to add a sealing sheet to them. |
| 42 | | B1d    Wyslotsky discloses only packages in which the initial packaging atmosphere is a controlled (low oxygen) atmosphere, i.e. is not air. |
| 44 | B2 | Claims 26, 35, 36, 38, and 41-43 (claim 35 being independent) require (i) partitions, a sealing sheet and an atmosphere control member (ACM) as defined, and (ii) **no step between steps B and C**. |
| 45 | | B2a    Wyslotsky discloses only packages whose preparation involves an intermediate step between steps B and C |
| 45 | B3 | Claims 27, 44, 46 and 49-51 (claim 44 being independent), require (i) partitions, a sealing sheet and an atmosphere control member (ACM) as defined, and (ii) **that the foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray**. |
| | | B3a    Because Wyslotsky's sealing sheet must separate two distinct compartments, each containing different foodstuffs, a combination of Albertson's and Wyslotsky does not disclose or suggest a container in which the foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray |

Exhibit C

| Pg | | SECTION C – applicable to the rejection of claims 2, 30, 31, 39, 40, 47 and 48 over Albertson's, Brown, Wyslotsky and Sinner. |
|---|---|---|
| 47 | C1 | Claims 2, 31, 40 and 48 (none of which is independent) require **removable partitions**, a sealing sheet and an ACM as defined. |
| 48 | | C1a    Albertson's, Brown, Wyslotsky and Sinner cannot properly be combined. |
| 49 | | C1b    The combination of Albertson's, Brown, Wyslotsky and Sinner does not disclose removable partitions as defined. |
| 51 | C2 | Claims 30, 39 and 47 (none of which is independent) require **molded-in cavity wall** partitions as defined, a sealing sheet and an ACM as defined. |
| 51 | | C2a    Molded-in cavity walls define compartments of fixed size, contrary to Sinner's teaching |

| | | SECTION D – applicable to the rejection of claims 28, 37 and 45 over Albertson's, Brown, Wyslotsky and Sinner) |
|---|---|---|
| 53 | D | Claims 28, 37 and 45 (none of which is independent) require (i) partitions and a sealing sheet as defined, **(ii) an ACM which covers a window in the sealing sheet, and (iii) that, after step E, the foodstuffs rest on the sealing sheet, the sealing sheet is supported by the support tray, and the support tray comprises ribs such that air can circulate between the support tray and the ACM.**  Note; claim 53 has the same requirements. |
| 53 | | D1a.    The combination of Albertson's, Brown, Wyslotsky and Sinner does not disclose or suggest, indeed points away from, an ACM which covers a window in the sealing sheet, because<br>(i)    an ACM over a window in Wyslotsky's sealing sheet would cause the main food container to become anaerobic, making the foodstuffs inedible; and<br>(ii)    an ACM over a window in Wyslotsky's sealing sheet would become blocked by the food additives in the smaller compartment. |
| 54 | | D1b.    Sinner is irrelevant to the rejection. |

| | | SECTION E – this section discusses a putative rejection of claims 28, 37, 45 and 53 of Albertson's, Brown, Wyslotsky and Antoon) |
|---|---|---|
| 56 | E | Claims 28, 37, 45 and 53 (none of which is independent) require (i) partitions and a sealing sheet as defined, **(ii) an ACM which covers a window in the sealing sheet, and (iii) that, after step E, the foodstuffs rest on the sealing sheet, the sealing sheet is supported by the support tray, and the support tray comprises ribs such that air can circulate between the support tray and the ACM.** |
| 56 | | E1a.    A combination of Albertson's, Brown, Wyslotsky and Antoon points away from an ACM over a window in the sealing sheet for the reasons set out in section D1a above. |

Exhibit C

| | | SECTION F – applicable to the rejection of claims 52-54 and 57-59 over Albertson's, Brown, Wyslotsky and Antoon |
|---|---|---|
| 60 | F1 | Claims 52-53 and 57-59 (claim 52 being independent, and claim 54 having been canceled) require (i) partitions and a sealing sheet as defined, and **(ii) an ACM which covers a window in the sealing sheet.** |

| | | SECTION G – applicable to the rejection of claims 55 and 56 over Albertson's, Brown, Wyslotsky, Antoon and Sinner) |
|---|---|---|
| 61 | G1 | Claim 55 requires (i) a sealing sheet and an ACM covering a window in the sealing sheet (see claim 52), and (ii) **molded-in partitions.**<br><br>G1a    Albertson's, Brown, Wyslotsky, Antoon and Sinner cannot properly be combined.<br><br>G1b.    A combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner points away from an ACM over a window in the sealing sheet for the reasons set out in section D1b above. |
| 62 | G2 | Claim 56 (as now amended) requires **an ACM covering a window in the sealing sheet** (see claim 52), and **removable partitions composed of a polymeric material having a thickness less than 0.125 inch.** |
| 62 | | G2a.    Albertson's, Brown, Wyslotsky, Antoon and Sinner cannot properly be combined. |
| 62 | | G2b.    A combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner points away from an ACM over a window in the sealing sheet for the reasons set out in section D1a above. |
| 62 | | G2c.    None of Albertson's, Brown, Wyslotsky, Antoon and Sinner discloses or suggest partitions composed of a polymeric material having a thickness less than 0.125 inch. |

5

| | | SECTION H – applicable to the rejection of claims 60-63 over Albertson's, Brown, Wyslotsky, Antoon and Sinner |
|---|---|---|
| 63 | H1 | Claim 60-63 (claim 60 being independent) require (i) a sealing sheet and an ACM **covering a window in the sealing sheet**, and (ii) **molded-in partitions.** |

| | | SECTION I -- applicable to the rejection of claims 64-72 over Albertson's, Brown, Wyslotsky and Sinner |
|---|---|---|
| 64 | I1 | Claim 64-68 (claim 64 being independent) require (i) a sealing sheet and and (ii) **removable partitions.**  Claim 65 further requires that the removable partitions are composed of **a polymeric material having a thickness less than 0.125 inch.** |

Exhibit C

## SECTION A

Introduction

5    In this section, which is applicable to all the rejections under 35 USC 103, Applicant argues

(1)    that Albertson's does not disclose or suggest partitions as defined in the claims;

(2)    that Brown cannot properly be combined with Albertson's; and

10    (3)    that the combination of Albertson's and Brown does not disclose or suggest partitions as defined in the claims.

For these reasons, all of the rejection should be withdrawn.

(A1)    Albertson's fails to disclose or suggest partitions which extend away from the
15    base of the container body in the same direction as the continuous wall, and which, when the container body is in the loading orientation, "extend upwards from the base (of the container body) and create fillable compartments within the container body".

The primary reference in each of the rejections is Albertson's. Albertson's fails to
20    disclose or suggest partitions as defined in Applicant's claims. This is acknowledged in paragraphs 8, 13, 18, 25, 27 and 34 of the Office Action. Thus, paragraphs 8, 18 and 27 of the Office Action state: --

Albertson's is silent in teaching... using partitions extending from the body to create compartments in the body.

25

The Office Action is, therefore, wrong, or at least misleading, in stating, in paragraphs 10, 20, 29 and 36:-

With respect to providing partitions extending upwardly from the transparent container body, Albertson's domed container body is essentially a lid
30    that is used to initially divide 4 segments of vegetables so when the tray is placed

30

Exhibit C

*over the lid and the structure is inverted, the vegetables remain divided in 4*
*segments on the tray while on display.*

It is not Albertson's container body (or, in Albertson's terminology, "lid"), but the person
following Albertson's instructions, that "divides the lid into four equal sections" and then
5    fills the sections with vegetables.  The act of dividing the container body (or "lid") into 4
equal sections is a process step executed by the person filling the container body (or
"lid")  with vegetables, **made necessary by the absence of any structural**
**components dividing the container body (or "lid") into sections.**  If the container
body (or "lid") already had such components, the instructions would simply say
10    something like "fill the four compartments with the vegetables".

