07/21/2006  15:13  6508542384                RICHARDSON         **RECEIVED**    PAGE  01/15
                                                                CENTRAL FAX CENTER

                                                                JUL 2 1 2006

Docket No. 14181

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Pratte                    Group Art Unit: 1761

5   Serial No.:   10/222,435              Examiner: Robert Madsen (who has left the

Filing Date: August 16, 2002                    Office)

Title:        Party Tray

### Issue Fee paid March 2, 2006

*15 pages total.*

10   Mail Stop Issue Fee

Commissioner for Patents

P.O. Box 1450

Alexandria, VA 22313-1450

15                      DISCLOSURE UNDER 37 CFR 1.56

In fulfilling the duty of candor and good faith, the information set out below
is disclosed to the Office in accordance with 37 CFR § 1.56. Applicant
understands that this Disclosure Statement will be placed in the file but will not
20   be considered by the Examiner (37 CFR 1.97 and MPEP 609.01).

This information is being disclosed to the Office because it has been
supplied to the Applicant in communications from a lawyer, R. Scott Welde Esq.,
who apparently represents a third party (Foxy Foods, a company manufacturing
25   and supplying party trays), and who has asserted that the information is material.
Applicant disagrees. However, out of an abundance of caution, the information is
being disclosed to the Office. Out of the same abundance of caution, Applicant
is also disclosing to the Office additional information about party trays which were
manufactured and sold by the assignee of the Applicant, Apio, more than one
30   year before filing date of this application, and which are in some respects similar

**CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 CFR 1.8**
IHerebyy certify that this paper is being asent byfacsimile transmission to the United States Patent and Trademark Office
(571-273-8300) on July 21, 2006
Typed name of person signing this certificate: T. H. P. Richardson, Reg No. 26,805, Tel No. 650 854 6304
Signature

Exhibit F

to the party trays allegedly manufactured by Foxy Foods.  As with the information about party trays allegedly manufactured by Foxy Foods, Applicant believes that the information about the party trays manufactured by Apio is not material, and is disclosing it out of an abundance of caution.

5

**Information provided by the lawyer for Foxy Foods.**

In early March, 2006, after the issue fee had been paid on this application (on March 2, 2006), Applicant's attorney received a letter from Mr. Weide.
10    Attached to that letter was a copy of an e-mail message which appears to be dated January 5, 2005, and to be from Jerry.Hull@Sam's Club.com (Jerry Hull, according to the message, being a Senior Produce Buyer at Sam's Club), to *ndacosta@foxyproduce.com,* and which includes four photographs of a party tray described as *"the tray style SAM'S Club purchased from Foxy Foods in January*
15    *2001"*.  Attached hereto as Exhibit A is a copy of that e-mail message.  Since the photographs in Exhibit A are not very clear, and may well become less clear through reproduction, the following description of the photographs is provided.

The photographs show a circular party tray comprising a container body
20    having six compartments, each containing fresh vegetables.  The compartments surround a generally cylindrical dip container in the center of the container body.  A transparent sheet is sealed to the rim of the container body over the compartments and the dip container.  There is a rectangular opaque patch in the transparent sealing sheet.  The patch is positioned between the outer periphery
25    of the dip container and the rim of the container body and somewhat closer to the rim.  A transparent lid fits over the rim of the container body and covers the transparent sealing sheet.  It is not apparent from the photographs that there are any ribs or other conformations on the transparent lid, except around the periphery where the lid engages the rim of the container body.

30

2

Exhibit F

In two of the photographs, the transparent sealing sheet and the
transparent lid are on top of the vegetables, i.e. the container body is in the
orientation in which the vegetables were loaded into the compartments.  In one of
those photographs (underneath which is typed "*Film and membrane on tray with*

5   *rigid tray*"), a label covers most of the flat top of the dip container, leaving an
unmarked peripheral portion; the label is visible through the transparent sheet
and lid.  The other of those photographs (underneath which is written
"*Atmosphere control member/membrane on film*") shows only a part (a part of the
unmarked peripheral portion) of the flat top of the dip container.

