1  Jeffrey G. Sheldon (State Bar No. 67516)
   jgsheldon@usip.com
2  Marc A. Karish (State Bar No. 205440)
   mkarish@usip.com
3  SHELDON MAK ROSE & ANDERSON PC
   100 Corson Street, Third Floor
4  Pasadena, California  91103-3842
   Telephone: (626) 796-4000
5  Facsimile: (626) 795-6321

6
   Attorneys for Plaintiff and Counterdefendant
7  APIO, INC.

8            UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10

11  APIO, INC., a Delaware corporation,        )  Case No.  CV 07-5628 JF/PVT
                                               )
12          Plaintiff,                         )  **PLAINTIFF'S REPLY CLAIM
                                               )  CONSTRUCTION BRIEF AND
13      vs.                                    )  EVIDENCE IN SUPPORT**
                                               )
14  MANN PACKING COMPANY, INC., a              )  [N.D.Cal. Patent Local Rule 4-5(c)]
15  California corporation; and DOES 1 – 10,   )
    inclusive,                                 )  DATE:  September 15, 2008
16                                             )  TIME:  9:00 a.m.
            Defendants.                        )  PLACE:  Courtroom 3, 5th Floor
17  _____   )      The Honorable Jeremy Fogel
                                               )
18  MANN PACKING COMPANY, INC., a              )
19  California corporation,                    )
                                               )
20          Counterclaimant,                   )
                                               )
21      vs.                                    )
                                               )
22  APIO, INC., a Delaware corporation,        )
                                               )
23          Counterdefendant.                  )
24  _____   )

25

26

27

28

# TABLE OF CONTENTS

I.    "RIBS" SHOULD BE CONSTRUED AS "ANY CONFORMATION WHICH ENSURES THAT AIR CAN CIRCULATE BETWEEN THE SUPPORT TRAY AND THE ATMOSPHERE CONTROL MEMBER." ................ 1

    A)    Mann's Proposed Construction is Based on a Misreading of the Claim Language ...................................................................................... 2

    B)    The Patent Says Nothing About the Location of the Ribs ............................ 2

    C)    The Prosecution History Is Inconsistent with Mann's Construction.............. 3

    D)    The Doctrine Of Claim Differentiation Is Applicable And Renders Mann's Proposed Construction Untenable........................................................ 4

    E)    Mann Mischaracterizes The File History ........................................................ 5

    F)    The Statements In The Continuation Application Support Apio's Proposed Construction ...................................................................................... 6

    G)    Apio's Proposed Construction of "Ribs" Does Not Conflict With The Intrinsic Record Because Apio's Proposed Construction Is Taken Verbatim From The Intrinsic Record ............................................................. 7

II.    "SEALING SHEET" SHOULD BE GIVEN ITS ORDINARY AND CUSTOMARY MEANING ............................................................................... 8

III.    "ATMOSPHERE CONTROL MEMBER" SHOULD BE CONSTRUED TO MEAN "ANY MEMBER WHICH MODIFIES THE RATES AT WHICH OXYGEN AND CARBON DIOXIDE PASS INTO AND OUT OF THE SEALED PACKAGE" ...................................................................................... 10

IV.    "ATMOSPHERE CONTROL MEMBER INCLUDED IN THE SEALING SHEET" SHOULD BE CONSTRUED TO PROVIDE "INCLUDED IN" WITH ITS ORDINARY AND CUSTOMARY MEANING OR TO BE "COMPRISING"........................................................................................... 11

VI.    CONCLUSION .......................................................................................... 14

APIO'S REPLY CLAIM CONSTRUCTION
BRIEF AND EVIDENCE IN SUPPORT

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amgen Inc. v. Hoechst Marion Roussel Inc.*,

