**E-Filed 4/29/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APIO. INC.,

           Plaintiff,

   v.

MANN PACKING COMPANY, INC.,

           Defendant.

Case Number C 07-5628 JF (PVT)

**ORDER[1] RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

## I. BACKGROUND

Plaintiff Apio, Inc., ("Apio") alleges infringement of United States Patent No. 7,083,818 ("the '818 patent") by Defendant Mann Packing Co., Inc. ("Mann").[2] The '818 patent pertains to a method of preparing so-called "party trays," which typically contain a combination of fruits,

---

[1] This disposition is not designated for publication in the official reports.

[2] On December 13, 2007, Mann filed an answer asserting a counterclaim against Apio for a declaratory judgment of noninfringement, invalidity, and unenforceability of Apio's patent.

vegetables, dip, or other foodstuffs displayed to consumers in a supermarket. The tray taught by the '818 patent is known as a "flip tray." Creating such a tray begins with a plastic container body. Foodstuffs are placed in the container body, at which point a polymeric sealing sheet is applied. The container body is then inverted and placed onto a hard plastic support tray. In this display position, the foodstuffs rest upon the sealing sheet.

On October 12, 2008, this Court issued an order construing the terms "ribs," "atmosphere control member," and "atmosphere control member included in the sealing sheet," as recited in the '818 patent.[3] On the basis of that order, Mann filed a motion for summary judgment of non-infringement on December 23, 2008. Apio opposed the motion on the ground that it lacked adequate discovery and was unable to provide a substantive response. Apio therefore requested a continuance pursuant to Federal Rule of Civil Procedure 56(f). By order dated February 3, 2009, the Court agreed to continue the hearing date to accommodate additional discovery and to allow Apio to complete certain tests and file a cross-motion for summary judgment of infringement. Apio now has filed motions for summary judgment of infringement and, responding to Mann's counterclaims, for summary judgment that it did not engage in inequitable conduct.

Having considered the parties' cross-motions for summary judgment with respect to infringement, the Court agrees with Mann that its trays do not infringe the '818 patent. Moreover, while a district court ordinarily is "obligated to consider and rule on defendant's counterclaims of invalidity and unenforceability prior to entering judgment" notwithstanding a determination of non-infringement, *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1321 (Fed. Cir. 2001), Mann has agreed not to pursue its counterclaims if summary judgment is

---

[3] The Court declined to construe the term "sealing sheet," noting that the term has a common meaning among persons of ordinary skill in the art, and that the parties' apparent dispute regarding the term was in essence reducible to their dispute regarding the terms "atmosphere control member" and "atmosphere control member included in the sealing sheet." *See* Order at 19:10-16; Transcript of Hearing on October 1, 2008, at 48:5-49:2; *see also O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008).

2

Case No. C 07-5628 JF (PVT)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC3)

granted in its favor. Accordingly, Apio's motion for summary judgment that it did not engage in inequitable conduct will be terminated as moot.

## II. LEGAL STANDARDS

### A. Summary judgment

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citing Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view the evidence in the light most favorably to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Torres v. City of Los Angeles*, 540 F.3d 1031, 1039-40 (9th Cir. 2008). The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324.

### B. Patent infringement

The patent infringement inquiry involves a two-step analysis: first, the court determines the scope and meaning of the claim terms; and second, the court compares the claims, as construed, to the accused device. *Nazomi Communications Inc. v. ARM Holdings PLC*, 403 F.3d 1364, 1367-68 (Fed. Cir. 2005); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). For literal infringement to be found, the accused product must contain each limitation of the asserted claim. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *Catalina Int'l. Marketing, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). The absence of any single limitation in the accused device requires a finding of no infringement. *V-Formation*, 401 F.3d at 1312. The patentee bears the burden of proving infringement by a preponderance of the evidence. *Group One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1301 (Fed. Cir. 2005).

## III. DISCUSSION

Mann moves for summary judgment of non-infringement on the ground that its products lack the "ribs" claimed by the '818 patent, as that term has been construed by the Court. Apio,

while required to demonstrate the existence of each claimed limitation in Mann's trays in order to show infringement, also focuses on the term "ribs." Given the centrality of that term to the instant dispute, the Court first must determine whether Mann's products have "ribs."