Similarly, the statement in paragraph 34 of the Office Action that Albertson's
"teaches… dividing the body into compartments" and the statement in paragraph 43 that
Albertson's "teaches… dividing the body to accommodate vegetables" are wrong if they
15    are read as implying that Albertson's teaches compartments formed by partitions which
extend upwards from a container body (or, in Albertson's terminology, which extend
upwards from the lid).

(A2)    Albertson's and Brown cannot properly be combined.
20

(a)    Brown is not analogous prior art.

As noted for example in MPEP 2141.01(a) only analogous prior art can be relied
upon to support a rejection under 35 USC 103.  Brown is not analogous prior art,
25    because it is neither in the Applicant's field of endeavor, nor pertinent to the particular
problem with which the inventor was concerned.

Applicant's field of endeavor is the packaging of respiring foodstuffs such as
fresh vegetables.  Brown is not in this field of endeavor because it is concerned with the
30    packaging of **cooked** foodstuffs such as pizza and cake; such packaging does not need

31

Exhibit C

to take account of the consumption of oxygen and production of carbon dioxide which are so important to the packaging of respiring foodstuffs.

The particular problem with which the inventor was concerned was the production of a party tray which contains fresh vegetables, and which provides a combination of good storage properties and an attractive appearance when viewed through the container body, **after reversing the loading orientation**. Brown is not pertinent to this problem, since it is concerned with the packaging of a (cooked) foodstuff which retains an attractive appearance **in the loading orientation**. Brown's package would lose that attractive appearance if the loading orientation was reversed.

(b)    There is no teaching, suggestion or modification to combine Albertson's and Brown.

As noted for example in MPEP 2143.01, a combination of two references cannot be relied on to support a rejection under 35 USC 103 unless there is some teaching, suggestion or motivation to combine the references. The Examiner has not pointed to any such teaching, suggestion or motivation to combine Albertson's and Brown, and Applicant submits that there is no such teaching, suggestion or motivation.

A3.    Even if, contrary to Applicant's argument, Albertson's and Brown's are combined, the combination does not disclose or suggest partitions which extend away from the base of the container body in the same direction as the continuous wall, and which, when the container body is in the loading orientation, "extend upwards from the base (of the container body) and create fillable compartments within the container body".

A3a    The arguments advanced in the Office Action about the combination of Albertson's and Brown are erroneous.

Exhibit C

Paragraph 10 of the Office Action argues that a combination of Albertson's and Brown would have made it obvious to add partitions as defined to Albertson's container body. It states: --

5
*With respect to providing partitions extending upwardly from the transparent container body, Albertson's domed container body is essentially a lid that is used to initially divide 4 segments of vegetables so when the tray is placed over the lid and the structure is inverted, the vegetables remain divided in 4 segments on the tray while on display. Brown, like Albertson's also teaches a transparent lid, or a domed container body, intended to divide and maintain*
10
*separate various portions of food items when paired with tray. However, Brown provides partitions (items 48) extending from the base of the lid. Brown teaches the advantage of providing partitions is that the movement of food on tray is prevented during display and the lid base is provided with structural support (column 1, line 7 to column 2, line 17, column 3, lines 10-24, column 4, lines 26-*
15
*39). Therefore, it would have been obvious to modify Albertson's container body and provide partitions that extend from the base (i.e. in the upward direction during filling) since Brown teaches partitions in a container body that serves as a tray lid will prevent movement of the food items and provide additional structurally support for the body when used as a tray lid. One would have been*
20
*substituting one domed shaped container body design for another for the same purpose: maintaining division between food items supported by a tray covered by a domed container body.*

The intended logic of this statement is by no means clear, because the statement
25
uses the terms "domed container body", "lid", "tray", "body", "tray lid", and "domed shaped container body design" in a way which is both internally inconsistent and inconsistent with the disclosure of the references. Nevertheless, it is clear that both the argument and the conclusion are wrong. Consider, for example, the following passages in the paragraph quoted above: --
30

(i)    *Albertson's domed container body is essentially a lid...*
The component into which Albertson's places vegetables is, in the language of the claims, a container body. Albertson's calls this component a "lid", presumably because it ends up as the top component when Albertson's party tray is put on display.
35
However, this is not the normal meaning of the term "lid" – for example the Merriam-Webster online dictionary (also referred to in paragraph 41 of the Office Action) defines

33

Exhibit C

a lid as "a movable cover for the opening of a hollow container (as a vessel or box)".  It is wrong, therefore, to state that "Albertson's domed container body is essentially a lid".

(ii)    *Albertson's domed container body is essentially a lid that is used to initially divide*
5    *4 segments of vegetables.*

For the reasons given in paragraph A1 above, it is wrong, or at least misleading, to say that Albertson's container body "is used to initially divide 4 segments of vegetables".  It is the person filling the container body, not the container body, that divides the vegetables.

10

(iii)    *Brown, like Albertson's also teaches a transparent lid, or a domed container body, intended to divide and maintain separate various portions of food items when paired with tray.*

The first half of this statement attempts to equate Brown's transparent lid with
15    Albertson's domed container, as part of the argument that it is obvious to transfer the ribs on Brown's lid into Albertson's domed container.  But the statement is wrong.  It ignores the fact that Brown's "lid" is applied to Brown's container body (called a "bottom" in Brown) **which already contains** the pizza, cake or other "fragile food item".  Brown's lid is not a "container body" – it never **contains** anything.

20    The second half of this statement is likewise wrong.  What Brown's lid does, as a result of the ribs on its underside, is to

> *help prevent collapse of the container as well as to help hold the food product and its toppings in position during storage and transport"* (Brown, column 1, lines 7-13);

25    *prevent the distortion of the package panel which "can displace cheese and other pizza toppings, ruining the visual appeal of the pizza"* or in the case of the cake, *"crack or smear icing and decorations"* (Brown, column 1, lines 39-43);

> *provide a package in which the packaged food item is held securely in place and toppings are restricted from migrating throughout the package* (Brown, column 2,
30    lines 5-7); and

34

Exhibit C

*help hold packaged items in position and restrict migration of toppings... form indentations in the packaged food item, thus providing a template for cutting the food items into individual slices* (Brown, column 2, lines 10-28).

Brown's lid does not, therefore, **divide** anything; at most, it provides indentations which
5  provide a guide for later division of the foodstuff.  Nor does Brown **maintain separate various portions of food items**, since the foodstuff in Brown's container body is a single food item (a pizza, cake or the like), not a multiplicity of small food items, like the vegetables in Albertson's.

10  (iv)    *Therefore, it would have been obvious to modify Albertson's container body and provide partitions that extend from the base (i.e. in the upward direction during filling) since Brown teaches partitions in a container body that serves as a tray lid will prevent movement of the food items and provide additional structurally support for the body when used as a tray lid.  One would have been substituting one domed shaped*
15  *container body design for another for the same purpose: maintaining division between food items supported by a tray covered by a domed container body.*

As is shown by paragraphs (i)-(iii) above, the basis for the conclusion in the first sentence of the just-quoted passage is factually incorrect. It follows that the conclusion
20  itself is also incorrect.