10

In the other two photographs, the party tray has been inverted, so that the
transparent sealing sheet and the transparent lid are underneath the vegetables.
In one of those photographs (which has nothing typed underneath it), there
appears to be a label on the curved side of the dip container, but the label is

15   partially obscured by the container body and the vegetables; there is no label on
the flat bottom surface of the dip container (which is visible through the bottom
surface of the container body).  In the other of those photographs [underneath
which is written "*Foodstuffs resting on sealing sheet (with a membrane) and tray
under sealing sheet This picture also shows the partitions*"], the dip container

20   cannot be seen.

Mr. Weide's letter accompanying the e-mail message attached as Exhibit
A states (in relevant part): -

25   *As indicated, this tray had the following features:*
        *1) a container body having a base, an upstanding wall, a rim and*
        *partitions;*
        *2) a sealing sheet which attaches to the rim of the container body,*
        *the sealing sheet having an atmosphere control member; and*
30       *3) a ribbed support tray which is located over the sealing sheet.*

3

Exhibit F

*As illustrated, the tray is used to present foodstuffs such as fresh vegetables. In use, the body is loaded, the sealing sheet is applied to the body, the tray is connected, and then the entire tray is inverted so that the container body becomes the "top" of the tray for presentation/display.*

5

*It appears that this product and its method of use anticipate the claims which have been allowed in Apio's application or, at a minimum, the claims are limited in breadth so as to not otherwise cover the container or its method of use.*

10

In mid-April, 2006, Mr. Weide sent to Applicant's lawyer physical samples of the party tray allegedly purchased from Foxy Foods in 2001. The sample trays did not contain vegetables, did not carry any labels, and did not contain a dip container. Attached hereto as Exhibits B1, B2 and B3 are drawings of those

15    samples. Exhibit B1 shows a perspective view of the container body and sealing sheet, without the lid. Exhibit B2 shows a plan view and a cross-section with enlarged detail, of the container body and sealing sheet, without the lid. Exhibit B3 shows a perspective view, a plan view and a cross-section with enlarged detail, of the lid. The transparent lid (which fits over the sealing sheet and

20    engages the container body) has around its periphery conformations which engage the rim of the container body, and around its center a narrow circular conformation which corresponds generally to the outer periphery of the lid of a dip container placed in the center of the party tray.

25    Mr. Weide's letter accompanying the mid-April physical samples states (in relevant part): --

*My client is attempting to gather supporting documents regarding this container, including information regarding its production and use.*

30

4

Exhibit F

*I understand that the container was normally marked with a product label. This label was placed on the side-wall of the container. So labeled, a consumer had an unobstructed view the foodstuffs through the container when the container was oriented with the either lid at the bottom or the*

5 *base at the bottom, since <u>both</u> the lid and base are transparent. (emphasis in the original)*

*In this regard, the container certainly meets the "whereby the party tray can be displayed for sale in a display orientation in which the*

10 *foodstuffs are viewed by a shopper through the container body" language of claim 35 of the Apio application. Moreover, in that these containers were at one or more times displayed in the "lid" side down orientation, step (E) of claim 35 was satisfied by prior use of this container.*

15 The Apio application referred to in the letter is the present application, which is assigned to Apio.

In response to requests for evidence that the containers in question "were at one or more times displayed in the 'lid' side down orientation", and for a

20 physical sample of the dip container forming part of the party tray, Mr. Weide, in mid-May, 2006, supplied a physical sample of the tray containing a dip container. Mr. Weide's letter accompanying the mid-May physical samples states (in relevant part):

25 *My client is amassing evidence regarding the use of this tray in the "lid" side down orientation. As you can appreciate, it is taking some time to obtain this evidence because it is primarily in the possession of the original users of these trays.*

30 *In that the tray includes a plurality of ribs which extend from the lid and which therefor [sic] create an air space between the lid and the*

5

*sealing sheet which permits air circulation, it is unclear to my client why the tray does disclose [sic] this element of the claim (as asserted in your earlier letter of April 17, 2006). I note that the claim limitation does not recite any particular location of the ribs, the degree of air circulation or*
5     *other feature would appear to distinguish over this tray configuration. My client would appreciate your client indicating in greater detail the basis for its assertion to the contrary.*