    314 F.3d 1313 (Fed. Cir. 2003) ................................................................. 9, 13

*AquaTex Industrial, Inc. v. Techniche Solutions*,

    419 F.3d 1374 (Fed. Cir. 2005) ................................................................. 13

*CIAS, Inc. v. Alliance Gaming Corp.*,

    504 F.3d 1356 (Fed. Cir. 2006) ................................................................. 6

*DSW, Inc. v. Shoe Pavilion, Inc.*,

    2008 WL 3842898 (Fed. Cir. 2008) ................................................................. 1. 11

*Honeywell Inc. v. Victor Co. of Japan Ltd.*,

    298 F.3d 1317 (Fed. Cir. 2002) ................................................................. 7

*Honeywell Intern., Inc. v. ITT Industrial, Inc.*,

    452 F.3d 1312 (Fed. Cir. 2006) ................................................................. 7

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*,

    177 F.3d 968 (Fed. Cir. 1999) ................................................................. 4

*Lucent Technologies, Inc. v. Gateway, Inc.*,

    525 F.3d 1200 (Fed. Cir. 2008) ................................................................. 5

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,

    474 F.3d 1323 (Fed. Cir. 2007) ................................................................. 1

*North American Container, Inc. v. Plastipak Packaging, Inc.*,

    415 F.3d 1335 (Fed. Cir. 2005) ................................................................. 1

*Nystrom v. Trex Co.*,

    424 F.3d 1136 (Fed. Cir. 2005) ................................................................. 7

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratoriess, Inc.*,

    520 F.3d 1358 (Fed. Cir. 2008) ................................................................. 4, 5, 11

*Phillips v. AWH Corp.*,

415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 7, 13

SciMed Life System, Inc. v. Advanced Cardiovascular System, Inc.,

242 F.3d 1337 (Fed. Cir. 2001) ............................................................. 3, 13

Seachange International, Inc. v. C-COR Inc.,

413 F.3d 1361 (Fed. Cir. 2005) ................................................................. 4

Sinorgchem Co., Shandong v. International Trade Com'n,

511 F.3d 1132 (Fed. Cir. 2007) ............................................................... 11

SuperGuide Corp. v. DirecTV Enterprises, Inc.,

358 F.3d 870 (Fed. Cir. 2004) ................................................................... 1

Teleflex Inc. v. Ficosa North America Corp.,

299 F.3d 1313 (Fed. Cir. 2002) ........................................................... 1, 11

Toro Co. v. White Consolidated Industrial, Inc.,

199 F.3d 1295 (Fed. 1999) ........................................................................ 7

Varco, L.P. v. Pason Systems USA Corp.,

436 F.3d 1368 (Fed. Cir. 2006) ................................................................. 1

Vitronics Corp v. Conceptronic Inc.,

90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 7, 9

**APIO'S REPLY CLAIM CONSTRUCTION
BRIEF AND EVIDENCE IN SUPPORT**

1    Pursuant to Local Patent Rule 4-5(c) of the United States District Court for the Northern

2    District of California and this Court's Minute Order of February 29, 2008, Plaintiff Apio, Inc.

3    ("Apio") submits this memorandum and evidence regarding proper construction of the claims at

4    issue in reply to Defendant Mann Packing Company, Inc.'s ("Mann") brief.

5    Mann's responsive brief contains a litany of factual errors, misstatements and easily

6    distinguishable case citations to support its proposed claim constructions which are improperly

7    limited to specific embodiments taught in the specification or drawings, rather than the true scope of

8    the claims. As an example of Mann's willingness to play "loosey-goosey" with the law and the facts

9    is the accusation that Mr. Clarke did not disclose his relationship with Apio, when in fact he clearly

10   did. (See Section II below). Moreover, Mann attempts to lead this court to reversible error by

11   improperly reading limitations into the claims. The Federal Circuit has reversed or remanded

12   numerous cases because limitations were improperly read into claims.[1] Further, Mann failed to

13   distinguish any of the cases cited in Apio's Opening Claim Construction Brief.

14   Accordingly, Mann's proposed claim constructions should be rejected in their entirety in

15   favor of Apio's proposed constructions, which find full support in the claims themselves, the

16   intrinsic evidence, and the extrinsic evidence.

17   **I.    "RIBS" SHOULD BE CONSTRUED AS "ANY CONFORMATION WHICH**

18   **ENSURES THAT AIR CAN CIRCULATE BETWEEN THE SUPPORT TRAY AND**

19   **THE ATMOSPHERE CONTROL MEMBER."**

20

21

---

22   [1] See e.g. *DSW, Inc. v. Shoe Pavilion, Inc.,* 2008 WL 3842898 1, 2-3 (Fed. Cir. 2008); *MBO Laboratories, Inc. v. Becton, Dickinson & Co.,* 474 F.3d 1323, 1333 (Fed. Cir. 2007)(" The patent figures all depict the flange connected mainly to the outside, but patent coverage is not necessarily limited to inventions that look like the ones in the figures."); *North American Container, Inc. v. Plastipak Packaging, Inc.,* 415 F.3d 1335, 1348 (Fed. Cir. 2005); *SuperGuide Corp. v. DirecTV Enterprises, Inc.,* 358 F.3d 870, 881 (Fed. Cir. 2004); *Varco, L.P. v. Pason Systems USA Corp.,* 436 F.3d 1368, 1376 (Fed. Cir. 2006); *Teleflex Inc. v. Ficosa North Am. Corp.,* 299 F.3d 1313, 1326-1328 (Fed. Cir. 2002) and cases in Opening Brief §IV(C).

27

28

APIO'S REPLY CLAIM CONSTRUCTION
BRIEF AND EVIDENCE IN SUPPORT

**A)  Mann's Proposed Construction is Based on a Misreading of the Claim Language**

Mann's entire argument about the meaning of "ribs" is based on a clear misreading of the claim language.  Mann mistakenly argues that the claim language states that the "ribs" support the sealing sheet.  The claims say no such thing.

Claims 1, 8 and 14 recite:

D) after step C, placing a support tray over the sealing sheet; and

E) after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and **the sealing sheet is supported by the support tray**, the support tray comprising ribs such that, after step (E) air can circulate between the support tray and the atmosphere control member; whereby the party tray can be displayed for sale in a display orientation in which the foodstuffs are viewed by a shopper through the container body.  (emphasis added) See D.N. 46, Exh. G, pp. 11-12.