Each independent claim of the '818 patent recites a method of preparing a party tray which comprises, in relevant part, the following steps:

> D) after step C, placing a support tray over the sealing sheet; and E) after step D, turning the sealed package and the support tray placed thereon upside-down, so that the foodstuffs rest on the sealing sheet, and the sealing sheet is supported by the support tray, the support tray comprising ribs such that, after step (E) air can circulate between the support tray and the atmosphere control member . . .

'818 Patent, Claims 1, 8, 14. The "ribs" limitation thus is applicable to each claim asserted in this action. In its construction of the term "ribs," the Court largely adopted Apio's broad definition and rejected Mann's contentions that the ribs must be "upstanding" or provide subjacent support to the sealing sheet. Order at 18:25-19:2. Nonetheless, the Court tailored its construction to reflect several important disclaimers made by Apio during prosecution to distinguish the claimed "ribs" from similar conformations that were represented widely in the prior art. The Court explained:

> [I]t is essential that any construction of "ribs" cover only those conformations that, *through contact with the sealing sheet, create a structural relationship between the sealing sheet and support tray where such relationship is necessary for the continued circulation of air to the ACM*.

*Id*. at 12:9-12 (emphasis added). Further, and again based on explicit disclaimers in the prosecution history, the Court observed that "a mere ripple of plastic on the support tray" that simply "provides permeability or structural strength" to the package would not qualify as a "rib" for purposes of the '818 patent. *Id*. at 19:3-7. In light of these conclusions, the Court construed the term "ribs" to mean "any conformation on the support tray that is in contact with the sealing sheet and necessary to permit air flow to the ACM by preventing its contact with the support tray." *Id*. at 19:7-9. As this definition and the Court's accompanying discussion make clear, any conformation that does not "create a structural relationship between the sealing sheet and support tray . . . through contact with the sealing sheet" is not a "rib" within the meaning of the

1  '818 patent.[4]

2    Mann argues that its flip-trays lack any conformations that might constitute "ribs" because it uses a heat-sealing technique to bond the sealing sheet both to the container body and to all internal partitions after the foodstuffs are deposited into their respective compartments but before the container body is flipped over and placed onto the support tray.  This heat-sealing technique purportedly is the sole means by which contact between the sealing sheet and the support tray is prevented–such prevention being the sole function of the "ribs" in the '818 patent.  Mann explains that neither the "snaps" at the corner of its trays nor the "peripheral ledges" running along the edges of the support tray can qualify as "ribs" because the sealing sheet independently is separated from the support tray by the heat-sealing process.  In addition, Mann emphasizes that although the sealing sheet used in its products does come into contact with the "ledges," such contact is merely "incidental," since it is not *through that contact* that Mann achieves any structural separation between the *sealing sheet* and the *support tray*–that function being accomplished by bonding the sealing sheet to the superjacent container body.

    Undoubtedly, the "peripheral ledges" on Mann's trays are the conformations most susceptible of classification as "ribs."  Apio relies on two theories to demonstrate that such a classification is warranted.  First, Apio observes that "[i]n Mann's tray, air flows to the [atmosphere control members][5] though the vents between the peripheral ribs and the support tray."  Apio argues that "[s]ince the vents are formed by the ribs, the ribs are necessary to the air flow."  Apio MSJ of Infringement, at 9:12-15.  However, the premise of this argument is flawed.  Whether or not the vents actually permit air to enter the package, there is no requirement that the

---

[4] The Court recognizes that this relationship might have been made more explicit by defining the term "rib" as, for example, "any conformation on the support tray that is in contact with the sealing sheet and *thereby* necessary to permit air flow to the ACM by preventing its contact with the support tray."  As noted, however, the requirement that the structural separation be created *through* contact with the sealing sheet is explicit in the text immediately preceding the construction, where the requirement is grounded in Apio's unambiguous prosecution disclaimers.