For the sake of completeness, it may be added that the second sentence of the just-quoted passage is likewise wrong.  Albertson's does indeed disclose a dome-shaped container body; but Brown's rib-bearing lid is neither dome-shaped nor a
25  container body.

A3b    There are Additional Reasons why the combination of Albertson's and Brown does not disclose partitions as defined in Applicant's claims

Brown's purpose, in placing ribs on the underside of his lid, is to ensure that the
30  pizza, cake or other fragile foodstuff loaded into his container body has a desired appearance when the foodstuff in the loading orientation, i.e. after the lid has been

Exhibit C

removed or when the foodstuff is viewed through a transparent lid (Brown, column 4 line 65 - column 5, line 5). Brown's container, foodstuff and lid **must, therefore, be maintained in the original loading position,** since turning the assembly upside down, as required by Albertson's and by Applicant's claims, would allow pizza toppings, icing,

5    decorations and the like to fall off the top of the foodstuff, thus defeating the purpose of the ribs.

The partitions in Applicant's claims are not only physically placed quite differently from Brown's ribs, but also function in an entirely different way. Applicant's partitions,

10    when the container body is in the loading orientation, create **fillable** compartments within the container body. The partitions are created **before** the foodstuffs are placed in the compartments. Neither Brown, nor a combination of Albertson's and Brown, contains partitions which create fillable compartments as defined in the claims.

15    The deficiencies of the rejection are still more apparent if one considers what must surely be the correct way of modifying Albertson's in view of Brown's teaching, namely that Albertson's lid should be provided with downwardly projecting ribs. This modification would, however, be wholly impractical. Depending upon their strength and sharpness, the downwardly projecting ribs would be unable to penetrate some or all of

20    the vegetables, thus making it impossible to close the lid, and/or would penetrate some or all of the vegetables, thus bruising the vegetables and damaging both their appearance and their storability. In this connection, reference is made to paragraph 3 of the attached Declaration. Thus, this modification would render Albertson's unsatisfactory for its intended purpose, and as MPEP 2145 III states: --

25    *... the claimed combination cannot change the principal of operation of the primary reference or render the reference inoperable for its intended purpose. See MPEP 2143.01*

which states

*If proposed modification would render the prior art invention being*
30    *modified (i.e. Albertson's) unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification.*

Exhibit C

## SECTION B

Introduction

5        Claims 1, 26, 27, 29, 33-36, 38, 41-44, 46 and 49-51 have been rejected over
Albertson's in view of Brown and Wyslotsky.  Each of these claims is directed to a
method which includes the step of

(i)      sealing a sealing sheet of polymeric material to the rim of the container
body, thus creating a sealed package which includes at least one atmosphere
10        control member, and whose outer surface is defined by the container body and
the sealing sheet.

However, each of the independent claims rejected on this ground (claims 1, 35 and 44)
has an additional feature which is relied upon (in combination with the other features of
claim) for patentability, and which is not present in the other independent claims 1, 35
15    and 44, namely

(ii)      the initial packaging atmosphere is air, as in independent claim 1 (and
also claims 2 and 26-34 dependent thereon);

(iii)     there is no intermediate step between step B and step C, as in
independent claim 35 (and also claims 36-43 dependent thereon, and claim
20        26, dependent on claim 1); and

(iv)     after step D,  the foodstuffs rest on the sealing sheet and the sealing
sheet is supported by the support tray, as in independent claim 44 (and also in
claims 45-51 dependent thereon, claim 27, dependent on claim 1, and claim 38,
dependent on claim 35).

25

In view of the differences between the claims rejected on this ground, it is
believed that this rejection is best considered as a number of separate rejections, as set
out below, namely

B1.     A rejection of the claims containing features (i) and (ii), i.e. claims 1, 26,
30        27, 29 and 32-34 over Albertson's, Brown and Wyslotsky.

37

Exhibit C

B2.    A rejection of the claims containing features (i) and (iii), i.e. claims 35, 36, 38 and 41-43 (and 26) over Albertson's, Brown and Wyslotsky.

B3.    A rejection of the claims containing features (i) and (iv), i.e. claims 44, 46 and 49-51 (and 27 and 38) over Albertson's, Brown and Wyslotsky.

5

B1.    <u>The rejection of claim 1 (and dependent claims 26, 27, 29 and 32-34) over Albertson's, Brown and Wyslotsky.</u>

These claims require, as well as other features, **a sealing sheet as defined and**
10  **an initial packaging atmosphere of air.**

This rejection should be withdrawn for the reasons discussed in detail in Sections A1a, A1b and A1c above (applicable to all of claims 1, 26, 27, 29 and 32-34)
**and for the following reasons B1a, B1b, B1c and B1d, which are applicable to all of claims 1, 26, 27, 29 and 32-34**

15  B1a    Wyslotsky does not disclose a sealing sheet which is also a tamper evident seal, as alleged by the Office Action;

B1b    Wyslotsky discloses the possibility of using a sealing sheet only in a package having two distinct compartments, separated by the sealing sheet, and loaded with different foodstuffs -- such packages are excluded from claims 27 and 28, as
20    well as other claims;

B1c    Wyslotsky's packages having a single compartment are already sealed -- there would be no reason, therefore, to add a sealing sheet to them; and

B1d    Wyslotsky discloses only packages in which the initial packaging atmosphere is a controlled (low oxygen) atmosphere, i.e. is not air;

25  **and for the following reasons which are applicable only to the particular claims noted**

B2a    (applicable to claim 26 only)    Wyslotsky discloses only packages whose preparation involves an intermediate step between steps B and C; and

B3a    (applicable to claim 27 only)    because Wyslotsky's sealing sheet must separate
30    two distinct compartments, each containing different foodstuffs, a combination of Albertson's and Wyslotsky does not disclose or suggest a container in which the

38

Exhibit C

foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray.

B1a    Wyslotsky does not disclose a sealing sheet which is also a tamper evident seal.

5

The initial premise of the rejection, as set out in the Office Action, is that Wyslotsky discloses a sealing sheet which is also a tamper evident seal.  Thus, each of paragraphs 21, 31 and 38 of the Office Action states: --

*Wyslotsky et al. further teach it is desirable to provide a sealing sheet (item 31)*
10          *between the body and the tray to serve as a tamper evident seal, wherein the*
            *seal is applied to the container body and the support tray is placed over the*
            *sheet... it would have been further obvious to provide a sealing sheet prior to*
            *applying the tray to the container body of Albertson's... since Wyslotsky et al.*
            *teach applying a sheet over the food items will provide a tamper evident seal for*
15          *the consumer*

The statement that Wyslotsky discloses a sealing sheet which serves as a tamper evident seal is wrong.  Item 31 in Wyslotsky appears in Figures 3E, 4, 8 and 9.  The written description of Figures 3E and 4 does not refer to item 31.  The written description of Figures 8 and 9 in paragraph 47 refers to item 31 in the following
20   passage: --

            *The two opening methods of the package, the peelable seal lid as shown*
            *in Figure 4, and the two versions of the strippable seal opening, generally 36, 38,*
            *as shown in Figures 8 and 9, are tamper evident for the consumers' safety.  Seal*
            *31 is shown in various configurations in these embodiments.*

25   It is clear from Figures 3E, 4, 8 and 9 and the passage just quoted that item 31 is a circumferential tear-off strip which encircles the upper perimeter of the cup and the adjacent lower perimeter of the lid.  Item 31 is not, therefore, a sheet of polymeric material which is sealed to the rim of the container body "so that the sealing sheet extends over the compartments and creates a sealed package... whose outer surface is
30   defined by the container body and the sealing sheet", as required by Applicant's claims.