    The mid-May sample is substantially the same as the mid-April sample
10 except that it includes the dip container. The flat lid of the dip container is adjacent to the transparent sealing sheet, and carries a label identifying the contents of the container ("Ranch Veggie Dip"). This label is fully visible through the transparent sealing sheet and the transparent lid when the party tray is in the loading orientation, i.e. when the vegetables (when present) rest on the base of
15 the container body. There is no label on the flat base of the dip container. There is also a second label identifying the contents of the dip container ("Ranch Veggie Dip") and secured to the curved surface of the dip container. The second label will be at least partially obscured when the container body is loaded with vegetables. The writing on the second label is the right way up when the party
20 tray is in the loading orientation, i.e. the writing is the wrong way up if the party tray is inverted. The dip container, and the recess in the container body into which the dip container fits, are shaped so that it is not possible place the dip container with its lid adjacent to the bottom of the main container body. Thus, the only orientation of the party tray in which the labels can be read is the loading
25 orientation.

    Applicant does not admit

    (A)    that the party tray samples supplied in mid-April and mid-May, 2006, are substantially identical to party trays which SAM'S Club
30 purchased from Foxy Foods in January, 2001 (after the party tray had

6

Exhibit F

been loaded with vegetables, and the transparent sealing sheet and transparent lid applied thereto); or

(B)    that the party tray itself (i.e. the party tray without regard to its orientation) shown in the photographs communicated in early March, 2006, is substantially identical to party trays purchased by Sam's Club from Foxy Foods in January, 2001; or

(C)    that, even if the party tray itself shown in the photographs communicated in early March, 2006, is substantially identical to party trays purchased by Sam's Club from Foxy Foods in January, 2001, such trays were at any time placed in the inverted orientation (i.e. with the transparent sheet and transparent lid underneath the vegetables) as shown in two of the photographs.

However, even if it is assumed, for the purposes of argument, that the facts set out in paragraphs (A) and (B) are true, it is clear that the party trays which Sam's Club purchased from Foxy Foods in January, 2001 (and their preparation and use), are different from anything that has ever been claimed in this application. An essential feature of all the method claims in this application, both as filed and as allowed, is that the container body (after it has been filled with the foodstuffs while in the loading orientation, the sealing sheet sealed thereto, and the support tray placed thereover) **is turned upside down into the display orientation**. In the application as filed, there were also claims, now canceled, which do not have that essential feature, but which require that the partitions should be removable partitions, as distinct from the conventional cavity wall partitions in the Foxy party trays.

Thus, putting together the information provided by the early-March photographs, the mid-April samples and the mid-May samples, the following conclusions can be reached.

7

Exhibit F

1.    The party tray in the mid-March photographs was assembled only recently, i.e. not before the filing date of the present application.

Two facts (in particular, there are others) lead to this conclusion.

5    (A)    No such party tray could be in existence for more than a relatively short period (because the vegetables would go bad).

(B)    It has not been suggested that the photographs were taken in 2001. Moreover, the description of the photographs as "the tray **style** SAM' S Club purchased from Foxy Foods in January 2001" (emphasis added) confirms that

10    the tray in the photographs is a re-creation of a tray that allegedly existed in 2001.

2.    Foxy's 2001 trays (i.e. the party tray in the early March photographs, and the mid April and mid-May party tray samples) were not intended to be turned

15    upside down, i.e. from the loading orientation into the display orientation, at any time.

Two facts (in particular, there are others) lead to this conclusion, namely: -

(A)    In order for the identifying labels on Foxy's 2001 trays to be read by

20    a shopper, the party tray must be in the loading orientation, with the foodstuffs resting on the base of the container.  It is inconceivable that anyone would design and market a tray which required a purchaser to read an identifying label upside down, or would place an identifying label where the label could only be read by picking up the tray and turning it

25    upside down.  Such a tray would not only be difficult to sell, but also would fail to comply with FDA food labeling requirements.

(B)    If, contrary to the intended use of the tray, the Foxy 2001 tray had been turned upside down, the foodstuffs would then have rested on the sealing sheet, which is thin and flexible.  This would have forced the

30    sealing sheet, including the atmosphere control member, into contact with the lid.  The section of the lid which would have been contacted by the

8

Exhibit F

atmosphere control member is completely flat, and as a result there would have been intimate contact between the atmosphere control member and the lid. This intimate contact would have rendered the atmosphere control member inoperative.