Where do the claims state that the ribs support the sealing sheet?  The answer is nowhere.  The claims only state that "the sealing sheet is supported by the <u>support tray</u>" (emphasis added), not the ribs.  The only function recited for the ribs in the claims is the language "comprising ribs such that, after step (E) air can circulate between the support tray and the atmosphere control member."

Since all of Mann's arguments about its construction of "rib" are inconsistent with the claim language itself, they should be disregarded on this ground alone.

**B)  The Patent Says Nothing About the Location of the Ribs**

Mann is not merely trying to read a limitation into the claims from the specification, it is trying to read a limitation into the claims that does not even appear in the specification.  Nowhere in the specification of the patent is there any description of where the ribs are located.  Not in the abstract, summary, drawing description, or claims.  There is a single figure showing ribs, namely Fig. 13, but that is not even identified as a preferred embodiment of the invention.  The Figure merely relates to "a support tray" (D.N. 46, Exh. G, p. 7, col. 7, line 17) with regard to "a container body" (Exh. G., p. 6, col. 6, line 64).  As detailed below, this fact alone distinguishes Mann's cases.

The only statements in the specification with regard to "ribs" are:

"When the sealing sheet includes an atmosphere control member, the support tray preferably comprises ribs such that air can circulate between the support tray and at least the portion of the sealing sheet including the atmosphere control member."

APIO'S REPLY CLAIM CONSTRUCTION
BRIEF AND EVIDENCE IN SUPPORT

(Exh. G, p. 10, col. 6, lines 28 to 32).

"Support tray 5 has discontinuous upstanding ribs 51 so that air can circulate between the support tray and the sealing sheet 4 and the atmosphere control member 41 can regulate the atmosphere around the fresh vegetables in the party tray." (D.N. 46, Exh. G, p. 11, col. 7, lines 20 to 24).

How does this language limit the location of the ribs? It does not, of course.

Actually, the specification gives clear notice to the public that what is described in the specification and shown in the drawings is exemplary and not limiting:

Those skilled in the art will have no difficulty, having regard to their own knowledge and the disclosure of this specification, in manufacturing suitable container bodies, partitions and support trays. (D.N. 46, Exh. G, p. 10, col. 6, lines 35-38)

These facts distinguish all of Mann's cases that rely on statements in the specification as a basis for reading limitations into the claims. For example, Mann's leading case, *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337 (Fed. Cir. 2001), found "compelling" the portion of the specification that described a structure as being "for all embodiments of the present invention contemplated and disclosed herein." There is no such language in the patent in suit.

### C) The Prosecution History Is Inconsistent with Mann's Construction

The location of ribs appeared incidentally in the file history in a few locations, none of which supports Mann's claim construction.

For example, the lack of location for the ribs or other characteristics of the support tray caused the Examiner to initially reject several of the claims as indefinite in the Office action mailed on October 26, 2005. D.N. 46, Exh. H, pp. 069-070. However, as seen in the Interview Summary dated January 12, 2006 and the amendment filed on January 16, 2006, the Examiner agreed that

"it is well-known to those of ordinary skill in the art that an atmosphere control member must have one surface exposed to air and the other surface exposed to the atmosphere which is to be controlled, and that it is, therefore, <u>unnecessary for the specification to state explicitly any additional structural components needed to ensure that the ribs on the support tray enable air to circulate between the support tray and the atmosphere control member.</u>" D.N. 46, Exh. H, pp. 059-060, 063. (emphasis added)

Thus, the Examiner agreed that no additional recitation of components, such as the location of the ribs, was needed in the specification. If such location need not be recited in the

1  specification according to the Examiner, how can there be a basis for reading such a location

2  into the claims?

3       The bottom line is that the size and location(s) of the ribs may vary depending on

4  several factors including the contents of the container body, the size and shape of the

5  container body and the support tray, the type of sealing sheet used and the location and type

6  of atmosphere control member(s) used.  As seen in the drawing below, ribs located around

7  the periphery of the support tray (shown encircled – the ribs being either discontinuous or

8  having openings for air) allow air (shown by arrows) to reach the atmosphere control

9  member (labeled ACM), the claimed function, without supporting the portion of the sealing

10 sheet that extends over the fillable compartments as required by Mann's proposed definition.