[5] Apio argues that micro-perforations in Mann's sealing sheets constitute "atmosphere control members."  The Court need not decide whether that is the case.

air flowing to the ACMs originate outside of the package. Apio does not and cannot claim that, but for the vents, no air of any character or origin would flow to the ACMs. Because the vents are not necessary to ensure air flow to the ACMs, the peripheral ledges do not derivatively assume the status of "ribs."[6]

Second, Apio relies on the results of an experiment conducted by Professor Morteza Gharib of the California Institute of Technology to demonstrate that Mann's "peripheral ledges" serve the claimed "ribs" function in that they are necessary to prevent contact between the atmosphere control members and the support tray. In his experiment, Professor Gharib excised the peripheral ledges of Mann' trays using a knife. Professor Gharib concluded that without the ledges, the sealing sheet came into contact with the support tray at multiple locations, presumably including locations that contained an atmosphere control member.[7] Apio thus argues that regardless of whether the heat-sealing process plays some role in preventing the atmosphere control members' contact with the sealing sheet, the peripheral ledges still are necessary to ensure air flow to the ACMs, and therefore constitute "ribs."[8] As a corollary, Apio

---

[6] This conclusion is consistent with the Court's admonition, based on Apio's prosecution disclaimers, that "a mere ripple of plastic on the support tray" that simply "provides permeability or structural strength" to the package would not qualify as a "rib" for purposes of the '818 patent. Order, at 19:2-7; *see also id*. at 12:13-13:4. As noted in the Claim Construction Order, Apio's disclaimer was unsurprising in light of the extensive representation of such features in the prior art.

[7] Mann objects to Apio's reliance on the Gharib experiment for the proposition that the absence of the ledges would cause the tray's micro-perforations, which Apio considers ACMs, to make contact with the support tray. Mann notes that while Professor Gharib claimed in his declaration to have discovered that actual micro-perforations in Mann's sealing sheets came into contact with the support tray when the ledges were removed, he later admitted that he lacked knowledge of the location of the actual perforations and therefore had guessed at where the perforations might be. As will become clear, the resolution of this dispute does not affect the Court's determination as to whether Mann's trays have "ribs."

[8] Mann also criticizes Professor Gharib's experiment as "flawed" in that it required "destroy[ing] the structural integrity of Mann's tray, [thus] compromising the positional and spaced relationship between the tray and the container body." Without scrutinizing Professor Gharib's methods, the Court notes that the principle underlying the experiment is simple and may be conceptualized without the need for any physical alteration of the tray: if the ledges are

6

argues that Mann's heat-sealing process merely is an "additional feature" that does not avoid infringement. Apio is correct that a structure which actually performs a patented function may infringe even though its operation requires an additional structure. *See JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1333 (Fed. Cir. 2005) (noting that additional features do not defeat infringement, and concluding that clips holding a steering wheel column in place infringed a patent on such a structure even though the effectiveness of the clips on the accused device required additional structures not present in the relevant claims).

However, Apio's argument ultimately is unavailing because Mann's peripheral ledges do not perform the claimed function as that function has been interpreted by the Court. The peripheral ledges no doubt create a structural relationship between the support tray and the container body. But because the sealing sheet on Mann's trays is perfectly sealed not only to the rim of the container body but also to each internal partition, it is not the case that the ledges, through their contact with the sealing sheet, create a structural relationship between the sealing sheet and the support tray that is necessary to ensure air flow to the atmosphere control member(s) in the sheet.[9] If Mann merely attached its heat-sealed assembly to the upper edge of

---

removed, the container body and heat-sealed sealing sheet naturally drop downward; assuming that both components are relatively flat, they are likely to come into contact with each other, causing any atmosphere control members to come into contact with the support tray. Once again, however, the Court need not decide whether the experiment was valid in order to decide whether Mann's trays have "ribs."