39

Exhibit C

A modification of Albertson's to include Wyslotsky's item 31 would, therefore, be a party tray as shown in Albertson's, but having in addition a circumferential tear-off strip encircling the junction between Albertson's container body (or as Albertson's calls it, "lid") and Albertson's support tray (or as Albertson's calls it, simply a "tray"). This
5      modification would likewise not create a sealed package having a sealing sheet which the "extends over the compartments and creates a sealed package whose outer surface is defined by the container body and the sealing sheet" as required by Applicant's claims.

10      As discussed in paragraph (B1b) below, does disclose, in a limited context, a membrane (or "sealing sheet"), but its function is not to act as a tamper evident seal, but to divide the container into two distinct compartments.

B1b    Wyslotsky discloses the possibility of using a sealing sheet **only** in a package
15      having two distinct compartments, separated by the sealing sheet, and loaded with different foodstuffs.  Such packages are excluded from claims 27, 28, 36, 44-51, 77 and 78.

The Examiner, having misunderstood that Wyslotsky's sealing sheet is a tamper-
20      evident seal, has not put forward any reasoning which is based on a correct understanding of Wyslotsky's disclosure of sealing sheets.  The following comments are made in the interests of speedy prosecution.

As noted in the previous Reply, Wyslotsky does disclose, in Figures 12 and 13
25      and the descriptions thereof in paragraph 59-62 and 78-82, an embodiment which
   *is particularly useful for the purpose of automating the manufacturing of the*
   **package with two separate compartments 50, 52**
and in which
   **a membrane 54** *is separating the two compartments 50, 52*
30      the separation provided by the membrane 54 being

40

Exhibit C

*for the purpose of* not allowing the food to contact the individual packs of various "fixings"... or to isolate moist components... from contacting the main food.

(see paragraph 60, emphasis added).  Paragraphs 61 and 62 then say: --

5      [0061] The container may be displayed with the main food compartment 50 on the top, while the compartment for "fixings" 54 (sic. should be 52) is on the bottom.  For consuming, the package is turned around, the package is opened by lifting the opening tab and peeling away the seal, as the seal is tamper evident.  Any of the foregoing seals hereof may be used in alternative embodiments.  This

10      feature offers added safety to the consumer.

       [0062] During opening, the membrane is removed by hand and various components in compartment 52 are removed.  The removed components can then be added to the main meal in compartment 50...

These passages make it clear that the tamper evident seal is a circumferential seal of

15   the kind shown in Figures 3E, 4, 8 and 9 under reference 31 (this circumferential seal not being shown, however, in Figures 12 and 13 --see the third line of paragraph 82), and **not** the membrane 54 (which has not, at this point in Wyslotsky, been referred to as a "seal"), and that the membrane 54 is removed in a separate and subsequent step.  This is confirmed, if confirmation be needed, by paragraph 82, which states: --

20         In order to open package 24 of either of Figures 12 or 13, the consumer separates the lid dome 52 from cup or container element 50 by pulling apart the tabs (not shown) on the rims (as shown in Figure 2), and removing dome or lid element 52.  Membrane 54 then is peeled away and the food exposed...

25      It will be clear from the above comments that one skilled in the art would not consider modifying Albertson's by the inclusion of a sealing membrane as disclosed by Wyslotsky unless he wished to produce a container having two distinct compartments.  Albertson's, of course, has a single compartment, and so far as Applicant is aware, there has never been a party tray having an upper compartment containing foodstuffs of

30   one kind and a lower compartment containing foodstuffs of another kind.  Nor is

Exhibit C

Applicant aware of any reason why such a party tray would be desired. In this connection, reference is made to paragraph 4 of the accompanying Declaration.

Applicant recognizes that claims 1, 2, 26, 29-35, 38-43, 60-76, and 81 and 82 are broad enough to cover a party tray having two distinct compartments separated from each other by the sealing sheet. The patentability of those claims would not, therefore, be influenced by the fact that Wyslotsky discloses the possibility of using a sealing sheet **only** in a package having two distinct compartments, separated by the sealing sheet, and loaded with different foodstuffs. However, Claim 27, dependent on claim 1; claim 36, dependent on claim 35; independent claim 44; and claims 45-51, 77 and 78 dependent on claim 44; require that the foodstuffs rest on the sealing sheet and that the sealing sheet is supported by the support tray. Thus, these claims explicitly exclude packages having a second compartment between the sealing sheet and the support tray.

B1c   Wyslotsky's packages having a single compartment are already sealed by a tamper evident circumferential seal. There would be no reason, therefore, to place a sealing sheet across the top of the container body;

As noted above and in the Office Action, all of Wyslotsky's packages include a circumferential tamper-evident seal which joins together the container body and the lid. Therefore, unless there was a positive need for the package to have two separate sealed compartments, there would be no reason to place a sealing sheet over the top of the container body.

B1d.   Wyslotsky discloses only packages in which the initial packaging atmosphere is a controlled (low oxygen) atmosphere, i.e. is not air.

Claim 1 requires that the initial packaging atmosphere within the sealed package should be air. Wyslotsky, on the other hand, requires that the initial atmosphere should

Exhibit C

be a controlled low oxygen atmosphere, i.e. an atmosphere which is not air.  Thus
Wyslotsky states:

> In particular the invention incorporates methodology and structures to
> produce low oxygen packaging with the interior headspace automatically
> regulated to a specific partial pressure of oxygen.  (paragraph 8)
> the technology developed for controlling the oxygen levels described in
> the present invention was developed for reduced oxygen packaging of
> various foods in which the circumstances require safety measures.
> (paragraph 57)

and provides examples of such low oxygen contents in paragraphs 36 and 56 and in
Figures 7A and 7B.

The only circumstance in which Wyslotsky makes use of an atmosphere control
member is when the useful shelf life of the packaged product is to be extended, which
Wyslotsky says requires an initial atmosphere having a low oxygen content, and the
maintenance of that low oxygen content.  Thus, the disclosure of an atmosphere control
member in Wyslotsky is in connection with Figures 10a and 10b.  Wyslotsky states: --

> [0051] Figures 10a and 10 b show another variation of control product
> metabolism for the purpose of extending the useful shelf life of the product being
> packaged.  This embodiment offers the freedom to use any thermoformable
> polymer with high or low diffusion (transmission) rate of gases into the package
> and to provide a controlled supply of oxygen into the package.
> [0052] In these embodiments of the present invention, the metabolic gases
> diffuse through a label 38 which is adhered to cup portion 21...
> [0056] Other preferred embodiments of present invention are directed to low
> oxygen packaging in higher barrier containers.  In many applications... it is
> necessary to maintain a constant minimal level of oxygen... But, a relatively high
> partial pressure of oxygen in the package would cause food oxidation.  It is
> therefore recommended to maintain a constant partial pressure of oxygen for
> most foods of not less than 1% oxygen and not more than 2% oxygen....