5

Mr. Weide, in the letter accompanying the mid-May samples, refers to a "*plurality of ribs which extend from the lid*" of Foxy's trays and "*create an air space between the lid and the sealing sheet which permits air circulation*". It appears that the "*ribs*" referred to in that statement are the

10   conformations which form a circular pattern corresponding to the top of the dip container. Whether or not those conformations permit air circulation around the top of the dip container under any circumstances, they are too far removed from the atmosphere control member to permit air to circulate between the lid and the atmosphere control member if the party tray is

15   turned upside down, i.e. they will not prevent the intimate contact which would render the atmosphere control member inoperative, as noted above. Thus, the allowed claims in this application are yet further distinguished from the 2001 Foxy Foods party trays by the requirement that the support tray comprises ribs such that, after step (E) -- i.e. the step

20   in which the party tray is turned upside down -- air can circulate between the support tray and the atmosphere control member.

**Party trays manufactured and sold by Apio more than one year before the filing date of the application.**

25

Applicant has previously disclosed information about party trays which are prior art to this application, including the Apio Trade Brochures which are of record. In addition, as noted at the beginning of this Disclosure Statement, more than one year before filing date of this application, Apio sold party trays which are

30   in some respects similar to those allegedly sold by Foxy Foods. Like the party trays illustrated in the Trade Brochures previously disclosed and the party trays

9

Exhibit F

allegedly sold by Foxy Foods, the Apio party trays now disclosed were not designed to be, and were not, turned upside down for display.

The Apio party trays now disclosed comprised a transparent container
5    body with multiple compartments formed by cavity walls extending from the base
of the container body; fresh vegetables within the compartments; a dip container
having its base adjacent to the bottom of the container body; a sealing sheet
sealed to the rim of the container body; and a transparent lid placed over the
sealing sheet. The dimensions of the dip container were such that the lid of the
10    dip container could not be placed adjacent to the base of the container body.
The dip container carried labels which could only be read when the party tray
was in the loading orientation. The container body included a window which was
covered by an atmosphere control member. The sealing sheet did not include a
window covered by an atmosphere control member. The transparent lid was
15    substantially the same as the lid on the mid-April and mid-May physical samples
referred to above.

Respectfully submitted

20

T.H.P.Richardson

Registration No. 28805

Tel No. 650 854 6304

10

Exhibit F

-----Original Message-----
From: Jerry Huff [mailto:Jerry.Huff@samsclub.com]
Sent: Wednesday, January 05, 2005 5:35 AM
To: rdacosta@loveyproducts.com
Subject: RE: Veg Tray

This is the tray style SAMS Club purchased from Lovey Foods in January 2001.

Jerry Huff
Senior Product Buyer
(479)277-7099
Jerry.huff@samsclub.com

EXHIBIT A. Page 1 of 2 pages

SAMS CLUB  CONFIDENTIAL



BEST AVAILABLE COPY

Exhibit F

EXHIBIT A. page 2 of 2 pages.

Tray style shipped to Sam's Club / Wal-Mart in January 2001



Atmosphere control number/membrane on film



Film and moisture on tray with rigid tray



Foodstuffs resting on sealing sheet (with membrane) and tray under sealing sheet
This picture also shows the partitions

BEST AVAILABLE COPY

Exhibit F

07/21/2006  15:13    6508542384    RICHARDSON    PAGE  13/15



ATMOSPHERE CONTROL MEMBER

SEALING SHEET

Exhibit B

BEST AVAILABLE COPY

Exhibit F

07/21/2006  15:13   6508542384              RICHARDSON                    PAGE  14/15



PAGE 14/15 * RCVD AT 7/21/2006 6:09:53 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/17 * DNIS:2738300 * CSID:6508542384 * DURATION (mm-ss):06-44

AVAILABLE COPY

Exhibit F



EXHIBIT B3

DETAIL G
SCALE 4 : 1

DETAIL H
SCALE 4 : 1

SECTION B-B
SCALE 1 : 1

BEST AVAILABLE COPY

Exhibit F