11 See Declaration of Raymond Clarke 090208 ("Clarke Decl. 090208"), ¶¶7-8.



AIR

RIB    ACM

17 **D)    The Doctrine Of Claim Differentiation Is Applicable And Renders Mann's**

18 **Proposed Construction Untenable**

19      Mann erroneously states that the doctrine of claim differentiation is only applicable when the

20 construction of a term will cause two claims to have identical scope.  The case Mann cited for this

21 proposition, *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005), does not

22 stand for this proposition.  Rather, *Seachange* states that "[t]he doctrine of claim differentiation

23 stems from 'the common sense notion that different words or phrases used in separate claims are

24 presumed to indicate that the claims have different meanings and scope'" (quoting *Karlin Tech. Inc.*

25 *v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999)).  The doctrine of claim

26 differentiation actually creates a presumption that an independent claim should not be construed as

27 requiring a limitation added by a dependent claim.  *See e.g.,Ortho-McNeil Pharmaceutical, Inc. v.*

28 *Mylan Labs., Inc.*, 520 F.3d 1358, 1562 (Fed. Cir. 2008)("this court strives to reach a construction

4                              **APIO'S REPLY CLAIM CONSTRUCTION**
                               **BRIEF AND EVIDENCE IN SUPPORT**

1  that does not render claim language in dependent claims meaningless"). Mann wrongly proposes

2  adding the word "upstanding" to the independent claims, a construction that improperly makes the

3  word meaningless where it appears in dependent claims.

4

5      **E)    Mann Mischaracterizes The File History**

6          None of the arguments submitted by the Applicant to the Examiner regarding prior art

7  evidence any intent to limit the claims to ribs that are "upstanding projections that support the

8  portion of the sealing sheet that extends over the fillable compartments when the tray is loaded and

9  turned upside down." The only feature of the claimed ribs of import was that the ribs ensure that air

10  can circulate between the support tray and the atmosphere control member.

11          Contrary to Mann's assertions, Apio's construction of ribs does not improperly read on

12  elements in the cited references.[2] As explained in the Information Disclosure Statement filed on

13  July 21, 2006, Applicant acknowledged that the Foxy tray has ribs around the periphery. See D.N.

14  46, Exh. H, p. 002. The Applicant argued, though, that the Foxy ribs are not configured so that "air

15  can circulate between the support tray and the atmosphere control member." *Id.* at pp. 008-009.

16  The Applicant never stated or suggested that ribs around the periphery could not be configured to

17  meet the claim language, only that the Foxy tray ribs do not. Likewise, the Applicant never stated or

18  suggested that flat bottom trays cannot meet the claim limitations. This is not surprising because, as

19  explained in detail in the Information Disclosure Statement of July 21, 2006, the Foxy tray was

20  never intended to be flipped over with the foodstuffs resting on the sealing sheet. *Id.* at p. 008.

21          Likewise, the Applicant's comments regarding a "modified" Albertson's tray (not a real tray

22  but one the Examiner hypothesized) do not say where the ribs need to be located to provide air flow.

23  *See Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1211-1212 (Fed. Cir. 2008)

24  ("statements by the applicants must be read in the context of its overall argument"). The statement

25  that the modified Albertson's ribs do not contact the sealing sheet says nothing about the ribs'

26  _____

27

28  [2] While Mann repeatedly refers to particular references, such as the Albertson's tray and the Foxy tray as "prior art", Mann has failed to present any evidence that these references are in fact "prior

1  location for performing their function of providing air flow.  In fact, Mann is talking out of both

2  sides of its mouth.  Mann alleges inequitable conduct based on non-disclosure of a tray (which in

3  fact never existed) that Mann says was material because it had ribs at the periphery of the support

4  tray.  (See D.N. 4, pp. 6-7).  If this is material, it must be because the claims allow the ribs to be at

5  the periphery.

6      Thus, there is no clear and unambiguous disavowal of claim scope as argued by Mann.

7  Therefore, all of Mann's cited cases are distinguishable.  For example, in contrast to the patentee in

8  *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1362-63 (Fed. Cir. 2006) who expressly

9  disclaimed coverage of a system such as the accused, the Applicant for the '818 patent only

10  disclaimed coverage of ribs that fail to allow "air to circulate between the support tray and the

11  atmosphere control member," a disclaimer that does not include Mann's accused product.

12

13      **F)    The Statements In The Continuation Application Support Apio's Proposed**

14          **Construction**

15      Mann's reference to the continuation application is flawed for the same reasons as its

16  analysis of the claims of the '818 patent, namely that Mann confuses "rib" for "support tray" in

17  supporting the sealing sheet.  The following passage quoted by Mann from a declaration signed by

18  the inventor and submitted to the PTO in a continuation application based on the '818 Patent is

19  instructive.  The declaration refers to the problems that the inventor overcame in making his

20  invention, one of which was "how to support vegetables on a fragile sealing sheet when the tray is

21  flipped over," and states:

22      "I solved that problem by sizing the **support tray** so that it not only supported the
        sealing sheet at locations around the rim of the container body, but also supported the
23      sealing sheet at one or more locations within the circumference of the rim and spaced
        apart from the rim **if, after flipping, the sealing sheet was deformed downwards**
24      **by the weight of the vegetables.**"  See D.N. 48, Exh. G, p. 3, ¶9. (emphasis added)

25      Mann argues that this passage shows that "the inventor himself has admitted that his

26  invention involved supporting the sealing sheet at locations within the circumference of the rim."

27  ────────────────────────────────────

28  art" besides the highly suspect declaration of Foxy's lawyer.