[9] Apio objects to much of the second declaration of Tom Mangino, Mann's Vice President of manufacturing, on the ground that Mangino offers expert testimony without having been qualified as an expert. While some of Mangino's opinions might qualify as expert testimony for which there currently is no foundation, the only fact essential to the Court's holding is that the bonding of the sealing sheet to the container body at all points of contact supports the weight of the overlying foodstuffs. In that respect, the Court is aware of no objection to Mann's assertion that Mann's candy-filled tray, provided to the Court in connection with Mann's motion for summary judgment, contained items of the same weight as would be included in an actual retail tray. *See* First Mangino Decl., ¶ 6. Whether or not irregularly shaped foodstuffs would cause additional protrusions or downward deformations in the sealing sheet, *see* Bohrer Decl., ¶ 14, the exhibit made clear that the heat-sealing process allows the sealing sheet to support the weight of the foodstuffs. As explained above, even if the "peripheral ledges" also appear to play some role in preventing contact between the sealing sheet and the support tray,

7

Case No. C 07-5628 JF (PVT)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC3)

the support tray, a nearly identical result would be achieved.[10]  Clearly, there is no basis for claiming that the edge of the support tray itself is a "rib."  At core, the peripheral ledges are nothing more than the kind of "ribs" which provide permeability or structural strength to a package.  Whatever their relationship with the container body, they do not bear the required relationship with the sealing sheet or play the role that Apio expressly assigned to them in prosecuting its patent.  Not surprisingly, they also fail to satisfy the Court's claim construction.

At oral argument, counsel for Apio contended that Mann's heat-sealing of the polymeric sheet to the entire container body could not provide the basis for a finding of non-infringement since the '818 patent itself contemplates such a sealing process.  The claim terms do not support this argument.  Each of the '818 patent's independent claims teaches the use of a "container body which . . . comprises a base, a continuous wall . . . , a *continuous rim which is contiguous with the wall*, and partitions which extend away from the base in the same direction as the wall."  *See* '818 Patent, Claims 1, 8 & 14 (emphasis added) (internal numerals omitted).  The claims teach that the container body, having been assembled and placed in its loading orientation, is filled with foodstuffs.  The claims then recite the "sealing [of] a sealing sheet of polymeric material to *the rim of the container body* so that the sealing sheet extends over the compartments and creates a sealed package (i) which contains the foodstuffs and a packaging atmosphere around the foodstuffs, [and] whose outer surface is defined by the container body and the sealing sheet . . . . " *Id* (emphasis added).  The claims thus teach (1) a peripheral rim, to which the sealing sheet is sealed, and which defines the outer boundaries of the unitary "packaging atmosphere," and (2) multiple internal partitions to which the sealing sheet is not necessarily sealed.  The Court need not decide whether the claims might read on a tray in which the sealing sheet *is* sealed to the internal partitions of the container body.  It is enough to observe that the

---

that relationship alone is insufficient to convert the ledges into "ribs" under the Court's reading of the claims.

[10] The only difference likely would be a reduction in the package's overall sturdiness–a fact which support's the view that the peripheral ledges, while providing structural strength and perhaps permeability, and are not "ribs" of the kind disclosed in the '818 patent.

claims do not require any such internal sealing. Accordingly, they contradict neither the Court's legal conclusion that the peripheral ledges do not constitute "ribs," nor its inherent practical conclusion that Mann's trays accomplish the claimed "ribs" function by the use of a separate, non-infringing mechanism.

## V. CONCLUSION

For the foregoing reasons, Mann's motion for summary judgment of non-infringement will be granted and Apio's cross-motion for summary judgment of infringement will be denied. Apio's motion for summary judgment that it did not engage in inequitable conduct will be terminated as moot.

**IT IS SO ORDERED.**

DATED: 4/29/09

_____
JEREMY FOGEL
United States District Judge

1   This Order has been served upon the following persons:

2   Jeffrey Glenn Sheldon        jgsheldon@usip.com

3   Joseph Scott Presta          jsp@nixonvan.com

4   Marc Allen Karish            mkarish@usip.com

5   Michael Edward Crawford      mec@nixonvan.com

6   Virginia A. Crisp            EfilingVAC@cpdb.com

Case No. C 07-5628 JF (PVT)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC3)