43

Exhibit C

[0057] *The technology developed for controlling the oxygen levels described in the present invention was developed for reduced oxygen packaging of various foods in which the circumstances require safety measures. Such foods include all prepared meals, baked goods, meets, sandwiches, fruits, vegetables and*

5  *other foods.*

The Office Action correctly notes that in Albertson's the initial packaging atmosphere is air. However, Applicant submits that it cannot be obvious to modify Albertson's by making use of one part of Wyslotsky's disclosure (an atmosphere control

10  member added to the container body) while rejecting another essential part of Wyslotsky's disclosure (the use of an initial atmosphere which has a low oxygen content, i.e. which is not air); and that a combination of Albertson's and Wyslotsky does not disclose or suggest a method in which the initial atmosphere is air. In this connection, it is pertinent to refer to in re Wesslau, 147 USPQ 391, 393 (CCPA 1965),

15  in which the CCPA stated

*It is impermissible within the framework of section 103 to pick and choose from any one reference to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one skilled in the art.*

20  B2.    The rejection of claims 26, 35, 36, 38 and 41-43 (claim 35 being independent) over Albertson's, Brown and Wyslotsky.

These claims require, as well as other features, **a sealing sheet as defined and no intermediate step between steps B and C.**

25  This rejection should be withdrawn for the reasons discussed in detail in Sections A1a, A1b, A1c, B1a, B1b and B1c above), **and for the following reason B2a.**

30

44

Exhibit C

B2a    Wyslotsky discloses only packages whose preparation requires an intermediate
step between steps B and C.

     Claims 26 and 35-43 require that there is no intermediate step between steps B
5  and C. Wyslotsky, on the other hand, requires that there should be a step between
steps B and C, in order to provide an initial packaging atmosphere which is not air.
Thus, after placing the foodstuff in the cup-like container, the air in the container is
replaced by a suitable gas and the container is then sealed -- see for example

> *after the lidding operation, the air is displaced from the container and is replaced*
10      *with a mixture of gas consisting in alternative embodiments of...* para 0034

     The Office Action correctly notes that in Albertson's there is no intermediate step
between steps B and C. However, Applicant submits that it cannot be obvious to modify
Albertson's by making use of one part of Wyslotsky's disclosure (an atmosphere control
15  member in the container body) while rejecting another essential part of Wyslotsky's
disclosure (preparing the party tray by a method in which there is an intermediate step
between steps B and C); and that the combination of Albertson's and Wyslotsky does
not, therefore, disclose or suggest a method in which there is no intermediate step
between steps B and C. In this connection, it is pertinent to refer to in re Wesslau, 147
20  USPQ 391, 393 (CCPA 1965), in which the CCPA stated

> *It is impermissible within the framework of section 103 to pick and choose from*
> *any one reference to the exclusion of other parts necessary to the full*
> *appreciation of what such reference fairly suggests to one skilled in the art.*

25  B3.    The rejection of claims 27, 44, 46 and 49-51 (claim 44 being independent) over
Albertson's, Brown and Wyslotsky.

     These claims require, in addition to other features, that **after step E, the**
**foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the**
30  **support tray.**

Exhibit C

This rejection should be withdrawn for the reasons discussed in detail in Sections A1a, A1b, A1c, B1a, B1b and B1c

**and for the reasons set out in the following section B3a.**

5      B3a   Because Wyslotsky's sealing sheet must separate two distinct compartments, each containing different foodstuffs, a combination of Albertson's and Wyslotsky does not disclose or suggest a container in which the foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray.

10      As discussed in section B1b, Wyslotsky discloses the possibility of using a sealing sheet **only** in a package having two distinct compartments, separated by the sealing sheet, and loaded with different foodstuffs.  Claims 27, 44, 46 and 49-51 exclude the possibility of such a two-compartment package, because, after step E, the foodstuffs must rest on the sealing sheet, and the sealing sheet must be supported by 15      the support tray.

Exhibit C

SECTION C

Introduction

5       Claims 2, 30, 31, 39, 40, 47 and 48 have been rejected over Albertson's in view of Brown, Wyslotsky and Sinner.

Claim 2, 31, 40 and 48 (and also claims 56, 64 and 65, which have been separately rejected) require, in addition to other features, that **the partitions should be**

10     **removable**. Claims 31, 40 and 48, before the amendment now requested, required that the partitions should (i) be removable, and (ii) have little or no visual impact when the party tray is displayed for sale. Claims 31, 40 and 48 (and also claims 56 and 65) have been amended to require that the partitions are (i) removable, and (ii) composed of a polymeric material having a thickness less than 0.125 inch.

15

Claims 30, 39 and 47 (and claims 55 and 60, separately rejected on other grounds) require, in addition to other features, **that the partitions are cavity walls and that the container body has been prepared by molding a polymeric material, thus forming the base, wall, rim and partitions of the container body at the same time.**

20

In view of the differences between the claims rejected on this ground, it is believed that this rejection is best considered as two separate rejections, as set out below, namely

C1.     A rejection of the claims requiring removable partitions (claims 2, 31, 40

25     and 48) Albertson's in view of Brown, Wyslotsky and Sinner.

C2.     A rejection of the claims requiring cavity walls in a container body prepared by molding (claims 30, 39 and 47) Albertson's in view of Brown, Wyslotsky and Sinner.

30

Exhibit C

<u>C1.    The rejection of the claims requiring removable partitions (claims 2, 31, 40 and 48) Albertson's in view of Brown, Wyslotsky and Sinner.</u>

This rejection should be withdrawn for the reasons discussed in detail in Sections
5   A1a, A1b, A1c, B1a, B1b, B1c and B1d above (applicable to all of claims 2, 31, 40 and 48), and in addition section B1d (applicable to claims 2 and 31 only), or section I1b below (applicable to amended claims 31, 40 and 48 only
**and for the following reasons C1a and C1b.**

10   <u>C1a.    Albertson's and Sinner cannot properly be combined.  Brown and Sinner cannot properly be combined.  Wyslotsky and Sinner cannot properly be combined</u>

Sinner is relied on to make good the failure of a combination of Albertson's, Brown and Wyslotsky to disclose removable partitions.
15

As noted for example in MPEP 2143.01, a combination of references cannot be relied on to support a rejection under 35 USC 103 unless there is some teaching, suggestion or motivation to combine the references.  The Examiner has not pointed to any such teaching, suggestion or motivation for combining Albertson's, Brown,
20   Wyslotsky and Sinner, and Applicant submits that there is no such teaching, suggestion or motivation.

Sinner is concerned with packaging multiple items of premium quality fruit, each fruit being **separately** packed in its own compartment (or cell), each of multiple
25   compartments being bounded by partitions which are compressible, thus "affording resilient cushioning to the articles held within the cell".  Albertson's is concerned with a packaging multiple pieces of fresh vegetables in a container body which is of fixed size and has no compartments.  Brown is concerned with packaging a unitary cooked food item such as a pizza or cake in a container body which is of fixed size; has no
30   compartments separating the unitary food item into separate pieces; and which is covered by a lid including ribs which are impressed into the unitary food item when the

Exhibit C

lid is applied.  Wyslotsky is concerned with packaging "still metabolizing products" and
"fast foods" in (i) a container body which is of fixed size and has no compartments or (ii)
a container which is divided into two compartments, each of fixed size, by a polymeric
membrane.  One of ordinary skill in the art, seeking to modify Albertson's, would not

5      consider Sinner to be a useful source of information, because it is readily apparent that
it would be completely impractical to provide separate packaging for each of the pieces
of fresh vegetable in the party tray. Reference is made, in this connection to paragraph
2 of the accompanying Declaration.  For similar reasons, one of ordinary skill in the one
would not consider Sinner to be a useful source of information for modifying a

10     combination of Albertson's and Brown or a combination of Albertson's, Brown and
Wyslotsky.


        It will be apparent, from the above comments, that Sinner fails to meet the criteria
sets out in MPEP 2141.01(a) for a document which can properly be relied upon in
15     determining the obviousness of a claim under 35 USC 103.