**APIO'S REPLY CLAIM CONSTRUCTION
BRIEF AND EVIDENCE IN SUPPORT**

1    The passage shows no such thing.  The passage simply says that such support is needed "**if**, after

2    flipping, the sealing sheet was deformed downwards by the weight of the vegetables" (emphasis

3    added) making it clear that such support is not needed if there is no such deformation.  Nowhere

4    does the passage state that the ribs support the sealing sheet, and it certainly does not state where

5    such ribs would be located on the support tray.  Once again, Mann misleadingly confuses the

6    support function of the support tray and the air-circulation function of the ribs on the support tray.

7        Thus, Mann's construction finds no support in statements made in the continuation

8    application.

9

10    **G)    Apio's Proposed Construction of "Ribs" Does Not Conflict With The Intrinsic**

11    **Record Because Apio's Proposed Construction Is Taken Verbatim From The**

12    **Intrinsic Record**

13        The remarks in the January 16, 2006 amendment go beyond a mere dictionary definition and

14    expressly clarify what the Applicant meant by the term "ribs".  See D.N. 46, Exh. H, pp. 059-060.

15    Although the explanation contained a dictionary definition in support, the remarks properly clarify

16    the intended meaning of the term in the application.  The definition provided in the amendment in no

17    way exceeds the disclosure and it is this definition that Apio proposes.

18        All of Mann's cases are distinguishable.  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1145 (Fed.

19    Cir. 2005); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) and *Toro Co. v. White*

20    *Consolidated Indus., Inc.*, 199 F.3d 1295 (Fed. 1999), all discuss the relevance of dictionary

21    definitions provided by the parties during litigation.  That is not the situation here.  Apio's proposed

22    definition was stated in the prosecution history and therefore provides explicit notice to the public of

23    what the inventor intended the term "ribs" to mean.  *See, Vitronics Corp v. Conceptronic Inc.*, 90

24    F.3d 1576, 1583 (Fed. Cir. 1996).  This is the definition the examiner relied upon in allowing the

25    application.  Contrary to Mann's assertions, it is entirely proper for a patentee to define a claim term

26    in the prosecution history.  *Honeywell Inc. v. Victor Co. of Japan Ltd.*, 298 F.3d 1317, 1324 (Fed.

27    Cir. 2002)(applicant's broader definition in the file history trumped the narrower more common

28    definition).

**APIO'S REPLY CLAIM CONSTRUCTION**
**BRIEF AND EVIDENCE IN SUPPORT**

1    Therefore, the Court should construe "rib" to mean "any conformation which ensures that air

2  can circulate between the support tray and the atmosphere control member."

3

4  **II.    "SEALING SHEET" SHOULD BE GIVEN ITS ORDINARY AND CUSTOMARY**

5       **MEANING**

6    Mann's proposed construction is indefinite and would confuse a jury (what does "gas-

7  impervious mean? And what levels of permeability qualify as "substantially gas-impervious?").

8  Moreover, Mann's proposed construction is unsupported by the claims themselves, the specification

9  or the prosecution history.  Numerous known polymeric sheets have limited gas permeability or are

10  selectively permeable and are suitable for use as sealing sheets.   D.N. 43, Decl. of Raymond Clarke

11  080808 ("Clarke Decl. 080808"), ¶21.   Accordingly, the term "sealing sheet" should be construed

12  as having its ordinary and customary meaning.

13    All of independent claims 1, 8 and 14 require

14    "sealing a sealing sheet of polymeric material to the rim of the container body so that
      the sealing sheet extends over the compartments and creates a sealed package (i)
15    which contains the foodstuffs and a packaging atmosphere around the foodstuffs, (ii)
      whose outer surface is defined by the container body and the sealing sheet, and which
16    includes an atmosphere control member included in the sealing sheet" See D.N. 46,
      Exh. G, pp. 11-12.

17

18    Nowhere in the claims or the specification is there a statement that the sealing sheet must be

19  "substantially gas impermeable."  Likewise, the prosecution history is devoid of any statements

20  about the permeability properties of the sealing sheet.

21    Mann states that Apio's arguments about Wyzlotsky in the prosecution history somehow

22  show that the sealing sheet must be substantially gas impervious.  Mann's tortured logic makes no

23  sense and the entire discussion of Wyslotsky is irrelevant.  Wyzlotsky teaches a sealing sheet

24  between two package halves that do not allow air to get to the sealing sheet.  Apio pointed out that

25  an atmosphere control member on Wyzlotsky's sealing sheet would not be exposed to air either and

26  would therefore be compromised.  This has nothing to do with whether the sealing sheet is

27  substantially gas-impermeable.