        C1b.   Even if, contrary to Applicant's argument, Albertson's, Brown, Wyslotsky and
Sinner are combined, the combination does not disclose or suggest removable
partitions as defined in amended claims 31, 40 and 48 (and 56 and 65).

20
        Sinner is concerned with packaging multiple items of premium quality fruit, each
fruit being **individually** packed in its own compartment (or cell).  Sinner's invention is
directed to the problem that premium quality fruits, although graded, are not absolutely
uniform in size and shape, and that conventional partitions cannot be adjusted to
25     accommodate such non-uniformity. Sinner's solution to this problem is a box having
cells formed by longitudinal and transverse partitions at right angles to each other.  All
the partitions are generally V-shaped in cross-section.  The longitudinal partitions are
higher than the transverse partitions and have V-shaped apertures such that they fit
over the transverse partitions.  As a result, the dimensions of each cell can be changed
30     by pushing on the sides of the partitions, to accommodate the variable and


                                          49

Exhibit C

unpredictable size of the fruit inserted in the cell. The partitions are preferably made of corrugated board (column 2, lines 8-9 and 18-19).

5   The Office Action asserts that it would have been obvious to modify Albertson's to include removable partitions since Sinner teaches that "this allows the manufacturer to custom fit the package and account for variability in produce size". This assertion, however, ignores the fact that the vegetables in Albertson's party tray vary widely in size and shape, and that it would be wholly impractical (and undesirable) to "custom fit" the package so that the individual pieces of vegetable were placed in individual
10  compartments (see paragraph 2 of the attached Declaration).

    Amended claims 31, 40, 48, 56 and 65 require, in addition to other features, that the partitions are composed of a polymeric material having a thickness less than 0.125 inch. Such partitions (which have little or no visual impact when viewed through the
15  container body) are not disclosed or suggested by Sinner.

    New claims 73-82 provides still further important distinctions over the combination of Albertson's, Brown, Wyslotsky and Sinner, as set out below.

20  Claims 73, 75, 77, 79 and 81 require that the removable partitions are located within the container body by location members formed in the container body as the container body was molded, so that each of the compartments has a fixed size. This is directly contrary to the teaching of Sinner.

25  Claims 74, 76, 78, 80 and 82 require that
    (a)    at least one of the partitions comprises two or more straight portions at right angles to each other and to the base, or
    (b)    at least one of the partitions comprises two or more straight portions at right angles to the base and with a curved portion between them, or
30  (c)    two or more first partitions which are parallel to each other and at right angles to the base, and one or more second partitions which are at right angles

50

Exhibit C

to the first partitions and to the base, some or all of the first and second partitions
are slotted so that they fit together.

Each of these alternatives is entirely different from anything disclosed by Sinner.

5    C2.    The rejection of the claims requiring molded-in cavity wall partitions (claims 30,
39, and 47) over Albertson's, Brown and Wyslotsky.

This rejection should be withdrawn for the reasons discussed in detail in Sections
A1a, A1b, A1c, B1a, B1b, B1c above (applicable to all of claims 30, 39 and 47) and in
10    addition section B1d (claim 30 only), or section B2a (Claim 39 only), or section B3a
(claim 47 only)
**and for the following reason C2a.**

C2a.  Molded-in cavity walls define compartments of fixed size, contrary to Sinner's
15    teaching.

Claim 60, which is an independent claim, requires, in addition to other features,
that the container body has been prepared by molding a polymeric material, thus
forming the base, wall, rim and partitions at same time.  Claims 30, 39, 47 and 55
20    require, in addition to other features, that the partitions are cavity walls prepared by
such a molding process.  Molded-in partitions prepared by this molding process are
integral with the base of the container body and define compartments of fixed
dimensions.  In this connection, reference is made to paragraph 5 of the accompanying
Declaration.
25

Paragraph 14 of the Office Action discusses the rejection of claims 30, 39 and
47, and reads as follows:

*Re: claims 30, 39 and 47, modified Albertson's teaches a body that is*
*made of polymeric material.  It is notoriously well-known to mold polymeric*
30    *container bodies.  Sinner  et al. who also teach produce package with partitions,*
*teaches using removable partitions (i.e. ones not molded with the container body)*

51

Exhibit C

*allows one to package the quantity of a given produce in a given container*
*wherein the produce varies in size (Column 1, lines 16-47). Therefore, to mold*
*the entire container body at once with the partitions would have been an obvious*
*result effective variable of the size variation of the vegetables packaged in the*
5   *container body and whether or not one desired to package the same number of*
*vegetables per division since Sinner et al. teach produce package with*
*removable partitions allow one to package the same quantity of a given produce*
*in a given container wherein the produce varies in size.*

10   Applicant agrees that it is well-known to produce container bodies by molding.
But the issue here is whether it is obvious to use, in a method as claimed in the relevant
independent claim, a container body containing cavity wall partitions formed at the same
time as the remainder of the container body. The claims in question have not been
rejected over a combination of Albertson's, Brown and Wyslotsky, making it clear that
15   the Examiner agrees that a further reference, namely Sinner, is needed. However,
Sinner requires the use of partitions which are placed in the container body **after** it has
been formed and which are carefully designed to produce compartments of **variable**
size. Thus, Sinner points away from the use of molded-in cavity wall partitions (which,
as noted above, necessarily define compartments of fixed size). The Examiner is
20   correct in saying that the cavity wall partitions can be placed so as to produce a number
of compartments of the same volume, or so as to produce compartments of different
volumes reflecting the number of pieces of each type of vegetable to be packaged. But
no such teaching can be derived from Sinner.

Exhibit C

SECTION D

Introduction

5      Claims 28, 37 and 45 have been rejected over Albertson's in view of Brown and Wyslotsky, and further in view of Sinner.

       Each of claims 28, 37 and 45 requires, in addition to other features, **that there is an atmosphere control member (ACM) which covers a window in the sealing**
10     **sheet; that after step E, the foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray; and that the support tray comprises ribs such that air can circulate between the support tray and the ACM.** Claim 53 has the same requirements.

15     This rejection should be withdrawn for the reasons discussed in detail in Sections A1a, A1b, A1c, B1a, B1b, B1c and B1d above (applicable to all of claims 28, 37 and 45), and in addition sections B1d and B3a above (applicable to claim 28 only), or sections E1a and E1b below (applicable to claim 37 and 45 only), **and for the reasons discussed in detail in section and D1a and D1b below.**
20

       D1a.   The combination of Albertson's, Brown, Wyslotsky and Sinner does not disclose or suggest, indeed points away from, an ACM which covers a window in the sealing sheet, because
       (i)      an ACM over a window in Wyslotsky's sealing sheet would
25     cause the main food container to become anaerobic, making the foodstuffs inedible; and
       (ii)     an ACM over a window in Wyslotsky's sealing sheet would become blocked by the food additives in the smaller compartment.

30     Paragraph 15 of the Office Action discusses this rejection and states inter alia: --

53

Exhibit C

*... modified Albertson's includes ribs in both body and tray to provide sufficient air flow between the atmosphere control member and the package, but is silent in teaching the control member covers a window on the sealing sheet and the ribs allow for air to circulate between the control member and sealing sheet...*

5    and

*It would have been further obvious that a control member covers a window on the sealing sheet and the ribs allow for air to circulate between the control member and sealing sheet since modified Albertson's include ribs on both sections of the package (i.e. both body and tray).*

10   When these passages refer to "modified Albertson's", they are presumably referring to Albertson's modified in view of Brown and Wyslotsky, i.e. a container body having an atmosphere control member and sealed by a sealing sheet. In "modified Albertson's": --

(i)    The atmosphere control member (ACM) is part of the main container (containing the principal foodstuff); it is not part of the sealing sheet.