28

8                              **APIO'S REPLY CLAIM CONSTRUCTION**
                               **BRIEF AND EVIDENCE IN SUPPORT**

1    There is no dispute that the "atmosphere control member" is designed to control the

2    atmosphere inside the package.  However, it does not follow that for the "atmosphere control

3    member" to work, the sealing sheet must be "substantially gas impermeable."  Mann's screen door

4    example is even more absurd.  A room does not have to be completely air tight for an air conditioner

5    to cool the room.  There is no clear and unambiguous indication in the prosecution history that the

6    Applicant intended to limit the claims to a "substantially gas-impervious" sealing sheet as required

7    by *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1327-1328 (Fed. Cir. 2003)(the

8    prosecution history may not be used to infer the intentional narrowing of a claim absent the

9    applicant's clear disavowal of claim coverage).

10    Mann's proposed claim construction is inconsistent with the claim language itself which

11    recites a sealing sheet of "polymeric material."  As explained in "Film Properties of Thermoplastic

12    Films," Handbook of Plastics and Elastomers, McGraw-Hill Book Company ©1975, pg. 1-101, 1-

13    102, most polymeric sheets are not "substantially gas impervious".  See D.N. 43, Clarke Decl.

14    080808, ¶21 and D.N. 46, Exh. "D."  Moreover, it was known that polyethylene, a material that is

15    not substantially gas-impervious, was suitable for use as a sealing sheet.  See Clarke Decl. 080808,

16    ¶21.

17    Mann wrongly states that Raymond Clarke's declaration is improper extrinsic evidence.

18    Expert testimony may be used not only to help the court if the intrinsic evidence is insufficient to

19    enable the court to determine the meaning the claims, but also to help the court understand the

20    technology.  *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).  This is

21    exactly what the Clarke declaration does.

22    Mann also wrongly states that Mr. Clarke failed to disclose that he is employed by Apio's

23    parent company, Landec Corporation.  In view of the numerous errors of fact and law in Mann's

24    responsive brief, it is not surprising that Mann misrepresented Mr. Clarke's declaration.  Mr. Clarke

25    states in paragraph 6 that, from 1990 to 2000 he was the director of product development at Landec

26    Corporation and that from 2000 to the present he has been the principle scientist at Apio, Inc.

27    Clarke Decl. 080808, ¶6.  Also attached as Exhibit A was Mr. Clarke's resume which lists Mr.

28    Clarke's employment by both Landec Corporation and Apio, Inc. (See D.N. 46.)  While Mann can

1  argue that he is somehow biased, this is merely argument and does not disqualify Mr. Clarke as an

2  expert. Indeed, Mann does not argue that Mr. Clarke is unqualified to render his opinions and

3  presents no contrary opinion or facts.

4      Perhaps most telling is what Mann reveals in its rebuttal of Apio's arguments about the

5  doctrine of claim differentiation. Mann states that "[c]laim 6 simply precludes the use of another

6  atmosphere control member or gas pathway in the package." That is not what claim 6 says. Claim 6

7  says "wherein the atmosphere control member provides substantially the only pathways for oxygen

8  and carbon dioxide to enter or leave the packaging atmosphere." Claim 6 would therefore be

9  meaningless if the sealing sheet could not also allow gas passage.

10      Therefore, Mann's proposed construction should be rejected and "sealing sheet" given its

11  ordinary and customary meaning.

12

13  **III.**    **"ATMOSPHERE CONTROL MEMBER" SHOULD BE CONSTRUED TO MEAN**

14       **"ANY MEMBER WHICH MODIFIES THE RATES AT WHICH OXYGEN AND**

15       **CARBON DIOXIDE PASS INTO AND OUT OF THE SEALED PACKAGE"**

16      Mann states that "in the prosecution history, Apio consistently characterized the 'atmosphere

17  control member' as an element that 'allows oxygen to enter, and carbon dioxide to leave,' the

18  atmosphere of the package environment." However, Mann has not identified any portion of the

19  prosecution history where the Applicant referred to the atmosphere control member as "an element",

20  and no such reference is present in the portions specifically mentioned (D.N. 48, Exh. C, p. 3; Exh.

21  E, p. 3).

22      Mann further states that the "atmosphere control member" has to be a gas-permeable element

23  because the sealing sheet has to be substantially gas-impervious. In so stating, Mann is constructing

24  a house of cards that must fall because, as explained above, the sealing sheet does not have to be

25  "substantially gas impervious."

26      Moreover, in related U.S. Patent Application Nos. 11/408,442, 11/408,443 and 11/409,354,

27  all having the same specification as the '818 Patent, the Examiner noted that the term "atmosphere

28  control member" is specifically defined in the specification as being very broad, stating:

     **APIO'S REPLY CLAIM CONSTRUCTION**
**BRIEF AND EVIDENCE IN SUPPORT**

1

2
"The specification recites wherein the limitation "atmosphere control member"
denotes any member which modifies the rates at which oxygen and carbon dioxide
3
pass into and out of the sealed package." In the claims this limitation is broad since
any member can modify the rate at which oxygen and carbon dioxide pass into and
4
out of a sealed package. For instance, adding a second layer on top of the sealed
package would also modify the rate at which oxygen and carbon dioxide pass."
5
Exhibit "I."

6    The Examiner considered a second layer, which need not be "gas-permeable," on top of the sealed

7    package to be an atmosphere control member.