15   (ii)    The sealing sheet lies between two distinct compartments, each formed by a concave container and each containing foodstuffs. This makes it impossible for the sealing sheet to be supported by a support tray or any other member;

(iii)   The ribs on the body and the lid provide structural integrity and/or provide the compartments with additional permeability. They are not in contact with the

20   sealing sheet. They do not, therefore, either facilitate or hinder the operation of the atmosphere control member. In particular, they do not "provide sufficient air flow between the atmosphere control member and the package".

It will be clear, from paragraphs (i)-(iii), that the factual basis for this rejection, in so far as it relies on "modified Albertson's", is incorrect.

25

D1b.  Sinner has nothing to do with an atmosphere control members, and its relevance to these claims is not stated in the Office Action.

The Office Action does not refer to Sinner in the discussion of this rejection. The

30   discussion does, however, refer to another reference, Antoon, which is not part of the rejection. It seems possible that the Examiner intended to refer to Antoon, rather than

Exhibit C

to Sinner, in stating the grounds for this rejection.  In the interests of speedy prosecution, Section E below discusses a putative rejection of claims 28, 37, 45 and 53 under 35 USC 103 over a combination of Albertson's, Brown, Wyslotsky and Antoon.

Exhibit C

SECTION E

Introduction

5

       This section discusses a putative rejection of claims 28, 37, 45 and 53 over Albertson's in view of Brown and Wyslotsky, and further in view of Antoon.

       Each of claims 28, 37, 45 and 53 requires, in addition to other features, **that**
10   **there is an atmosphere control member (ACM) which covers a window in the sealing sheet; that after step E, the foodstuffs rest on the sealing sheet and the sealing sheet is supported by the support tray; and that the support tray comprises ribs such that air can circulate between the support tray and the ACM.**

15      This rejection should be withdrawn for the reasons discussed in detail in Sections A1a, A1b, A1c, B1a, B1b, B1c and B1d above (applicable to all of claims 28, 37 and 45), and in addition sections B1d and B3a above (applicable to claim 28 only), sections E1a and E1b below (applicable to claim 37 and 45 only),
**and for the reasons set out in detail in section E1a below.**

20

E1a.   The combination of Albertson's, Brown, Wyslotsky and Antoon does not disclose or suggest (indeed points away from) an atmosphere control member which covers a window in the sealing sheet.

25      Paragraph 16 of the Office Action reads as follows: --

*... modified Albertson's includes ribs in both body and tray to provide sufficient air flow between the atmosphere control member and package, but is silent in teaching the control member covers a window on the sealing sheet and the ribs allow for air to circulate between the control member and sealing sheet. Antoon*
30   *also teaches including an atmosphere control member that covers a window in a body containing fruit or vegetables. Antoon teaches providing the control*

56

Exhibit C

member in the seal across the body or in the walls will provide the same desired effect, as long as the member is not blocked during storage (Abstract, column 4, lines 36-45, and column 6, lines 35-59). Therefore it would have been further obvious to provide an additional control member in the sealing sheet of

5     Albertson's since Antoon teaches one may provide an atmosphere control member at any location of a container holding produce as long as it does not become obstructed during storage, and by providing a window in the sheet of Albertson's gas flow in and out of the containing party would still be possible. It would have been further obvious that the control member covers a window on

10    the sealing sheet and the ribs allow for air to circulate between the control member and sealing sheet since modified Albertson's includes ribs on both sections of the package (i.e. both body and tray).

Section D1a above discusses the failure of "modified Albertson's" to disclose or

15    suggest the possibility of ribs which will cooperate with an atmosphere control member, and is equally applicable to this putative rejection.

Antoon, so far from teaching that an atmosphere control member can be placed in the sealing sheet of "modified Albertson's", confirms and emphasizes why

20    Wyslotsky's atmosphere control member is in the main container, not in the sealing sheet, and would likewise be so placed in "modified Albertson's". There are at least two reasons for this.

(i)    The first reason is that if the atmosphere control member was moved from the

25    container body to the sealing sheet of the "modified Albertson's", it would not produce the results desired by Antoon or the results of an atmosphere control member placed on the main container body. Both Antoon and Wyslotsky place the atmosphere control member between (a) the packaging atmosphere around the respiring foodstuffs and (b) the outside atmosphere, i.e. oxygen-containing air. There is a good reason for this.

30    Because the air is in infinite supply, the atmosphere control member continues to operate in much the same way for as long as the package is sealed, allowing oxygen to

57

Exhibit C

enter the packaging atmosphere and carbon dioxide to leave the packaging
atmosphere. In this way, the atmosphere control member produces a packaging
atmosphere which "can be predictably controlled at approximately the point required to
retard the ripening process and retain product freshness" (column 2, lines 13-16, of

5    Antoon) or which is "automatically regulated to a specific partial pressure of oxygen
designed to inhibit the growth of anaerobic pathogens and to dispose of undesirable
gases such as ethylene and other metabolites" (Wyslotsky, paragraph 0008). In
"modified Albertson's", if the atmosphere control member is placed on the sealing sheet,
the conditions are entirely different. If the atmosphere control member is placed on the

10    sealing sheet, it lies between two sealed compartments. The main food component is
sealed by the sealing sheet, and the smaller compartment is sealed by the
circumferential seal which holds the two concave containers together (see for example
paragraph 00611). Under these circumstances, the atmosphere control member will
tend to bring the atmospheres in the two compartments into equilibrium. But since the

15    compartments are sealed and the atmosphere control member is not exposed to air (or
any other external source of oxygen), no new oxygen will enter either of the
compartments, and carbon dioxide and other "undesirable gases" will not be disposed
of, but rather will  remain in the sealed compartments. As a result, respiration of the
respiring foodstuffs with exhaust the supply of oxygen and increase the proportion of

20    carbon dioxide and other undesirable gases, thus rendering the foodstuffs inedible. In
this connection, reference is made to paragraph 6 of the accompanying Declaration.

(ii)    The second reason is that if the atmosphere control member was placed in the
sealing sheet, it would very probably blocked by the food additives in the smaller

25    compartment. The Examiner correctly notes that "Antoon teaches providing the control
member in the seal across the body or in the walls will provide the same desired effect,
**as long as the member is not blocked during storage**" (emphasis added). [The
specific disclosure in Antoon is in fact a little narrower, in that it refers to the need to
position the atmosphere control member where it will not be "blocked by other

30    containers in stacking or handling" (column 2, lines 18-20) or "covered by other
containers when it is stacked or packed for shipment" (column 4, lines 43-45), but the

58

Exhibit C

teaching is clear.] When this teaching is applied to Wyslotsky's two-compartment container, with the sealing sheet separating the two compartments, it is immediately apparent that the atmosphere control member should **not** be placed in the sealing sheet. If the atmosphere control member was placed in the sealing sheet, there would
5   be a serious danger that the atmosphere control member would be blocked by the food additives in the smaller compartment. This danger would be particularly acute if the package was stored in the orientation shown in Wyslotsky's Figures 12 and 13. The food additives in question ("salt, pepper sachets, mayonnaise, catsup, and dressing in small bags", paragraph 0081, and "salt, pepper, dressing, sauces etc.... and... moist
10  components such as, for example, pickled cucumbers, cooked fruit", paragraph 0060) have far greater potential to block the atmosphere control member than fresh vegetables, whose surfaces are so irregular that they do not block the atmosphere control member even if they contact it. In this connection, reference is made to paragraph 7 of the accompanying Declaration.