8          Thus, there is simply no requirement that the atmosphere control member be a "gas-

9    permeable element" and the Court should sustain the definition of "atmosphere control member"

10   explicitly set forth by the Applicant in the specification. See, _Sinorgchem Co., Shandong v._

11   _International Trade Com'n_, 511 F.3d 1132, 1136 (Fed. Cir. 2007).

12

13   **IV.    "Atmosphere Control Member Included In The Sealing Sheet" Should Be Construed to**

14            **Provide "Included In" With Its Ordinary And Customary Meaning Or To Be**

15            **"Comprising"**

16          As with "ribs," Mann's proposed construction of "Atmosphere Control Member Included In

17   The Sealing Sheet" is a transparent attempt to impermissibly limit the claims to a specific

18   embodiment in the specification. See, e.g., _DSW, Inc. v. Shoe Pavilion, Inc._, 2008 WL 3842898 1,

19   2-3 (Fed. Cir. 2008); _Teleflex Inc. v. Ficosa North Am. Corp._, 299 F.3d 1313, 1326-1328 (Fed. Cir.

20   2002)(reversing claim construction that impermissibly imported limitation from only embodiment in

21   the specification) and cases cited in Opening Claim Construction Brief, Section IV(C).

22          As an initial matter, Mann fails to even address Apio's argument that Mann's interpretation

23   is untenable under the doctrine of claim differentiation. Mann's proposed construction should be

24   rejected on this basis alone. As explained in Apio's opening brief, Mann's proposed construction of

25   "atmosphere control member included in the sealing sheet" would impermissibly render claims 3

26   and 9 redundant. See _Ortho-McNeil Pharmaceutical, Inc. v. Mylan Labs., Inc._, 520 F.3d 1358, 1562

27   (Fed. Cir. 2008)("this court strives to reach a construction that does not render claim language in

28   dependent claims meaningless").

1    Mann's remaining arguments fly in the face of the claims, specification and prosecution

2    history. The specification explicitly defines "atmosphere control member" as "any member which

3    modifies the rates and which oxygen and carbon dioxide pass into and out of the sealed package."

4    The specification continues that "[a]tmosphere control members are well-known and are described

5    for example In U.S. Pat. No. 6,376,032 and WO 00/0477"[3] (emphasis added). The specification

6    further continues that "[a]n atmosphere control member can for example be placed over a window in

7    the container body and/or over a window in the sealing sheet" (emphasis added). As repeatedly

8    stated, the incorporated references are merely examples of possible atmosphere control members and

9    placing an atmosphere over a window in the sealing sheet is merely an example of one possible

10   application of an atmosphere control member. This is distinguishable from Mann's cited case,

11   *Honeywell Intern., Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1316 (Fed. Cir. 2006), in which the

12   written description contains a very narrow, limited structure of the term at issue and does not

13   indicate that the structure is merely one embodiment of the claimed invention.

14       During the prosecution history, Applicant reiterated that the term atmosphere control member

15   is "any member which modifies the rates at which oxygen and carbon dioxide pass into and out of

16   the sealed package." See Amendment and Response to Office Action filed on November 3, 2004, p.

17   22, lines 2 to 4, D.N. 46, Exh. H, p. H-259. In that same Amendment, Applicant further stated that

18   "an atmosphere control member can for example be a nonwoven material, optionally having a

19   polymer coating thereon; a microporous film, optionally having a polymeric coating thereon; or one

20   or more perforations having a size such that they control the packaging atmosphere. *Id.*, pg. 23,

21   lines 5 to 18; See also, D.N. 43, Clarke Decl. 080808, ¶¶12-15. The clarification in the Amendment

22   of November 3, 2004 in no way extends the very broad definition provided in the specification.

23

24   _____

25   [3] Mann contends that because of a typographical error in the specification, the incorporation by
     reference of WO 00/04787 fails. Apio disagrees, because one skilled in the art can easily tell which

26   reference Applicant was referring to from the listed foreign patent documents on the issued patent,
     and the WO 00/04787 reference itself which was submitted to the U.S. Patent Office during

27   prosecution. Moreover, the Examiner in the continuation application had no objection to the
     Applicant correcting the typographical error. However, the incorporation of WO 00/04787 is of

28   limited relevance because it was being incorporated as merely one example of possible "atmosphere
     control members."

**APIO'S REPLY CLAIM CONSTRUCTION
                 BRIEF AND EVIDENCE IN SUPPORT**

1    Nowhere in the file history is there a clear disavowal of claim coverage from the broad

2    definition provided in the specification. *See, Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d

3    1313, 1327-1328 (Fed. Cir. 2003) and other cases cited in Opening Brief in Section IV(E).

4    Moreover, the representations made in the prosecution history help define the scope of the term,

5    thereby distinguishing the present facts from those in *AquaTex Indus., Inc. v. Techniche Solutions*,

6    419 F.3d 1374, 1380-1381 (Fed. Cir. 2005) in which the Court held that the arguments made during

7    prosecution "neither support nor discredit any particular meaning" of the term at issue.