Exhibit C

SECTION F

Introduction

5        This section discusses the rejection of claims 52-54 and 57-59 (claim 52 being
an independent claim) over a combination of Albertson's, Brown, Wyslotsky and Antoon.

         Claim 52 requires, as well as other features, **the presence of an atmosphere
control member which covers a window in the sealing sheet.**  Claim 53 is
10   dependent on claim 52 and **further requires that the support tray comprises ribs
such that air can circulate between the support tray and the atmosphere control
member.**

         This rejection should be withdrawn for the reasons discussed in detail in Sections
15   A1a, A1b, A1c, B1a, B1b, B1c and B3a above (applicable to all of claims 52-54 and 57-
59) , and sections E1a and E1b below (applicable to claim 53 only),

Exhibit C

SECTION G

Introduction

5      This section discusses the rejection of claims 55 and 56 over a combination of
Albertson's, Brown, Wyslotsky, Antoon and Sinner

Claim 55 requires (in addition to an ACM which covers a window in the sealing
sheet and the other features of claim 52) **that the partitions are cavity walls, and that**
10    **the container body has been prepared by molding a polymeric material, thus**
**forming the base, wall, rim and partitions at the same time.** Claim 56 requires (in
addition to an ACM which covers a window in the sealing sheet and the other features
of claim 52) that **the partitions are removably located within the container body**
**and are composed of polymeric material having a thickness less than 0.125 inch**
15    (claim 56, as examined, required that the partitions were removably located within the
container body and had little or no visual impact when the party tray was displayed for
sale).

Since claims 55 and 56 define the partitions in mutually exclusive ways, it is
20    believed that this rejection is best considered as two separate rejections, as set out
below.

G1.    The rejection of claim 55, which requires that the partitions are molded-in cavity
walls, over a combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner.
25

This rejection should be withdrawn for the reasons discussed in detail in Sections
A1a, A1b, A1c, B1a, B1b, B1c, B3a and C2a above,
**and for the following reasons G1a and G1b.**
G1a    Albertson's, Brown, Wyslotsky, Antoon and Sinner cannot properly be combined,
30         for the reasons set out in section C1a;

Exhibit C

G1b    a combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner points away from an ACM over a window in the sealing sheet for the reasons set out in section D1a above;

5    G2.    The rejection of claim 56, which requires that the partitions are removable partitions composed of a polymeric material having a thickness less than 0.125 inch, over a combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner.

This rejection should be withdrawn for the reasons discussed in detail in Sections
10    A1a, A1b, A1c, B1a, B1b, B1c, B3a and C1b above,

**and for the following reasons**

G2a    Albertson's, Brown, Wyslotsky, Antoon and Sinner cannot properly be combined, for the reasons set out in section C1a;

G2b    a combination of Albertson's, Brown, Wyslotsky, Antoon and Sinner points away
15    from an ACM over a window in the sealing sheet for the reasons set out in section D1a above;

G2c    none of Albertson's, Brown, Wyslotsky, Antoon and Sinner discloses or suggests partitions composed of a polymeric material having a thickness less than 0.125 inch.

20

62

Exhibit C

SECTION H

<u>Introduction</u>

5          This section discusses the rejection of claims 60-63 over a combination of
Albertson's, Brown, Wyslotsky, Antoon and Sinner.

            Claim 60 is an independent claim which requires (in addition to other features)
that there should be **an atmosphere control member covering a window in the**
10  **sealing sheet** and **that the partitions should be molded-in partitions**.

            This rejection should be withdrawn for the reasons discussed in detail in Sections
A1a, A1b, A1c, B1a, B1b, B1c, C1a, C2a, G1a and G1b above.

63

Exhibit C

SECTION  I

Introduction

5        This section discusses the rejection of claims 64-72 over a combination of
Albertson's, Brown, Wyslotsky and Sinner.

         Claim 64 is an independent claim which requires (in addition to other features)
that there should be **an atmosphere control member covering a window in the**
10  **sealing sheet** and that **the partitions should be removably located in the container**
**body**. Claim 65 requires (in addition to all the features of claim 64) that the partitions
are removably located within the container body and are composed of polymeric
material having a thickness less than 0.125 inch (claim 65, as examined, required that
the partitions were removably located within the container body and had little or no
15  visual impact when the party tray was displayed for sale).

         Claim 69-72 have been canceled.

         This rejection should be withdrawn for the reasons discussed in detail in
20  Sections A1a, A1b, A1c, B1a, B1b, B1c, C1a, C1b and D1a above.

Exhibit C

CONCLUSION

5      It is submitted that, having regard to the amendments made to the claims, and
the facts and arguments set out above, this application is now in condition for
allowance.  If, however, the Examiner has any remaining issues that could usefully be
discussed by telephone, he is asked to call the undersigned at any time after April 21,
2005.

10

                                                    Respectfully submitted

                                                    T.H.P.Richardson

                                                    Registration No. 28805

15                                                  Tel No. 650 854 6304

Exhibit C

## TRANSMITTAL FORM AND FEE TRANSMITTAL

| Attorney Docket No.: | 14181 | First Named Inventor (a): | Pratte |
| Application No.: | 10/222,435 | Filing Date: | August 16, 2002 |
| Examiner: | Madsen | Group Art Unit: | 1761 |

(a) Where an inventor is not named, alphanumeric identifier provided in lieu thereof.

### This Transmittal Sheet is accompanied by

Reply to Office Action mailed February 9, 2005; Declaration; and an acknowledgment postcard

### Fee Calculations.  (Applicant is a small entity)

Excess claim fees

| | No. in Specification or after Amendment | No. Included in Filing Fee or Previously Paid For | No. Extra (b) | Applicable Fee | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | 53 | -47 = | 6 | x 50/25 (ea) | 150.00 |
| Independent Claims | 6 | -7 = | | x 200/100 (ea) | |
| | | | Subtotal Extra claim fees | ($) | 150.00 |

**Additional fees**

| | | Fee Paid |
|---|---|---|
| Extension for Reply (1, 2, 3, 4 months:  $120/60, 450/225, 1020/510, 1590/795)  **month** | | |
| Notice of Appeal (500/250) | | |
| Petition to Commissioner | | |
| Information Disclosure Statement ($180) | | |
| | Subtotal Additional fees | |

**Total Fees**

| | Total Fees Submitted | $150.00 |
|---|---|---|

### Authorization to Charge Deposit Account for Fees

The Assistant Commissioner for Patents is hereby authorized to charge the above fees and any additional fees required under 37 CFR §§ 1.16 and 1.17, and credit any overpayments to, the following deposit account.

Deposit Account No:  **19-2090**          Deposit Account Name:  **Sheldon & Mak**

This sheet is transmitted **in duplicate** if a fee is due.

---

**CERTIFICATE OF MAILING UNDER 37 CFR 1.8**

I hereby certify that this correspondence is being deposited with United States Postal Service with sufficient postage as first-class mail in an envelope addressed to: Mail Stop AF  Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450
On April 7, 2005
Typed name of person signing this certificate: T. H. P. Richardson
Signature

---

Respectfully Submitted,

Name        T. H. P. Richardson, Reg. No.28,805
Tel. No.     650-854-6304
Fax No.      626-795-6321
Address     Sheldon & Mak
            225 South Lake Avenue
            Pasadena
            CA  91101