8    Mann wastes time with meritless non-infringement arguments that have no bearing on claim

9    construction.  Mann then cites to several inadmissible Apio documents.  Mann fails to provide

10   evidence that the cited Apio documents, Exhibits I and J to Mann's Brief, were in existence at the

11   time the '818 Patent was filed.  Because the goal of claim construction is to determine what the

12   meaning of terms were to a person of ordinary skill in the art, at the time of invention, i.e., as of the

13   effective filing date of the patent application, the Court should give little weight to publications not

14   proven to be in existence as of the filing date of the application. *Phillips. v. AWH Corp*, 415 F.3d

15   1303, 1312-1313 (Fed. Cir. 2005).

16   Despite all of its claims, Mann fails to identify any incorporated patent or other intrinsic or

17   extrinsic evidence stating that perforations are not "atmosphere control members."  Therefore, the

18   present case is easily distinguishable from *SciMed Life Systems, Inc. v. Advanced Cardiovascular*

19   *Systems, Inc.*, 242 F.3d 1337, 1342-1343 (Fed. Cir. 2001) in which the Applicant explicitly limited

20   the scope of a given term in the specification and disclaimed other prior art ingredients.  Applicant

21   did no such thing.

22   Accordingly, Mann's proposed construction should be rejected.

23   ///

24   ///

25   ///

26

27

28

**APIO'S REPLY CLAIM CONSTRUCTION**
     **BRIEF AND EVIDENCE IN SUPPORT**

1    **VI.    <u>CONCLUSION</u>**

2         For the foregoing reasons, the Court should adopt Plaintiff's claim constructions.

3

4    DATED:  September 2, 2008                 SHELDON MAK ROSE & ANDERSON PC

5

6                                             By:  _____

7                                                  Jeffrey G. Sheldon
                                                   Marc A. Karish
8                                                  Attorneys for Plaintiff
                                                   APIO, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APIO'S REPLY CLAIM CONSTRUCTION
                                             BRIEF AND EVIDENCE IN SUPPORT

**PROOF OF SERVICE**
CCP §§ 1013, 1013a  (New January 1, 2005)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1.    At the time of service I was over 18 years of age and **not a party to this action**.

2.    My business address is: 100 Corson Street, Third Floor, Pasadena, CA 91103-3842.

3.    On **September 2, 2008**, I served the following document(s):

    X   The documents are listed on Attachment "A."

4.    I served the documents on the **persons** below, as follows:

    a. **Name** of person served:

    b. **Address** of person served:

    c. **Fax Number** or **e-mail address** of person served, if service was by fax or e-mail:

    d. Time of service, if personal service was used:

    X The names, addresses, and other applicable information about the persons served is on Attachment "B."

5.    The documents were served by the following means (specify):

    a. ☐ **By personal service**.  I personally delivered the documents to the persons at the addresses listed in Item 4.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

    b. ☐ **By United States mail**.  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in Item 4 and (specify one):

        (1) ☐ **deposited** the sealed envelope with the United States Postal Service, with the postage fully prepaid.

        (2) ☐ **placed** the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Pasadena, California.

    c. ☐ **By overnight delivery**.  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in Item 4.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐   **By messenger service.**  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in Item 4 and providing them to a professional messenger service for service.  *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐   **By fax transmission.**  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in Item 4.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached.

f. X   **By e-mail or electronic transmission.**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in Item 4.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

g. X   **By E-FILING.**  The document will be E-Filed with the Court and a "Notification of E-Filing" will be e-mailed by the Court to all registered attorneys.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I further declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

Executed on **September 2, 2008** at Pasadena, California.

Donald K. Piper

## DECLARATION OF MESSENGER

☐   **By personal service.**  I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in Item 4.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age.  I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on (date):

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on **September 2, 2008** at _____, California.

_____
(Name of Declarant)

_____
(Signature of Declarant)

ATTACHMENT "A" TO PROOF OF SERVICE

LIST OF DOCUMENTS SERVED

1.    PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF AND EVIDENCE IN SUPPORT;

2.    SUPPLEMENTAL DECLARATION OF RAYMOND CLARKE IN SUPPORT OF PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF.

**ATTACHMENT "B" TO PROOF OF SERVICE**

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| Name of Person Served | Address (business or residential), Fax, or E-mail (as applicable) Where Served | Manner of Service |
|---|---|---|
| Virginia A. Crisp, Esq. | COBLENTZ, PATCH, DUFFY & BASS LLP<br>One Ferry Building, Suite 200<br>San Francisco, California 94111-4213<br>Fax: 415-989-1663<br>Email: ef-vac@cpdb.com | Email and ECF |
| Joseph S. Presta, Esq.<br>Michael E. Crawford, Esq. | NIXON & VANDERHYE P.C.<br>901 North Glebe Road<br>Arlington, Virginia 22203<br>Fax: 703-816-4100<br>Email: jsp@nixonvan.com;<br>mec@nixonvan.com | Email and ECF |